IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: BP P.L.C., SECURITIES LITIGATION | ) ) ) | No. 10-md-2185<br>C.A. NO. 10-md-2185 |

**THE LUDLOW PLAINTIFFS' <u>SUR-REPLY</u> MEMORANDUM OF LAW**

    **(1) IN <u>SUPPORT</u> OF THE LUDLOW PLAINTIFFS' MOTION FOR APPOINTMENT OF LEAD PLAINTIFFS; AND**

    **(2) IN <u>OPPOSITION</u> TO NEW YORK AND OHIO PENSION FUNDS' MOTION FOR APPOINTMENT OF LEAD PLAINTIFFS**

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. The Sur-Reply, Representing the Funds' Fourth Opportunity to Support its Positions, *Concedes* Most of The Ludlow Plaintiffs' Points. . . . . . . . . . . . . . . . . . 2

        1. The Ludlow Plaintiffs Have the Largest Financial Interest in the Class Defined in the PSLRA-Mandated Notice. . . . . . . . . . . . . . . . . . . . . . . . . 2

        2. The Funds Essentially Concede That Their Proposed 2005 Start Date Has No Legal Nor Logical Support .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B. The Werner Declaration – Which Solely Focuses On Extending The Class Period To June 1, 2010 – Fails To Support The Funds' Motion.. . . . . . . . . . . . . . . . . . . . . 4

        1. Dr. Werner Does *Not* Claim That An April 20, 2010 End Date Precludes Recovery For The Subsequent Plunge In ADR Prices.. . . . . . . . . . . . . . . 4

        2. Dr. Werner's Ultimate Conclusion That "New York and Ohio Suffered The Greatest Damages" If the Ludlow Class Period Was Extended To June 1, 2010 Is Incorrect. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C. The Cox Declaration Misinterprets, And Ultimately Does Not Address, The Opinions Stated By Professor Silver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1. Professor Cox Does Not Dispute That Conflicts Can Be Created Based On A Class Definition .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2. The Creation of Separate Or Sub-Classes Would *Not* Render The Case "Unmanageable," But Rather Ensure Zealous Representation And Avoid Potential Conflicts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D. The Joint Declaration Establishes Cohesiveness. . . . . . . . . . . . . . . . . . . . . . . . . . 10

III. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.      INTRODUCTION

A movant's "financial interest" for purposes of appointment as lead plaintiff should not be a moving target, particularly in a case of such import.

The New York and Ohio Funds initially boasted they had $229.4 million in losses. The Ludlow Plaintiffs demonstrated that over 90% of the Funds' damages were based on common shares purchased on a foreign exchange and not covered by securities laws. The Funds shifted their position and said, regardless of their common share losses, their $22 million in ADR losses dwarfed those of the Ludlow Plaintiffs. The Ludlow Plaintiffs then demonstrated that the Funds' ADR losses were front-loaded based on transactions dating back to 2005, years before the conduct at issue. With expert declarations, the Ludlow Plaintiffs also demonstrated that the Funds were net sellers and actually profited from ADR transactions during the noticed class period, March 2009 to April 2010.

Undeterred, the Sur-Reply attempts to shift the Funds' position yet again. The Funds no longer mention their common share losses. Further, the Funds' own damages expert does not claim the class period should be extended prior to March 2009, let alone link any statements to corresponding movements in BP's ADR price before the explosion. Rather, the Funds' Sur-Reply focuses entirely on the period after the explosion, asserting that even with a March 2009 start date, they still have greater losses if the Court applies a "proper" June 1, 2010 end date.

This newest theory is similarly flawed. Investors who purchased BP shares after the explosion necessarily did not rely on pre-explosion statements about the safety of BP's drilling operations in the Gulf. More to the point, even if the period was extended to June 1, 2010, four of the five Funds still suffered no losses and the fifth, OPERS, only has losses due to two large purchases in May 2010, i.e., after the explosion (having made no ADR purchases for years).

