UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: BP, PLC SECURITIES LITIGATION | § § § § § § | CASE NUMBER 10-md-2185 |

## MEMORANDUM AND ORDER

Pending before the Court are the following motions:

- Motion to Consolidate Cases and for Appointment as Lead Plaintiff and Approval of Choice of Lead Counsel (Doc. No. 23) filed by New York and Ohio retirement funds[1] (collectively, "New York & Ohio").
- Motion for Appointment as Lead Plaintiffs and Approval of Choice of Lead Counsel (Doc. No. 22) filed by Robert Ludlow, Peter D. Lichtman, Leslie J. Nakagiri, and Paul Huyck (collectively, the "Ludlow Plaintiffs").

Having considered the parties' filings and the applicable law, the Court finds that the BP, PLC securities fraud cases pending in this Court should be consolidated; that New York & Ohio should be appointed as lead plaintiffs; that the Ludlow Plaintiffs should be appointed as lead plaintiffs of a subclass; and that the lead plaintiffs' choice of lead counsel should be approved.

I.  BACKGROUND

Pending in this Court are seven putative class action lawsuits against BP, PLC ("BP") alleging securities fraud relating to the oil spill that began on April 20, 2010 at the Deepwater Horizon rig in the Gulf of Mexico. Among other things, the plaintiffs allege

---

[1] The motion is filed by Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement System and sole Trustee of the New York State Common Retirement Fund and Ohio Attorney General Richard A. Cordray, statutory litigation counsel for the Ohio Public Employees Retirement System, the State Teachers Retirement System of Ohio, the School Employees Retirement System of Ohio, and the Ohio Police & Fire Pension Fund.

that BP and its executives made fraudulent statements about the company's safety measures and about the extent of the Gulf of Mexico spill. The proposed classes consist of purchasers of American Depository Receipts ("ADRs") and ordinary shares of BP during various time periods between 2005 and 2010. The cases were filed in various districts and transferred to this Court by the Judicial Panel on Multidistrict Litigation.

Timely notice was published in business-oriented publications for at least five of the class actions, as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). 15 U.S.C. § 78u-4(a)(3)(A).[2] Several groups of plaintiffs filed motions to be appointed as lead plaintiff within the PSLRA's sixty-day window, but all have withdrawn except for New York & Ohio and the Ludlow Plaintiffs.

## II. MOTION татьо CONSOLIDATE

As an initial matter, the Court finds it appropriate to consolidate all of the BP securities class actions pending in this Court because they involve common questions of law and fact. *See* Fed. R. Civ. P. 42(a). Although, as discussed below, there are significant differences among the claims in the various cases, there are also substantial commonalities, and they involve "overlapping [d]efendants and a common core of facts and legal issues." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002) (noting that "consolidation, at least pretrial, serves to promote an orderly progression of this very complex litigation"). Accordingly, the following cases shall be consolidated:

- *Ludlow v. BP PLC*, Case No. 10-cv-3043;
- *Johnson Inv. Counsel Inc. v. BP PLC*, Case No. 10-cv-3044;

---

[2] Notice was provided in *Ludlow v. BP PLC*, Case No. 10-cv-3043, for a class period spanning from March 4, 2009 to April 20, 2010; in *Yuen v. BP PLC*, 10-cv-3049, for a class period spanning from April 16, 2009 to May 21, 2009; in *Greenfield v. BP PLC*, 10-cv-3448, for a class period spanning from February 27, 2008 to May 12, 2010; and in *Oklahoma Police Pension & Retirement System v. BP PLC*, 10-cv-3452 ("*Oklahoma Police*"), and *McClurg v. BP PLC*, 10-cv-3449, for a class period spanning from June 30, 2005 to June 1, 2010. (Molumphy Declaration, Ex. E, Doc. No. 22-3, at 26; Ross Declaration, Ex. A, Doc. No. 47-2.)

- *Yuen v. BP PLC*, Case No. 10-cv-3049;
- *Greenfield v. BP PLC*, Case No. 10-cv-3448
- *McClurg v. BP PLC*, Case No. 10-cv-3449;
- *Oklahoma Police Pension & Ret. Sys. v. BP PLC*, Case No. 10-cv-3452; and
- *Safe v. British Petroleum*, Case No. 10-cv-4675.

