IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE BP SHAREHOLDER DERIVATIVE LITIGATION | ) ) ) ) ) ) | MDL NO. 2185 Case No. 4:10-cv-03447 |
| In Re: BP P.L.C. SECURITIES LITIGATION | ) ) ) ) ) ) | Civil Action No. 4:10-md-2185 HON. KEITH P. ELLISON |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER
SUPPORT OF THEIR MOTION TO DISMISS THE VERIFIED
CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT**

OF COUNSEL:

Daryl A. Libow (pro hac vice)
Bruce W. Hickey
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 956-7500
libowd@sullcrom.com
hickeyb@sullcrom.com

Richard C. Pepperman, II (pro hac vice)
Marc De Leeuw (pro hac vice)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
peppermanr@sullcrom.com
deleeuwm@sullcrom.com

Thomas W. Taylor
Texas State Bar No. 19723875
Federal ID No. 3906
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200
Facsimile:  (713) 220-4285
ttaylor@andrewskurth.com

*Attorney-in-charge for Nominal Defendant
BP p.l.c. and Defendants Iain C. Conn, Robert
W. Dudley, Byron E. Grote, Anthony B.
Hayward, Andy G. Inglis, Antony Burgmans,
Cynthia B. Carroll, William M. Castell,
George David, Erroll B. Davis, Jr., Douglas J.
Flint, DeAnne S. Julius, Ian M.G. Prosser,
Peter Sutherland, Carl-Henric Svanberg,
H. Lamar McKay, and Robert A. Malone*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................1

ARGUMENT ......................................................................................................................4

I.  PLAINTIFFS LACK STANDING TO PURSUE THESE DERIVATIVE
    CLAIMS ON BEHALF OF BP UNDER GOVERNING U.K. LAW....................4

    A.  The Companies Act Required Plaintiffs to Seek Permission from the
        English High Court to Bring a Derivative Action on Behalf of BP.............4

    B.  The Companies Act's Judicial Permission Requirement Concerns
        Standing to Sue and Thus Is Substantive, Not Procedural.........................7

    C.  Even If Judged Under the Abolished Common-Law Rule of *Foss* v.
        *Harbottle*, Plaintiffs Clearly Lack Standing to Bring a Derivative Suit....12

II.  THE ENGLISH HIGH COURT IS A MORE APPROPRIATE FORUM
     FOR THIS DERIVATIVE LITIGATION............................................................15

III.  PLAINTIFFS HAVE NOT ALLEGED A *PRIMA FACIE* CASE OF
      PERSONAL JURISDICTION OVER ANY OF THE INDIVIDUAL
      DEFENDANTS. ...................................................................................................18

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alford Safety Services, Inc.* v. *Hot-Hed, Inc.*,
No. 10-1319, 2010 WL 3418233 (E.D. La. Aug. 24, 2010) ...................................................19

*Aronson* v. *Lewis*,
473 A.2d 805 (Del. 1984) .....................................................................................................12

*Bilyeu* v. *Johanson Berenson LLP*,
No. 08-2006, 2010 WL 3896415 (W.D. La. Sept. 30, 2010) .................................................19

*Bonvillain* v. *Louisiana Land & Exploration Co.*,
702 F. Supp. 2d 667 (E.D. La. 2010) ....................................................................................20

*Bruhl* v. *Kingate Global Fund Ltd.*,
No. 60152609 (N.Y. Sup. Ct. Jan. 25, 2010) ......................................................................4, 9

*City of Harper Woods Employees' Retirment System* v. *Olver*,
589 F.3d 1292 (D.C. Cir. 2009) .......................................................................................12, 15

*CMIA Partners Equity Ltd.* v. *O'Neill*,
920 N.Y.S.2d 240 (N.Y. Sup. Ct. 2010) ...............................................................................13

*Cockburn* v. *Newbridge Sanitary Steam Laundry Co. Ltd.*,
[1951] 1 IR 237 ....................................................................................................................14

*Dalton* v. *R & W Marine, Inc.*,
897 F.2d 1359 (5th Cir. 1990) ..............................................................................................19

*Eakin* v. *Hunt*,
No. 93-1523, 1993 U.S. Dist. LEXIS 17845 (E.D. La. Dec. 10, 1993)...................................18

*Feiner Family Trust* v. *VBI Corp.*,
No. 07 Civ. 1914 (RPP), 2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007) ...............................12

*Foss* v. *Harbottle*,
(1843) 2 Hare 461 (Eng.) ............................................................................................. *passim*

*Franbar Holdings Ltd.* v. *Patel*,
[2008] EWHC 1534 (Ch), 2008 WL 2596083......................................................................11

*Gulf Oil Corp.* v. *Gilbert*,
330 U.S. 501 (1947)..............................................................................................................17

*Hausman* v. *Buckley*,
299 F.2d 696 (2d Cir. 1962)...................................................................................9, 10

*Hoffman* v. *Kramer*,
362 F.3d 308 (5th Cir. 2004) ......................................................................................12

*In re Banco Santander Securities-Optimal Litigition*,
732 F. Supp. 2d 1305 (S.D. Fla. 2010) .......................................................................17

*In re BP Deriviative Litigation*,
507 F. Supp. 2d 302 (S.D.N.Y. 2007)....................................................................12, 13

*In re BP p.l.c. Derivative Litigation*,
No. 3AN-06-11929 CI, 2007 WL 4913136 (Alaska Super. Ct. May 17, 2007)....................20

*In re SEDCO, Inc.*,
543 F. Supp. 561 (S.D. Tex. 1982) ............................................................................19

*In re Tyco International Ltd.*,
340 F. Supp. 2d 94 (D.N.H. 2004) ..............................................................................13

*Infosonics Corp. Derivative Litigation*,
No. 06-1336, 2007 WL 257227 (C.D. Cal. Sept. 4, 2007) ...................................................19

*Johnston* v. *Multidata Systems International Corp.*,
523 F.3d 602 (5th Cir. 2008) .....................................................................................18

*Kamen* v. *Kemper Financial Services, Inc.*,
500 U.S. 90 (1991)....................................................................................................11

*Konamaneni* v. *Rolls Royce Industrial Power (India) Ltd.*,
[2002] 1 W.L.R. 1269 (Ch)...........................................................................................17

*Koster* v. *(American) Lumbermens Mutual Casualty Co.*,
330 U.S. 518 (1947)..................................................................................................16

