IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE BP SHAREHOLDER DERIVATIVE LITIGATION | ) ) ) ) ) ) | MDL NO. 2185<br><br>Case No. 4:10-cv-03447 |
| In Re: BP P.L.C. SECURITIES LITIGATION | ) ) ) ) ) ) ) | Civil Action No. 4:10-md-2185<br><br>HON. KEITH P. ELLISON |

**DEFENDANTS' OPPOSITION TO DERIVATIVE PLAINTIFFS'
MOTION FOR LEAVE TO BRIEF ISSUES AND FOR DISCOVERY**

Nominal defendant BP p.l.c. ("BP") and all of the individual defendants (collectively, "Defendants") respectfully submit this brief in opposition to the derivative plaintiffs' motion for leave to brief issues and for discovery (Doc. 120).

**INTRODUCTION**

More than two months after Defendants' motion to dismiss was fully briefed and six weeks after the Court heard nearly three hours of argument, Plaintiffs now ask the Court to allow supplemental briefing and personal jurisdictional discovery purportedly to fill a "gap in the briefing" (Mot. for Leave at 3) and to clarify supposed confusion where none exists. It is, of course, for the Court to decide if further briefing would be beneficial to its resolution of Defendants' motion to dismiss, but Defendants believe that the 1,600 pages of briefing and supporting foreign-law materials that have been submitted to the Court more than fully address the issues on that motion. In any event, no additional briefing or discovery at this late stage will

cure Plaintiffs' lack of standing to bring this derivative action or their failure to plead a prima facie case of personal jurisdiction over the nonresident defendants. The Court should deny Plaintiffs' request.

*First*, Plaintiffs' contention that counsel for BP raised a new standing argument at the June 17 hearing is just plain wrong. Plaintiffs assert that Defendants' counsel at the June 17 hearing "suggest[ed] for the first time that *this* Court could weigh the factors in Section 263" of the U.K. Companies Act 2006 ("Companies Act"). (Mot. for Leave at 4 (emphasis in original).) To the contrary, Defendants and their U.K. law expert, Martin Moore, have been consistent throughout that "the court" authorized to apply the Section 263 factors and to grant permission to continue a derivative action is defined in Section 1156(1)(a) of the Companies Act to be the *English High Court*.

*Second*, Plaintiffs' failure to brief the issue of whether Plaintiffs "meet the common law requirements under *Foss v. Harbottle* for bringing this Action" (*id.* at 4) is no justification for additional briefing now. Contrary to Plaintiffs' contention, the issue of standing under *Foss* v. *Harbottle* was not "first raised in reply" by Defendants. Rather, it was Plaintiffs' U.K. law expert, Stuart Adair, who first raised *Foss* v. *Harbottle* in his declaration in opposition to Defendants' motion to dismiss. Mr. Adair opined that the abolished common-law rule of *Foss* v. *Harbottle* still applies to derivative actions brought outside the U.K. notwithstanding the passage of the Companies Act and that Plaintiffs have standing to proceed with their derivative claims under that common-law rule. Plaintiffs nevertheless made the strategic decision not to mention *Foss* v. *Harbottle* in their brief in opposition to Defendants' motion. Defendants and Mr. Moore have consistently maintained throughout that the restrictive common-law rule of *Foss* v. *Harbottle*, which prohibited derivative actions except in the most limited circumstances not

present here, was abolished by the Companies Act—an opinion shared by Plaintiffs' expert in his writings prior to submitting his declaration here.  In response to Mr. Adair's declaration, Defendants also pointed out in their reply that the rule of *Foss* v. *Harbottle*, if it applied, also would mandate dismissal of Plaintiffs' claims.  Further briefing on this issue is unnecessary.

*Finally*, Plaintiffs' request now to conduct jurisdictional discovery is inconsistent with their suggestion to the Court at oral argument that "we do not believe we need it."  (Hearing Tr. at 98:2.)  There also is no need for the Court to address the issue of personal jurisdiction if it concludes that Plaintiffs lack standing.  *See City of Harper Woods Emps.' Ret. Sys.* v. *Olver*, 577 F. Supp. 2d 124, 137 (D.D.C. 2008) ("Because the Complaint will be dismissed for lack of standing, the Court does not reach the merits of Defendants' arguments on *forum non conveniens* and personal jurisdiction."), *aff'd*, 589 F.3d 1282 (D.C. Cir. 2009).  Moreover, Plaintiffs' request for jurisdictional discovery was previously briefed and is without merit.  After Plaintiffs requested jurisdictional discovery in their opposition to Defendants' motion to dismiss, Defendants in their reply explained that Plaintiffs' failure to allege a prima facie case of personal jurisdiction over the individual defendants precludes their attempt "to conduct a fishing expedition in order to make a case."  *Bonvillain* v. *La. Land & Exploration Co.*, 702 F. Supp. 2d 667, 686 (E.D. La. 2010).

