UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re BP p.l.c. Securities Litigation | No. 4:10-MD-02185<br><br><br>Honorable Keith P. Ellison |

**DEFENDANTS' RESPONSE TO THE NEW YORK AND
OHIO PLAINTIFFS' NOTICE OF RECENT AUTHORITY**

In the New York and Ohio Plaintiffs' Notice of Recent Authority (Dkt. 250), Plaintiffs provide four pages of argument to the Court concerning a recent decision of the District of Massachusetts, *Hill* v. *State Street Corp.*, 2011 U.S. Dist. LEXIS 85128 (D. Mass. Aug. 3, 2011) (Dkt. 250-1). Defendants briefly address that decision and its lack of applicability to Plaintiffs' claims below.

Unlike this case, *Hill* involved highly specific alleged misstatements. Plaintiffs claimed that State Street defrauded certain customers for whom they conducted foreign exchange ("FX") trades—that is, purchases or sales of foreign currency—and made false statements concealing the fraud. The complaint alleged that "State Street was obligated to provide its clients the same exchange rate that State Street actually used to make the [FX] trade" but instead charged the highest or lowest exchange rate of the day (depending on whether it was buying or selling) and pocketed the difference between the actual and charged rates. *Id.* at *11-12, *37. Defendants in that case admitted that they "knew [State Street] w[as] charging a markup," and plaintiffs "alleged specific examples of Defendants' overtly withholding information from their clients about the markup." *Id.* at *35-36, *41. Under these circumstances, the Massachusetts court held that plaintiffs had adequately alleged that State Street's statements about the FX revenue it had

earned and the reasons for the dramatic increase in that revenue were material and misleading. *Id.* at *34-35.

Plaintiffs also alleged that State Street made false statements that the "asset quality" of investments in its own portfolio and in off-balance sheet "conduits"—investment vehicles for institutional clients—was "strong" or "high." *Id.* at *21-22. The portfolio and conduits contained billions of dollars of mortgage-backed securities ("MBS"). *Id.* at *14. As the district court explained, MBSs are secured by mortgages that are rated as "A-paper mortgages (highest rated), Alt-A mortgages (from borrowers with lower credit scores), and subprime (issued to borrowers who have extremely low credit scores)." *Id.* at *14. Whether "asset quality" is "high" or "strong" therefore has real, verifiable meaning in the context of a bank's MBS holdings. *See also* Fed. Deposit Ins. Agency, Risk Management Manual of Examination Policies § 3.1 (explaining how FDIC rates bank "asset quality" on a 1 to 5 scale). This contrasts sharply with the statements at issue in this case, such as "[s]afety, people and performance are BP's top priorities." (New York/Ohio Compl. ¶ 324.) Indeed, the *Hill* defendants apparently did not dispute that characterizing "asset quality" as "high" or "strong" was a material statement of fact, instead arguing that their statements about "asset quality" were either true, not misleading, or were reasonably held beliefs. 2011 U.S. Dist. LEXIS 85128, at *51-52. The Massachusetts court rejected these arguments, noting that the portfolio contained $5.5 to $6.6 billion in subprime mortgages in late 2007 to 2008, *id.* at *15; that State Street "did not disclose the specific assets contained in these programs," *id.*; that the statements about "high" asset quality came in late 2009, after financial institutions around the world had taken more than $300 billion in write downs for MBSs, *id.* at *17 n.3; and that State Street revealed shortly after making the statements that the assets had lost $9.9 billion in value and that the conduits would have to be consolidated on State Street's books, *id.* at *62-64.

As for scienter, the standards in the First Circuit differ in significant respects from those in the Fifth Circuit. For example, directly contrary to *Southland Sec. Corp.* v. *INSpire Ins.*

*Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004), the First Circuit has never abandoned the group pleading doctrine. *See Miss. Pub. Emps.' Ret. Sys.* v. *Boston Scientific Corp.*, 523 F.3d 75, 93 n.10 (1st Cir. 2008). In any event, with the exception of a brief discussion of defendants' motive, 2011 U.S. Dist. LEXIS 85128, at *70-75, the *Hill* court did not address any defendant's scienter with respect to the "asset quality" statements. For the FX statements, the court held that plaintiffs had adequately alleged scienter—but in contrast to the facts presented here, defendants admitted that "[w]e knew we were charging a markup," *id.* at *35-36. Plaintiffs here allege no such admission.

Dated: August 26, 2011

Respectfully submitted,

OF COUNSEL

*/s/ Thomas W. Taylor*

Daryl A. Libow (pro hac vice)
Amanda F. Davidoff
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5805
Telephone: (202) 956-7500
libowd@sullcrom.com
davidoffa@sullcrom.com

Thomas W. Taylor
Texas State Bar No. 19723875
S.D. Tex. Bar No. 3906
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200
Facsimile: (713) 220-4285
ttaylor@andrewskurth.com

Richard C. Pepperman, II (pro hac vice)
Marc De Leeuw (pro hac vice)
Matthew A. Peller
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000
peppermanr@sullcrom.com
deleeuwm@sullcrom.com
pellerm@sullcrom.com

*Attorney-in-Charge for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Notice of Recent Authority has been served by electronic CM/ECF filing, on this 26th day of August, 2011.

                                        */s/ Thomas W. Taylor*
                                        Thomas W. Taylor