Unassociated Document                    http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

EX-99.A 2 v081762_ex99-a.htm

**AMENDED AND RESTATED DEPOSIT AGREEMENT**

Dated as of          , 2007

to

**DEPOSIT AGREEMENT**

Dated as of December 31, 1998, as amended

**BP p.l.c.**

**and**

**JPMorgan Chase Bank N.A.,**
**as Depositary**

**and**

**HOLDERS OF AMERICAN DEPOSITARY RECEIPTS**

J. Gill Declaration Exhibit F Page 1 of 46

Unassociated Document                                    http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

**Amended and Restated Deposit Agreement** dated as of        2007, among **BP p.l.c.**, a corporation organized under the laws of England and Wales and its successors (the "**Company**"), **JPMorgan Chase Bank, N.A.**, a national banking association organized under the laws of the United States, as depositary hereunder and any successor as depositary hereunder (the "**Depositary**"), and all holders from time to time of American Depositary Receipts issued hereunder.

## WITNESSETH:

**Whereas**, the Company desires to amend and restate the Deposit Agreement dated as of December 31, 1998, as amended (the "**Original Deposit Agreement**"), among the Company, BP Amoco Corporation, an Indiana corporation and a wholly owned subsidiary of the Company, Morgan Guaranty Trust Company of New York, as depositary thereunder, and all holders from time to time of Receipts issued thereunder, and provide for the deposit of Shares of the Company from time to time with the Depositary or the Custodian (as hereinafter defined) and for the execution and delivery of American Depositary Receipts evidencing the American Depositary Shares representing the Shares so deposited; and

**Whereas**, the American Depositary Receipts issued in certificated form are to be substantially in the form of Exhibit A annexed hereto;

**Now, Therefore**, in consideration of the premises, it is agreed by and among the parties hereto that the Original Deposit Agreement is hereby amended and restated in its entirety to read as follows effective as of the date first above written:

## ARTICLE I
## DEFINITIONS

**Section 1.1**       The term "**American Depositary Shares**" shall mean the rights evidenced by the Receipts executed and delivered hereunder, including the interests in the Deposited Securities granted to the Holders of Receipts pursuant to the terms and conditions of this Deposit Agreement. Each American Depositary Share shall represent rights to receive six (6) Shares until there shall occur a distribution upon Deposited Securities referred to in Section 4.2 or a change in Deposited Securities referred to in Section 4.8 with respect to which additional Receipts are not executed and delivered, and thereafter each American Depositary Share shall represent the right to receive the Deposited Securities specified in such Sections.

**Section 1.2**         The term "**BP Direct Access Plan**" shall mean the direct share purchase plan for the purchase of American Depositary Shares of the Company, the terms and conditions of which are set forth in the Agreement for the BP Direct Access Plan between BP Company North America Inc. and JPMorgan Chase Bank, N.A., dated as of , as the same may be amended from time to time.

**Section 1.3**       The term "**Commission**" shall mean the Securities and Exchange Commission of the United States or any successor governmental agency.

**Section 1.4**       The term "**Custodian**" shall mean one or more agent or agents of the Depositary (singly or collectively, as the context requires) named as Custodian in Exhibit A annexed hereto and any additional or substitute Custodian appointed pursuant to Section 5.5.

**Section 1.5**         The terms "**deliver**", "**execute**", "**issue**", "**register**", "**surrender**", "**transfer**" or "**cancel**" when used with respect to Direct Registration Receipts, shall refer to an entry or entries or an electronic transfer or transfers in the Direct Registration System.

1

J. Gill Declaration Exhibit F Page 2 of 46

Unassociated Document                                     http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

Section 1.6      The term "Deposit Agreement" shall mean this Agreement, as the same may be amended from time to time in accordance with the provisions hereof.

Section 1.7      The term "Depositary's Office" shall mean the office of the Depositary for the administration of depositary receipts.

Section 1.8      The term "Deposited Securities" as of any time shall mean all Shares whether in registered form or in the form of share warrants to bearer (or evidence of rights to receive Shares) at such time deposited under this Deposit Agreement and any and all other securities, property and cash received at any time by the Depositary or the Custodian in respect or in lieu of such deposited Shares and other Shares (or evidence of rights to receive Shares), securities, property and cash at such time held hereunder.

Section 1.9      The term "Direct Registration Receipt" means a Receipt, the ownership of which is recorded on the Direct Registration System.

Section 1.10      The term "Direct Registration System" means the direct registration system maintained by the Depositary, pursuant to which the Depositary may record the ownership of uncertificated Receipts, which ownership shall be evidenced by periodic statements issued by the Depositary to the Holders entitled thereto.

Section 1.11      The term "Holder" shall mean the person or persons in whose name a Receipt is registered on the Receipt register maintained by the Depositary for such purpose. So long as the Depositary also serves as the administrator for the BP Direct Access Plan, direct participants in such plan shall be treated as Holders for purposes of Sections 4.07 and 4.11 hereof.

Section 1.12      The term "Receipt Register" means the register maintained by the Depositary for the registration of transfer, combination and split-up of Receipts, and, in the case of Direct Registration Receipts, shall include the Direct Registration System.

Section 1.13      The term "Receipts" shall mean the American Depositary Receipts executed and delivered hereunder.. Receipts may be either in physical certificated form or Direct Registration Receipts. Receipts in physical certificated form shall be in substantially the form of Exhibit A hereto, as the same may be amended from time to time in accordance with the provisions hereof. References to "Receipts" shall include Direct Registration Receipts, unless the context otherwise requires.

Section 1.14      The term "Securities Act of 1933" shall mean the United States Securities Act of 1933, as from time to time amended. The term "Securities Exchange Act of 1934" shall mean the United States Securities Exchange Act of 1934, as from time to time amended.

Section 1.15      The term "Shares" shall mean the Ordinary Shares of $0.25 each, either in registered form or in the form of share warrants to bearer, of the Company and shall include rights to receive Shares.

