## ARTICLE V
## THE DEPOSITARY AND THE COMPANY

Section 5.1   Maintenance of Depositary's Office and Receipt Register; Certain Agents of the Depositary; Lists of Holders

(a) **Depositary's Office** The Depositary or its agent shall maintain facilities in the United States for the execution and delivery, registration, registration of transfer, combination and split-up of Receipts and the withdrawal of Deposited Securities all in accordance with the provisions of this Deposit Agreement.

(b) **The Receipt Register** The Depositary or its agent shall keep at facilities in the United States, a Receipt register for the registration of Receipts and transfers of Receipts that at all reasonable times shall be open for inspection by the Holders and the Company; *provided* that such inspection shall not be for the purpose of communicating with Holders in the interest of a business or object other than the business of the Company or a matter related to this Deposit Agreement or the Receipts. The Depositary, upon request by the Company, shall make available access to the Receipt register at an office in the Borough of Manhattan, The City of New York.

(c) **Receipt Registrars and Co-Transfer Agents** If any Receipts or the American Depositary Shares evidenced thereby are listed on one or more stock exchanges in the United States, the Depositary or its agent shall act as Receipt registrar or, upon the written request or with the written approval of the Company, appoint a Receipt registrar or one or more co-registrars to register Receipts and transfers, combinations and split-ups of Receipts and to countersign Receipts in accordance with any requirements of such exchange or exchanges and with the terms of any such appointment. Such Receipt registrar or co-registrars may be removed and a substitute or substitutes appointed by the Depositary upon the written request or with the written approval of the Company. The Depositary, upon the written request or with the written approval of the Company, may appoint one or more co-transfer agents for the purpose of effecting transfers, combinations and split-ups of Receipts at designated transfer offices on behalf of the Depositary. Such co-transfer agents may be removed and substitutes appointed by the Depositary upon the written request or with the written approval of the Company. Each Receipt registrar, co-registrar or co-transfer agent appointed under this Section 5.1 (other than the Depositary or an affiliate thereof) shall give notice in writing to the Company and the Depositary accepting such appointment and agreeing to be bound by the applicable terms of this Deposit Agreement.

(d) **Lists of Holders** At the expense of the Company, the Company shall have the right to inspect transfer and registration records of the Depositary or its agent, take copies thereof and require the Depositary or its agent, the Receipt registrar and any co-transfer agents or co-registrars to supply copies of such portions of such records as the Company may request. The Depositary or its agent shall furnish to the Company promptly upon the written request of the Company, a list of the names, addresses and holdings of American Depositary Shares by all Holders as of a recent date within seven days of the date of such request.

(e) **Depositary's Agent** The Depositary may perform its obligations under this Section 5.1 through any agent appointed by it, *provided* that the Depositary shall notify the Company of such appointment and shall remain responsible for the performance of such obligations as if no agent were appointed.

15

Section 5.2         Prevention or Delay in Performance

Neither the Depositary, its agents nor the Company shall incur any liability if, by reason of any present or future law, rule or regulation of the United States, the United Kingdom or any other country or of any government or governmental or regulatory authority or any securities exchange or market or automated quotation system, the provisions of or governing any Deposited Securities, any present or future provision of the Company's constituent documents, act of God, war, terrorism or other circumstances beyond its control, the Depositary, its agents or the Company shall be prevented or forbidden from, or subjected to any civil or criminal penalty on account of, or delayed in, doing or performing any act or thing which by the terms of this Deposit Agreement it is provided shall be done or performed; nor shall the Depositary, its agents or the Company incur any liability to any Holder or other person by reason of any nonperformance or delay, caused as aforesaid, in performance of any act or thing that by the terms of this Deposit Agreement it is provided shall or may be done or performed, or by reason of any exercise of, or failure to exercise, any discretion provided for in this Deposit Agreement.

