Unassociated Document                                                    http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

6     **Warranties by Depositor**

Every person depositing Shares under the Deposit Agreement shall be deemed thereby to represent and warrant that such Shares and any certificate therefor are validly issued and outstanding, fully paid, nonassessable and free of preemptive rights, that the person making such deposit is duly authorized so to do and that such Shares are not "restricted securities" as such term is defined in Rule 144 of the Securities Act of 1933 unless at the time of deposit they may be freely transferred in accordance with Rule 144(k) and may otherwise be offered and sold freely in the United States. Such representations and warranties shall survive the deposit of Shares and the execution and delivery of Receipts.

7     **Disclosure of Interests**

Notwithstanding any other provision of the Deposit Agreement or this Receipt, the Holder hereof agrees to comply with requests from the Company which are made under statutory provisions in the United Kingdom to provide information as to the capacity in which such Holder owns this Receipt and regarding the identity of any other person interested in this Receipt and the nature of such interest and may, pursuant to such statutory provisions and any provisions of the constituent documents of the Company, forfeit the right to vote and to direct the voting of, and be prohibited from transferring, this Receipt if compliance is not made, all as if this Receipt were to the extent practicable the Shares represented hereby, and the Depositary agrees to use its reasonable efforts to comply with any instructions received from the Company requesting that the Depositary take the reasonable actions specified therein to obtain such information.

8     **Charges of Depositary**

The Depositary will charge each person to whom Receipts are delivered against deposits of Shares, and each person surrendering Receipts for withdrawal of Deposited Securities, U.S. $5.00 for each 100 American Depositary Shares (or portion thereof) evidenced by the Receipts delivered or surrendered. The Company will pay all other charges and expenses of the Depositary and those of any Receipt registrar, co-transfer agent, co-registrar and any other agent of the Depositary (except the Custodian, other than as provided in the Deposit Agreement), except (i) stock transfer or other taxes and other governmental charges (which are payable by Holders or persons depositing Shares or other Deposited Securities, except as otherwise provided in paragraph 5), (ii) cable, telex, electronic and facsimile transmission and delivery charges incurred at the request of persons depositing Shares or Holders delivering Shares, Receipts or Deposited Securities (which are payable by such persons or Holders), (iii) transfer or registration fees for the registration of transfers of deposited Shares and other Deposited Securities on any applicable register in the name of the Custodian or its nominee in connection with the deposit of Shares or in the name of such person as a Holder may direct in connection with any withdrawal of Deposited Securities (which are payable by persons depositing Shares or Holders withdrawing Deposited Securities; there are no such fees payable by such persons or Holders in respect of the Shares as of the date of the Deposit Agreement), and (iv) expenses of the Depositary in connection with the conversion of foreign currency into U.S. dollars (which are paid out of such foreign currency). The provisions in respect of these charges may be changed in the manner indicated in paragraph 21.

A-4

9   **Title to Receipts**

Title to this Receipt (and to the Deposited Securities represented by the American Depositary Shares evidenced hereby), when properly endorsed or accompanied by properly executed instruments of transfer, is transferable by delivery with the same effect as in the case of a negotiable instrument; *provided* that the Company and the Depositary, notwithstanding any notice to the contrary, may treat the person in whose name this Receipt is registered on the register maintained by the Depositary as the absolute owner hereof for the purpose of determining the person entitled to any distribution or notice and for all other purposes.

10  **Validity of Receipt**

This Receipt shall not be entitled to any benefits under the Deposit Agreement or be valid or obligatory for any purpose unless executed by the Depositary by the manual or facsimile signature of a duly authorized officer of the Depositary.

11  **Available Information**

The Company is subject to the periodic reporting requirements of the Securities Exchange Act of 1934 and accordingly files certain reports with the Securities and Exchange Commission. Such reports and other information may be inspected and copied at the public reference facilities maintained by the Commission and located at the date of the Deposit Agreement at 100 F Street, NE, Room 1580, Washington, D.C. 20549.