1

At the opposite side of the spectrum are the Ludlow Plaintiffs, who individually and collectively, suffered losses based on (1) purchases of ADRs (representing 100% of their BP holdings) (2) shortly before the April 2010 explosion (3) in reliance on BP's false assurances about the safety of its Gulf drilling operations. The Funds cannot and do not dispute that the Ludlow Plaintiffs are suitable representatives.

Finally, as discussed at length in the Ludlow Plaintiffs' opposition and reply briefs – though ignored in the Funds' Sur-Reply – there are viable alternatives to the "either/or" approach advocated by the Funds, including creating sub-classes or appointing co-lead plaintiffs. This is an important case, and there should be no cloud of doubt hanging over any lead plaintiff's ability to represent all class members – including pre-explosion investors with the strongest claims.

## II.   ARGUMENT

### A. The Sur-Reply, Representing the Funds' Fourth Opportunity to Support its Positions, *Concedes* Most of The Ludlow Plaintiffs' Points

#### 1. The Ludlow Plaintiffs Have the Largest Financial Interest in the Class Defined in the PSLRA-Mandated Notice

The Funds now concede that, based on the class period of March 4, 2009 to April 20, 2010 ("Ludlow Class Period"), the Ludlow Plaintiffs have the largest financial interest in the relief sought by the proposed class. *See* Cox Decl., ¶ 7 (Doc. 61-7). Indeed, the Ludlow Plaintiffs have the largest financial interest whether based on total losses, net shares purchased, or net funds expended, while the Funds collectively made profits, were net sellers of ADRs, and received more funds than they spent. Nettesheim Decl. ¶¶ 2, 22 (Dkt. No. 40-2); Nettesheim Suppl. Decl. ¶ 3 (Dkt. 48-1).

> 2. **The Funds Essentially Concede That Their Proposed 2005 Start Date Has No Legal Nor Logical Support**

In their prior briefs, the Funds asked the Court to disregard the March 2009 start of the class period included in the PSLRA-notice (and alleged in the vast majority of securities and ERISA class actions filed to date), and instead, to push the class period start date back to June 2005 – nearly <u>five years</u> prior to the BP explosion in the Gulf – merely because the date was included in two outlier complaints (filed by counsel who then moved for lead plaintiff on behalf of other clients). In response, the Ludlow Plaintiffs demonstrated that a five-year class period had no relationship to the theory of this case, let alone any plausible "potential" theory of recovery. The Ludlow Plaintiffs also provided expert testimony depicting key events and their demonstrable effect on BP's ADR price during the March 2009 to April 2010 class period.

While the Funds' Sur-Reply continues to dance around the issue, citing a number of articles that they would add to a consolidated complaint, the Funds ultimately focus their class period argument on the <u>six-week</u> period <u>after</u> the explosion. Indeed, their own damages' expert, Dr. Werner, does <u>not</u> even mention, let alone present any analysis to justify, an extended five-year period. *See* Werner Decl. ¶ 9 (Dkt. No. 61-1). Accordingly, the Funds – despite the opportunity to submit a Sur-Reply (its fourth round of briefing), and retaining an economist expert specifically to consider losses during the respective class periods – must concede that they <u>cannot</u> tie the alleged fraud to disclosures, and corresponding movements in the BP ADR price, prior to March 2009.

Of course, for all of the reasons previously stated, such an effort would have been futile. The Funds half-heartedly suggest that the case could "plausibly" be broadened to include BP's reassurances relating to safety practices throughout its operations, not just those relating to

drilling operations in the Gulf. However, neither the Funds, nor their own expert, cite specific representations made by BP nor try to link them to movements in BP's ADR value. To the contrary, following the Texas City explosion in 2005, the Prudhoe Bay oil leak in 2006, and BP's criminal plea to both events in October 2007, BP's safety issues were already well known. This case is based on BP's false assurances that its drilling operations <u>in the Gulf</u> were different.

Second, a 2005 start date would conflict with another class action filed years ago and still pending against BP, *Reese v. Malone*, No. 08-1008 (W.D.Wa.). Notably, in their Reply, the Funds never explain their original decision to include a period covered by another pending action. Rather, the Funds merely propose that, to avoid any overlap, the class period could be moved up to start the day after the close of the *Reese* period, illustrating the arbitrary nature of the Funds' position. In any event, the Funds have abandoned even this suggestion in their Sur-Reply.