## III. MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

### A. Legal Standard

The PSLRA sets forth the procedure for choosing a lead plaintiff in securities class actions. 15 U.S.C. § 78u-4(a)(3)(B). After notice has been given to class members and the cases have been consolidated, the Court is to appoint a lead plaintiff "[a]s soon as practicable." *Id.* at § 78u-4(a)(3)(B)(ii). In choosing the lead plaintiff, "the court shall adopt a presumption that the most adequate plaintiff . . . is the person or group of persons that 1) has filed the complaint or moved to be lead plaintiff;"[3] 2) has "the largest financial interest in the relief sought by the class"; and 3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* at § 78u-4(a)(3)(B)(iii)(I).

"The PSLRA does not delineate a procedure for determining the 'largest financial interest' among the proposed class members." *Enron*, 206 F.R.D. at 440; *see also Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 623-24 (E.D. Wis. 2009) ("[T]he PSLRA appears to discourage [finely-calibrated inquiries into which plaintiff has the largest financial interest] and prefer[s] that the court make the determination based on whatever factors seem most appropriate under the facts of the case before it."). In *Enron*, Judge Harmon used a four-factor inquiry that courts in other districts had previously applied, considering: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs

---

[3] In this case, both groups meet the first prong because the Ludlow Plaintiffs filed the complaint and New York & Ohio filed a motion for appointment as lead plaintiffs.

3

during the class period; and (4) the approximate losses suffered by the plaintiffs." 256 F.R.D. at 440. "FIFO, or 'first in, first out,' and LIFO, or 'last in, first out,' are both frequently employed methodologies for the purposes of loss calculation" in this context. *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Serv. Group, Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010).[4]

With regard to the proper class period for purposes of selecting a lead plaintiff, numerous courts have favored using the longest-noticed class period. *See, e.g., In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2006) ("I find that the use of the longer, most inclusive class period . . . is proper, as it encompasses more potential class members . . ."); *MGIC*, 256 F.R.D. at 624-25 (the "assumption that 'the class' . . . should be defined as the broadest, most inclusive potential class . . . makes some sense, because at the outset of a case the court should view the facts in the light most favorable to the plaintiffs and should narrow the allegations only after the parties have had the opportunity to develop the record"); *In re Star Gas Sec. Litig.*, 2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005) ("it would be premature to limit the plaintiff class in this way at such an early stage of the litigation"). There is a risk, however, to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest. *See MGIC*, 256 F.R.D. at 625. As a result, although courts avoid fully considering the merits of the claims at this stage, *see, e.g., Grand Lodge of Pennsylvania v. Peters*, 2007 WL 1812641, at *2 (M.D. Fla. June 22, 2007), they have disagreed about the appropriate level of scrutiny to apply to the longest noticed class period. In *MGIC*,

---

[4] "In a FIFO analysis, the first stocks to be sold are assumed to be the stocks that were acquired first, often outside of the class period. . . . LIFO . . . assumes that the last stocks to be sold are the stocks purchased most recently prior to that sale." *Id.*

4

for example, the court found it "an adequate safeguard against abuse . . . to simply review the complaint and briefs to make sure that the allegations supporting the longest class period are not *obviously frivolous*." 256 F.R.D. at 625 (emphasis added). The court in *In re Centerline Holding Co. Sec. Litig.*, on the other hand, applied a plausibility standard identical to the one used in evaluating a motion to dismiss. 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).[5] Importantly, "all courts agree that they should not make any binding determinations regarding the proper class period as part of the lead-plaintiff analysis." *MGIC*, 256 F.R.D. at 624 (citing, *inter alia*, *Centerline*, 2008 WL 1959799, at *3-4).