*Laborers Local 17 Health and Benefit Fund* v. *Philip Morris, Inc.*,
26 F. Supp. 2d 593 (S.D.N.Y. 1998).............................................................................18

*Locals 302 & 612 of the Internationl Union of Operating Engineers* v. *Blanchard*,
No. 04 Civ. 5954, 2005 U.S. Dist. LEXIS 17679 (S.D.N.Y. Aug. 25, 2005) .........................10

*Messinger* v. *United Canso Oil & Gas Ltd.*,
486 F. Supp. 788 (D. Conn. 1980) ..............................................................................10

*Ruggiero* v. *FuturaGene, plc*,
948 A.2d 1124 (Del. Ch. 2008)....................................................................................20

-iii-

*Saqui* v. *Pride Centeral America, LLC*,
    595 F.3d 206 (5th Cir. 2010) ................................................17

*Seghers* v. *Thompson*,
    No. 06-CIV-308-RMB-KNF, 2006 WL 2807203 (S.D.N.Y. Sept. 27, 2006)........................12

*Syndicate 420 at Lloyd's London* v. *Early American Insurance Co.*,
    796 F.2d 821 (5th Cir. 1986) ................................................16

*Tomran, Inc.* v. *Passano*,
    862 A.2d 453 (Md. Ct. Spec. App. 2004) ................................................13

*Torch Liquidating Trust ex rel. Bridge Assocsiates LLC* v. *Stockstill*,
    561 F.3d 377 (5th Cir. 2009) ................................................4

*United States* v. *Burrell*,
    634 F.3d 284,293 (5th Cir. 2011) ................................................6

*Vaughn* v. *LJ International, Inc.*,
    94 Cal. Rptr. 3d 166 (Cal. Ct. App. 2009) ................................................4, 8, 9, 11

*Windert Watch Co.* v. *Remex Electronics, Ltd.*,
    468 F. Supp. 1242 (S.D.N.Y. 1979)................................................5

*Winn* v. *Schafer*,
    499 F. Supp. 2d 390 (S.D.N.Y. 2007)................................................12

*Wixon* v. *Wyndham Resort Development Co.*,
    No. 07-0236, 2008 WL 1777494 (N.D. Cal. Apr. 18, 2008)................................................19

STATUTES & RULES

Federal Rule of Civil Procedure 23.1 ................................................1, 11

United Kingdom Companies Act, 2006................................................*passim*

OTHER AUTHORITIES

Alan Steinfeld *et al.*, *Blackstone's Guide to the Companies Act 2006* (2007) ................................................6, 7

HOU:3122240.1

**INTRODUCTION**

Nearly half of plaintiffs' opposition to defendants' motion is devoted to rehashing the allegations of the Complaint. But no matter how many times plaintiffs restate their allegations, such repetition does not alter the inescapable conclusion that plaintiffs lack standing to sue derivatively on behalf of BP under governing English law. Plaintiffs acknowledge that English law governs this derivative action, but only when it suits their convenience. To avoid the demand requirement of Louisiana law and Federal Rule of Civil Procedure 23.1, plaintiffs emphasize that BP is an English company and that no demand requirement exists under English law. Yet plaintiffs seek to avoid *forum non conveniens* dismissal by claiming that BP is "as much American as English." (Opp'n at 28.) And plaintiffs attempt to avoid the requirement of pre-suit judicial permission that the English Parliament adopted as an alternative to the demand requirement by arguing that such a requirement applies only in England. When confronted with U.S. cases such as *Vaughn* and *Harper Woods* requiring dismissal of their action for lack of standing, plaintiffs' English law expert, Stuart Adair, simply asserts that those decisions were "wrongly decided." (Declaration of Stuart Adair, dated May 5, 2011 ("Adair Decl.") ¶¶ 42, 87.) Plaintiffs' opposition confirms that they have not satisfied the requirements of English law to sue derivatively on behalf of BP and that this case instead belongs before the English High Court. In the end, plaintiffs' opposition rebuts none of the grounds for dismissal set forth in defendants' motion.

1. Plaintiffs concede that this action—and their standing to sue derivatively on behalf of BP—is governed by English law because BP was incorporated there. Plaintiffs also concede that English law (namely, the Companies Act) requires shareholders to obtain permission from the English High Court to pursue derivative claims on behalf of an English company. And plaintiffs readily admit that they neither sought nor obtained permission from the English High Court to

assert these derivative claims on behalf of BP. Plaintiffs nonetheless ask this Court to absolve them from this requirement on two grounds, neither of which has merit.

First, plaintiffs argue that the judicial permission requirement of Section 261 of the Companies Act applies only to derivative actions filed in England, Wales or Northern Ireland and thus not to derivative actions brought on behalf of English companies anywhere else in the world, including the rest of the United Kingdom. Plaintiffs advance this argument even though their English law expert concedes that the Companies Act "abolished" common-law derivative claims on behalf of English companies under the rule of *Foss* v. *Harbottle*, (1843) 2 Hare 461 (Eng.). Plaintiffs' argument not only ignores the text of the Companies Act—which confirms that the judicial permission requirement applies throughout the United Kingdom—but also would lead to the illogical result that the common-law rule that Parliament abolished in enacting the Companies Act (or perhaps, in plaintiffs' view, no law at all) still governs standing to sue derivatively on behalf of English companies in actions filed outside the United Kingdom. In his declaration, plaintiffs' expert, Mr. Adair, suggests that the common-law rule of *Foss* v. *Harbottle* survived the Companies Act and thus still governs standing to sue in derivative actions brought outside the United Kingdom. Plaintiffs do not expressly advance this argument in their opposition, which is not surprising because the common-law rule of *Foss* v. *Harbottle* was even more restrictive than the Companies Act in permitting shareholders to sue derivatively on behalf of English companies. Applying the rule of *Foss* v. *Harbottle*, U.S. courts have routinely dismissed derivative claims for lack of standing, and the same result would be appropriate here.