## ARGUMENT

### I. DEFENDANTS RAISED NO "NEW" STANDING ARGUMENTS ON REPLY OR AT ORAL ARGUMENT THAT REQUIRE ADDITIONAL BRIEFING.

Plaintiffs request leave to file additional briefing on two broad standing issues already fully submitted to the Court in connection with Defendants' motion to dismiss:  (i) whether this Court can usurp the role of the English High Court under the Companies Act in determining whether Plaintiffs may maintain this derivative action on behalf of BP, and (ii) whether the

common-law rule of *Foss* v. *Harbottle*, if applicable, permits Plaintiffs to proceed with their derivative claims. Plaintiffs contend that these issues "have not been adequately briefed" (Mot. for Leave at 6) because Defendants supposedly raised "new" arguments in their May 25 reply brief and at the June 17 hearing that have "left a gap in the briefing" on Defendants' motion (*id.* at 3). None of these assertions are supported by the record.

### A. Defendants Have Consistently Argued That the Companies Act Requires Plaintiffs to Obtain Permission from the English High Court.

Under Section 261 of the Companies Act, a shareholder of an English company "who brings a derivative claim . . . must apply to the court for permission . . . to continue it." As Defendants have consistently argued, Section 1156(1)(a) of the Companies Act defines "the court" as the English High Court. (*See* Defs. Mem. in Supp. of Mot. to Dismiss (Doc. 91) at 10-14 ("Under the Companies Act, a shareholder seeking to sue derivatively on behalf of a corporation organized under the laws of England and Wales must obtain permission to sue from the English High Court.").) Indeed, contrary to Plaintiffs' assertion now, Defendants expressly argued that "the Companies Act does not permit a foreign court to substitute itself for the English High Court in determining whether permission to sue on behalf of an English corporation should be granted." (*Id.* at 12; *see also* Moore Decl. (Doc. 91-2) ¶¶ 30-35 ("It is not surprising that 'the Court' is specified to mean the English Court. The exercise set out in ss.261 and s.263 are inherently English matters.").)

Plaintiffs argue that Defendants at the June 17 hearing abandoned the argument that only the English High Court is authorized under the Companies Act to grant a shareholder the requisite judicial permission to pursue derivative claims. According to Plaintiffs, Defendants somehow conceded at the hearing that this Court can weigh the statutory factors set out in Section 263 of the Companies Act and grant the required permission itself. (Mot. for Leave at

4.) Plaintiffs' assertion rests on a single sentence from Defendants' slide presentation to the Court, which stated: "Section 260(1) does not prohibit the extraterritorial application of the judicial permission requirement under foreign choice of law rules." (*Id.* (quoting Defs. Slides at 6).)[1] Plaintiffs contend that this sentence "suggest[s] for the first time that *this* Court could weigh the factors in Section 263 for determining whether Plaintiffs can bring this Action." (*Id.* (emphasis in original).)

At the June 17 hearing, Defendants' counsel expressly refuted Plaintiffs' attempt to mischaracterize the import of the quoted sentence in Defendants' slide presentation. Defendants' counsel told the Court that "[t]he most important point I have to make . . . is that it is *not* our position that this Court should or can apply the Section 263 factors and determine whether or not permission to proceed." (Hearing Tr. at 74:12-15 (emphasis added).) In fact, Defendants' counsel repeatedly emphasized that the Companies Act authorizes *only* the English High Court to grant the required judicial permission to maintain a derivative action on behalf of an English company. (*Id*. at 10:5-9 ("And when it defined the words 'the Court' for purposes of the Companies Act as to which is the Court that should be providing the judicial permission, it was very clear that for England and Wales that that is the English High Court."); *id*. at 26:21-25 ("England made a decision that for a shareholder to sue, rather than making a demand on the board of directors, that what the shareholder needs to do is obtain permission from a specified court to sue. And that's the High Court of England and Wales.").)