Section 1.16      The term "Tax Treaty Payments" shall mean a payment made pursuant to an entitlement to receive from the UK Inland Revenue, in addition to any cash dividend paid by the Company, an amount in the nature of a tax credit.

2

J. Gill Declaration Exhibit F Page 3 of 46

Unassociated Document                                  http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

**Section 1.17** **The term "Voting Instruction"** shall mean a written instruction in the form required by the Depositary by a Holder (or such Holder's substitute proxy) to the Depositary relating to a matter on which such Holder (or such Holder's substitute proxy) is entitled to vote pursuant to Section 4.7 and which instructs the Depositary or its nominee as to the exercise of such Holder's (or such Holder's substitute proxy's) voting right.

## ARTICLE II
## FORM OF RECEIPTS, DEPOSIT OF SHARES, EXECUTION AND TRANSFER OF RECEIPTS AND WITHDRAWAL OF DEPOSITED SECURITIES

**Section 2.1** **Form and Transferability of Receipts**

(a)  **Certificated Receipts** Receipts in certificated form shall be engraved or printed or lithographed on steel-engraved borders and shall be substantially in the form set forth in Exhibit A annexed hereto, with appropriate insertions, modifications and omissions as hereinafter provided. Receipts may be issued in denominations of any number of American Depositary Shares. Receipts in certificated form shall be executed by the Depositary by the manual or facsimile signature of a duly authorized officer of the Depositary. Unless so executed, no Receipt in certificated form shall be entitled to any benefits under this Deposit Agreement or be valid or obligatory for any purpose. Receipts in certificated form bearing the facsimile signature of anyone who was at any time a duly authorized officer of the Depositary shall bind the Depositary, notwithstanding that such officer has ceased to hold such office prior to the delivery of such Receipts. Receipts in certificated form may, with the prior written consent of the Company (which consent shall not be unreasonably withheld), be endorsed with or have incorporated in the text thereof such legends or recitals or changes not inconsistent with this Deposit Agreement as may be required by the Depositary in respect of its obligations hereunder or as may be required to comply with any applicable law or regulations or with the rules and regulations of any securities exchange upon which Receipts may be traded or to conform with any usage with respect thereto, or to indicate any special limitations or restrictions to which any particular Receipts are subject by reason of the date of issuance of the underlying Deposited Securities or otherwise.

(b)  **Direct Registration Receipts** Notwithstanding anything in this Deposit Agreement or in the Receipt to the contrary, American Depositary Shares shall be evidenced by Direct Registration Receipts, unless certificated Receipts are specifically requested by the Holder and for no additional fee. Holders shall be bound by the terms and conditions of this Deposit Agreement and of the form of Receipt, regardless of whether their Receipts are Direct Registration Receipts or certificated Receipts.

(c)  **Transferability** Title to a Receipt (and to the Deposited Securities represented by the American Depositary Shares evidenced thereby), when properly endorsed (in the case of Receipts in certificated form) or upon delivery to the Depositary of properly executed instruments of transfer, shall be transferable by delivery with the same effect as in the case of a negotiable instrument under applicable law; *provided* that the Company and the Depositary, notwithstanding any notice to the contrary, may treat the Holder thereof as the absolute owner thereof for the purpose of determining the person entitled to any distribution or notice and for all other purposes.

3

J. Gill Declaration Exhibit F Page 4 of 46

Unassociated Document                    http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

**Section 2.2**          **Deposit of Shares**

(a)   **Deposit with Custodian** Shares may be deposited under this Deposit Agreement by delivery thereof to the Custodian, and in the case of Shares in registered form, properly endorsed or accompanied by a duly executed instrument or instruments of transfer in form satisfactory to the Custodian, together with any other documents and payments required under this Deposit Agreement, and a written order directing the Depositary to issue to, or upon the written order of, the person or persons stated in such order a Receipt or Receipts through the Direct Registration System (or, if specifically requested, certificated Receipts) for the number of American Depositary Shares representing such deposited Shares. Shares in the form of share warrants to bearer shall be deposited under this Deposit Agreement in accordance with the procedures set forth in the Procedures Agreement dated as of December 31, 1998 and amended on May 18, 2001 (the "**Procedures Agreement**"), among the Company, Amoco Corporation, the Depositary and Boston EquiServe Limited Partnership, as Exchange Agent. At the request, risk and expense of any holder of Shares, and for the account of such holder, the Depositary may receive certificates for Shares to be deposited, together with any other documents and payments required under this Deposit Agreement, for the purpose of forwarding such Share certificates to the Custodian for deposit hereunder.

(b)   **Assignment and Proxy** If required by the Depositary, Shares presented for deposit at any time, whether or not any register of Shareholders of the Company is closed, shall also be accompanied by (1) an agreement or assignment, or other instrument satisfactory to the Depositary, which will provide for the prompt transfer to the Custodian or its nominee of any dividend or right to subscribe for additional Shares or to receive other property which any person in whose name the Shares are or have been recorded may thereafter receive upon or in respect of such deposited Shares, or in lieu thereof such agreement of indemnity or other agreement as shall be satisfactory to the Depositary, and (2) if the Shares are registered in the name of the person on whose behalf they are presented for deposit, a proxy or proxies entitling the Custodian to vote such deposited Shares for any and all purposes until the Shares are registered in the name of the Custodian or its nominee.

(c)   **Registration and Holding** Upon each delivery to the Custodian of a certificate or certificates for Shares (or other Deposited Securities pursuant to Section 4.2, 4.3, 4.4 or 4.8) in registered form to be deposited hereunder, together with any other documents and payments required under this Deposit Agreement, the Custodian shall as soon as practicable present such certificate or certificates for registration of transfer of the Shares (or other Deposited Securities) being deposited in the name of the Custodian or its nominee at the cost and expense of the person making such deposit (or for whose benefit such deposit is made) and shall obtain evidence satisfactory to it of such registration. Deposited Securities shall be held by the Custodian for the account and to the order of the Depositary at such place or places as the Depositary shall determine. The Depositary shall provide written notice informing the Company of any such place or places.