Section 5.3         Obligations Limited

The Company assumes no obligation and shall be subject to no liability under this Deposit Agreement or the Receipts to Holders or other persons, except to perform such obligations as are specifically set forth and undertaken by it to perform in this Deposit Agreement without negligence or bad faith. Each of the Depositary and its agents assumes no obligation and shall be subject to no liability under this Deposit Agreement or the Receipts to Holders or other persons, except to perform such obligations as are specifically set forth and undertaken by it to perform in this Deposit Agreement without negligence or bad faith. Without limitation of the preceding sentence, none of the Depositary, the Company or their respective agents shall be (a) under any obligation to appear in, prosecute or defend any action, suit or other proceeding in respect of any Deposited Securities or the Receipts that in its opinion may involve it in expense or liability, unless indemnity satisfactory to it in its sole discretion against all expense and liability be furnished as often as may be required, or (b) liable for any action or inaction by it in reliance upon the advice of or information from legal counsel, accountants, any person presenting Shares for deposit, any Holder, or any other person believed by it to be competent to give such advice or information. Each of the Depositary, the Company or their respective agents may rely and shall be protected in acting upon any written notice, request, direction or other document believed by it to be genuine and to have been signed or presented by the proper party or parties. The Depositary and its agents shall not be responsible for any failure to carry out any instructions to vote any of the Deposited Securities, for the manner in which any such vote is cast by the Depositary to the extent the Depositary has received voting instructions as provided in the Deposit Agreement with respect to any of the Deposited Securities (*provided* that such manner or failure to vote was without gross negligence or willful misconduct), or for the effect of any such vote. The Depositary and its agents may own and deal in any class of securities of the Company and its affiliates and in Receipts. Neither the Company nor the Depositary nor any of their respective agents shall be liable to Holders or beneficial owners of interests in American Depositary Shares for any indirect, special, punitive or consequential damages. No disclaimer of liability under the Securities Act of 1933 is intended by any provision of this Deposit Agreement.

Section 5.4         Resignation and Removal of the Depositary; Appointment of Successor Depositary

The Depositary may at any time resign as Depositary hereunder by written notice of its election so to do delivered to the Company or be removed as Depositary by the Company by written notice of such removal delivered to the Depositary, such resignation or removal to take effect upon the appointment of and acceptance by a successor depositary as hereinafter provided. In case at any time the Depositary acting hereunder shall resign or be removed, the Company shall use its reasonable efforts to appoint a successor depositary, which shall be a bank or trust company having an office in the Borough of Manhattan, The City of New York. Every successor depositary shall execute and deliver to its predecessor and to the Company an instrument in writing accepting its appointment hereunder, and thereupon such successor depositary, without any further act or deed, shall become fully vested with all the rights, powers, duties and obligations of its predecessor; but such predecessor, nevertheless, upon payment of all sums due it and on the written request of the Company shall execute and deliver an instrument transferring to such successor all rights and powers of such predecessor hereunder, and such predecessor shall thereupon duly assign, transfer and deliver all right, title and interest in the Deposited Securities to such successor, and shall deliver to such successor a list of the Holders. Any such successor depositary shall promptly mail notice of its appointment to the Holders. Any corporation into or with which the Depositary may be merged or consolidated shall be the successor of the Depositary without

Unassociated Document	http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

the execution or filing of any document or any further act.

16

Section 5.5     The Custodian

The Depositary, upon the written request or with the written approval of the Company, may from time to time appoint one or more agents to act for it as Custodian hereunder. Each Custodian so appointed (other than the Depositary or an affiliate thereof) shall give notice in writing to the Company and the Depositary accepting such appointment and agreeing to be bound by the applicable terms hereof. Any Custodian in acting hereunder shall be subject at all times and in all respects to the directions of the Depositary and shall be responsible solely to it. Any Custodian may resign from its duties hereunder by notice of such resignation delivered to the Depositary at least 30 days prior to the date on which such resignation is to become effective. The Depositary may discharge any Custodian at any time upon notice to the Custodian being discharged. Any Custodian ceasing to act hereunder as Custodian shall deliver all Deposited Securities held by it to a Custodian continuing to act upon the instruction of the Depositary. The Depositary shall give notice in writing to all Holders of the name and location of the appointment of any Custodian not named in the Receipts. Upon the appointment of any successor depositary hereunder, any Custodian then acting hereunder shall forthwith become, without any further act or writing, the agent hereunder of such successor depositary and the appointment of such successor depositary shall in no way impair the authority of any Custodian hereunder; but the successor depositary so appointed shall, nevertheless, on the written request of any Custodian, execute and deliver to such Custodian all such instruments as may be proper to give to the Custodian full and complete power and authority as agent hereunder of such successor depositary.