Dated:

JPMorgan Chase Bank N.A., as Depositary

By: _____
    Authorized Officer

The address of the Depositary's Office is    4 New York Plaza
    13th Floor.
    New York, NY 10004
    Attention: ADR Department

A-5

Unassociated Document

http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

[FORM OF REVERSE OF RECEIPT]

SUMMARY OF CERTAIN ADDITIONAL PROVISIONS
OF THE DEPOSIT AGREEMENT

12      Distributions Upon Deposited Securities

Whenever the Company shall make any cash dividend or other cash distribution on Deposited Securities available in U.S. dollars and it is possible, whether by election or other action, for the Depositary to receive that dividend or distribution in U.S. dollars, the Depositary shall take any action to enable it to receive such dividend or distribution in U.S. dollars. In respect of any other cash dividend or cash distribution by the Company on any Deposited Securities, whenever the Depositary or the Custodian shall receive any cash dividend or other cash distribution upon any Deposited Securities, the Depositary shall after any necessary conversion of such distribution into U.S. dollars and after fixing a record date in respect thereof, subject to the Deposit Agreement, distribute as promptly as reasonably practicable the amount thus received, by checks drawn on or electronic transfers from a bank in the United States, to the Holders of record on the record date set by the Depositary therefor of Receipts evidencing American Depositary Shares representing such Deposited Securities, in proportion to the number of American Depositary Shares representing such Deposited Securities held by each of them respectively; *provided* that the Depositary shall make appropriate adjustments in the amounts so distributed in respect of (a) any of the Deposited Securities being not entitled, by reason of its date of issuance or otherwise, to receive all or any portion of such distribution or (b) any amounts (i) required to be withheld by the Company, the Custodian or the Depositary on account of taxes or (ii) charged by the Depositary in connection with the conversion of foreign currency into U.S. dollars, *provided* that if the Company shall announce any cash dividend on Deposited Securities in U.S. dollars, the Company shall cause the amount of U.S. dollars paid to the Depositary to be such that, subject to (i) above, the amount paid in respect of each Deposited Security hereunder is equal to the amount of the cash dividend per Share as so announced. The Depositary shall distribute only such amount as can be distributed without distributing to any Holder a fraction of one cent. Fractional cents will be withheld without liability and dealt with by the Depositary in accordance with its then current practices. Cash distributions and cash proceeds from sales of non-cash distributions in foreign currency which, in the judgment of the Depositary can then be converted on a reasonable basis into U.S. dollars which can then be transferred to the United States, will, as promptly as practicable, be converted by sale or in such other manner as the Depositary may determine into U.S. dollars (net of the Depositary's charges and expenses in effecting such conversion) before distribution to Holders. If in the reasonable judgment of the Depositary amounts received in foreign currency may not be converted on a reasonable basis into U.S. dollars transferable to the United States, or may not be so convertible for all of the Holders entitled thereto, the Depositary may in its discretion make such conversion and distribution in U.S. dollars to the extent reasonable and permissible to the Holders entitled thereto and may distribute the balance in foreign currency to the Holders entitled thereto or hold such balance or all such foreign currency for the Holders entitled thereto (uninvested and without liability for interest thereon). So long as the Company may list its Shares on a stock exchange in Canada and maintain a co-transfer agent in Canada, in the case of Holders who are registered on the books of the Depositary with an address in Canada ("**Canadian Holders**") and who have not filed the election referred to in the next following sentence, references above in this paragraph 12 to "U.S. dollars" shall mean and be deemed to refer to Canadian dollars, references to "transferred to the United States" shall mean and be deemed to refer to "transferred to Canada", references to "transferable to the United States" shall mean and be deemed to refer to "transferable to Canada" and references to "bank in the United States" shall mean and be deemed to refer to "bank in Canada".