> **B.      The Werner Declaration – Which Solely Focuses On Extending The Class Period To June 1, 2010 – Fails To Support The Funds' Motion**
>
> > **1.      Dr. Werner Does *Not* Claim That An April 20, 2010 End Date Precludes Recovery For The Subsequent Plunge In ADR Prices**

BP allegedly misled investors about safety and risk management procedures for its deep-sea drilling operations in the Gulf, failing to disclose internal warnings in 2009 and 2010 concerning its Macondo well. Consistent with this theory, the Ludlow's proposed class period ends on <u>April 20, 2010</u>, the date of the Deepwater Horizon explosion, triggering the plunge in the ADR price. The Ludlow Plaintiffs further provided expert analysis depicting the key events and the demonstrable impact on BP's ADR price.

4

However, for the first time in their Sur-Reply, the Funds criticize the analysis performed by the Ludlow Plaintiffs' economist expert – Jane Nettesheim – and insist that the class period should extend <u>forward</u> until June 1, 2010, six weeks after the explosion. The Funds claim that, unless the class period is extended after the explosion, when the value of BP's ADRs ultimately plunged, the class would somehow be unable to prove damages. In support, the Funds cite the declaration from their own expert, Adam Werner, who conducted an "events study" <u>after</u> the explosion.

As a preliminary matter, Ms. Nettesheim did not somehow "omit" post-explosion events from her analysis. Rather, for purpose of calculating financial interest, she reviewed transactions within the class period contained in the PSLRA-notice, as required. Conversely, to this day, neither the Funds nor their own expert, Dr. Werner, have analyzed the movants' respective "financial interest" – whether based on losses, net shares purchased, or net funds expended – during this same period.

More to the point, as set forth Ms. Nettesheim's Second Supplemental Declaration, the mere fact that the class period ends on the date of the explosion does not mean that investors are somehow precluded from recovering for the subsequent plunge in the value of their ADRs. Notably, the suggestion is made only in the Sur-Reply brief (and not by Dr. Werner). Plainly, the inflation in the price paid for BP ADRs prior to the explosion can be measured from the decline in price in response to corrective disclosures after April 20, 2010. Second Supplemental Declaration of Jane Nettesheim ("Nettesheim 2nd Suppl. Decl.") ¶ 13. Indeed, Dr. Werner acknowledges as much in his own declaration, when he notes that additional, material disclosures could have occurred after June 1, 2010, the end of the class period proposed by the Funds. *See* Werner Decl. fn. 16.

This concept is also widely recognized in case law.  For example, in *In re Dura Pharms., Inc. Sec. Litig.*, while the class period ended on February 24, 1998, the complaint alleged losses that ultimately occurred following three corrective disclosures between September and December 1998, i.e., seven to ten months <u>after</u> the end of the period.  452 F. Supp. 2d 1005, 1022 (S.D. Cal. 2006).  The district court, on remand from the Supreme Court, concluded that plaintiffs adequately alleged loss causation.  *Id.* at 1023 (citing *Dura*, 544 U.S. at 346 - 47).  The court further stated that the PSLRA "does not measure damages based on the end of the class period," but instead "requires damages be calculated from the date the truth is revealed."  *Id.* (citing 15 U.S.C. § 78u-4(e)(1)); *see also In re Motorola Sec. Litig.*, 505 F. Supp. 2d 501, 561 (N.D. Ill. 2007) (holding that loss causation adequately alleged despite the fact that the corrective disclosure had occurred after the close of class period).

### 2. Dr. Werner's Ultimate Conclusion That "New York and Ohio Suffered The Greatest Damages" If the Ludlow Class Period Was Extended To June 1, 2010 Is Incorrect

As noted above, while the Sur-Reply and the Werner Declaration include charts with different proposed class start dates, the Funds admittedly cannot justify a period prior to March 4, 2009, and Dr. Werner's declaration is notable for the absence of any such analysis.  The Funds had every opportunity to rebut the showing by the Ludlow Plaintiffs, and chose not to.