The Court finds it appropriate to adopt the standard used in *MGIC*. For purposes of selecting a lead plaintiff, the Court will use the longest noticed class period unless the factual allegations supporting that period are "obviously frivolous." 256 F.R.D. at 625. This standard achieves a proper balance, discouraging plaintiffs from manipulating the class period so that they have the largest financial interest but substantially avoiding the merits of the claims without the benefit of adversarial briefing. *See id.* at 625 n.7 (rejecting *Centerline* standard because "somewhat superficial argument" between potential lead plaintiffs "provides me with a poor record for making an informed finding concerning plausibility"). The Court agrees with the district courts cited above who have found it generally inappropriate to narrow the class period at this stage of the litigation. "Narrowing the class period is more appropriate at a later stage of litigation, with participation from the Defendant[s]." *Dyadic Int'l Inc.*, 2008 WL 2465286, at *4. Moreover, plaintiffs are further discouraged from manipulating the class period by the

---

[5] The *Centerline* court noted that, under the PSLRA, the scienter requirement would require a showing greater than plausibility at the motion to dismiss stage, but that the plausibility inquiry was appropriate for lead plaintiff purposes. *Id.* at *3 n.26.

possibility of "sanctions if after further litigation the court learns that the allegations were made in bad faith." *Id.* at 625 (citing *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); *see also In re Star Gas Sec. Litig.*, --- F. Supp. 2d ---, 2010 WL 3925202, at *6-11 (D. Conn. Sept. 30, 2010) (finding sanctions against plaintiffs appropriate for frivolous factual and legal claims).

To qualify as presumptive lead plaintiffs, a plaintiff or group of plaintiffs must also satisfy the requirements of Rule 23—in particular, "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3) and (4); *see Enron*, 206 F.R.D. at 441 ("Typicality and adequacy are directly relevant to the choice of the Lead Plaintiff as well as of the class representative in securities fraud class actions."); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions [of Rule 23(a)] relevant to a determination of lead plaintiff under the PSLRA."). "Although the inquiry at this stage of the litigation in selecting the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class and has the capacity to provide adequate representation for those class members." *Enron*, 206 F.R.D. at 441; *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) ("A comprehensive reading of the statute reveals that, at this stage of the proceedings, [the proposed lead plaintiff] need only make a preliminary showing that it satisfies [the typicality and adequacy] requirements."); *D'Hondt v. Digi Int'l Inc.*, 1997 WL 405668, at *2 (D. Minn. April 3,

1997) ("If Congress had intended an aggressive inquiry by the Court, into the qualifications of a claimant to serve as a Lead Plaintiff, it was an intent that Congress chose not to express."). To make such a preliminary showing, potential lead plaintiffs need not submit evidentiary proof of typicality or adequacy. *Gluck*, 976 F. Supp. at 546.

"Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001) (citing 5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.24[4] (3d ed. 2000)). With regard to the adequacy requirement, "[d]ifferences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999).

If a presumption is created that a party is the most adequate lead plaintiff, it "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either 1) "will not fairly and adequately protect the interests of the class"; or 2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." § 78u-4(a)(3)(B)(iii)(II).[6]

---

[6] Courts have noted the redundancy of including the adequacy requirement of Rule 23(a) twice in the inquiry. *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 817 n.23 (N.D. Ohio 1999) ("It is unclear why the drafters of the PSLRA included this precise same prerequisite at two different stages in the lead plaintiff analysis. Perhaps it was an oversight. Perhaps the first inquiry is merely a threshold inquiry and the second is meant to be a comparative inquiry (i.e., who among the proposed lead plaintiffs, who may have identical losses, is the most adequate). Whatever the reason, the fact of its repetition evidences the importance of the adequacy requirement."); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1338-39 (N.D. Ala. 2000) ("In light of the text of the statute and its purpose, as inferred from the structure of the statute and its legislative history, this Court concludes that, rather than acting as a set of absolute threshold requirements,

7

B. Analysis

### 1. Largest Financial Interest and Applicable Class Period

In this case, the determination of which group of plaintiffs has the largest financial interest in the case depends primarily on which class period the Court applies at this stage. *See MGIC*, 256 F.R.D. at 624 ("in the present case identification of the movant with the largest financial interest turns on the length of the class period, and movants focus their arguments on whether the court should calculate financial interests under a longer period"). New York & Ohio argue that the proper class period is June 30, 2005 to June 1, 2010 (the "New York & Ohio Period"), the longest noticed period, while the Ludlow Plaintiffs argue that the proper period is March 4, 2009 to April 20, 2010 (the "Ludlow Period"). The Ludlow Plaintiffs concede that New York & Ohio have the largest financial interest if the Court uses the New York & Ohio Period. If the Ludlow Period is used, the parties each contend that they have the largest financial interest, based on varying calculation methods.[7]