Second, plaintiffs argue that the Companies Act's judicial permission requirement is wholly procedural and thus can be ignored by this Court. Although plaintiffs concede that the question of whether this requirement is substantive or procedural is governed by the law of the

-2-

forum, they largely ignore the numerous decisions of U.S. courts holding that nearly identical and analogous standing requirements in shareholder derivative actions are substantive. Plaintiffs and their expert instead rely primarily—and inaccurately—on foreign decisions from Hong Kong, Australia and England in arguing that the Companies Act's judicial permission requirement is procedural. Once again, plaintiffs attempt to have it both ways. They emphasize that Parliament adopted the judicial permission requirement as an alternative to the pre-suit demand requirement that applies throughout the U.S. Although the pre-suit demand requirement has been universally recognized as substantive because it governs shareholders' standing to sue derivatively, plaintiffs incorrectly argue that the Companies Act's alternative to that requirement, which serves the same substantive function, can be disregarded as procedural.

2. In opposing dismissal on *forum non conveniens* grounds, plaintiffs urge this Court to treat this derivative action brought *on behalf of BP* as if it were a tort action brought *against BP*. Plaintiffs ask this Court to focus on BP's presence in the United States and activities in the Gulf and on the alleged harm to Louisiana and its residents, ignoring the nature of their derivative claims. Plaintiffs seek to assert claims for alleged breaches of fiduciary duty under English law on behalf of an English company based on decisions made primarily by non-U.S. directors at the company's headquarters in London, where the company's documents and other relevant records are maintained. In sum, the "public" and "private" factors governing *forum non conveniens* analysis counsel strongly in favor of dismissal, as does international comity analysis. Dismissal is particularly warranted here given that the requirements of governing English law are already the subject of expert disagreement.

3. Plaintiffs' opposition confirms that they are unable to make even a *prima facie* showing of personal jurisdiction over any of the individual defendants. To plead personal

-3-

jurisdiction, plaintiffs concede that they must allege that each defendant had extensive and continuous contacts with Louisiana or that their breach of fiduciary duty claims arise out of each defendant's contacts with Louisiana. Yet plaintiffs offer only vaguely described contacts with the Gulf region generally (as opposed to Louisiana in particular), almost all of which occurred *after* the alleged breaches of fiduciary duty. Acknowledging their inability to plead the requisite contacts for each defendant, plaintiffs urge this Court to adopt the novel theory that personal jurisdiction exists because the director defendants' decisions allegedly resulted in BP's causing injury in Louisiana, an approach rejected by U.S. courts.

## ARGUMENT

### I.    PLAINTIFFS LACK STANDING TO PURSUE THESE DERIVATIVE CLAIMS ON BEHALF OF BP UNDER GOVERNING U.K. LAW.

#### A.    The Companies Act Required Plaintiffs to Seek Permission from the English High Court to Bring a Derivative Action on Behalf of BP.

"Under Louisiana law, the law of the place where the corporation was incorporated governs disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties." *Torch Liquidating Trust ex rel. Bridge Assocs. LLC* v. *Stockstill*, 561 F.3d 377, 385 n.7 (5th Cir. 2009). Plaintiffs concede that BP was incorporated under the laws of England and Wales, that English law therefore applies to this action, and that Section 261 of the Companies Act provides that a shareholder seeking to sue derivatively on behalf of an English corporation in England and Wales first must obtain permission to sue from the High Court. (Opp'n at 3, 17-18.) Because plaintiffs admit that they have not sought, let alone obtained, permission from the High Court to proceed with these derivative claims on behalf of BP, plaintiffs lack standing to sue derivatively under English law. *See Vaughn* v. *LJ Int'l, Inc.*, 94 Cal. Rptr. 3d 166, 171 (Cal. Ct. App. 2009) (applying analogous provision of British Virgin Islands Business Companies Act); *Bruhl* v. *Kingate Global Fund Ltd.*, No.

-4-

60152609 (slip op.) (N.Y. Sup. Ct. Jan. 25, 2010) (attached hereto as Exhibit A) ("[T]his Court finds that BVI law applies here and…requires a shareholder-prospective plaintiff to obtain approval of the BVI High Court which [plaintiff] failed to do.").

Plaintiffs attempt to avoid dismissal by arguing that Section 261's judicial permission requirement applies only to "actions commenced in the courts of England, Wales, or Northern Ireland." (Opp'n at 3, 18.) Plaintiffs assert that "[n]othing in the statute suggests that this requirement applies to derivative actions commenced in other parts of the U.K., much less those filed in any of the non-U.K. jurisdictions where BP has material business operations." (*Id.* (citing Adair Decl. ¶¶ 9-12).) Plaintiffs' argument is unsupportable.

As an initial matter, plaintiffs' assertion that the judicial permission requirement does not apply "to derivative actions commenced in other parts of the U.K." (Opp'n at 3, 18) is contradicted by the text of the statute. Part 11 of the Companies Act, entitled "Derivative Claims and Proceedings by Members," is divided into two chapters: Chapter 1, entitled "Derivative Claims in England and Wales or Northern Ireland," and Chapter 2, entitled "Derivative Proceedings in Scotland." These chapters govern the entirety of the United Kingdom. *See Windert Watch Co.* v. *Remex Elecs Ltd.*, 468 F. Supp. 1242, 1245 (S.D.N.Y. 1979) ("the United Kingdom consists only of England, Scotland, Wales and Northern Ireland"). And they contain virtually identical judicial permission requirements for shareholders seeking to sue derivatively on behalf of an English corporation. Martin Moore explains:

> Scottish companies are governed by the 2006 Act but Scotland has a different court system. Hence some of the terminology used in Chapter 1 would not be compatible with the Scottish system. Accordingly Scottish derivative claims are governed by Chapter 2. It is important to note, however, that the substance of the test applicable in Scotland, set out in paragraph 268, is identical to that applicable in England, Wales and Northern Ireland.

(Declaration of Martin Moore dated May 24, 2011 ("Suppl. Moore Decl.") ¶ 33.) As Mr. Adair

-5-

himself recognizes (Adair Decl. ¶ 55), in enacting the relevant provisions of the Companies Act, Parliament intended to "abolish" the prior common-law regime and create a new statutory law governing derivative proceedings throughout *all* of the United Kingdom.