No reasonable interpretation of the quoted sentence in Defendants' slide presentation could be understood to suggest that Defendants were conceding that this Court is empowered to grant the required permission to sue under the Companies Act. Instead, that sentence responds to

---

[1] Defendants' complete slide presentation to the Court is attached as Exhibit A hereto.

Plaintiffs' argument that the Companies Act's judicial permission requirement (Section 261) is subject to a geographical limitation imposed by Section 260(1). (*See* Pls. Opp. Br. at 18 ("a federal court sitting in diversity has no reason or basis for applying Section 261" because Section 260(1) limits Section 261's applicability "to actions *initiated in certain parts of the U.K.*") (emphasis in original).) The quoted sentence reiterates the point made at length in Defendants' reply and at oral argument: namely, that Section 260(1) does not impose any geographical limitation on the applicability of the Companies Act's judicial permission requirement, which is instead governed by the forum's choice-of-law rules. It is those choice-of-law rules, not the text of the Companies Act, that mandate the application of English law to Plaintiffs' claims, including the requirement of obtaining permission from the English High Court under the Companies Act.[2]

In short, Defendants raised no new argument at the June 17 hearing or in their reply regarding Plaintiffs' lack of standing under the Companies Act, and no confusion exists as to Defendants' position. Accordingly, Plaintiffs' request for additional briefing on this allegedly "new" argument should be denied.

### B. Plaintiffs Raised the Issue of Their Standing Under the Rule of *Foss* v. *Harbottle* in Opposition to Defendants' Motion to Dismiss.

Plaintiffs argue that additional briefing is also warranted because "a significant part of the oral argument focused on Defendants' argument—also first raised in reply—that Plaintiffs did

---

[2] Plaintiffs' mischaracterize certain quotations from Mr. Moore's supplemental declaration in the same fashion. (*See* Mot. for Leave at 3-4.) The fragments of that declaration quoted by Plaintiffs respond to Mr. Adair's suggestion that Mr. Moore was construing the Companies Act to apply solely by its own terms outside the U.K. As Mr. Moore explained in his supplemental declaration, he has always maintained that the Companies Act is U.K. law, and that it is other jurisdictions' choice-of-law rules that govern whether or not to apply U.K. law. (Moore Supp. Decl. ¶ 5(a) ("As I observed in my First Declaration, the question of what test the US Court should apply (and whether it should take jurisdiction at all) are matters for the US Court and its own conflict of laws rules.").) Defendants' briefs made exactly the same point. (Defs. Mem. in Supp. of Mot. to Dismiss at 7-10; Defs. Reply Mem. (Doc. 114) at 4-5.)

not meet the common law requirements under *Foss* v. *Harbottle* for bringing this Action." (Mot. for Leave at 4.) Plaintiffs assert that they did not brief the issue of standing under *Foss* v. *Harbottle* because it was not raised in Defendants' motion to dismiss. (*Id.*) To begin with, this assertion is incorrect. Defendants did in fact discuss *Foss* v. *Harbottle* in their opening brief, observing that this common-law rule governed standing to assert derivative claims on behalf of an English company *prior to* enactment of the Companies Act, and that its exceptions were so narrow that U.S. courts routinely dismissed derivative actions brought by shareholders of English companies for lack of standing. (*See* Defs. Mem. in Supp. of Mot. to Dismiss at 10; Moore Decl. ¶ 8.)

More importantly, it was *Plaintiffs* that first raised the issue of whether they had standing under the common-law rule of *Foss* v. *Harbottle* in their opposition to Defendants' motion to dismiss. Plaintiffs' U.K. law expert, Mr. Adair, devoted nearly half of his declaration in opposition to Defendants' motion to his opinion that the rule of *Foss* v. *Harbottle* applies to derivative actions brought on behalf of English companies outside of the U.K., notwithstanding the enactment of the Companies Act, and that exceptions to the *Foss* v. *Harbottle* prohibition of derivative actions are expansive enough to permit Plaintiffs to proceed with this lawsuit. (*See* Adair Decl. (Doc. 109-16) ¶¶ 45-87.) Thus, contrary to their assertion, Plaintiffs did address the issue of standing under *Foss* v. *Harbottle* in their opposition papers, submitting 15 pages of expert analysis (and nearly 500 pages of foreign cases) on the common-law rule. Plaintiffs' failure to "brief" this issue was a tactical decision that does not justify additional briefing months later.[3]

---

[3] As Defendants' counsel and the Court discussed at the June 17 hearing, Plaintiffs' strategy left a hole *in Plaintiffs'* argument that Mr. Adair apparently was forced to fill. (Hearing Tr. at 40:24-41:14 ("MR. PEPPERMAN: Well, I understand—if you look at the plaintiffs' opposition, I understand . . . their position to be that the judicial permission requirement does not apply. THE COURT: Yeah. MR.