**Section 2.3**          **Execution and Delivery of Receipts**

After the deposit of any Shares pursuant to Section 2.2, the Custodian shall notify the Depositary of such deposit and the person or persons to whom or upon whose written order a Receipt or Receipts are deliverable in respect thereof and the number of American Depositary Shares to be evidenced thereby. Such notification shall be made by letter, first class airmail postage prepaid, or, at the request, risk and expense of the person making the deposit, by cable, telex, facsimile or electronic transmission. After receiving such notice from the Custodian, the Depositary, subject to this Deposit Agreement, shall execute and deliver a Receipt or Receipts at the Depositary's Office to or upon the order of the person or persons named in the notice delivered to the Depositary, registered in the name or names requested by such person or persons, and evidencing in the aggregate the number of American Depositary Shares to which such person or persons are entitled.

4

J. Gill Declaration Exhibit F Page 5 of 46

Unassociated Document                                         http://www.sec.gov/Archives/edgar/data/313807/0001144204070380..

### Section 2.4          Transfer, Combination and Split-up of Receipts

The Depositary, subject to this Deposit Agreement, shall without unreasonable delay register transfers of Receipts in the Receipt register from time to time, upon receipt at any of its designated transfer offices of proper instruments of transfer or upon any surrender of a Receipt at any of its designated transfer offices by the Holder in person or by duly authorized attorney, properly endorsed or accompanied by proper instruments of transfer, and duly stamped as may be required by applicable law. Thereupon the Depositary shall execute and deliver a new Receipt or Receipts to or upon the order of the person entitled thereto as such person may request evidencing the same aggregate number of American Depositary Shares as those evidenced by the Receipts surrendered. The Depositary, subject to this Deposit Agreement, shall, for the purpose of effecting a split-up or combination of a Receipt or Receipts, execute and deliver a new Receipt or Receipts for any authorized number of American Depositary Shares requested, evidencing the same aggregate number of American Depositary Shares as those evidenced by the Receipt or Receipts replaced. At the request of a Holder, the Depositary shall, for the purpose of substituting a certificated Receipt with a Direct Registration Receipt, or vice versa, execute and deliver a certificated Receipt or a Direct Registration Receipt, as the case may be, for any authorized number of American Depositary Shares requested, evidencing the same aggregate number of American Depositary Shares as those evidenced by the certificated Receipt or Direct Registration Receipt, as the case may be, substituted. The Depositary may close the Receipt Register at any time or from time to time when deemed expedient by it and shall do so when reasonably requested by the Company.

### Section 2.5          Withdrawal of Deposited Securities

Upon receipt at the Depositary's Office or at such other offices as the Depositary may designate of a Holder's written order directing the Depositary to cause the Deposited Securities represented by the American Depositary Shares evidenced by a Receipt to be withdrawn and delivered to or upon the written order of the person or persons designated in such order, and upon the surrender, if applicable, of such Receipt (properly endorsed in blank or accompanied by proper instruments of transfer in blank, to the extent required by the Depositary), the Depositary shall direct the Custodian to deliver without unreasonable delay, subject to this Deposit Agreement and to the provisions of or governing Deposited Securities, to or upon the written order of the person or persons designated in such order, the Deposited Securities at the time represented by the American Depositary Shares evidenced by such Receipt, and the Custodian shall so deliver such Deposited Securities, at the office of the Custodian, except that the Depositary may, in its discretion, at the request, risk and expense of the Holder make delivery of such Deposited Securities without unreasonable delay to such person or persons at the Depositary's Office or at any other place specified by the Holder in such order. Directions shall be given by letter or, at the request, risk and expense of the Holder, by cable, telex, electronic or facsimile transmission. Delivery of Deposited Securities may be made by the delivery of certificates, to the extent such Deposited Securities may be represented by certificates, which, if required by law, shall be properly endorsed or accompanied by properly executed instruments of transfer, and if such certificates may be so registered, registered in the name of such Holder, or as ordered by such Holder or properly endorsed or accompanied by proper instruments of transfer. Delivery of Deposited Securities consisting of Shares shall be made by delivery of Shares in registered form only. Notwithstanding any provision of this Deposit Agreement or the Receipts, the Depositary may restrict withdrawals of Deposited Securities only for the reasons set forth in General Instruction I.A.(1) of Form F-6 under the Securities Act of 1933.

5

J. Gill Declaration Exhibit F Page 6 of 46

Section 2.6          Limitations on Issuance, Execution, Delivery and Transfer of Receipts and Withdrawal of Deposited Securities

As a condition precedent to the issuance, execution, delivery, registration, registration of transfer, split-up or combination of any Receipt, the delivery of any distribution thereon or, subject to the last sentence of Section 2.5, the withdrawal of any Deposited Securities, the Depositary, the Company or the Custodian may require of the Holder, the presenter of the Receipt or the depositor of Shares: (a) payment of a sum sufficient to pay or reimburse it for payment of (i) any stock transfer or other tax or other governmental charge with respect thereto, other than Relevant Duties payable by the Company in accordance with Section 3.2, (ii) any stock transfer or registration fees for the registration of transfers of Shares or other Deposited Securities upon any applicable register, and (iii) any charges of the Depositary upon delivery of Receipts against deposits of Shares and upon withdrawal of Deposited Securities against surrender of Receipts set forth in Exhibit B to this Deposit Agreement; (b) the production of proof satisfactory to it as to the identity and genuineness of any signature and as to any other matter contemplated by Section 3.1; and (c) compliance with such reasonable regulations, if any, as the Depositary and the Company may establish consistent with the provisions of this Deposit Agreement. The delivery of Receipts against deposits of Shares may be suspended, deposits of Shares may be refused, or the registration of transfer of Receipts, their split-up or combination or, subject to the last sentence of Section 2.5, the withdrawal of Deposited Securities may be suspended, in particular instances or generally, when the Receipt register or any register for Shares or other Deposited Securities is closed, or any time or from time to time when any such action is deemed necessary or advisable by the Depositary or the Company for any reason, including without limitation any requirement of law or of any government or governmental body or commission, any provision of this Deposit Agreement or the provisions of or governing Deposited Securities, any meeting of Shareholders or any payment of dividends.