Section 5.6     Notices and Reports to Holders

On or before the first date on which the Company gives notice, by publication or otherwise, of any meeting of holders of Shares or other Deposited Securities, or of any adjourned meeting of such holders, or of the taking of any action by such holders other than at a meeting, the Company shall transmit to the Custodian a copy of the notice thereof in the form given or to be given to holders of Shares or other Deposited Securities. The Depositary will, at the Company's expense, arrange for the prompt transmittal by the Custodian to the Depositary of such notices and of any reports and other communications that are made generally available by the Company to holders of its Shares or other Deposited Securities and arrange for the mailing, at the Company's expense, of copies thereof to all Holders or, at the request of the Company, make such notices, reports and other communications available to all Holders on a basis similar to that for holders of Shares or other Deposited Securities, or on such other basis as the Company may advise the Depositary may be required by any applicable law, regulation or stock exchange requirement. The Company has delivered to the Depositary and the Custodian a copy of the provisions of or governing the Shares and any other Deposited Securities issued by the Company or any affiliate of the Company, and promptly upon any amendment thereto or change therein, the Company shall deliver to the Depositary and the Custodian a copy of such provisions as so amended or changed. The Depositary may rely upon such copy for all purposes of this Agreement. The Depositary will, at the expense of the Company, make such copy and such notices, reports and other communications available for inspection by Holders at the Depositary's Office, at the office of the Custodian and at any other designated transfer offices.

17

Unassociated Document                                                http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

Section 5.7        Issuance of Additional Shares, etc.

Neither the Company nor any company controlling, controlled by or under common control with the Company shall issue additional Shares, rights to subscribe for Shares, securities convertible into or exchangeable for Shares, or rights to subscribe for any such securities or shall deposit any Shares under this Deposit Agreement, except under circumstances complying in all respects with the Securities Act of 1933. The Depositary will use reasonable efforts to comply with written instructions of the Company not to accept for deposit hereunder any Shares identified in such instructions at such times and under such circumstances as may reasonably be specified in such instructions in order to facilitate the Company's compliance with securities laws in the United States.

Section 5.8        Indemnification

The Company shall indemnify, defend and save harmless the Depositary, the Custodian and their respective agents (the "**indemnified persons**") against any loss, liability or expense (including reasonable fees and expenses of counsel) that may arise (a) out of acts performed or omitted in connection with this Deposit Agreement and the Receipts, as the same may be amended, modified or supplemented from time to time, (i) by such indemnified person, except to the extent such loss, liability or expense is due to negligence or bad faith of such indemnified person, or (ii) by the Company or any of its agents (other than the indemnified persons), or (b) out of or in connection with any offer or sale of Receipts, American Depositary Shares, Shares or other Deposited Securities or any registration statement under the Securities Act of 1933 in respect thereof, except to the extent such loss, liability or expense arises out of information (or omissions from such information) relating to such indemnified person, furnished in writing by the Depositary to the Company by such indemnified person expressly for use in a registration statement under the Securities Act of 1933 and so used without any substantive revision from the information provided by the Depositary.

Except as provided in the next succeeding paragraph, each indemnified person shall indemnify, defend and save harmless the Company against any loss, liability or expense incurred by the Company in connection with this Deposit Agreement and the Receipts due to the negligence or bad faith of such indemnified person.