A-6

Unassociated Document                                              http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

Canadian Holders may file with the Depositary an election, in form and substance satisfactory to the Depositary, stating that they wish to receive any cash dividends or other cash distributions in U.S. dollars, *provided* that in order to take effect with respect to any distribution such election must be duly completed and received by the Depositary not less than 30 days before the record date for such distribution. If any distribution upon any Deposited Securities consists of a dividend in, or free distribution of, Shares, the Depositary may or shall if the Company shall so request, subject to the Deposit Agreement, distribute to the Holders on a record date set by the Depositary therefor of Receipts evidencing American Depositary Shares representing such Deposited Securities, in proportion to the number of American Depositary Shares representing such Deposited Securities held by each of them respectively, additional Receipts for an aggregate number of Depositary Shares representing the number of Shares received as such dividend or free distribution. In lieu of delivering Receipts for fractional American Depositary Shares in the case of any such distribution, the Depositary shall sell the number of Shares represented by the aggregate of such fractions and distribute the net proceeds to the Holders entitled thereto as in the case of a distribution received in cash. If additional Receipts are not so distributed, each American Depositary Share shall thenceforth also represent its proportionate interest in the additional Shares so distributed upon such Deposited Securities. If the Company shall offer or cause to be offered to the holders of any Deposited Securities any rights to subscribe for additional Shares or any rights of any nature, the Depositary shall have discretion, after consultation with the Company, as to the procedure to be followed in making such rights available to the Holders or in disposing of such rights and distributing the net proceeds thereof; *provided* that the Depositary will, if requested by the Company, subject to the Deposit Agreement either (y) make such rights available to Holders by means of warrants or otherwise, if lawful and feasible, or (z) if making such rights available is not lawful or not feasible, or if such rights or warrants are not exercised and appear to be about to lapse, sell such rights or warrants at public or private sale, at such place or places and upon such terms as the Depositary may deem proper, and allocate the proceeds of such sales for account of the Holders otherwise entitled thereto upon an averaged or other practicable basis without regard to any distinctions among such Holders because of exchange restrictions, or the date of delivery of any Receipt or Receipts, or otherwise, and distribute the net proceeds so allocated to the Holders entitled thereto to the extent practicable as in the case of a distribution received in cash. The Depositary will distribute to Holders on the record date set by it therefor any distribution on Deposited Securities other than cash, Shares or rights in any manner that the Depositary deems equitable and practicable; *provided* that if in the opinion of the Depositary any distribution other than cash, Shares or rights upon any Deposited Securities cannot be made proportionately among the Holders entitled thereto, or if for any other reason (including any tax withholding or securities law requirement) the Depositary deems such distribution not to be feasible, the Depositary may adopt such method as it may deem equitable and practicable for the purpose of effecting such distribution, including the sale (at public or private sale) of the securities or property thus received, or any part thereof, and the distribution by the Depositary of the net proceeds of any such sale to the Holders entitled thereto as in the case of a distribution received in cash. The Depositary need not distribute securities, Receipts or rights unless the Company furnishes certain evidence or opinions in respect of United States securities laws (which the Company has no obligation to do).

A-7

13     **Record Dates**

Whenever any distribution is being made upon any Deposited Securities or any meeting of holders of Shares or other Deposited Securities is being held or whenever the Depositary shall find it necessary or convenient in connection with the giving of any notice, solicitation of any consent or any other matter, the Depositary will, after consultation with the Company, fix a record date for the determination of the Holders who shall be entitled to receive such distribution or the net proceeds of the sale thereof, to vote or to give instructions for the exercise of voting rights at any such meeting, to receive such notice or solicitation or to act in respect of such other matter, subject to the provisions of the Deposit Agreement, which shall, to the extent practicable, be the same date as is fixed by the Company for the Deposited Securities.