Rather, the singular focus of Dr. Werner's declaration is on post-explosion events, and the impact of such events on BP's ADR value up until June 1, 2010.  Specifically, Dr. Werner includes an "events study" of four events, including the April 20, 2010 explosion and three subsequent "events" on April 25, April 29, and May 30 - June 1, 2010 whereby announcements were made regarding "the size of the subsequent oil leak[]."  *See* Werner Decl. ¶ 11.  According to Dr. Werner, the April 29 and May 30 - June 1, 2010 events were "material" to investors since,

after the announcements, the value of BP's ADRs dropped in a significant amount and beyond what would otherwise be attributable to outside market forces. Citing the events study, the Funds argue that the class period start date is "completely irrelevant" since, even if the Ludlow Plaintiffs' class start date was used, the Funds would still have the largest losses if the "proper" end date of June 1, 2010 was used. The argument does not withstand close scrutiny.

First, as discussed above, the notion that investors who purchased ADRs six weeks <u>after</u> the devastating explosion, amidst daily reports of deteriorating conditions, oil reaching land, state of emergencies, and Congressional hearings on BP's safety shortcomings, nonetheless relied on BP's false assurances about the safety of its Gulf operations, belies common sense.

Moreover, even if one took the logical leap and assumed that the class should include investors who purchased before the "event" dates cited by Dr. Werner, the Ludlow Plaintiffs would still have the largest loss for the first three dates. See Nettesheim 2nd Suppl. Decl. ¶¶ 8-10. It is only when the class period extends to June 1, 2010, the date insisted upon by the Funds, that the Funds (and Dr. Werner) can argue that the "New York and Ohio Funds" have larger losses.

However, even this argument is misleading. By aggregating the damages for purposes of their argument (and Dr. Werner's chart), the Funds inexplicably fail to disclose that four of the five fund members have <u>no</u> losses during this extended period.[1] Indeed, three of the five funds made <u>no</u> purchases at all, and NYSCRF actually <u>profited</u> from its ADR transactions. Only one of the funds – OPERS – arguably had "losses" during the extended class period, but all of those losses were based on two large purchases in May 2010, weeks <u>after</u> the explosion. Indeed, the

---

[1] It is difficult to determine how Dr. Werner was even able to aggregate the five funds' losses. His declaration indicates that the Funds' counsel only gave him trading data for two of the five funds, NYSCRF and OPERS. Werner Decl., Ex. 2 (Doc. 61-4). If Dr. Werner did not receive trading data for three of the five funds, he had no basis to calculate losses and his calculations are unreliable. Fed. R. Evid. 703.

7

two post-explosion purchases were OPERS' <u>only</u> transactions during the class period, and before that, OPERS had not purchased ADRs for years! Nettesheim 2nd Suppl. Decl. ¶ 11.

      **C.    The Cox Declaration Misinterprets, And Ultimately Does Not Address, The Opinions Stated By Professor Silver**

            **1.    Professor Cox Does Not Dispute That Conflicts Can Be Created Based On A Class Definition**

University of Texas Professor Charles Silver, an expert in the area of counsel's professional responsibilities, provided a declaration assessing the potential for conflicts of interest that exist in this case due to the length and scope of the proposed class definitions, as well as potential alternatives to ensure zealous advocacy for all class members.

In response, the Funds offer the declaration of Professor Cox, who conducted some of the empirical research that Professor Silver cited, i.e., data indicating the length of class periods asserted, and recoveries obtained, in other PSLRA class actions. However, Professor Cox – who does not profess to have expertise on issues of professional responsibility – never addresses the potential conflicts raised by Professor Silver, and instead, only suggests that such conflicts arise in all class actions and can be resolved at the end of the case, when the plan of allocation is prepared. Professor Cox has it backwards; conflicts should be addressed now.