As the longest noticed class period, the New York & Ohio Period should be used for purposes of these motions unless the allegations supporting it are obviously frivolous. *See MGIC*, 256 F.R.D. at 625. The New York & Ohio Period is claimed in the *Oklahoma Police* and *McClurg* complaints. For example, the complaints allege that:

---

subsection 21D(a)(3)(B)(iii)(I) is a comparative subsection, obligating the court to weigh the factors set forth therein in determining lead plaintiff. A lead plaintiff movant, to be presumed most adequate plaintiff, need not demonstrate that it satisfies each of the prerequisites, but merely that he, she, or it best satisfies the factors listed").

[7] Furthermore, the Ludlow Plaintiffs argue that common shares of BP purchased on the London Stock Exchange are not covered by federal securities fraud laws and thus should not be counted for purposes of these motions. *See Morrison v. Nat'l Australia Bank Ldt.*, 130 S.Ct. 2869, 2884 (2010) ("Section 10(b) does not punish deceptive conduct, but only deceptive conduct 'in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered.'") (citing 15 U.S.C. § 78j(b)). The Court need not decide whether common shares should be counted for purposes of this motion, as the result is the same whether the Court considers them or not.

- "BP has for years maintained a corporate culture where adherence to safety protocols and environmental laws were ignored in favor of profits," leading to "a 2005 explosion in Texas City, Texas . . . and two oil spills in Alaska in 2006." (*Oklahoma Police* Compl., Case No. 4:10-cv-3452, Doc. No. 1, ¶ 4.)
- BP's Annual Report filed on June 30, 2005 contained "a pledge that BP had implemented protocols to ensure regulatory and safety compliance by all employees" and "stated that it seeks to conduct its activities in such a manner that there is no or minimum damage to the environment." (*Oklahoma Police* Compl., ¶ 48; *McClurg* Compl., Case No. 10-cv-3449, Doc. No. 1, ¶ 38.)
- BP and its executives made materially false and misleading statements between 2006 and 2010 touting the company's focus on safety, including improvements in response to a 2005 explosion at the BP refinery in Texas City, Texas and implementation of recommendations of the BP US Refineries Independent Safety Review Panel. (*Oklahoma Police* Compl., ¶¶ 49-68; *McClurg* Compl., ¶¶ 51-70.)
- BP and its executives made materially false and misleading statements between 2005 and 2010 discussing the Gulf of Mexico as an important area of growth that incorporated substantial safety precautions. (*Oklahoma Police* Compl., ¶¶ 48, 51, 56-58, 60, 62-63, 66-67; *McClurg* Compl., ¶¶ 50, 53, 56, 59, 62, 64-65, 68-69.)
- "In the days and weeks after the oil spill began, BP intentionally understated the oil flow rate in an attempt to diminish the perceived impact of the spill and thereby convince investors that the spill would not significantly impact the Company." (*Oklahoma Police* Compl., ¶ 69-72.)

The Court finds that the allegations in the *Oklahoma Police* and *McClurg* complaints give rise to claims of securities fraud for the New York & Ohio Period that are not obviously frivolous. Accordingly, that period should be applied for purposes of the lead plaintiff motions. Using that period, it is undisputed that New York & Ohio have the "largest financial interest" within the meaning of the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B).[8]

### 2. Typicality and Adequacy of New York & Ohio

In addition to having the largest financial interest, New York & Ohio must also make a "preliminary showing" of typicality and adequacy under Federal Rule of Civil

---

[8] Because the applicable class period is determinative of which group has the largest financial interest, the Court need not choose which method for calculating the largest financial interest would otherwise apply.

Procedure 23(a) in order to be entitled to a presumption that they are the most adequate lead plaintiffs. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). The typicality and adequacy inquiries are related in this context, as a party's lack of "the same essential characteristics of those of the putative class," *James*, 254 F.3d at 571, may result in "conflicts between the named plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 626. For example, if such a party were appointed lead plaintiff, there would be potential conflicts between the party and the other class members in drafting the consolidated complaint, in defending a motion to dismiss, and in conducting discovery—the party would have an interest in pursuing its specific claims to the potential exclusion of other class members' claims.