Nor does a different body of law apply if a shareholder of an English company elects to file a derivative action outside the United Kingdom, as plaintiffs have done here. Plaintiffs' argument that the judicial permission requirement of the Companies Act "applies *only* to actions commenced in a U.K. court" (Opp'n at 18 (emphasis in original)) would lead to an absurd result completely at odds with Parliament's intent to abolish the common-law rule of *Foss* v. *Harbottle*. Prior to the enactment of the Companies Act, a shareholder's standing to sue derivatively on behalf of an English company was governed by the rule of *Foss* v. *Harbottle*. As Mr. Adair recognizes in discussing the Companies Act in his textbook, the relevant provisions of the Companies Act gave effect to the Law Commission's recommendation that a new statutory derivative action be introduced "by *abolishing the common law derivative action* and replacing it with a statutory claim." Alan Steinfeld *et al.*, *Blackstone's Guide to the Companies Act 2006* 103 (2007) (emphasis added). Thus, the logical extension of plaintiffs' argument is that either the abolished rule of *Foss* v. *Harbottle* continues to apply to derivative actions commenced outside the United Kingdom or that no law at all governs standing to sue derivatively on behalf of an English corporation if suit is brought abroad. Plaintiffs cite no support for their interpretation of English law, which could encourage shareholders of English corporations to avoid the judicial permission requirement of the Companies Act by bringing derivative actions in foreign jurisdictions. *See United States* v. *Burrell*, 634 F.3d 284,293 (5th Cir. 2011) (courts must "interpret statutes in a manner that will not lead to absurd results").

The illogic of plaintiffs' argument is underscored by Mr. Adair's assertion—not

-6-

expressly endorsed in plaintiffs' opposition—that the rule of *Foss* v. *Harbottle* still governs derivative actions brought on behalf of English corporations outside the United Kingdom. (Adair Decl. ¶¶ 49-55.) In other words, notwithstanding Parliament's goal of replacing the restrictive rule of *Foss* v. *Harbottle* with a new statutory regime,[1] Mr. Adair takes the position that Parliament intended to limit that regime to shareholder derivative actions filed in U.K. courts, while maintaining the rule of *Foss* v. *Harbottle* for shareholder derivative actions brought on behalf of English companies outside the United Kingdom. It is particularly surprising that plaintiffs would advance that argument because, as explained below, the common-law rule of *Foss* v. *Harbottle* historically barred all derivative claims by shareholders of English companies, except in the narrowest of circumstances not present here. This may explain why plaintiffs do not mention their expert's interpretation of English law in their opposition.

## B. The Companies Act's Judicial Permission Requirement Concerns Standing to Sue and Thus Is Substantive, Not Procedural.

Plaintiffs argue that the Companies Act's requirement that a shareholder obtain permission from the High Court before bringing a derivative action on behalf of an English corporation may be disregarded as merely a matter of English procedure. (Opp'n at 19-20.) Far from a mere procedural rule, "the application for permission to continue a derivative claim is the centrepiece of the English regime for dealing with derivative claims under the Companies Act." (Defs.' Mem. in Supp. of Their Mot. to Dismiss at 11 (quoting Moore Decl. ¶ 25).)

As plaintiffs acknowledge, "the law of the forum jurisdiction determines whether an issue in the action is substantive or procedural in nature." (Opp'n at 19 (internal quotation omitted).) As a result, plaintiffs' assertion that "U.K. Courts treat the Section 261 permission process as

---

[1] As Mr. Adair's textbook observes: "The new regime for derivative actions replaces the relative certainty of the rule in *Foss v. Harbottle* and its limited exceptions with an approach which depends to a far greater extent on judicial discretion in the circumstances of individual cases." Steinfeld at xi.

HOU:3122240.1

procedural, not substantive" (*id*. at 19-20; *see also* Adair Decl. ¶¶ 13-42) is beside the point.[2]

Moreover, plaintiffs ignore numerous decisions by U.S. courts that have considered nearly

identical or analogous standing requirements under foreign law and that have held that such

requirements are substantive in nature and thus apply under the internal affairs doctrine.

In *Vaughn*, the court analyzed a nearly identical provision of the British Virgin Islands

("BVI") Business Companies Act, which, like the U.K. Companies Act, "requires approval from

the high court of that jurisdiction before a shareholder may sue derivatively." 94 Cal. Rptr. 3d at

168. The *Vaughn* court devoted an entire section of its opinion to the question of "Procedure

Versus Substance," *id*. at 171-73, and concluded that the judicial permission requirement of the

BVI Act was clearly substantive because it related to standing to sue:

> [S]ection 184C by its own terms limits entitlement to sue to those shareholders
> who have complied with its provisions. Although those provisions do establish
> what may be called a procedure for compliance, *the resulting decision as to*
> *presence or absence of standing to bring an action is most appropriately*
> *characterized as resolving a substantive right*. We are not persuaded that
> standing to sue is a matter of mere court administration or "mode of proceeding"
> as argued by appellant.

*Id*. at 171 (emphasis added). In so ruling, the court rejected plaintiff's attempt to analogize the

BVI Act's judicial permission requirement to purely procedural pre-suit requirements, such as

the posting of security and procedures "designed to eliminate groundless accusations of various

types at the prefiling stage." *Id*. at 172. As the court explained, unlike those requirements, the

judicial permission requirement is a "determin[ation] [of] standing in a fundamental sense," and

thus is clearly substantive. *Id*. The court stated:

> More persuasive, in our view, are cases involving analogous statutory conditions
> precedent to a shareholder suit . . . and cases classifying as substantive a
> requirement that shareholders make a demand on the board of directors before

---

[2] As Martin Moore explains, both plaintiffs and Mr. Adair misstate the holdings of those foreign
decisions. (Suppl. Moore Decl. ¶¶ 11-31.)

bringing a derivative action.

*Id*. at 173.[3]  In response to the clear holding of *Vaughn*, plaintiffs' expert, Mr. Adair, simply states:  "I am of the opinion that *Vaughn* was wrongly decided by the California court and should not be relied on."  (Adair Decl. ¶ 42.)[4]

Confronted with the same issue in a derivative action brought on behalf of a Venezuelan corporation, the Second Circuit in *Hausman* v. *Buckley*, 299 F.2d 696, 701 (2d Cir. 1962), described the question as follows:  "whether [the] right to bring th[e] action involves no more than compliance with procedural requirements extraneous to the substance of the[] claim, or whether it concerns the very nature and quality of the[] substantive right, powers and privileges [of] stockholders of a [foreign] corporation."  The court concluded that a Venezuelan rule requiring shareholder approval of all derivative claims "reflects a deliberate policy" that derivative claims may be brought only when "the corporate welfare is best promoted by suing upon them."  *Id.*  The Second Circuit thus held that "the condition imposed by Venezuelan law on the right to enforce corporate claims goes to the substance of that right, and cannot be treated as dealing with the mere procedure by which the claims are enforced."  *Id.*  The court stated:  "The issue is not just 'who' may maintain an action or 'how' it will be brought, but 'if' it will be brought."  *Id.*  That ruling applies with equal force to the relevant provisions of the Companies Act requiring pre-suit permission from the High Court.