In discussing standing under *Foss* v. *Harbottle* in their reply brief, Defendants were merely responding to the argument raised by Mr. Adair in his declaration. Defendants reiterated their position that the judicial permission requirement of the Companies Act replaced the old common-law rule, but also pointed out that if the common-law rule did apply, Plaintiffs still would lack standing to sue derivatively on behalf of BP. In so arguing, Defendants were not raising a "new issue" in their reply, and there is no "gap" in the record that warrants additional briefing on this issue, particularly at this late date.[4]

## II.   DEFENDANTS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY.

Despite telling the Court that "we do not believe we need" jurisdictional discovery (Hearing Tr. at 98:2), Plaintiffs also renew their request, first made in their opposition to the motion to dismiss, to conduct discovery on personal jurisdiction. (Mot. for Leave at 6-8.)

As an initial matter, this Court need not reach the question of personal jurisdiction if it concludes that Plaintiffs lack standing. *See*, *e.g.*, *City of Harper Woods*, 577 F. Supp. 2d at 137

---

PEPPERMAN: But as I said, that begs the question that if the judicial permission requirement doesn't apply then what rules, if any— THE COURT: Well, I think you and I are saying the same thing. MR. PEPPERMAN: And that's what I think their expert, Mr. Adair—he actually stepped up and tried to answer that question. And in his declaration he took the position that *Foss* v. *Harbottle* still applies and argued that the claims here fit within the ultra vires exception, which was one of the three narrow exceptions.").)

[4] Plaintiffs' reliance on their counsel's quoted colloquy with the Court as an open invitation for further briefing on numerous standing issues (Mot. for Leave at 5 (quoting Hearing Tr. 47:23-49:1)) would appear misplaced. In stating that "if someone needs more time to brief, that's fine," the Court appeared to be emphasizing that it would not decide a potentially "important point"—the application of the rule of *Foss* v. *Harbottle*—"on the basis of waiver of an argument." (*Id.* at 48:22-24 ("I don't want to decide it on the basis of estoppel or waiver or whatever.").) As demonstrated above, however, the parties have already joined issue on the question of Plaintiffs' putative standing under the abolished common-law rule, and the issue is fully before the Court. Indeed, Plaintiffs' delay in bringing this motion for leave more than six weeks after oral argument belies their suggestion that such briefing is necessary or even useful at this late juncture. In addition, the Court suggested later at the June 17 hearing that additional arguments on *Foss* v. *Harbottle* appeared unnecessary. (*Id.* at 97:9-11 ("MR. LEBOVITCH: Now, I don't know whether your Honor wants to hear more about *Foss v. Harbottle*. THE COURT: No, I don't think so. I don't think so.").) Lastly, the Court's allusion to the possibility of further briefing on the issue of standing under *Foss* v. *Harbottle* certainly does not justify Plaintiffs' request for additional briefing on other standing issues.

("Because the Complaint will be dismissed for lack of standing, the Court does not reach the merits of Defendants' arguments on *forum non conveniens* and personal jurisdiction."); *Batchelder* v. *Kawamoto*, 147 F.3d 915, 922 & n.3 (9th Cir. 1998) (holding that it "need not reach the *forum non conveniens* issue or the claim that the district court erred in dismissing the action on grounds of Japan's exclusive jurisdiction and international comity" after affirming dismissal of complaint for lack of standing); *In re BP plc Deriv. Litig.*, 507 F. Supp. 2d 302, 303, 306-07 (S.D.N.Y. 2007) (granting motion to dismiss "in its entirety" based on lack of standing without reaching alternative *forum non conveniens* and personal jurisdiction arguments); *CMIA Partners Equity Ltd.* v. *O'Neill*, 920 N.Y.S.2d 240 (Table), at *8 (N.Y. Sup. Ct. 2010) ("since defendants' motions to dismiss on the basis of lack of standing are granted, the court need not reach the merits of the defendants' other arguments in favor of dismissal"); *Feiner Family Trust* v. *VBI Corp.*, No. 07 Civ. 1914 (RPP), 2007 WL 2615448, at *1 & n.1 (S.D.N.Y. Sept. 11, 2007) (declining to reach alternative arguments, such as lack of personal jurisdiction, because plaintiffs lacked standing to sue derivatively).