The Depositary will not issue Receipts against rights to receive Shares unless (x) such Receipts are fully collateralized (marked to market daily) with cash, U.S. government securities or such other collateral as the Depositary deems appropriate until such Shares are deposited, (y) the applicant for such Receipts represents and agrees in writing that such applicant or its customer (i) beneficially owns such Shares, (ii) assigns all beneficial right, title and interest to such Shares to the Depositary, (iii) holds such Shares for the account of the Depositary and (iv) will deliver such Shares upon the Depositary's request (no evidence of ownership is required or time of delivery specified) and (z) all such Receipts which are outstanding at any time as a result of pre-release represent not more than 20%, or such other percentage as the Company may determine in its sole discretion, of the total number of Shares represented by American Depositary Receipts except to the extent, if any, that such limitation is exceeded as a result of the withdrawal of Deposited Securities subsequent to the execution and delivery of pre-released Receipts in compliance with such limitation. Such collateral, but not the earnings thereon, shall be held for the benefit of the Holders. Any issue of pre-released Receipts shall also be subject to such further limitations as may be agreed between the Company and the Depositary from time to time. The Depositary may retain for its own account any compensation for the issuance of Receipts against such other rights to receive Shares, including without limitation earnings on the collateral securing such rights. Subject to the provisions of this Section 2.6 with respect to the issuance of Receipts against rights to receive Shares, neither the Depositary nor the Custodian shall lend Deposited Securities. Without limitation of the foregoing, the Depositary shall not knowingly accept for deposit under this Deposit Agreement any Shares required to be registered pursuant to the provisions of the Securities Act of 1933, unless a registration statement under the Securities Act of 1933 is in effect as to such Shares. The Depositary will use reasonable efforts to comply with written instructions of the Company to not accept for deposit hereunder any Shares identified in such instructions at such times and under such circumstances as may reasonably be specified in such instructions in order to facilitate the Company's compliance with the securities laws in the United States.

6

J. Gill Declaration Exhibit F Page 7 of 46

Section 2.7            **Substitution of Receipts**

In case any Receipt in certificated form shall be mutilated, destroyed, lost or stolen, the Depositary shall, as the Holder may request, issue a new Receipt through the Direct Registration System or execute and deliver a new Receipt of like tenor, in exchange and substitution for such mutilated Receipt upon cancellation thereof, or in lieu of and in substitution for such destroyed or lost or stolen Receipt, unless the Depositary has notice that such Receipt has been acquired by a *bona fide* purchaser, upon the Holder thereof filing with the Depositary (a) a request for such execution and delivery and (b) a sufficient indemnity bond and satisfying any other reasonable requirements imposed by the Depositary, including, without limitation, evidence satisfactory to the Depositary of such destruction or loss or theft of such Receipt, the authenticity thereof and the Holder's ownership thereof.

Section 2.8            **Cancellation and Destruction of Receipts**

All Receipts surrendered to the Depositary shall be cancelled by the Depositary. The Depositary is authorized to destroy Receipts in certificated form so cancelled.

Section 2.9            **Maintenance of Records**

The Depositary agrees to maintain or cause its agents to maintain records of all Receipts surrendered and Deposited Securities withdrawn under Section 2.5, substitute Receipts delivered under Section 2.7, and of cancelled or destroyed Receipts under Section 2.8, in keeping with procedures ordinarily followed by stock transfer agents located in the City of New York or as required by laws or regulations governing the Depositary. The Depositary shall provide full electronic access to such records to the Company, subject only to system updating, standard downtimes and outages. At such times during normal New York business hours as are mutually agreeable to the Depositary and the Company, the Company shall have reasonable access to the physical records described in this Section 2.9.

### ARTICLE III
### CERTAIN OBLIGATIONS OF HOLDERS

Section 3.1            Information

Any person presenting Shares for deposit or any Holder of a Receipt may be required from time to time to file with the Depositary or the Custodian such proof as to citizenship, residence, exchange control approval, legal or beneficial ownership of Receipts, Deposited Securities or other securities, compliance with all applicable laws and regulations, all applicable provisions of or governing Deposited Securities, and the terms of this Deposit Agreement, or other information, and to execute and deliver to the Depositary or the Custodian such certificates, including such representations and warranties, as the Depositary may deem necessary or proper or as the Company may require by written request to the Depositary or the Custodian. The Depositary may withhold the delivery or registration of transfer of any Receipt or any distribution on any Deposited Securities represented by the American Depositary Shares evidenced by such Receipt until the foregoing is accomplished to the Company's and the Depositary's satisfaction.

Notwithstanding anything to the contrary set forth in the Deposit Agreement, the Depositary and its agents may fully respond to any and all demands or requests for information maintained by or on its behalf in connection with the Deposit Agreement, any Holder or Holders, any Receipt or Receipts or otherwise related hereto to the extent such information is requested or required by or pursuant to any lawful authority, including without limitation laws, rules, regulations, administrative or judicial process, banking, securities or other regulators. The Depositary will give the Company prompt written notice of the receipt of any such demand or request for information about the Company and its dealings with the Depositary so that, if the Company so elects, the Company may seek an appropriate protective order or other remedy protecting such information from disclosure.