Notwithstanding any other provision of this Deposit Agreement to the contrary, neither the Company nor the Depositary, nor any of their agents, shall be liable to the other for any indirect, special, punitive or consequential damages (collectively "**Special Damages**") except: (i) to the extent such Special Damages arise from the gross negligence or willful misconduct of the party from whom indemnification is sought; or (ii) to the extent Special Damages arise from or out of a claim brought by a third party (including, without limitation, Holders) against the Depositary or its agents, except to the extent such Special Damages arise out of the gross negligence or willful misconduct of the party seeking indemnification hereunder.

The obligations set forth in this Section 5.8 shall survive the termination of this Deposit Agreement and the succession or substitution of any indemnified person.

18

Any person seeking indemnification hereunder shall notify the person from whom it is seeking indemnification (the "**indemnifying person**") of the commencement of any indemnifiable action or claim promptly after such indemnified person actually becomes aware of such commencement (*provided* that the failure to make such notification shall not affect such indemnified person's rights to seek indemnification under this Section 5.8) and shall consult in good faith with the indemnifying person as to the conduct of the defense of such action or claim that may give rise to an indemnity hereunder, which defense shall be reasonable in the circumstances. No indemnified person shall compromise or settle any action or claim that may give rise to an indemnity hereunder without the written consent of the indemnifying person, which consent shall not be unreasonably withheld or delayed.

Section 5.9          Charges of Depositary

The Company agrees to pay all reasonable charges and out-of-pocket expenses of the Depositary and those of any Receipt registrar, co-transfer agent, and co-registrar and any other agent of the Depositary appointed under this Deposit Agreement (except those of the Custodian which are for the sole account of the Depositary, except as provided in Section 5.8) that are shown in Exhibit B hereto, which is hereby incorporated herein, to be payable by the Company, notwithstanding the termination of this Deposit Agreement or the succession or substitution of any such person. Any other charges and expenses of the Depositary and its agents hereunder not otherwise provided for herein will be paid by the Company after consultation and agreement between the Depositary and the Company as to the amount and nature of such charges and expenses. Such charges may at any time and from time to time be changed by agreement between the Company and the Depositary. Except as may be otherwise agreed between the Company and the Depositary, the Company shall not pay or be liable for (1) the expenses of the Depositary for the execution and delivery of Receipts pursuant to Section 2.3, transfers of Receipts pursuant to Section 2.4, the surrender of Receipts pursuant to Section 2.5, and the making of distributions pursuant to Section 4.1, (2) the items mentioned on Exhibit B hereto as not being payable by the Company and (3) overhead expenses and any other expenses (including, without limitation, salaries and benefits to employees) incident to the administration in the ordinary course of this Deposit Agreement.

Section 5.10         Statutory Reports

The Depositary shall make available for inspection by Holders at the Depositary's Office, at the office of the Custodian and at any other designated transfer offices any reports and communications received from the Company which are both (a) received by the Depositary, the Custodian or the nominee of either as the holder of Deposited Securities and (b) made generally available to the holders of Deposited Securities by the Company. In connection with any registration statement relating to the Receipts, the Company and the Depositary shall each furnish to the other and to the Commission such information as shall be required to make such filings.

Section 5.11         Available Information to the Commission

The Company is subject to the periodic reporting requirements of the Securities Exchange Act of 1934 and agrees to file all required reports with the Commission.

## ARTICLE VI
## AMENDMENT AND TERMINATION

Section 6.1          Amendment

The Receipts and any provisions of this Deposit Agreement may at any time and from time to time be amended by agreement between the Company and the Depositary without the consent of Holders in any respect. Any amendment that shall impose or increase any fees or charges (other than the fees and charges referred to in clauses (a) through (d) in Exhibit B hereto) or that shall otherwise prejudice any substantial existing right of Holders, shall not, however, become effective as to outstanding Receipts until the expiration of 30 days after notice of such amendment shall have been given to the Holders. Every Holder at the expiration of 30 days after such notice shall be deemed by holding such Receipt to consent and agree to such amendment and to be bound by the Deposit Agreement or the Receipts as amended thereby. In no event shall any amendment impair the right of