14     **Voting of Deposited Securities**

The Depositary or, if the Deposited Securities are registered in the name of or held by its nominee, its nominee, subject to and in accordance with the Company's constituent documents, irrevocably appoints the Holder hereof for the time being on the record date (the "**Voting Record Date**") fixed by the Depositary in respect of any meeting (at which holders of Shares or other Deposited Securities are entitled to vote) as its proxy to attend, vote and speak at the relevant meeting (or any adjournment thereof) in respect of the Deposited Securities represented hereby on the Voting Record Date. In respect of any such meeting such Holder can appoint any person to attend, vote and speak on its behalf subject to and in accordance with the provisions of this paragraph and the constituent documents of the Company. As soon as practicable after receipt of notice of any meeting at which the holders of Deposited Securities are entitled to vote, or of solicitation of consents or proxies from holders of Deposited Securities, the Depositary will in accordance with paragraph 13 fix the Voting Record Date in respect of such meeting or solicitation. The Depositary or, if the Company so determines, the Company, will distribute by mail, or such other means and manner as may be mutually agreed between the Depositary and the Company, to the Holder of record hereof on such Voting Record Date: (a) such information as is contained in such notice of meeting or in the solicitation materials, (b) a Receipt proxy card in a form prepared by the Depositary, (c) a statement that the Holder hereof at the close of business on the Voting Record Date will be entitled, subject to any applicable law, the Company's constituent documents and the provisions of or governing the Deposited Securities, either (i) to use such Receipt proxy card in order to attend, vote and speak at such meeting as the proxy of the Depositary or its nominee solely with respect to the Shares or other Deposited Securities represented by American Depositary Shares evidenced by this Receipt or (ii) to appoint any other person as the substitute proxy of such Holder, solely with respect to the Shares or other Deposited Securities represented by American Depositary Shares evidenced by this Receipt or (iii) to provide Voting Instructions to the Depositary as to the exercise of the voting rights pertaining to the Shares or other Deposited Securities represented by American Depositary Shares evidenced by this Receipt, and (d) if the Depositary is to be given Voting Instructions by such Holder, a brief statement as to the manner in which Voting Instructions may be given to the Depositary. Upon the written request of a Holder of record hereof on the Voting Record Date received on or before the date established by the Depositary for such purpose, the Depositary shall endeavor, insofar as practicable and permitted under applicable law, and the provisions of the Company's constituent documents and the provisions of the Deposited Securities, to vote or cause to be voted the Deposited Securities in accordance with the instructions set forth in such request.

A-8

Unassociated Document    http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

Any appointment or purported appointment by a Holder (or such Holder's substitute proxy) of the Depositary as proxy in respect of Deposited Securities held by the Depositary, and any appointment or purported appointment by such a Holder (or such Holder's substitute proxy) of the Depositary's nominee as proxy in respect of Deposited Securities held by that nominee, shall operate (a) as a renunciation of the proxy initially provided by the Depositary or its nominee to such Holder or such Holder's substitute proxy in relation to those Deposited Securities, and (b) as an instruction to the Depositary (or its nominee, as the case may be) to cast the votes attaching to those Deposited Securities (or to refrain from casting such votes) in the manner indicated by the Holder (or such Holder's substitute proxy) in the appointment or purported appointment.

For the avoidance of doubt, when the Depositary receives Voting Instructions from a substitute proxy of a Holder (including, without limitation, instructions from ADP Inc. or any other entity acting on behalf of participants and/or customers of participants within The Depository Trust Company) or their agents, and such registered Holder has notified the Depositary that it holds Receipts on behalf of such substitute proxies, the Depositary shall treat such Voting Instructions as coming from an entity that holds Receipts on behalf of such substitute proxies and the Depositary shall vote or cause to be voted the Deposited Securities in accordance with such instructions.

Neither the Depositary nor the Custodian shall exercise any discretion as to voting and neither the Depositary nor the Custodian shall vote or attempt to exercise the right to vote the Shares or other Deposited Securities represented by American Depositary Shares evidenced hereby except pursuant to and in accordance with such Voting Instructions from the Holder hereof given in accordance with this paragraph 14. Shares or other Deposited Securities represented by American Depositary Shares evidenced hereby for which no specific Voting Instructions are received by the Depositary from the Holder hereof shall not be voted by the Depositary but may be directly voted by the Holder in attendance at meetings of shareholders as proxy for the Depositary or its nominee, subject to, and in accordance with, the provisions of this paragraph and the Company's constituent documents.

15   **Changes Affecting Deposited Securities**

Upon any change in par value, split-up, consolidation, cancellation or any other reclassification of Deposited Securities, or upon any recapitalization, reorganization, merger or consolidation or sale of assets affecting the Company or to which it is a party, any securities that shall be received by the Depositary or the Custodian in exchange for, or in conversion, replacement or otherwise in respect of, Deposited Securities shall be treated as Deposited Securities under the Deposit Agreement; and, the Depositary may with the Company's approval, and shall if the Company shall so request, execute and deliver additional Receipts in respect of such securities as in the case of a dividend of Shares or call for the surrender of outstanding Receipts to be exchanged for new Receipts, reflecting such securities, and to the extent that such additional or new Receipts are not delivered this Receipt shall thenceforth evidence American Depositary Shares representing the right to receive the Deposited Securities including the securities so received.