Professor Cox also asserts – incorrectly – that Professor Silver "suggests" that the class period should be shortened "merely because the mean and median lengths of securities class action class periods is shorter." Cox Decl., ¶ 15. That is not the case. Rather, Professor Silver observed that statistical research indicated that the five-year class period proposed by the Funds was <u>far</u> longer than class periods typically asserted in other PSLRA cases, a fact Professor Cox does not deny. Rather, while stating that he takes no position on the merits of the case, Professor Cox then cites to three "mega-fraud" class actions, Enron, Worldcom, and Cendant, which

8

involved longer class periods, implying by association that the Funds' proposed five-year period is "plausible." However, all of those cases involved fraudulent financial statements, and the class periods coincided with the length of accounting restatements taken by those companies, which extended back several years.

### 2. The Creation of Separate Or Sub-Classes Would *Not* Render The Case "Unmanageable," But Rather Ensure Zealous Representation And Avoid Potential Conflicts

As set forth in Professor Silver's Declaration, and in the Ludlow Plaintiffs' Reply Brief, there are viable alternatives to the "either/or" approach advanced by the Funds to address potential issues of conflict amongst class members while ensuring zealous representation. These options include creating separate classes with lead plaintiffs (e.g., ADR and common share holders and/or pre- and post-explosion investors), or appointing co-lead plaintiffs.[2] Unfortunately, the Funds appear unwilling to concede that such dangers even exist, let alone that the participation of other class members would help to resolve such concerns.

In fact, despite the magnitude of such concerns, the Sur-Reply makes no mention of the potential conflicts or the available options. Instead, the Funds include only a cursory analysis by Professor Cox at the end of his declaration, warning that subclasses would render the case "unmanageable" and lead to duplication of efforts. As discussed in the Supplemental Silver Declaration, filed herewith, these concerns are greatly exaggerated. *Id.* at ¶¶ 21-23. The Court is plainly capable of managing a case with subclasses to reduce duplication of effort, just as it is already managing the entire MDL proceedings, including other ERISA and derivative actions. *Id.* There is no reason to suggest that discovery, which will already be coordinated with these related

---

[2] These options would seem particularly applicable if, as suggested by the Funds, the class period was extended beyond the April 20, 2010 explosion, particularly since OPERS' only class period transactions were ADRs purchased <u>after</u> the explosion.

9

actions, or motion practice, can not be coordinated between subclasses in the securities case. Further, any slight risk of duplication pales in comparison to the risk that absent class members may not be adequately represented in a case of this magnitude and import.

      **D.**      **The Joint Declaration Establishes Cohesiveness**

The Funds assert that the Joint Declaration submitted by Ludlow Plaintiffs, describing their ability and commitment to working together, is somehow inappropriate because it was signed after the lead plaintiff motion was filed. The argument strains credulity. The Ludlow Plaintiffs (who filed the most comprehensive complaint, the motion for MDL coordination, and multiple declarations in support of lead plaintiffs) have clearly demonstrated they are committed to this case. The Ludlow Plaintiffs also followed the exact same procedure approved in *Brody v. Zix Corp.*, No. 04-CV-1931, 2005 U.S. Dist LEXIS 13871, at *9 (N.D. Tex. July 11, 2005) (finding joint declaration filed with reply brief to sufficiently establish group's cohesiveness).

**III.**      **CONCLUSION**

For the reasons cited above, the Ludlow Plaintiffs respectfully request that the Court appoint them to serve as Lead Plaintiffs and approve their selection of Co-Lead Counsel.

Dated: December 1, 2010                              Respectfully submitted,

**COTCHETT, PITRE & McCARTHY**          **MITHOFF LAW FIRM**
Joseph W. Cotchett                                   By  *s/ Richard W. Mithoff*
Mark C. Molumphy                                 Richard W. Mithoff
Jordanna G. Thigpen                              Texas Bar Number: 14228500
Imtiaz A. Siddiqui                                    S.D.Tx Bar Number: 2012
Matthew K. Edling                                  One Allen Center
840 Malcolm Road                                   500 Dallas Street
Burlingame, CA 94010                            Houston, TX 77002
Telephone: (650) 697-6000                 Telephone: 713-654-1122
Fax: (650) 697-0577                                 Fax: 713-739-8085
                                                      E-Mail:rmithoff@mithofflaw.com

*Attorneys for the Ludlow Plaintiffs*

                                                      *Attorney-in-charge and Attorneys for the Ludlow Plaintiffs*