Even under the limited inquiry appropriate at this stage of the litigation, *see Enron*, 206 F.R.D. at 441; *Gluck v. CellStar Corp.*, 976 F. Supp. at 546, the Court is concerned that New York & Ohio's claims differ from those of the class in ways that could make them atypical and inadequate representatives. It is clear from the briefing and from oral argument that New York & Ohio's theory of the case differs significantly from that of the Ludlow Plaintiffs. *Cf. Mullen*, 186 F.3d at 625 ("the test for typicality . . . focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent") (quotation marks omitted). First, whereas the Ludlow Plaintiffs' claims center on BP's statements about the safety of its drilling operations in the Gulf of Mexico in the thirteen months leading up to the Deepwater Horizon explosion, New York & Ohio argue more generally that BP made fraudulent statements between 2005 and 2010 about its safety precautions both in the Gulf of Mexico and elsewhere. Second, in extending the class period to June 1, 2010,

10

New York & Ohio focus a good deal of attention on fraud allegedly committed *after* April 20, 2010, such as statements about the rate at which oil was escaping from the rig and about BP's attempts to stop the flow. A substantial portion of New York & Ohio's losses derive from purchases of BP ADR's by one of the Ohio funds on May 3 and May 25, 2010, several weeks after the Deepwater Horizon explosion. (*See* Second Supplemental Nettesheim Declaration, Doc. No. 71-2, ¶ 11.) Under at least some methods of calculation, New York & Ohio are net sellers of BP ADRs during the Ludlow Period. (*See* Supplemental Netteshiem Declaration, Doc. No. 48-1, ¶ 4.)

Because of these divergent theories, New York & Ohio might not have an interest in vigorously pursuing the claims central to the Ludlow Plaintiffs' shorter class period, in favor of emphasizing arguments about fraud based on conduct before and after the Ludlow Plaintiffs' thirteen-month window. Absent class members could be prejudiced by New York & Ohio's manner of drafting a consolidated complaint, defending motions to dismiss, and conducting discovery. Accordingly, the Court cannot with confidence find that New York & Ohio's claims have the "same essential characteristics" as those of other class members, or that no significant conflicts exist between New York & Ohio and other class members as a result of differences in their claims. While it is by no means certain that such conflicts would prevent New York & Ohio from adequately representing the class, the Court finds it particularly important at this early stage of the case to avoid prejudicing the claims of absent class members through the appointment of a lead plaintiff who cannot fully and fairly represent them. Because New York & Ohio's losses are concentrated outside of the Ludlow Period, and because that concentration leads New York & Ohio to present different legal theories than other plaintiffs, they have not made a

preliminary showing of typicality and adequacy. Therefore, New York & Ohio are not entitled to a presumption that they are the most adequate lead plaintiffs.

As discussed further below, the Court finds it appropriate to exercise its discretion "to ensure that all class members will adequately be represented in the prosecution of this action," *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 376 (E.D.Va. 2003) (citing *Weisz v. Calpine Corp.*, 2002 WL 32818827, at *8 (N.D. Cal. Aug. 19, 2002)); *see also* Fed. R. Civ. P. 23(d), by appointing New York & Ohio as lead plaintiffs of the class generally but creating a subclass consisting of purchasers of BP ADRs and common stock between March 4, 2009 to April 20, 2010, inclusive.

The Court acknowledges that this holding is potentially in tension with the holding that the cases should be consolidated. *See, e.g., Enron*, 206 F.R.D. at 451 (noting that factors favoring consolidation and appointment of single lead plaintiff are similar). However, whereas the consolidation determination is based on whether common issues of law and fact are present, the typicality and adequacy determinations are based on whether the plaintiffs share legal theories and whether potential conflicts exist between a potential lead plaintiff and absent class members. *See, e.g., Miller v. Ventro Corp.*, 2001 WL 34497752, at *4 (N.D. Cal. Nov. 28, 2001) ("the argument of potential conflict of interests would appear more applicable in determining whether a particular plaintiff or group of plaintiffs should be appointed lead plaintiff. The critical question for consolidation is whether the cases are substantially related."). In this case, consolidation is appropriate because there is substantial overlap between the factual and legal claims of the various plaintiffs, and it would be highly inefficient to conduct the cases separately. Despite these commonalities, however, New York & Ohio's claims rest on different legal

theories from other class members (including the Ludlow Plaintiffs), and these differences give rise to a substantial risk of conflict with the interests of absent class members.