---

[3] Considering the same judicial permission requirement of the BVI Act, a New York court similarly dismissed the derivative claim for failure to obtain permission to sue from the BVI High Court. *Bruhl*, No. 60152609 (slip op.) (Exhibit A) at 9.

[4] Plaintiffs attempt to distinguish *Vaughn* based on supposed variations in the language of the relevant provisions of the BVI and U.K. Acts.  (Opp'n at 20.)  These slight differences in statutory language have no bearing on whether the judicial permission requirement is substantive or procedural. The U.K. Companies Act talks in terms of permission to "continue" a derivative action because it is assumed that a shareholder will seek such authorization from the High Court by filing a proposed derivative action there and requesting permission to continue it.

In their opposition, plaintiffs cite a single case, *Messinger* v. *United Canso Oil & Gas Ltd.*, 486 F. Supp. 788 (D. Conn. 1980), that supposedly "refute[s]" the ruling in *Vaughn*. (Opp'n at 20.) In *Messinger*, the court considered a provision of the Canada Business Corporations Act ("CBCA") requiring shareholders to seek leave of specified Canadian courts before commencing a derivative action. *Id.* at 797. With no analysis, the *Messinger* court asserted that "[a]lthough the term 'court,' as defined in section 2 of the Act, includes only Canadian courts, the particular device by which plaintiffs obtain leave to file suit is surely a procedural mechanism that this court is not obligated to employ." *Id.* That decision has been criticized for ignoring the Second Circuit's *Hausman* decision and the internal affairs doctrine.

In reviewing equivalent provisions of the CBCA 25 years later in another shareholder derivative action, the court in *Locals 302 & 612 of the Int'l Union of Operating Eng'rs* v. *Blanchard*, No. 04 Civ. 5954, 2005 U.S. Dist. LEXIS 17679 (S.D.N.Y. Aug. 25, 2005), rejected the *Messinger* court's ruling. The *Blanchard* court observed that "the *Messinger* court did not address any conflict of law principles and failed even to mention *Hausman*." *Id.* at *17 n.7. The court explained: "As stated in *Hausman*, 'the issue is not just 'who' may maintain an action, or 'how' it will be brought, but 'if' it will be brought.' No determination could be more substantive." *Id.* at *23 (quoting *Hausman*, 299 F.2d at 701). Applying *Hausman* and the internal affairs doctrine, the *Blanchard* court held that "there is no doubt that Canadian law applies to Plaintiffs' claims and that Section 239 of the CBCA requires Plaintiffs to seek leave of a Canadian court specifically enumerated in Section 2 of the CBCA." *Id.* at *14. The court thus concluded that it could not "properly exercise jurisdiction over Plaintiffs' derivative action." *Id.*

Parliament adopted the relevant provisions of the Companies Act as an alternative to the pre-suit demand requirement that generally applies in the U.S., assigning to the High Court,

-10-

rather than the corporation's board of directors, the responsibility of determining whether litigation should proceed on behalf of the company. As plaintiffs argue, "[i]n crafting the Act, Parliament could have mimicked the director demand requirements of many U.S. states, which Rule 23.1 respects. Instead, the Companies Act takes the power of review of a derivative suit entirely out of management's and the board's hands and places it wholly within the hands of a judge." (Opp'n at 17.) But plaintiffs cannot have it both ways. If the Companies Act's judicial permission requirement serves the same function as the demand requirement in determining whether shareholders can litigate corporate claims, then the Companies Act's requirement is manifestly substantive, and not procedural. Both requirements impose a check on shareholders' ability to sue on behalf of a corporation, thus preserving the primacy of the board of directors in making decisions regarding corporate claims. *See Vaughn*, 94 Cal. Rptr. 3d at 173 (analogizing judicial permission requirement to pre-suit demand requirement); *Franbar Holdings Ltd.* v. *Patel*, [2008] EWHC 1534 (Ch), 2008 WL 2596083, at ¶ 26 ("As with any derivative claim, the effect of permission being granted is to override the rights of [the company's] directors to determine whether or not litigation should be commenced to enforce its rights."). "No determination could be more substantive." *Blanchard*, 2005 U.S. Dist. LEXIS 17679, at *23.

Consistent with this principle, the pre-suit demand requirement is universally considered to be substantive, not procedural, in nature. In *Kamen* v. *Kemper Financial Services, Inc.*, 500 U.S. 90, 96-97 (1991), the Supreme Court held that "the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.'" Similarly, the Delaware Supreme Court has observed that the demand requirement "is a rule of substantive right designed to give a corporation the opportunity to rectify an alleged wrong without litigation, and to control

-11-

any litigation which does arise." *Aronson* v. *Lewis*, 473 A.2d 805, 809 (Del. 1984); *see also*

*Hoffman* v. *Kramer*, 362 F.3d 308, 317 n.4 (5th Cir. 2004) ("demand requirement recognizes

directors' discretion in managing corporate affairs, prevents undue interference with that

management, and deters strike suits") (citing *Aronson*, 473 A.2d at 811-12).

C.    **Even If Judged Under the Abolished Common-Law Rule of *Foss* v. *Harbottle*, Plaintiffs Clearly Lack Standing to Bring a Derivative Suit.**

Although plaintiffs do not advance the argument in their opposition, their expert,

Mr. Adair, argues that "the common law derivative action" survived passage of the Companies

Act outside the United Kingdom. (Adair Decl. ¶ 55 ("[C]onsidering the plain wording of the

statute, the more precise way to describe the effect of the 2006 Act on the common law

derivative action is that section 260 has imposed a bar on such an action being commenced in the

courts of England and Wales or Northern Ireland.").) This argument is not only incorrect, but

also of no assistance to plaintiffs. As Mr. Moore explains in his Supplemental Declaration, the

common-law rule of *Foss* v. *Harbottle* generally *prohibited* shareholders from asserting

derivative claims on behalf of an English corporation. (Suppl. Moore Decl. ¶¶ 5, 44.) English

common law instead recognized that "[t]he proper plaintiff in an action in respect of a wrong

alleged to be done to a corporation is, prima facie, the corporation" and that a shareholder

generally is not permitted to bring a derivative action. (*Id.* ¶ 45 (quotation omitted).) U.S. courts

thus have routinely dismissed derivative actions for lack of standing brought under *Foss* v.