If the Court reaches the issue of personal jurisdiction, Plaintiffs are not entitled to jurisdictional discovery for at least two reasons, both of which have been addressed in prior briefs. First, Plaintiffs' Complaint fails to plead a prima facie showing of personal jurisdiction over any of the individual nonresident defendants. Because Plaintiffs have failed to plead that any of the individual defendants have sufficient—and, in most cases, *any*—contacts with Louisiana, they are not now entitled to conduct a fishing expedition to remedy the Complaint's deficiencies. As a district court in Louisiana recently explained, "[c]ourts will not allow a

plaintiff who fails to establish prima facie personal jurisdiction to conduct a fishing expedition in order to make a case." *Bonvillain*, 702 F. Supp. 2d at 686.[5]

Second, the novel theory of personal jurisdiction for which Plaintiffs appear to seek discovery is legally unsupportable. Plaintiffs argue that discovery is appropriate to determine whether the individual defendants "purposefully direct[ed] BP's activities toward the Gulf." (Mot. for Leave at 7; *see also id.* at 6 ("this Court has personal jurisdiction over the Defendants because they purposefully directed BP's illegal business activities to the Gulf Region").) As explained in Defendants' reply brief, however, this theory of personal jurisdiction is contrary to the requirements of due process that an individual have "minimum contacts" with the forum. If accepted by this Court, Plaintiffs' theory would subject directors and officers of multinational companies to jurisdiction in any forum in which the company operates. Other courts have expressly rejected this theory. *See*, *e.g.*, *Ruggiero* v. *FuturaGene, plc*, 948 A.2d 1124, 1134 (Del. Ch. 2008) ("[A] corporate director or officer of a foreign corporation cannot be haled into a Delaware court for an act of the corporation simply because the officer or director has directed the corporation to take that act.").

## CONCLUSION

Plaintiffs' motion for leave should be denied. If, however, the Court grants Plaintiffs' request for additional briefing, Defendants respectfully request that they be afforded 14 days in which to respond to any supplemental brief filed by Plaintiffs.

---

[5] Plaintiffs essentially concede that they seek to undertake a fishing expedition for jurisdictional facts, acknowledging that, at best, jurisdictional discovery "may shed further light" on Defendants' contacts with the forum. (Mot. for Leave at 7.) The confidential deposition testimony Plaintiffs cite as "certainly consistent with the derivative Plaintiffs' assertion of personal jurisdiction here" (*id.*) appears (i) irrelevant to their primary asserted basis for jurisdiction and (ii) to confirm that the contacts Plaintiffs speculate may exist do not. (*Id.*, Ex. 2 at 383.)

Dated:  August 8, 2011
       Houston, Texas

Respectfully submitted,

 *s/ Thomas W. Taylor*
Thomas W. Taylor
State Bar No. 19723875
S.D. No. 3906
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, TX  77002
Telephone:  (713) 220-4200

*Attorney-in-charge for Nominal Defendant BP p.l.c. and Defendants Iain C. Conn, Robert W. Dudley, Byron E. Grote, Anthony B. Hayward, Andy G. Inglis, Antony Burgmans, Cynthia B. Carroll, William M. Castell, George David, Erroll B. Davis, Jr., Douglas J. Flint, DeAnne S. Julius, Ian M.G. Prosser, Peter Sutherland, Carl-Henric Svanberg, H. Lamar McKay, and Robert A. Malone*

OF COUNSEL:

Daryl A. Libow (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC  20006
Telephone:  (202) 956-7500

Richard C. Pepperman, II (*pro hac vice*)
Marc De Leeuw (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Telephone:  (212) 558-4000

## **CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing Response has been served by electronic CM/ECF filing, on this 8th day of August, 2011.

       *s/Thomas W. Taylor*
       Thomas W. Taylor