7

J. Gill Declaration Exhibit F Page 8 of 46

Unassociated Document                                    http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

### Section 3.2          Liability of Holder for Taxes

If any tax or other governmental charge, including any interest or penalties thereon, shall become payable by or on behalf of the Custodian, the Depositary or the nominee of either of them with respect to any Receipt or any Deposited Securities represented by the American Depositary Shares evidenced by such Receipt, such tax or other governmental charge shall be payable by the Holder in whose name such Receipt is registered at the time such tax or other governmental charge is incurred, who shall pay the amount thereof to the Depositary; *provided* that to the extent that any United Kingdom stamp duty, stamp duty reserve tax or other similar United Kingdom governmental charge (or any interest or penalties thereon) (each, a "**Relevant Duty**") arises in connection with (a) the deposit of Shares, whether in registered form or in the form of share warrants to bearer (the "**Exchange Shares**"), in connection with (i) the exchange of Receipts for common stock without par value ("**Amoco Shares**") of Amoco Corporation pursuant to the Agreement and Plan of Merger dated as of August 11, 1998, as amended as of October 22, 1998 (the "**Merger Agreement**"), by and among The British Petroleum Company p.l.c., Amoco Corporation and Eagle Holdings, Inc., or (ii) the issue of Receipts upon the exercise of employee stock options over Amoco Shares outstanding as of the Effective Date (as defined in the Merger Agreement), into the facility created by this Deposit Agreement, including but not limited to the agreement to transfer, the transfer and the delivery of Exchange Shares, whether in registered form or in the form of share warrants to bearer, to the Depositary, the Custodian or the nominee of either of them and any issue of American Depositary Shares by the Depositary in respect thereof or (b) the holding of Shares in the form of share warrants to bearer, the transfer of Receipts representing Shares in the form of share warrants to bearer or the exchange of Shares in the form of share warrants to bearer for Shares in registered form by the Depositary, the Custodian or the nominee of either of them, but only, in the case of this clause (b), to the extent that such Relevant Duty arises out of, or is imposed as a consequence of, the fact that Exchange Shares were deposited in the form of share warrants to bearer as referred to in clause (a), such Relevant Duty shall be payable by the Company and not by the Holder, and the Company shall be liable for such payment. In cases where this Section 3.2 requires a payment to be made to the Depositary by a Holder, the Depositary may refuse to effect any registration of transfer of such Receipt or any split-up or combination thereof or any withdrawal of such Deposited Securities until such payment is made, and may withhold or deduct from any distributions on such Deposited Securities or may sell for the account of the Holder thereof any part or all of such Deposited Securities (after attempting by reasonable means to notify such Holder prior to such sale), and may apply such cash or the proceeds of any such sale in payment of such tax or other governmental charge, the Holder of such Receipt remaining liable for any deficiency. Neither the Company, the Depositary nor any of their respective officers, directors, representatives or agents shall be liable for failure of a Holder to comply with applicable tax laws or governmental charges.

### Section 3.3          Warranties on Deposit of Shares

Every person depositing Shares under this Deposit Agreement shall be deemed thereby to represent and warrant that such Shares and any certificate therefor are validly issued and outstanding, fully paid, nonassessable and free of preemptive rights, that the person making such deposit is duly authorized so to do and that such Shares are not "restricted securities" as such term is defined in Rule 144 of the Securities Act of 1933 unless at the time of deposit they may be freely transferred in accordance with Rule 144(k) and may otherwise be offered and sold freely in the United States. Such representations and warranties shall survive the deposit of Shares and the execution and delivery of Receipts.

8

J. Gill Declaration Exhibit F Page 9 of 46

Unassociated Document    http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

### Section 3.4          Disclosure of Interests

Notwithstanding any other provision of this Deposit Agreement, each Holder agrees to comply with requests from the Company which are made under statutory provisions in the United Kingdom to provide information as to the capacity in which such Holder owns Receipts and regarding the identity of any other person interested in such Receipts and the nature of such interest and may, pursuant to such statutory provisions and any provisions of the constituent documents of the Company, forfeit the right to vote and to direct the voting of, and be prohibited from transferring, Receipts as to which compliance is not made, all as if such Receipts were to the extent practicable the Shares represented by the American Depositary Shares evidenced thereby, and the Depositary agrees to use its reasonable efforts to comply with any instructions received from the Company requesting that the Depositary take the reasonable actions specified therein to obtain such information.

### ARTICLE IV
### DEPOSITED SECURITIES

### Section 4.1          Cash Distributions

Whenever the Company shall make any cash dividend or other cash distribution on Deposited Securities available in U.S. dollars and it is possible, whether by election or other action, for the Depositary to receive that dividend or distribution in U.S. dollars, the Depositary shall take any action to enable it to receive such dividend or distribution in U.S. dollars. In respect of any other cash dividend or cash distribution by the Company on any Deposited Securities, whenever the Depositary or the Custodian shall receive any cash dividend or other cash distribution upon any Deposited Securities, the Depositary shall, after any necessary conversion of such distribution into U.S. dollars pursuant to Section 4.5 and after fixing a record date in respect thereof pursuant to Section 4.6, subject to this Deposit Agreement, distribute as promptly as reasonably practicable the amount thus received, by checks drawn on or electronic transfers from a bank in the United States, to the Holders of record on such record date of Receipts evidencing American Depositary Shares representing such Deposited Securities, in proportion to the number of American Depositary Shares representing such Deposited Securities held by each of them respectively; *provided* that the Depositary shall make appropriate adjustments in the amounts so distributed in respect of (a) any of such Deposited Securities being not entitled, by reason of its date of issuance or otherwise, to receive all or any portion of such distribution or (b) any amounts (i) required to be withheld by the Company, the Custodian or the Depositary from any such distribution on account of taxes, or (ii) charged by the Depositary in connection with the conversion of foreign currency into U.S. dollars pursuant to Section 4.5, *provided* that if the Company shall announce any cash dividend on Deposited Securities in U.S. dollars, the Company shall cause the amount of U.S. dollars paid to the Depositary to be such that, subject to (i) above, the amount paid in respect of each Deposited Security hereunder is equal to the amount of the cash dividend per Share as so announced. The Depositary shall distribute only such amount as can be distributed without distributing to any Holder a fraction of one cent. Fractional cents will be withheld without liability and dealt with by the Depositary in accordance with its then current practices.