the Holder of any Receipt to surrender such Receipt and receive therefor the Deposited Securities represented thereby, except in order to comply with mandatory provisions of applicable law. Any amendments or supplements which (i) are reasonably necessary (as agreed by the Company and the Depositary) in order for (a) the American Depositary Shares to be registered on Form F-6 under the Securities Act of 1933 or (b) the American Depositary Shares or Shares to be traded solely in electronic book-entry form and (ii) do not in either such case impose or increase any fees or charges to be borne by Holders, shall be deemed not to prejudice any substantial rights of Holders. Notwithstanding the foregoing, if any governmental body or regulatory body should adopt new laws, rules or regulations which would require amendment or supplement of the Deposit Agreement or the form of Receipt to ensure compliance therewith, the Company and the Depositary may amend or supplement the Deposit Agreement and the Receipts at any time in accordance with such changed laws, rules or regulations. Such amendment or supplement to the Deposit Agreement in such circumstances may become effective before a notice of such amendment or supplement is given to Holders or within any other period of time as required for compliance.

19

Section 6.2    Termination

The Depositary shall at any time at the direction of the Company terminate this Deposit Agreement by giving notice of such termination to the Holders at least 30 days prior to the date fixed in such notice for such termination. The Depositary may terminate this Deposit Agreement, upon the notice set forth in the preceding sentence of this Section 6.2, at any time after 90 days after the Depositary shall have delivered to the Company its written resignation, *provided* that no successor depositary shall have been appointed and accepted its appointment as provided in Section 5.4 before the end of such 90 days. After the date so fixed for termination, the Depositary and its agents shall perform no further acts under this Deposit Agreement, except to advise Holders of such termination, to receive and hold distributions on Deposited Securities (or sell property or rights or convert Deposited Securities into cash as provided in this Deposit Agreement) and to deliver Deposited Securities in exchange for Receipts surrendered to the Depositary. As soon as practicable after the expiration of six months from the date so fixed for termination, the Depositary shall sell the Deposited Securities and shall thereafter (so long as it may lawfully do so) hold in a segregated account the net proceeds of any such sale, together with any other cash then held by it hereunder, without liability for interest, in trust for the *pro rata* benefit of the Holders of Receipts that have not theretofore been surrendered. After making such sale, the Depositary shall be discharged from all obligations in respect of the Receipts and this Deposit Agreement, except to account for such net proceeds and other cash. After the date so fixed for termination, the Company shall be discharged from all obligations under this Deposit Agreement except for its obligations to the Depositary and its agents under Sections 5.8 and 5.9.

## ARTICLE VII
## MISCELLANEOUS

Section 7.1    Counterparts

This Deposit Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of such counterparts shall constitute one and the same instrument. Copies of this Deposit Agreement shall be filed with the Depositary and the Custodian and shall be open to inspection by any Holder during business hours.

20

Section 7.2           No Third Party Beneficiaries

This Deposit Agreement is for the exclusive benefit of the Company, the Depositary, the Custodian and, to the extent contemplated hereby, the Holders, and their respective successors hereunder, and shall not give any legal or equitable right, remedy or claim whatsoever to any other person.

Section 7.3           Severability

In case any one or more of the provisions contained in this Deposit Agreement or in the Receipts should be or become invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein or therein shall in no way be affected, prejudiced or disturbed thereby.

Section 7.4           Holders Parties; Binding Effect

The Holders and owners of Receipts from time to time shall be parties to this Deposit Agreement and shall be bound by all of the terms and conditions hereof and of the Receipts by acceptance thereof.

Section 7.5           Notices

(a)   **To the Company**

Any and all notices to be given to the Company shall be duly given if sent by mail, or by cable, telex, electronic or facsimile transmission, addressed to BP p.l.c., 1 St. James's Square, London SW1Y 4PD, England, Attention: Company Secretary, or any other address which the Company may specify in writing to the Depositary.