16   **Reports; Inspection of Register**

The Depositary will make available for inspection by Holders at the Depositary's Office, at the office of the Custodian and at any other designated transfer offices any reports and communications received from the Company which are both (a) received by the Depositary, the Custodian or the nominee of either as the holder of the Deposited Securities and (b) made generally available to the holders of Deposited Securities by the Company. The Depositary or its agent will keep at facilities in the United States a Receipt register for the registration of Receipts and their transfer that at all reasonable times will be open for inspection by the Holders and the Company; *provided* that such inspection shall not be for the purpose of communicating with Holders in the interest of a business or object other than the business of the Company or a matter related to the Deposit Agreement or the Receipts. The Depositary, upon request by the Company, will make available access to the Receipt register at an office in the Borough of Manhattan, The City of New York.

A-9

17  **Withholding**

In connection with any distribution to Holders, the Company will withhold from such distribution and remit to the appropriate governmental authority or agency all amounts (if any) required to be withheld by the Company and owing to such authority or agency by the Company; and the Depositary and the Custodian will remit to the appropriate governmental authority or agency all amounts (if any) required to be withheld by the Company and owing to such authority or agency by the Depositary or the Custodian. If the Depositary determines that any distribution in property other than cash (including Shares or rights) on Deposited Securities is subject to any tax that the Depositary or the Custodian is obligated to withhold, the Depositary may dispose of all or a portion of such property in such amounts and in such manner, as the Depositary reasonably deems necessary and practicable to pay such taxes, by public or private sale and the Depositary shall distribute the net proceeds of any such sale or the balance of any such property after deduction of such taxes to the Holders entitled thereto.

18  **Actions by Holders**

The Depositary shall cause its nominee, Guaranty Nominees Limited, or a successor nominee, in its capacity as a member of the Company in respect of the Shares and other Deposited Securities, from time to time, to take such limited actions as may be reasonably requested in writing by a Holder, to the extent practicable and subject to any applicable law, regulation, stock exchange requirement or the constituent documents of the Company, solely to enable such Holder to exercise those rights to which Guaranty Nominees Limited or such successor nominee is entitled by virtue of being a member of the Company in respect of the Shares or other Deposited Securities represented by the American Depositary Shares evidenced by such Holder's Receipts; *provided, however*, that, with respect to rights other than as set forth in paragraph 14, Guaranty Nominees Limited or such successor nominee shall take such action only to the extent that (a) it has been fully indemnified to its reasonable satisfaction by the Holder against any and all loss, liability, or expense which it shall suffer or reasonably incur, (b) such Holder has provided and will continue to provide as reasonably requested from time to time security in the form of a bond or otherwise in relation to such action reasonably satisfactory to the Depositary, and (c) any legal proceeding or similar action brought on behalf of such Holder pursuant to the exercise of such rights shall be brought in the name of Guaranty Nominees Limited or a successor nominee and not in the name of the Depositary and shall state that Guaranty Nominees Limited or such successor nominee is involved solely for the purpose of enabling the Holder to establish a right of action and for no other purpose and that Guaranty Nominees Limited or such successor nominee has no other interest in such matter. Any exercise of such rights or powers shall be for the sole benefit of, and at the cost and expense of, such Holder.