### 3. Typicality and Adequacy of Ludlow Plaintiffs

The Court next considers whether the Ludlow Plaintiffs should be appointed lead plaintiffs of the subclass. The Ludlow Plaintiffs' claims are typical of those of the subclass, and they will fairly and adequately protect the interests of the subclass members. All four of the Ludlow Plaintiffs purchased ADRs in BP between March 4, 2009 and April 20, 2010. Their claims are based on allegedly fraudulent representations made by BP and its officials during that period resulting in inflated stock prices prior to the Deepwater Horizon explosion. The Court sees no reason why these are not the "same essential characteristics" of the claims of other members of the subclass, and sees no significant potential for conflict between the Ludlow Plaintiffs' interests and those of the other subclass members.

### 4. Creation of a Subclass

However, the Court does not believe that the Ludlow Plaintiffs by themselves will best represent all of the class members. First, the dual theories of the case cut against reliance on the Ludlow Plaintiffs alone to represent those who purchased stock before or after the Ludlow Period. As with New York & Ohio, the Ludlow Plaintiffs might not have an interest in vigorously pursuing claims based on conduct outside the Ludlow Period, instead focusing on conduct in the thirteen months leading up to the Deepwater Horizon explosion. This creates a serious potential conflict of interest between the Ludlow Plaintiffs and members of the broader class. *Cf. Wenderhold v. Cylink Corp.*, 188

F.R.D. 577, 586 (N.D. Cal. 1999) (approving aggregation of unrelated plaintiffs if "necessary to address the existence of intra-class periods" because otherwise "the court would be forced to appoint as lead plaintiff an individual plaintiff whose limited interest in the litigation renders him incapable of fairly and adequately protecting the interests of the class as a whole"); *Star Gas*, 2005 WL 818617, at *5 ("The majority of courts considering the issue have . . . allow[ed] a group of unrelated investors to serve as lead plaintiffs when it would be most beneficial to the class under the circumstances of a given case, but selecting only a few lead plaintiffs from within a larger group proposed by counsel.").

Second, the PSLRA expresses a strong preference for institutional investors to serve as lead plaintiffs. *See* H.R. Rep. No. 104-369, at 3 (1995) (Conf. Rep.) ("The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs . . . ."); *Gluck*, 976 F. Supp. at 548 ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors"). That is because "[i]nstitutions with large stakes in class actions have much the same interests as the plaintiff class generally; thus, courts could be more confident settlements negotiated under the supervision of institutional plaintiffs were [f]air and reasonable than is the case with settlements negotiated by unsupervised plaintiffs['] attorneys." H.R. Rep. No. 104-369, at 5 (1995) (Conf. Rep.). As a result, several courts have used their discretion to make an institutional investor co-lead plaintiff with an individual in order to provide the added benefits of institutional investors identified by Congress. *Weisz v. Calpine Corp.*, 2002 WL 32818827, at *8 (N.D. Cal. Aug. 19, 2002) ("The Court finds that appointing both an institutional and an

individual investor to serve as co-lead plaintiffs will ensure that all class members will adequately be represented in the prosecution of this action"); *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 376 (E.D.Va. 2003) (same); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999) ("with the appointment of one lead plaintiff who is an individual private investor and one lead plaintiff that is an institutional investor, the lead plaintiffs will represent a broader range of shareholder interests than if the Court appointed an individual or an institutional investor alone"; *see also Oxford Health Plans*, 182 F.R.D. 42, 45-49 (S.D.N.Y. 1998) (appointing three groups petitioning separately for lead plaintiff status together as co-lead plaintiffs). The same logic applies to appointing institutional investors in addition to individuals in the context of a subclass.