*Harbottle*. *See City of Harper Woods Employees' Ret. Sys.* v. *Olver*, 589 F.3d 1292, 1299-1304

(D.C. Cir. 2009); *In re BP Deriv. Litig.*, 507 F. Supp. 2d 302, 311 (S.D.N.Y. 2007); *Winn* v.

*Schafer*, 499 F. Supp. 2d 390, 396-99 (S.D.N.Y. 2007); *Feiner Family Trust* v. *VBI Corp.*, No.

07 Civ. 1914 (RPP), 2007 WL 2615448, at *4-6 (S.D.N.Y. Sept. 11, 2007); *Seghers* v.

*Thompson*, No. 06-CIV-308-RMB-KNF, 2006 WL 2807203, at *4 (S.D.N.Y. Sept. 27, 2006); *In*

*re Tyco Int'l Ltd.*, 340 F. Supp. 2d 94, 103 (D.N.H. 2004); *see also CMIA Partners Equity Ltd.* v. *O'Neill*, 920 N.Y.S.2d 240 (N.Y. Sup. Ct. 2010); *Tomran, Inc.* v. *Passano*, 862 A.2d 453, 469-70 (Md. Ct. Spec. App. 2004), *aff'd*, 891 A.2d 336 (Md. 2006).

Under *Foss* v. *Harbottle*, a shareholder could not bring a derivative action for "wrongs" to the company that were capable of ratification by a majority of shareholders unless one of several narrow exceptions applied. (Suppl. Moore Decl. ¶¶ 45-46.) It was not necessary that ratification in fact occurred, provided that the breaches of duty were capable of ratification. (*Id.*) "There [were] three narrow exceptions to the *Foss v. Harbottle* rule." *In re BP Deriv. Litig.*, 507 F. Supp. 2d at 311. A shareholder could bring a derivative action under English common law only if (i) the alleged wrong was *ultra vires*, (ii) the validity of the transaction was dependent upon approval by a majority of shareholders greater than a simple majority, or (iii) the alleged wrong amounted to fraud and the wrongdoers themselves were in control of the company, and thus could procure ratification. *Id.* Mr. Adair appears to argue that plaintiffs' derivative claims fall into the *ultra vires* acts exception to the *Foss* v. *Harbottle* rule. (Adair Decl. ¶¶ 62-64.) He also argues that there was a fourth exception to this common-law bar, which he calls the "illegal acts" exception, that would allow the instant derivative action to proceed. (*Id.* ¶¶ 65-70.) Mr. Adair is wrong on both points.

First, the *ultra vires* exception applied only to transactions that were either "beyond the capacity of the company as established by its memorandum of association" or "prohibited by the statute to which the company owe[s] its existence." (Suppl. Moore Decl. ¶ 53.) As Mr. Moore explains, "[t]he fact that an act or omission . . . involves an infringement of the general law does not make that act or omission *ultra vires* in the relevant sense." (*Id.* ¶ 55.) Plaintiffs have not alleged any transactions that could be considered *ultra vires* for purposes of this exception to

-13-

*Foss* v. *Harbottle*, and Mr. Adair points to no allegation in the Complaint that establishes an *ultra vires* act. The gravamen of the Complaint is that the director defendants breached their fiduciary duties to BP by failing to "provide effective oversight of the company's safety culture and major accident prevention program." (Compl. ¶ 134.) If anything, plaintiffs' opposition underscores that their claims are based on alleged lack of oversight by BP's directors: "If ever a shareholder derivative suit based on a board's *disregard for their corporate monitoring responsibility* warrants a trial, this is it." (Opp'n at 2 (emphasis added).) An alleged breach of a duty of oversight is not an *ultra vires* act under English law. (*See* Suppl. Moore Decl. ¶¶ 53-60.)

Second, there was no separate "illegality" exception to the rule of *Foss* v. *Harbottle*. (*See id.* ¶¶ 61-75.) As Mr. Moore explains, "[t]he general English law rule that illegal acts are ratifiable unless *ultra vires* preserves the principle that the shareholders, as owners of the company, are entitled to decide upon their best interests, and thus may, if a majority desires, release any claim that the company may have." (*Id.* ¶ 74.) But even if such an exception existed, Mr. Adair again points to no allegations in the Complaint demonstrating an illegal act by any defendant. The closest Mr. Adair comes is to assert that plaintiffs allege that defendants "breached health and safety and environmental legislation at a time when BP was on probation for earlier violations of US law." (Adair Decl. ¶ 76.) Yet a review of plaintiffs' allegations reveals that the only conduct by defendants alleged in the Complaint is essentially cost-cutting and neglect of oversight responsibility, which plaintiffs claim led to the alleged regulatory breaches by BP. Mr. Adair does not attempt to explain how such decision making by BP's directors was "'so tainted with crime and so subversive of public policy'" as to trigger the purported "illegal acts" exception. (Adair Decl. ¶ 66 (quoting *Cockburn* v. *Newbridge Sanitary Steam Laundry Co. Ltd.*, [1951] 1 IR 237, 254).)

-14-

The D.C. Circuit's decision in *Harper Woods* is instructive. In that case, the court upheld the dismissal of a derivative action brought on behalf of an English company for lack of standing, holding that the district court properly concluded that plaintiff's claims did not fall within an exception to the rule of *Foss* v. *Harbottle*. 589 F.3d at 1299-1304. In so ruling, the court rejected plaintiff's argument that allegations that the company paid illegal bribes as a result of directors' "failure of supervision and oversight" came within an exception to the common-law rule. *Id.* at 1300. The court observed that "the wrongs allegedly done to the company that gave rise to the derivative suit were breaches of fiduciary duty, not breaches of regulatory, civil, or criminal law." *Id.* But even assuming that the illegal bribes could be ascribed to the directors, the court stated that plaintiff was unable to demonstrate that English law would not permit ratification of such illegal acts, and that therefore plaintiff lacked standing to sue under *Foss* v. *Harbottle. Id.* at 1302. The court also specifically held that "[t]he *ultra vires* exception does not apply because [plaintiff] does not allege *ultra vires* conduct." *Id*. at 1303. The court explained:

> In English law, an *ultra vires* act is an act "beyond the corporate capacity of a company." Whether conduct is *ultra vires* thus depends upon whether a company is capable of performing the act, as set forth in the company's memorandum of association. [Plaintiff] did not allege that [the corporation] lacked the corporate capacity to make payments to Bandar.