9

J. Gill Declaration Exhibit F Page 10 of 46

Section 4.2          **Share Distributions**

If any distribution upon any Deposited Securities consists of a dividend in, or free distribution of, Shares, the Depositary may or shall, if the Company shall so request, subject to this Deposit Agreement, distribute to the Holders on a record date fixed pursuant to Section 4.6, in proportion to the number of American Depositary Shares representing such Deposited Securities held by each of them respectively, additional Receipts for an aggregate number of American Depositary Shares representing the number of Shares received as such dividend or free distribution. In lieu of delivering Receipts for fractional American Depositary Shares in the case of any such distribution, the Depositary shall sell the number of Shares represented by the aggregate of such fractions and distribute the net proceeds of such sale as in the case of a distribution received in cash pursuant to Section 4.1. If additional Receipts are not so distributed, each American Depositary Share shall thenceforth also represent its proportionate interest in the additional Shares so distributed upon such Deposited Securities.

Section 4.3          **Rights Distributions**

If the Company shall offer or cause to be offered to the holders of any Deposited Securities any rights to subscribe for additional Shares or any rights of any nature, the Depositary shall have discretion after consultation with the Company as to the procedure to be followed in making such rights available to the Holders or in disposing of such rights and distributing the net proceeds thereof as in the case of a distribution received in cash pursuant to Section 4.1; *provided* that the Depositary shall, if requested by the Company, subject to this Deposit Agreement take action as follows: (a) if at the time of the offering of any such rights the Depositary, after consultation with the Company, determines that it is lawful and feasible to make such rights available to Holders by means of warrants or otherwise, the Depositary shall distribute such warrants or other instruments therefor in such form as it may determine to the Holders on a record date fixed pursuant to Section 4.6 of Receipts evidencing American Depositary Shares representing such Deposited Securities, in proportion to the number of American Depositary Shares representing such Deposited Securities held by each of them respectively, or employ such other method as it may deem feasible in order to facilitate the exercise, sale or transfer of rights by such Holders; or (b) if at the time of any such offering of any such rights the Depositary determines that it is not lawful or not feasible to make such rights available to Holders by means of warrants or otherwise, or if the rights represented by such warrants or such other instruments are not exercised and appear to be about to lapse, the Depositary in its discretion may sell such rights or such warrants or other instruments at public or private sale, at such place or places and upon such terms as it may deem proper, and may allocate the proceeds of such sales for account of the Holders otherwise entitled to such rights, warrants or other instruments, upon an averaged or other practicable basis without regard to any distinctions among such Holders because of exchange restrictions, or the date of delivery of any Receipt or Receipts, or otherwise, and distribute the net proceeds so allocated to the extent practicable as in the case of a distribution received in cash pursuant to Section 4.1. The Depositary will not offer such rights to Holders having an address in the United States, unless the Company furnishes to the Depositary (i) evidence that a registration statement under the Securities Act of 1933 covering such offering is in effect or (ii) an opinion of counsel for the Company in the United States satisfactory to the Depositary (which counsel may be an employee of the Company or an affiliate of the Company) to the effect that such offering does not require registration under the Securities Act of 1933.

Section 4.4          **Other Distributions**

Whenever the Depositary or the Custodian shall receive any distribution other than cash, Shares or rights upon any Deposited Securities, subject to this Deposit Agreement, the Depositary shall cause securities or property to be distributed to the Holders on a record date fixed pursuant to Section 4.6, in proportion to the number of American Depositary Shares representing such Deposited Securities held by each of them respectively, in any manner that the Depositary may deem equitable and practicable for accomplishing such distribution; *provided* that if in the opinion of the Depositary such distribution cannot be made proportionately among the Holders entitled thereto, or if for any other reason (including any tax withholding or securities laws requirement) the Depositary deems such distribution not to be feasible, the Depositary may adopt such method as it may deem equitable and practicable for the purpose of effecting such distribution, including the sale (at public or private sale) of the securities or property thus received, or any part thereof, and the distribution by the Depositary to the Holders of the net proceeds of any such sale as in the case of a distribution received in cash pursuant to Section 4.1.

10

J. Gill Declaration Exhibit F Page 11 of 46

Unassociated Document

http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

Section 4.5                    **Conversion of Foreign Currency**

Whenever the Depositary or the Custodian shall receive foreign currency, as a cash dividend or other distribution or as the net proceeds from the sale of securities, property or rights, which, in the judgment of the Depositary can then be converted on a reasonable basis into U.S. dollars which can then be transferred to the United States, the Depositary shall, as promptly as practicable, convert or cause to be converted, by sale or in any other manner that it may reasonably determine, such foreign currency into U.S. dollars and shall thereafter transfer the resulting U.S. dollars (net of its charges and expenses in effecting such conversion) to the United States. Such U.S. dollars shall be distributed to the Holders entitled thereto or, if the Depositary shall have distributed any warrants or other instruments that entitle the holders thereof to such U.S. dollars, then to the holders of such warrants or instruments, as applicable, upon surrender thereof for cancellation. Such distribution may be made upon an averaged or other practicable basis without regard to any distinctions among Holders on account of exchange restrictions or otherwise. If such conversion or distribution can be effected only with the approval or license of any government or agency thereof, the Depositary shall file such application for approval or license, if any, as it may deem desirable. If at any time the Depositary shall determine that in its reasonable judgment any foreign currency received by the Depositary is not convertible on a reasonable basis into U.S. dollars transferable to the United States, or if any approval or license of any governmental authority or agency thereof that is required for such conversion is denied or in the opinion of the Depositary is not obtainable at a reasonable cost or within a reasonable period, the Depositary shall in its discretion, but subject to applicable laws and regulations, either distribute the foreign currency (or an appropriate document evidencing the right to receive such foreign currency) to, or hold such foreign currency (uninvested and without liability for interest thereon) for the respective accounts of, the Holders entitled to receive the same. If any such conversion of foreign currency, in whole or in part, can be effected for distribution to some but not all of the Holders entitled thereto, the Depositary may in its discretion make such conversion and distribution in U.S. dollars to the extent permissible to the Holders entitled thereto and may distribute the balance of the foreign currency received by the Depositary to, or hold such balance (uninvested and without liability for interest thereon) for the respective accounts of, the Holders entitled thereto for whom such conversion and distribution is not practicable.