(b)   **To the Depositary**

Any and all notices to be given to the Depositary shall be duly given if sent by mail, or by cable, telex, electronic or facsimile transmission, addressed to JPMorgan Chase Bank, N.A., 4 New York Plaza, 13th Floor, New York, New York 10004, Attention: ADR Department, which is the location of the Depositary's Office on the date of this Deposit Agreement, or any other address which the Depositary may specify in writing to the Company.

(c)   **To the Holders**

Any and all notices to be given to any Holder shall be duly given if sent by mail, or by cable, telex, electronic or facsimile transmission, addressed to such Holder at the address of such Holder as it appears on the transfer books for Receipts of the Depositary, or, if such Holder shall have filed with the Depositary a written request that notices intended for such Holder be mailed to some other address, at the address designated in such request.

(d)   **General**

Notice given as aforesaid, (i) to the Company or the Depositary, shall be deemed to be effected when received, and (ii) to a Holder by mail or by cable, telex, electronic or facsimile transmission, shall be deemed to be effected at the time when a duly addressed letter containing the same (or a confirmation thereof in the case of a cable, telex, electronic or facsimile transmission) is deposited in a post-office letter box. The Depositary or the Company may act upon any cable, telex, electronic or facsimile transmission received by it from the other or from any Holder, notwithstanding that such cable, telex, electronic or facsimile transmission shall not

Unassociated Document                           http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

subsequently be confirmed as aforesaid.

21

Section 7.6        Governing Law

This Deposit Agreement and the Receipts shall be interpreted and all rights hereunder and thereunder and provisions hereof and thereof shall be governed by the laws of the State of New York.

22

Unassociated Document  http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

**In Witness Whereof, BP p.l.c.** and **JPMorgan Chase Bank N.A.** have duly executed this Amended and Restated Deposit Agreement as of the day and year first above set forth and all holders of Receipts shall become parties hereto upon acceptance by them of Receipts issued in accordance with the terms hereof.

**BP p.l.c.**

By: _____
    Name:    David Jackson
    Title:     Company Secretary

**JPMorgan Chase Bank N.A.**

By: _____
    Name:    Joseph M. Leinhauser,
    Title:     Vice President

23

Unassociated Document                                                         http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

# EXHIBIT A

## TO DEPOSIT AGREEMENT
[FORM OF FACE OF RECEIPT]

AMERICAN DEPOSITARY RECEIPT

evidencing

AMERICAN DEPOSITARY SHARES

representing

ORDINARY SHARES

of

BP p.l.c.

(Organized under the laws of England and Wales)

No.

JPMorgan Chase Bank N.A., a national banking association organized under the laws of the United States, as depositary (the "**Depositary**"), hereby certifies that            is the owner of American Depositary Shares, representing deposited Ordinary Shares of $0.25 each, including rights to receive such Ordinary Shares ("**Shares**"), of BP p.l.c., a corporation organized under the laws of England and Wales and its successors (the "**Company**"). At the date hereof, each American Depositary Share represents six (6) Shares deposited under the Deposit Agreement (hereinafter defined) with the Depositary or the Custodian. Capitalized terms used herein that are not defined herein shall have the meanings assigned to them in the Deposit Agreement.

1       The Deposit Agreement

This American Depositary Receipt is one of the receipts executed and delivered (the "**Receipts**"), pursuant to the Amended and Restated Deposit Agreement dated as of, to the Deposit Agreement dated as of December 31, 1998, as amended (as amended from time to time, the "**Deposit Agreement**"), by and among the Company, the Depositary (and any of its successors) and all registered holders ("**Holders**") from time to time of Receipts, each of whom by accepting a Receipt becomes a party thereto, bound by all applicable terms and provisions thereof and hereof. The Deposit Agreement sets forth the rights of Holders and the rights and duties of the Depositary in respect of the Shares deposited thereunder and any rights to receive Shares and all other securities, property and cash from time to time received in respect of such Shares and held thereunder (such securities, property and cash, collectively, the "**Deposited Securities**"). Copies of the Deposit Agreement and of the Company's provisions of or governing Deposited Securities are on file at the Depositary's Office, the office of the Custodian and at any other designated transfer office. The statements made on the face and the reverse of this Receipt are summaries of certain provisions of the Deposit Agreement and are qualified by and subject to the detailed provisions thereof. The Depositary makes no representation or warranty as to the validity or worth of the Deposited Securities.