A-10

19  Liability of the Company and the Depositary

Neither the Depositary, its agents nor the Company shall incur any liability if, by reason of any present or future law, rule or regulation of the United States, the United Kingdom or any other country or of any government or governmental or regulatory authority or any securities exchange or market or automated quotation system, the provisions of or governing any Deposited Securities, any present or future provision of the Company's constituent documents, act of God, war, terrorism or other circumstance beyond its control, the Depositary, its agents or the Company shall be prevented or forbidden from, or subjected to any civil or criminal penalty on account of, or delayed in, doing or performing any act or thing which by the terms of the Deposit Agreement it is provided shall be done or performed nor shall the Depositary, its agents or the Company incur any liability to any Holder or other person by reason of any nonperformance or delay, caused as aforesaid, in performance of any act or thing that by the terms of the Deposit Agreement it is provided shall or may be done or performed, or by reason of any exercise of, or failure to exercise, any discretion provided for in the Deposit Agreement. Each of the Company, the Depositary and its agents assumes no obligation and shall be subject to no liability under the Deposit Agreement or this Receipt to Holders or other persons, except to perform such obligations as are specifically set forth and undertaken by it to perform in the Deposit Agreement without negligence or bad faith. Neither the Depositary, its agents nor the Company will be (a) under any obligation to appear in, prosecute or defend any action, suit or other proceeding in respect of any Deposited Securities or this Receipt that in its opinion may involve it in expense or liability, unless indemnity satisfactory to it in its sole discretion against all expense and liability be furnished as often as may be required or (b) liable for any action or inaction by it in reliance upon the advice of or information from legal counsel, accountants, any person presenting Shares for deposit, any Holder, or any other person believed by it to be competent to give such advice or information. Each of the Depositary, its agents and the Company may rely and shall be protected in acting upon any written notice, request, direction or other document believed by it to be genuine and to have been signed or presented by the proper party or parties. The Depositary and its agents will not be responsible for any failure to carry out any instructions to vote any of the Deposited Securities, for the manner in which any such vote is cast, in each case to the extent the Depositary or its agents act without negligence or willful misconduct, or for the effect of any such vote. The Depositary and its agents may own and deal in any class of securities of the Company and its affiliates and in Receipts. The Company has agreed to indemnify the Depositary, Custodian and any other agent of the Depositary (the "**indemnified persons**") under certain circumstances and each indemnified person has agreed to indemnify the Company and its agents under certain circumstances.

20  Resignation and Removal of Depositary; the Custodian

The Depositary may at any time resign as Depositary under the Deposit Agreement by written notice of its election so to do delivered to the Company or be removed by the Company by written notice of such removal delivered to the Depositary, such resignation or removal to take effect upon the appointment of and acceptance by a successor depositary as provided in the Deposit Agreement. The Depositary may, upon written request or written approval of the Company at any time appoint substitute or additional Custodians and the term "Custodian" refers to each Custodian or all Custodians as the context requires.

A-11

21   **Amendment of Deposit Agreement and Receipts**

The Receipts and the Deposit Agreement may be amended by agreement between the Company and the Depositary without the consent of Holders. Any amendment that shall impose or increase any fees or charges (other than the fees and charges listed in clauses (i) through (iv) of paragraph 8) or that shall otherwise prejudice any substantial existing right of Holders shall not, however, become effective as to outstanding Receipts until the expiration of 30 days after notice of such amendment shall have been given to the Holders. Every Holder at the expiration of such 30 days shall be deemed by holding such Receipt to consent and agree to such amendment and to be bound by the Deposit Agreement or the Receipt as amended thereby. In no event shall any amendment impair the right of the Holder hereof to surrender this Receipt and receive therefor the Deposited Securities represented hereby, except in order to comply with mandatory provisions of applicable law.

22   **Termination of Deposit Agreement**

The Depositary will at any time at the direction of the Company terminate the Deposit Agreement by mailing notice of such termination to the Holders at least 30 days prior to the date fixed in such notice for such termination. The Depositary may terminate the Deposit Agreement, upon the notice set forth in the preceding sentence, at any time after 90 days after the Depositary shall have resigned, *provided* that no successor depositary shall have been appointed and accepted its appointment within such 90 days. After the date so fixed for termination, the Depositary and its agents will perform no further acts under the Deposit Agreement, except to advise Holders of such termination, receive and hold distributions on Deposited Securities (or sell property or rights or convert Deposited Securities into cash) and deliver Deposited Securities being withdrawn. As soon as practicable after the expiration of six months from the date so fixed for termination, the Depositary shall sell the Deposited Securities and shall thereafter (as long as it may lawfully do so) hold in a segregated account the net proceeds of any such sale, together with any other cash then held by it under the Deposit Agreement, without liability for interest, in trust for the *pro rata* benefit of the Holders of Receipts not theretofore surrendered.