The Court recognizes that some courts have viewed the creation of subclasses with disfavor. For example, one district court rejected a request to create a subclass of those who had purchased stock after a certain date because there was no affirmative demonstration that the party with the largest financial interest would not adequately represent all stockholders. *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 479-80 (D.N.J. 1998). The court reasoned that creating a subclass "would injure the purpose of the PSLRA by fragmenting the plaintiff class and decreasing client control."[9] *Id.* at 480. Likewise, Judge Harmon rejected several proposals for subclasses in *Enron* on the grounds that the PSLRA "authorizes the appointment of one Lead Plaintiff or small cohesive group for a single class." 206 F.R.D. at 451; *see also id.* at 448 (rejecting claims that common stock shareholders "would have 'no incentive to present an explanation of damages suffered by bond purchasers' and 'will have every incentive to omit altogether,

---

[9] In the same case, however, the Court had already appointed separate lead plaintiffs for a subclass of those holding one type of securities on the grounds that the lead plaintiff of the overall class had a conflict of interest involving one of the defendants. *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 149-50 (D.N.J. 1998).

or minimize, the damages suffered by Bond Purchasers'" as "generic allegations, unsupported by specific facts or law" and "unpersuasive"); *Miller v. Ventro Corp.*, 2001 WL 34497752, at *10 (N.D. Cal. Nov. 28, 2001) ("courts have found that differences in class periods, pleading and evidentiary standards or differences in named defendants do not preclude consolidation or necessitate the creation of co-lead plaintiffs or subclasses"); *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 20 (D.D.C. 2006) (rejecting argument that subclass should be created because options purchasers "might perhaps seek a different litigation strategy to maximize their recovery"); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999) (holding that parties' "speculations about possible conflicts do not rebut the statutory presumption that one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories").

> However, as the court in *Oxford Health Plans* noted:
>
> The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions. Allowing for diverse representation . . . ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by differing aims of differently situated claimants.

182 F.R.D. 42, 45-49 (S.D.N.Y. 1998); *see also Miller*, 2001 WL 34497752, at *11 (appointing one stockholder and one bondholder co-lead plaintiffs, with each having decision-making power for their subclass on issues only concerning them); *In re Peregrine Systems, Inc. Sec. Litig.*, 2002 WL 32769239, at *11-12 (S.D. Cal. Oct. 11, 2002) (appointing "co-lead plaintiffs, one to lead litigation with respect to the section 11

[of the Securities Act of 1933] plaintiffs and another to lead litigation with respect to the section 10(b) [of the Securities Exchange Act of 1934] plaintiffs"); *Harold Roucher Trust U/A DTD 09/21/72 v. Franklin Bank Corp.*, 2009 WL 1941864 (S.D. Tex. July 6, 2009) (Ellison, J.) (appointing separate lead plaintiff after lead plaintiff did not include preferred stockholders in Consolidated Amended Complaint because "it d[id] not have standing to pursue their claims"). Furthermore, contrary to those courts that have held that co-lead plaintiffs and subclasses should be avoided, the PSLRA clearly envisions the appointment of multiple lead plaintiffs in some cases. 15 U.S.C. § 78u-4a(3)(B)(i) (court "shall appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members") (emphasis added); *see also* H.R. Rep. No. 104-369 at 32 (1995) (Conf. Rep.) (lead plaintiff provisions are "intended to encourage the most capable *representatives* of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class") (emphasis added); *Oxford Health Plans*, 182 F.R.D. at 45-47; *Peregrine Systems*, 2002 WL 32769239, at *11-12.

In this case, the Court's foremost concern at this stage is to preserve the claims of all potential class members. *See Miller*, 2001 WL 34497752, at *11 ("the question is whether a subclass is necessary to protect the bondholders interests"); *see also* Fed. R. Civ. P. 23(a)(3) and (4). The stark difference between the two groups' class periods and their two distinct theories of the case create a significant risk of conflict and prejudice to class members if they are not separated. *See Enron*, 206 F.R.D. at 444 ("the Court is required to insure that independent classes with conflicts are protected by subdivision and separate representation"). The appointment of two lead plaintiffs and creation of a