*Id*. (citations omitted) (emphasis added). Once again, Mr. Adair's only response to the D.C. Circuit's decision is that it "was wrongly decided by the court." (Adair Decl. ¶ 87.)

## II. THE ENGLISH HIGH COURT IS A MORE APPROPRIATE FORUM FOR THIS DERIVATIVE LITIGATION.

This is a derivative action brought *on BP's behalf* against members of its Board and other executives for alleged breaches of fiduciary duty owed to the company under English law. Plaintiffs' opposition, however, reads as if this were an action *against BP* for harm caused to the citizens of Louisiana. For example, plaintiffs argue that "[t]he *Horizon* disaster has no effects in

-15-

the U.K. but ravages U.S. lives and livelihoods, environment and commerce." (Opp'n at 23.) Plaintiffs' attempt to "Americanize" BP by directing the Court to facts that have nothing to do with any of the public or private factors articulated by the Supreme Court (*see id*.) is irrelevant to whether this action should be dismissed on *forum non conveniens* grounds.

Even when addressing the relevant public and private factors, plaintiffs miss the point. For instance, in discussing ease of access to proof, plaintiffs argue that the alleged lack of "process safety in BP's Gulf of Mexico operations, including the Macondo well, unquestionably generated an extensive record located, in critical part, in the Gulf Coast states and BP's American headquarters in Houston, Texas." (*Id*. at 26.) Even if true, the size of that "process safety" record is irrelevant. The relevant evidence in a derivative action is what information was actually provided to, and what actions were undertaken in response by, the officer and director defendants. *See Koster* v. *(American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 526 (1947) ("in the derivative action it is more likely that only the corporation's books, records and transactions will be important"). It is undisputed that BP's corporate books and records are maintained in London, at BP's headquarters.

Plaintiffs gloss over the fact that a significant majority of the individual defendants are foreign nationals living in the U.K. or elsewhere in Europe, as are likely key non-director witnesses at BP's headquarters in London, some of whom may no longer be employed by the company. (*See* Opp'n at 26-27.) As the Fifth Circuit stated in another case, "[m]ost of th[e] witnesses are British, many may prove unwilling to travel to Louisiana to testify, and an American federal court is without power to compel them to do so. In any event, the cost of obtaining the attendance of even those witnesses who are willing to come to Louisiana to offer their evidence would certainly be considerable, and could prove prohibitive." *Syndicate 420 at*

-16-

*Lloyd's London* v. *Early Am. Ins. Co.*, 796 F.2d 821, 831 (5th Cir. 1986) ("[T]he private interest factors militate strongly in favor of dismissal.").

Most significantly, plaintiffs invite this Court to ignore the already significant disagreements that have emerged and that likely will continue concerning the elements of governing English law. The Supreme Court has recognized that "having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself," is an important *forum non conveniens* consideration. *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 509 (1947); *accord Saqui* v. *Pride Cent. Am., LLC*, 595 F.3d 206, 214 (5th Cir. 2010) (confirming importance of avoiding "unnecessary problems in conflict of law, or in the application of foreign law," in determining proper forum for litigation). That this action will require the application of U.K. law counsels heavily in favor of dismissal, a fact underscored by the parties' submission of competing expert declarations on English law in connection with this motion. *See In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1339 (S.D. Fla. 2010) (dismissing case on *forum non conveniens* grounds where "substantial disagreements between the parties' respective experts" provided "a preview of even thornier problems to come if the Court must apply foreign law in trying the merits of this case").[5]

---

[5] Plaintiffs argue that this action should not be dismissed on international comity grounds because "even an English court would not dismiss a derivative action involving a foreign corporation for these reasons." (Opp'n at 29 n.25 (citing Adair Decl. ¶ 90).) This is incorrect. In *Konamaneni* v. *Rolls Royce Industrial Power (India) Ltd.*, [2002] 1 W.L.R. 1269 (Ch)—a case cited by plaintiffs' own expert (Adair Decl. ¶ 29)—the court addressed whether England was the most appropriate forum for a shareholder derivative action brought on behalf of an Indian company against English defendants based on conduct in the United Kingdom. The court determined that the action should proceed in an Indian court and thus dismissed the case on *forum non conveniens* grounds, explaining that "the courts of the place of incorporation will almost invariably be the most appropriate forum for the resolution of the issues which relate to the existence of the right of shareholders to sue on behalf of the company." *Id.* at 1290 ¶ 128.

HOU:3122240.1

## III.   PLAINTIFFS HAVE NOT ALLEGED A *PRIMA FACIE* CASE OF PERSONAL JURISDICTION OVER ANY OF THE INDIVIDUAL DEFENDANTS.

Plaintiffs essentially concede that the Complaint does not plead a *prima facie* case of personal jurisdiction by only now purporting to detail for the first time "the extensive ties of the Defendants to the Gulf of Mexico." (Opp'n at 4.)[6]  To plead personal jurisdiction, however, the Complaint must allege that *each* defendant has sufficient contacts with Louisiana, not the "Gulf of Mexico," to justify the exercise of personal jurisdiction.  In fact, plaintiffs admit that "the relevant inquiry here is . . . whether Defendants have 'minimum contacts' with Louisiana."  (*Id.* at 30.)  In arguing that "Defendants have a long history of continuous and systematic contacts with the United States in general and the Gulf region in particular" (*id.*), plaintiffs acknowledge that they cannot establish that each defendant has the requisite Louisiana contacts.  Indeed, for all but three of the defendants, plaintiffs are unable to point to a single contact with Louisiana. (*See id.* at 30-31.)

For the three defendants who supposedly had some contact with Louisiana (Dudley, Inglis and McKay), plaintiffs contend only that they gave "recent speeches in Louisiana."  (*Id.* at 31.)  Far from the "substantial, continuous, and systematic" contacts with Louisiana necessary to establish general jurisdiction, *Johnston* v. *Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008), these speeches "are the type of random or attenuated contacts that" fall well short of what is required.  *Eakin* v. *Hunt*, No. 93-1523, 1993 U.S. Dist. LEXIS 17845, at *11 (E.D. La. Dec. 10, 1993).  And plaintiffs do not even try to argue that their derivative claims against these

---

[6] Having ignored their obligation to plead a *prima facie* case for jurisdiction, plaintiffs may not now attempt to roll back the clock and do so—for the first time—in their opposition and its supporting materials.  *See Laborers Local 17 Health and Ben. Fund* v. *Philip Morris, Inc.*, 26 F. Supp. 2d 593, 604 (S.D.N.Y. 1998) ("On considering a motion to dismiss for lack of personal jurisdiction, a court may consider extrinsic evidence submitted by the parties. . . . Extrinsic materials, however, cannot be used to amend pleadings that are themselves insufficient.").

defendants arise out of their "recent speeches" in Louisiana. Plaintiffs thus effectively concede that these supposed contacts also are insufficient to establish specific jurisdiction over the three defendants. *See Dalton* v. *R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990).

Finally, plaintiffs argue that personal jurisdiction over the individual defendants exists because their decisions as directors allegedly resulted in BP's causing injury in Louisiana. (Opp'n at 32.) As support, plaintiffs cite *Alford Safety Serv., Inc.* v. *Hot-Hed, Inc.*, 2010 WL 3418233, at *4-*6 (E.D. La. Aug. 24, 2010), for the proposition that "acts or omissions outside the state that cause injury within the state can constitute the minimum contacts necessary to subject even a nonresident defendant to specific jurisdiction." (Opp'n at 32.) *Alford Safety*, however, involved the exercise of personal jurisdiction over a *corporation* based on its employees' acts outside the forum.[7] *Alford Safety*, 2010 WL 341 8233 at *5. *Alford Safety* does not hold that the directors of a company can be subject to personal jurisdiction in a forum with which they have no contacts based on the allegation that their decision-making resulted in corporate actions that caused injury in that forum.[8] As the Delaware Court of Chancery explained, "a corporate director or officer of a foreign corporation cannot be haled into a Delaware court for an act of the corporation simply because the officer or director has directed

---

[7] Similarly, plaintiffs' reliance on *In re SEDCO, Inc.*, 543 F. Supp. 561, 564-69 (S.D. Tex. 1982), is misplaced. As plaintiffs concede (Opp'n at 33 n.40), "the court sustained personal jurisdiction over a drilling company whose activities in the Gulf caused an oil spill," not over any of its directors.

[8] Plaintiffs rely on *Wixon* v. *Wyndham Resort Dev. Co.*, No. 07-0236, 2008 WL 1777494, at *5-*6 (N.D. Cal. Apr. 18, 2008), and *Infosonics Corp. Derivative Litig.*, No. 06-1336, 2007 WL 2572276, at *4-*5 (S.D. Cal. Sept. 4, 2007), for the proposition that "courts do not hesitate to find jurisdiction over non-resident directors when they were directly involved in actions giving rise to a shareholder derivative action." (Opp'n at 32 n.37.) In those cases, however, the California courts concluded they could assert personal jurisdiction over the non-resident director defendants because they were directors of *California* corporations and were the subject of derivative claims alleging that they had caused direct harm to those corporations in California. The decision in *Bilyeu* v. *Johanson Berenson LLP*, No. 08-2006, 2010 WL 3896415, at *4 (W.D. La. Sept. 30, 2010), is similarly inapposite. The two individual defendants in that tort case were both owners, not directors, of a limited partnership alleged to have *directly and personally* participated in defrauding plaintiffs in the forum.

-19-

the corporation to take that act." *Ruggiero* v. *FuturaGene, plc*, 948 A.2d 1124, 1134 (Del. Ch. 2008).[9]  To hold otherwise would subject the directors and officers of multinational companies to jurisdiction in any forum in which the company operates.[10]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated:  May 25, 2011
        Houston, Texas

Respectfully submitted,

 *s/ Thomas W. Taylor*
Thomas W. Taylor
State Bar No. 19723875
S.D. No. 3906
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, TX  77002
Telephone:  (713) 220-4200

*Attorney-in-charge for Nominal Defendant*
*BP p.l.c. and Defendants Iain C. Conn, Robert*
*W. Dudley, Byron E. Grote, Anthony B.*
*Hayward, Andy G. Inglis, Antony Burgmans,*
*Cynthia B. Carroll, William M. Castell,*
*George David, Erroll B. Davis, Jr., Douglas J.*
*Flint, DeAnne S. Julius, Ian M.G. Prosser,*
*Peter Sutherland, Carl-Henric Svanberg,*
*H. Lamar McKay, and Robert A. Malone*

---

[9] Plaintiffs' reliance on the *vacated* opinion in *In re BP p.l.c. Deriv. Litig.*, No. 3AN-06-11929 CI, 2007 WL 4913136 (Alaska Super. Ct. May 17, 2007), only confirms the complete lack of support for plaintiffs' theory of personal jurisdiction over directors.  While that court concededly held that personal jurisdiction could be exercised over BP directors because the "alleged breach of their duties had an impact on BP's operations in Alaska," the court failed to cite a single case or other authority in support of that novel theory.  (Slip Op. at 15.)  The Alaska Supreme Court took the unusual step of granting interlocutory review of the court's denial of BP's motion to dismiss.  The parties ultimately reached a settlement in the Alaska action before the appeal was argued, leading to the vacatur of the trial court's opinion.

[10] Plaintiffs' request for jurisdictional discovery (Opp'n at 34) should be denied.  Such discovery "is inappropriate when the plaintiff fails to present a prima facie case of personal jurisdiction." *Bonvillain* v. *La. Land & Exploration Co.*, 702 F. Supp. 2d 667, 686 (E.D. La. 2010).  "Courts will not allow a plaintiff who fails to establish prima facie personal jurisdiction to conduct a fishing expedition in order to make a case." *Id.*  Plaintiffs here likewise should not be permitted to conduct a fishing expedition.

HOU:3122240.1

OF COUNSEL:

Daryl A. Libow (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC  20006
Telephone:  (202) 956-7500

Richard C. Pepperman, II (*pro hac vice*)
Marc De Leeuw (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Telephone:  (212) 558-4000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Response has been served by electronic CM/ECF filing, on this 25th day of May, 2011.

*s/Thomas W. Taylor*
Thomas W. Taylor

HOU:3122240.1