Section 4.6                    **Fixing of Record Date**

Whenever any distribution is being made upon any Deposited Securities or any meeting of holders of Shares or other Deposited Securities is being held or whenever the Depositary shall find it necessary or convenient in connection with the giving of any notice, solicitation of any consent or any other matter, the Depositary shall, after consultation with the Company, fix a record date for the determination of the Holders who shall be entitled to receive such distribution or the net proceeds of the sale thereof, to vote or to give instructions for the exercise of voting rights at any such meeting, to receive such notice or solicitation or to act in respect of such other matter which shall, to the extent practicable, be the same record date as that fixed by the Company for the Deposited Securities. Subject to this Deposit Agreement, only such Holders at the close of business on such record date shall be entitled to receive any such distribution or proceeds, to vote or to give such voting instructions, to receive such notice or solicitation or to act in respect of any such other matter.

11

J. Gill Declaration Exhibit F Page 13 of 46

**Section 4.7**          **Voting of Deposited Securities**

The Depositary or, if the Deposited Securities are registered in the name of or held by its nominee, its nominee, subject to and in accordance with the constituent documents of the Company hereby irrevocably appoints each Holder for the time being on the record date (the "Voting Record Date") fixed by the Depositary in accordance with Section 4.6 in respect of any meeting (at which holders of Deposited Securities are entitled to vote) as its proxy to attend, vote and speak at the relevant meeting (or any adjournment thereof) in respect of the Deposited Securities represented by the Receipt held by such Holder on the Voting Record Date. In respect of any such meeting each such Holder can appoint any person as its substitute proxy to attend, vote and speak on behalf of the Holder subject to and in accordance with the provisions of this Section and the constituent documents of the Company. As soon as practicable after receipt of notice of any meeting at which the holders of Deposited Securities are entitled to vote, or of solicitation of consents or proxies from holders of Deposited Securities, the Depositary shall, in accordance with Section 4.6, fix the Voting Record Date in respect of such meeting or solicitation. The Depositary or, if the Company so determines, the Company, shall distribute by mail, or such other means and manner as may be mutually agreed between the Depositary and the Company, to Holders of record on such Voting Record Date: (a) such information as is contained in such notice of meeting or in the solicitation materials, (b) a Receipt proxy card in a form prepared by the Depositary, after consultation with the Company, (c) a statement that each Holder at the close of business on the Voting Record Date will be entitled, subject to any applicable law, the Company's constituent documents and the provisions of or governing the Deposited Securities, either (i) to use such Receipt proxy card in order to attend, vote and speak at such meeting as the proxy of the Depositary or its nominee solely with respect to the Shares or other Deposited Securities represented by American Depositary Shares evidenced by such Holder's Receipts or (ii) to appoint any other person as the substitute proxy of such Holder, solely with respect to the Shares or other Deposited Securities represented by American Depositary Shares evidenced by such Holder's Receipts or (iii) to renounce the proxy initially provided by the Depositary or its nominee to such Holder or such Holder's substitute proxy and to provide Voting Instructions to the Depositary as to the exercise of the voting rights pertaining to the Shares or other Deposited Securities represented by American Depositary Shares evidenced by their respective Receipts, and (d) if the Depositary is to be given Voting Instructions by such Holder, a brief statement as to the manner in which Voting Instructions may be given to the Depositary. Upon the written request of a Holder of record on the Voting Record Date received on or before the date established by the Depositary for such purpose, the Depositary shall endeavor, insofar as practicable and permitted under applicable law, the provisions of the Company's constituent documents and the provisions of the Deposited Securities, to vote or cause to be voted the Deposited Securities in accordance with the instructions set forth in such request.

If, notwithstanding the above, an attempt is made to appoint the Depositary or its nominee as proxy in respect of Deposited Securities which are either registered in the Depositary's or its nominee's own name or else are in the form of a share warrant to bearer held by the Depositary or its nominee, and the Depositary or its nominee cannot under English law act as proxy in respect of such Deposited Securities, then in order to give effect to the instructions contained in such a nomination, the Depositary or its nominee shall execute those instructions, or cause those instructions to be executed, in its capacity as registered owner of such Deposited Securities that are in registered form or in its capacity as holder of a share warrant to bearer in the case of Deposited Securities in that form.

12

J. Gill Declaration Exhibit F Page 14 of 46

Unassociated Document                                      http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

For the avoidance of doubt, when the Depositary receives Voting Instructions from a substitute proxy of a Holder (including, without limitation, instructions from ADP Inc. or any other entity acting on behalf of participants and/or customers of participants within The Depository Trust Company) or their agents, and such registered Holder has notified the Depositary that it holds Receipts on behalf of such substitute proxies, the Depositary shall treat such Voting Instructions as coming from an entity that holds Receipts on behalf of such substitute proxies and the Depositary shall vote or cause to be voted the Deposited Securities in accordance with such instructions.

Neither the Depositary nor the Custodian shall exercise any discretion as to voting and neither the Depositary nor the Custodian shall vote or attempt to exercise the right to vote the Shares or other Deposited Securities represented by American Depositary Shares except pursuant to and in accordance with such Voting Instructions from Holders given in accordance with this Section 4.7. Shares or other Deposited Securities represented by American Depositary Shares for which no specific Voting Instructions are received by the Depositary from the Holder shall not be voted by the Depositary but may be directly voted by Holders in attendance at meetings of shareholders as proxy for the Depositary or its nominee, subject to, and in accordance with, the provisions of this Section and the Company's constituent documents.

### Section 4.8          Changes Affecting Deposited Securities

Upon any change in par value, split-up, consolidation, cancellation or any other reclassification of Deposited Securities, or upon any recapitalization, reorganization, merger or consolidation or sale of assets affecting the Company or to which it is a party, any securities that shall be received by the Depositary or the Custodian in exchange for, or in conversion, replacement, or otherwise in respect of, Deposited Securities shall be treated as Deposited Securities under this Deposit Agreement, and the Receipts shall thenceforth evidence American Depositary Shares representing the right to receive the Deposited Securities including the securities so received to the extent additional Receipts are not delivered pursuant to the following sentence. In any such case the Depositary may with the Company's approval, and shall if the Company shall so request, subject to this Deposit Agreement, execute and deliver additional Receipts as in the case of a dividend of Shares, or call for the surrender of outstanding Receipts to be exchanged for new Receipts specifically describing such newly received Deposited Securities.

### Section 4.9          Withholding

In connection with any distribution to Holders, the Company will withhold from such distribution and remit to the appropriate governmental authority or agency all amounts (if any) required to be withheld by the Company and owing to such authority or agency by the Company; and the Depositary and the Custodian will withhold from such distribution and remit to the appropriate governmental authority or agency all amounts (if any) required to be withheld and owing to such authority or agency by the Depositary or the Custodian. The Depositary will forward to the Company such information from its records as the Company may reasonably request to enable the Company to file necessary reports with governmental authorities or agencies, and either the Company or the Depositary may file any such reports necessary to obtain benefits under any applicable tax treaties for Holders. If the Depositary determines that any distribution in property other than cash (including Shares or rights) on Deposited Securities is subject to any tax that the Depositary or the Custodian is obligated to withhold, the Depositary may dispose of all or a portion of such property in such amounts and in such manner, as the Depositary reasonably deems necessary and practicable to pay such taxes, by public or private sale, and the Depositary shall distribute the net proceeds of any such sale or the balance of any such property after deduction of such taxes to the Holders entitled thereto as in the case of a distribution pursuant to Section 4.1, 4.2, 4.3 or 4.4. For so long as any United States Holders are eligible to receive Tax Treaty Payments, the Depositary undertakes to use reasonable efforts to maintain arrangements with the United Kingdom Inland Revenue under which such Holders satisfying the applicable requirements may receive such Tax Treaty Payments at the same time as and together with the associated cash dividend, all as directed by the Company. The Company undertakes that, for so long as the arrangements referred to in the immediately preceding sentence are in effect, the Company shall pay any Tax Treaty Payment which may be payable by the Company pursuant to such arrangements at the same time as and together with each dividend paid by the Company on the Shares.

13

J. Gill Declaration Exhibit F Page 15 of 46

Unassociated Document                                    http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

### Section 4.10          Canadian Holders

So long as the Company may list its Shares on a stock exchange in Canada and maintain a co-transfer agent in Canada, in the case of Holders who are registered on the books of the Depositary with an address in Canada ("**Canadian Holders**") and who have not filed the election referred to below, references in this Article IV to "U.S. dollars" shall mean and be deemed to refer to Canadian dollars, references to "transferred to the United States" shall mean and be deemed to refer to "transferred to Canada", references to "transferable to the United States" shall mean and be deemed to refer to "transferable to Canada" and references to "bank in the United States" shall mean and be deemed to refer to "bank in Canada". Canadian Holders may file with the Depositary an election, in form and substance satisfactory to the Depositary, stating that they wish to receive any cash dividends or other cash distributions in U.S. dollars, *provided* that in order to take effect with respect to any distribution such election must be duly completed and received by the Depositary not less than 30 days before the record date for such distribution.

### Section 4.11          Actions by Holders

The Depositary shall cause its nominee, Guaranty Nominees Limited, or a successor nominee, in its capacity as a member of the Company in respect of the Shares and other Deposited Securities, from time to time, to take such limited actions as may be reasonably requested in writing by a Holder, to the extent practicable and subject to any applicable law, regulation, stock exchange requirement or the constituent documents of the Company, solely to enable such Holder to exercise those rights to which Guaranty Nominees Limited or such successor nominee is entitled by virtue of being a member of the Company in respect of the Shares or other Deposited Securities represented by the American Depositary Shares evidenced by such Holder's Receipts; *provided, however*, that with respect to rights other than as set forth in Section 4.7, Guaranty Nominees Limited or such successor nominee shall take such action only to the extent that (a) it has been fully indemnified to its reasonable satisfaction by the Holder against any and all loss, liability, or expense which it shall suffer or reasonably incur, (b) such Holder has provided and will continue to provide as reasonably requested from time to time security in the form of a bond or otherwise in relation to such action reasonably satisfactory to the Depositary, and (c) any legal proceeding or similar action brought on behalf of such Holder pursuant to the exercise of such rights shall be brought in the name of Guaranty Nominees Limited or a successor nominee and not in the name of the Depositary and shall state that Guaranty Nominees Limited or such successor nominee is involved solely for the purpose of enabling the Holder to establish a right of action and for no other purpose and that Guaranty Nominees Limited or such successor nominee has no other interest in such matter. Any exercise of such rights or powers shall be for the sole benefit of, and at the cost and expense of, such Holder.

14

J. Gill Declaration Exhibit F Page 16 of 46