A-1

2    **Withdrawal of Deposited Securities**

Upon surrender of this Receipt and payment of the fee of the Depositary provided for in paragraph 8 of this Receipt at the Depositary's Office or at such other offices as it may designate, subject to the Deposit Agreement and the provisions of or governing the Deposited Securities, the Holder hereof is entitled to the delivery without unreasonable delay at the office of the Custodian to such Holder or upon such Holder's order of the Deposited Securities at the time represented by the American Depositary Shares evidenced by this Receipt. At the request, risk and expense of the Holder hereof, the Depositary may deliver such Deposited Securities at the Depositary's Office or at such other place as may have been requested by the Holder. Delivery of Deposited Securities may be made by the delivery of certificates to the extent such Deposited Securities may be represented by certificates. Delivery of Deposited Securities consisting of Shares shall only be made by delivery of Shares in registered form. Notwithstanding any other provision of the Deposit Agreement or this Receipt, the Depositary may restrict the withdrawal of Deposited Securities only for the reasons set forth in General Instruction I.A.(1) of Form F-6 under the Securities Act of 1933.

3    **Transfers, Combinations and Split-ups**

Subject to paragraph 4, this Receipt is transferable on the register maintained by the Depositary by the Holder hereof in person or by duly authorized attorney, upon surrender of this Receipt at any designated transfer office properly endorsed or accompanied by proper instruments of transfer and duly stamped as may be required by applicable law. This Receipt may be split into other Receipts or may be combined with other Receipts into one Receipt, evidencing the same aggregate number of American Depositary Shares as those evidenced by the Receipt or Receipts surrendered.

4    **Certain Limitations**

Prior to the issuance, execution, delivery, registration, registration of transfer, split-up or combination of this Receipt, the delivery of any distribution in respect hereof, or, subject to the last sentence of paragraph 2, the withdrawal of any Deposited Securities represented by the American Depositary Shares evidenced by this Receipt, the Depositary, the Company or the Custodian may require: (a) payment of a sum sufficient to pay or reimburse it for payment of (i) any stock transfer or other tax or other governmental charge with respect thereto, other than Relevant Duties payable by the Company in accordance with paragraph 5, (ii) any stock transfer or registration fees in effect for the registration of transfers of Shares or other Deposited Securities upon any applicable register and (iii) any applicable charges as provided in paragraph 8 of this Receipt; (b) the production of proof satisfactory to it of the identity and genuineness of any signature and of such other information (including without limitation information as to citizenship, residence, exchange control approval, or legal or beneficial ownership of any securities) as it may deem necessary or proper or as the Company may require; and (c) compliance with such reasonable regulations, if any, as the Depositary and the Company may establish consistent with the provisions of the Deposit Agreement. The delivery of Receipts against deposits of Shares may be suspended, deposits of Shares may be refused, or the registration of transfer of Receipts, their split-up or combination or, subject to the last sentence of paragraph 2, the withdrawal of Deposited Securities may be suspended, generally or in particular instances, when the Receipt register or any register for Shares or other Deposited Securities is closed or any time or from time to time when any such action is deemed necessary or advisable by the Depositary or the Company. The Depositary will not issue Receipts against rights to receive Shares unless (x) such Receipts are fully collateralized (marked to market daily) with cash, U.S. government securities or such other collateral as the Depositary deems appropriate until such Shares are deposited, (y) the applicant for such Receipts represents and agrees in writing that such applicant or its customer (i) beneficially owns such Shares, (ii) assigns all beneficial right, title and interest to such Shares to the Depositary, (iii) holds such Shares for the account of the Depositary and (iv) will deliver such Shares upon the Depositary's request (no evidence of ownership is required or time of delivery specified) and (z) all such Receipts which are outstanding at any time as a result of pre-release represent not more than 20%, or such other percentage as the Company may determine in its sole discretion, of the total number of Shares represented by American Depositary Receipts except to the extent, if any, that such limitation is exceeded as a result of the withdrawal of Deposited Securities subsequent to the execution and delivery of pre-released Receipts in compliance with such limitation. Such collateral, but not the earnings thereon, will be held for the benefit of the Holders. Any issue of pre-released Receipts shall also be subject to such further limitations as may be agreed between the Company and the Depositary from time to time. The Depositary may retain for its own

account any compensation for the issuance of Receipts against such other rights to receive Shares, including without limitation earnings on the collateral securing such rights. Subject to the provisions of this paragraph 4 with respect to the issuance of Receipts against rights to receive Shares, neither the Depositary nor the Custodian shall lend Deposited Securities. The Depositary will not knowingly accept for deposit under the Deposit Agreement any Shares required to be registered under the Securities Act of 1933 and not so registered; the Depositary may refuse to accept for such deposit any Shares identified by the Company in order to facilitate the Company's compliance with securities laws in the United States.

A-2

Unassociated Document                                    http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

5   Liability of Holder for Taxes

If any tax or other governmental charge, including any interest or penalties thereon, shall become payable by or on behalf of the Custodian, the Depositary or the nominee of either of them with respect to this Receipt or any Deposited Securities represented by the American Depositary Shares evidenced by this Receipt, such tax or other governmental charge shall be payable by the Holder in whose name this Receipt is registered at the time such tax or other governmental charge is incurred, who shall pay the amount thereof to the Depositary; *provided* that to the extent that any United Kingdom stamp duty, stamp duty reserve tax or other similar United Kingdom governmental charge (or any interest or penalties thereon) (each, a "**Relevant Duty**") arises in connection with (a) the deposit of Shares, whether in registered form or in the form of share warrants to bearer (the "**Exchange Shares**"), in connection with (i) the exchange of Receipts for common stock without par value ("**Amoco Shares**") of Amoco Corporation pursuant to the Agreement and Plan of Merger dated as of August 11, 1998, as amended as of October 22, 1998 (the "**Merger Agreement**"), by and among The British Petroleum Company p.l.c., Amoco Corporation and Eagle Holdings, Inc., or (ii) the issue of Receipts upon the exercise of employee stock options over Amoco Shares outstanding as of the Effective Date (as defined in the Merger Agreement), into the facility created by the Deposit Agreement, including but not limited to the agreement to transfer, the transfer and the delivery of Exchange Shares, whether in registered form or in the form of share warrants to bearer, to the Depositary, the Custodian or the nominee of either of them and any issue of American Depositary Shares by the Depositary in respect thereof or (b) the holding of Shares in the form of share warrants to bearer, the transfer of Receipts representing Shares in the form of share warrants to bearer or the exchange of Shares in the form of share warrants to bearer for Shares in registered form by the Depositary, the Custodian or the nominee of either of them, but only, in the case of this clause (b), to the extent that such Relevant Duty arises out of, or is imposed as a consequence of, the fact that Exchange Shares were deposited in the form of share warrants to bearer as referred to in clause (a), such Relevant Duty shall be payable by the Company and not by the Holder, and the Company shall be liable for such payment. In cases where this paragraph 5 requires a payment to be made to the Depositary by a Holder, the Depositary may refuse to effect any registration of transfer of this Receipt or any split-up or combination hereof or any withdrawal of such Deposited Securities until such payment is made, and may withhold or deduct from any distributions on such Deposited Securities, or may sell for the account of the Holder hereof any part or all of such Deposited Securities (after attempting by reasonable means to notify the Holder hereof prior to such sale), and may apply such cash or the proceeds of any such sale in payment of such tax or other governmental charge, the Holder hereof remaining liable for any deficiency. Neither the Company, the Depositary nor any of their respective officers, directors, representatives or agents will be liable for failure of a Holder to comply with applicable tax laws or governmental charges.

A-3