A-12

Unassociated Document	http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

## EXHIBIT B TO DEPOSIT AGREEMENT

### CHARGES OF THE DEPOSITARY

The charges of the Depositary, subject to Sections 5.9 and 6.1 of the Deposit Agreement, are as follows:

| | Service | Rate | By Whom Paid |
|---|---|---|---|
| (1) | Delivery of Receipts against deposits of Shares | $5 per 100 American Depositary Shares or portion thereof | Person to whom Receipts are delivered |
| (2) | Withdrawal of Deposited Securities against surrender of Receipts | $5 per 100 American Depositary Shares or portion thereof | Person surrendering Receipts |

The Company will pay all other charges of the Depositary and those of any Receipt registrar, co-transfer agent, co-registrar and any other agent of the Depositary (except the Custodian, except as provided in Section 5.8 of the Deposit Agreement), plus reasonable expenses such as printing, translation, stationery, postage, insurance, cables, etc., incurred by the Depositary or any such person in the exercise of its duties and obligations under the Deposit Agreement, in accordance with agreements in writing entered into between the Depositary and the Company from time to time, except (a) stock transfer or other taxes and other governmental charges (which are payable by Holders or persons depositing Shares or other Deposited Securities) other than Relevant Duties payable by the Company pursuant to Section 3.2 of the Deposit Agreement, (b) cable, telex, electronic or facsimile transmission and delivery charges incurred at the request of persons depositing Shares or Holders delivering Shares, Receipts or Deposited Securities (which are payable by such persons or Holders), (c) transfer or registration fees for the registration of transfers of deposited Shares and other Deposited Securities on any applicable register in the name of the Custodian or its nominee in connection with the deposit of Shares or in the name of such person as a Holder may direct in connection with the withdrawal of Deposited Securities (which are payable by persons depositing Shares or Holders withdrawing Deposited Securities; there are no such fees payable by such persons or Holders in respect of the Shares as of the date of the Deposit Agreement) and (d) expenses of the Depositary in connection with the conversion of foreign currency into U.S. dollars (which are paid out of such foreign currency).

B-1

Unassociated Document                                    http://www.sec.gov/Archives/edgar/data/313807/0001144204070380...

Table of Contents

| Contents | | Page |
|---|---|---|
| ARTICLE I Definitions | | 1 |
| Section 1.1 | The term "American Depositary Shares" | 1 |
| Section 1.2 | [The term "BP Direct Access Plan" | 1 |
| Section 1.3 | The term "Commission" | 1 |
| Section 1.4 | The term "Custodian" | 1 |
| Section 1.5 | The terms "deliver", "execute", "issue", "register", "surrender", "transfer" or "cancel" | 1 |
| Section 1.6 | The term "Deposit Agreement" | 2 |
| Section 1.7 | The term "Depositary's Office" | 2 |
| Section 1.8 | The term "Deposited Securities" | 2 |
| Section 1.9 | The term "Direct Registration Receipt" | 2 |
| Section 1.10 | The term "Direct Registration System" | 2 |
| Section 1.11 | The term "Holder" | 2 |
| Section 1.12 | The term "Receipt Register" | 2 |
| Section 1.13 | The term "Receipts" | 2 |
| Section 1.14 | The term "Securities Act of 1933" | 2 |
| Section 1.15 | The term "Shares" | 2 |
| Section 1.16 | The term "Tax Treaty Payments" | 2 |
| Section 1.17 | The term "Voting Instruction" | 3 |
| ARTICLE II Form of Receipts, Deposit of Shares, Execution and Transfer of Receipts and Withdrawal of Deposited Securities | | 3 |
| Section 2.1 | Form and Transferability of Receipts | 3 |
| Section 2.2 | Deposit of Shares | 4 |
| Section 2.3 | Execution and Delivery of Receipts | 4 |
| Section 2.4 | Transfer, Combination and Split-up of Receipts | 5 |
| Section 2.5 | Withdrawal of Deposited Securities | 5 |
| Section 2.6 | Limitations on Issuance, Execution, Delivery and Transfer of Receipts and Withdrawal of Deposited Securities | 6 |
| Section 2.7 | Substitution of Receipts | 7 |
| Section 2.8 | Cancellation and Destruction of Receipts | 7 |
| Section 2.9 | Maintenance of Records | 7 |
| ARTICLE III Certain Obligations of Holders | | 7 |
| Section 3.1 | Information | 7 |
| Section 3.2 | Liability of Holder for Taxes | 8 |
| Section 3.3 | Warranties on Deposit of Shares | 8 |
| Section 3.4 | Disclosure of Interests | 9 |
| ARTICLE IV Deposited Securities | | 9 |
| Section 4.1 | Cash Distributions | 9 |
| Section 4.2 | Share Distributions | 10 |
| Section 4.3 | Rights Distributions | 10 |
| Section 4.4 | Other Distributions | 10 |
| Section 4.5 | Conversion of Foreign Currency | 11 |
| Section 4.6 | Fixing of Record Date | 11 |
| Section 4.7 | Voting of Deposited Securities | 12 |

J. Gill Declaration Exhibit F Page 43 of 46

| | | |
|---|---|---|
| Section 4.8 | Changes Affecting Deposited Securities | 13 |
| Section 4.9 | Withholding | 13 |
| Section 4.10 | Canadian Holders | 14 |
| Section 4.11 | Actions by Holders | 14 |
| ARTICLE V The Depositary and the Company | | 15 |
| Section 5.1 | Maintenance of Depositary's Office and Receipt Register; Certain Agents of the Depositary; Lists of Holders | 15 |
| Section 5.2 | Prevention or Delay in Performance | 16 |
| Section 5.3 | Obligations Limited | 16 |
| Section 5.4 | Resignation and Removal of the Depositary; Appointment of Successor Depositary | 16 |
| Section 5.5 | The Custodian | 17 |
| Section 5.6 | Notices and Reports to Holders | 17 |
| Section 5.7 | Issuance of Additional Shares, etc. | 18 |
| Section 5.8 | Indemnification | 18 |
| Section 5.9 | Charges of Depositary | 19 |
| Section 5.10 | Statutory Reports | 19 |
| Section 5.11 | Available Information to the Commission | 19 |
| ARTICLE VI Amendment and Termination | | 19 |
| Section 6.1 | Amendment | 19 |
| Section 6.2 | Termination | 20 |
| ARTICLE VII Miscellaneous | | 20 |
| Section 7.1 | Counterparts | 20 |
| Section 7.2 | No Third Party Beneficiaries | 21 |
| Section 7.3 | Severability | 21 |
| Section 7.4 | Holders Parties; Binding Effect | 21 |
| Section 7.5 | Notices | 21 |
| Section 7.6 | Governing Law | 22 |

EXHIBIT A
[FORM OF FACE OF RECEIPT]

| | | |
|---|---|---|
| 1 | The Deposit Agreement | A-1 |
| 2 | Withdrawal of Deposited Securities | A-2 |
| 3 | Transfers, Combinations and Split-ups | A-2 |
| 4 | Certain Limitations | A-2 |
| 5 | Liability of Holder for Taxes | A-3 |
| 6 | Warranties by Depositor | A-4 |
| 7 | Disclosure of Interests | A-4 |
| 8 | Charges of Depositary | A-4 |
| 9 | Title to Receipts | A-5 |
| 10 | Validity of Receipt | A-5 |

- ii -

| | | |
|---|---|---|
| 11 | Available Information | A-5 |
| | [FORM OF REVERSE OF RECEIPT] | |
| 12 | Distributions Upon Deposited Securities | A-6 |
| 13 | Record Dates | A-8 |
| 14 | Voting of Deposited Securities | A-8 |
| 15 | Changes Affecting Deposited Securities | A-9 |
| 16 | Reports; Inspection of Register | A-9 |
| 17 | Withholding | A-10 |
| 18 | Actions by Holders | A-10 |
| 19 | Liability of the Company and the Depositary | A-10 |
| 20 | Resignation and Removal of Depositary; the Custodian | A-11 |
| 21 | Amendment of Deposit Agreement and Receipts | A-11 |
| 22 | Termination of Deposit Agreement | A-12 |
| | EXHIBIT B | |
| | Charges of the Depositary | B-1 |

- iii -