17

subclass for this purpose does not conflict with the PSLRA's primary goal of shifting control of securities class actions from lawyers to investors. *See Gluck*, 976 F. Supp. at 549; *see Peregrine Systems*, 2002 WL 32769239, at *11-12 (appointment of co-lead plaintiffs appropriate "where the goals of the PSLRA are not undermined"). Appointing both groups does not increase the number of decision-makers (and thus the risk that decision-making will fall de facto to their attorneys) because the groups represent different interests—New York & Ohio the class overall and the Ludlow Plaintiffs only the subclass. *Compare Gluck*, 976 F. Supp. at 549 (expressing concern that creating subclass would "delegate more control and responsibility to the lawyers for the class and make the class representatives more reliant on the lawyers").[10] The Court is confident that the lead plaintiffs themselves will control the litigation and represent their classes fully. The Court is also confident that the presence of a subclass will not prevent the parties from efficiently and civilly pursuing all viable claims and proceeding through the discovery process. *See Enron*, 206 F.R.D. at 451 (expressing concern about efficiency and civility with multiple lead plaintiffs).

Accordingly, the Court finds it appropriate to appoint New York & Ohio as lead plaintiffs of the class in general (i.e. purchasers of ADRs and common stock during the New York & Ohio Period[11]) and to appoint the Ludlow Plaintiffs as lead plaintiffs of the

---

[10] Moreover, the Ludlow Plaintiffs have established that they will actively and cohesively participate in this litigation. (*See* Joint Declaration of Robert Ludlow, Peter Lichtman, Paul Huyck, and Leslie Nakagiri, Doc. No. 48-3.)

[11] It would be logistically difficult for New York & Ohio to exclude from its class those who purchased during the Ludlow Period, so the Court finds it appropriate for New York & Ohio to represent purchasers during the entire New York & Ohio Period, including the Ludlow Period. The Court recognizes the potential inefficiency caused by this overlap but finds it necessary due to practical concerns and hopes it can be minimized.

subclass (i.e. purchasers of ADRs and common stock during the Ludlow Period).[12] Each group must fairly and adequately represent the class members it represents. The Court expects the lead plaintiffs to work together as needed to prevent inefficiencies in discovery and other stages of the litigation. For example, the Court expects that no witness should need to be deposed more than once simply because of the presence of multiple lead plaintiffs. New York & Ohio and the Ludlow Plaintiffs may each file a complaint no later than 45 days after issuance of this order.[13]

## IV. MOTIONS FOR APPROVAL OF CHOICE OF LEAD COUNSEL

The PSLRA provides that "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). New York & Ohio and the Ludlow Plaintiffs are both represented by experienced local and non-local law firms that the Court is convinced are fully capable of litigating this case skillfully and zealously.[14] Accordingly, the Court finds it appropriate for each group of plaintiffs' chosen counsel to continue to represent that group. However, this is done with the understanding that the presence of numerous law firms as co-lead counsel will not in any way increase the percentage of the class members' potential recovery that will go to attorney's fees. *See Oxford Health Plans*, 182 F.R.D. at 50; *Star Gas*, 2005 WL 818617 at *8 ("duplicative work will not be approved for payment by the Court").

## V. CONCLUSION

---

[12] In so doing, the Court expresses no opinion as to whether either or both classes can or will be certified under Rule 23. Furthermore, the Court reserves the right, as it must, to collapse the class and subclass into one class, to choose a class period different from the periods proffered by the lead plaintiffs, or to find that no class should be certified.

[13] If possible, of course, the two sets of lead plaintiffs may file a joint complaint.

[14] New York & Ohio are represented by Yetter Coleman LLP, Cohen Milstein Sellers & Toll PLLC, and Berman Devalerio. The Ludlow Plaintiffs are represented by Cotchett, Pitre & McCarthy and the Mithoff Law Firm.

Accordingly, the Court **GRANTS** the Motion to Consolidate the BP securities fraud cases pending in this Court; **APPOINTS** New York & Ohio as lead plaintiffs of the class of purchasers of BP ADRs and common stock between June 30, 2005 and June 1, 2010, inclusive; **APPOINTS** the Ludlow Plaintiffs as lead plaintiffs of the subclass of purchasers of BP ADRs and common stock between March 4, 2009 to April 20, 2010, inclusive; and **APPROVES** New York & Ohio's and the Ludlow Plaintiffs' respective choices of counsel as lead counsel.

**IT IS SO ORDERED.**

**SIGNED** this 28th day of December, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE