**IN WITNESS WHEREOF,** the Company and the Depositary have caused this Amendment to be executed by representatives thereunto duly authorized as of the date set forth above.

              BP p.l.c.

              By: _____
              Name:
              Title:

              JPMORGAN CHASE BANK, N.A.

              By: _____
              Name:
              Title: Vice President

              9

Unassociated Document

http://www.sec.gov/Archives/edgar/data/313807/0001193805100006...

EXHIBIT A

ANNEXED TO AND INCORPORATED

IN AMENDMENT NO. 1 TO DEPOSIT AGREEMENT

[FORM OF FACE OF RECEIPT]

AMERICAN DEPOSITARY RECEIPT

evidencing

AMERICAN DEPOSITARY SHARES

representing

ORDINARY SHARES

of

BP p.l.c.

(Organized under the laws of England and Wales)

No.

JPMorgan Chase Bank N.A., a national banking association organized under the laws of the United States, as depositary (the "**Depositary**"), hereby certifies that _____ is the owner of American Depositary Shares, representing deposited Ordinary Shares of $0.25 each, including rights to receive such Ordinary Shares ("**Shares**"), of BP p.l.c., a corporation organized under the laws of England and Wales and its successors (the "**Company**"). At the date hereof, each American Depositary Share represents six (6) Shares deposited under the Deposit Agreement (hereinafter defined) with the Depositary or the Custodian. Capitalized terms used herein that are not defined herein shall have the meanings assigned to them in the Deposit Agreement.

1   The Deposit Agreement

This American Depositary Receipt is one of the receipts executed and delivered (the "**Receipts**"), pursuant to the Amended and Restated Deposit Agreement dated as of August 1, 2007, to the Deposit Agreement dated as of December 31, 1998, as amended (as amended from time to time, the "**Deposit Agreement**"), by and among the Company, the Depositary (and any of its successors) and all registered holders ("**Holders**") from time to time of Receipts, each of whom by accepting a Receipt becomes a party thereto, bound by all applicable terms and provisions thereof and hereof. The Deposit Agreement sets forth the rights of Holders and the rights and duties of the Depositary in respect of the Shares deposited thereunder and any rights to receive Shares and all other securities, property and cash from time to time received in respect of such Shares and held thereunder (such securities, property and cash, collectively, the "**Deposited Securities**"). Copies of the Deposit Agreement and of the Company's provisions of or governing Deposited Securities are on file at the Depositary's Office, the office of the Custodian and at any other designated transfer office. The statements made on the face and the reverse of this Receipt are summaries of certain provisions of the Deposit Agreement and are qualified by and subject to the detailed provisions thereof. The Depositary makes no representation or warranty as to the validity or worth of the Deposited Securities.

A-1

Unassociated Document

http://www.sec.gov/Archives/edgar/data/313807/0001193805100006...

**2**  **Withdrawal of Deposited Securities**

Upon receipt at the Depositary's Office or at such other offices as the Depositary may designate of a Holder's written order directing the Depositary to cause the whole number of Deposited Securities represented by the American Depositary Shares evidenced by a Receipt to be withdrawn and delivered to or upon the written order of the person or persons designated in such order, and upon the surrender, if applicable, of such Receipt (properly endorsed in blank or accompanied by proper instruments of transfer in blank, to the extent required by the Depositary), the Depositary shall direct the Custodian to deliver without unreasonable delay, subject to this Deposit Agreement and to the provisions of or governing Deposited Securities, to or upon the written order of the person or persons designated in such order, the Deposited Securities at the time represented by the American Depositary Shares evidenced by such Receipt, and the Custodian shall so deliver such whole number of Deposited Securities, at the office of the Custodian, except that the Depositary may, in its discretion, at the request, risk and expense of the Holder make delivery of such whole number of Deposited Securities without unreasonable delay to such person or persons at the Depositary's Office or at any other place specified by the Holder in such order. Directions shall be given by letter or, at the request, risk and expense of the Holder, by cable, telex, electronic or facsimile transmission. Delivery of whole number of Deposited Securities may be made by the delivery of certificates, to the extent such Deposited Securities may be represented by certificates, which, if required by law, shall be properly endorsed or accompanied by properly executed instruments of transfer, and if such certificates may be so registered, registered in the name of such Holder, or as ordered by such Holder or properly endorsed or accompanied by proper instruments of transfer. Delivery of Deposited Securities consisting of Shares shall be made by delivery of Shares in registered form only. Fractional Shares are not deliverable on the cancellation of American Depositary Shares. To the extent the cancellation of American Depositary Shares would give rise to the delivery of a fractional Share, the Depositary will promptly advise such Holder of such and shall either deliver to such Holder a new Receipt in book entry form on the Direct Registration System evidencing such fractional American Depositary Share or arrange to sell such fractional Share and deliver the net proceeds from such sale (after deduction of the costs and expenses of such sale) to the Holder entitled thereto. Sales of fractional Shares by the Depositary will occur on a periodic basis established by the Depositary on a basis of no less than one sale per month. Notwithstanding any provision of this Deposit Agreement or the Receipts, the Depositary may restrict withdrawals of Deposited Securities only for the reasons set forth in General Instruction I.A.(1) of Form F-6 under the Securities Act of 1933.

A-2

3   **Transfers, Combinations and Split-ups**

Subject to paragraph 4, this Receipt is transferable on the register maintained by the Depositary by the Holder hereof in person or by duly authorized attorney, upon surrender of this Receipt at any designated transfer office properly endorsed or accompanied by proper instruments of transfer and duly stamped as may be required by applicable law. This Receipt may be split into other Receipts or may be combined with other Receipts into one Receipt, evidencing the same aggregate number of American Depositary Shares as those evidenced by the Receipt or Receipts surrendered.

4   **Certain Limitations**

Prior to the issuance, execution, delivery, registration, registration of transfer, split-up or combination of this Receipt, the delivery of any distribution in respect hereof, or, subject to the last sentence of paragraph 2, the withdrawal of any Deposited Securities represented by the American Depositary Shares evidenced by this Receipt, the Depositary, the Company or the Custodian may require: (a) payment of a sum sufficient to pay or reimburse it for payment of (i) any stock transfer or other tax or other governmental charge with respect thereto, other than Relevant Duties payable by the Company in accordance with paragraph 5, (ii) any stock transfer or registration fees in effect for the registration of transfers of Shares or other Deposited Securities upon any applicable register and (iii) any applicable charges as provided in paragraph 8 of this Receipt; (b) the production of proof satisfactory to it of the identity and genuineness of any signature and of such other information (including without limitation information as to citizenship, residence, exchange control approval, or legal or beneficial ownership of any securities) as it may deem necessary or proper or as the Company may require; and (c) compliance with such reasonable regulations, if any, as the Depositary and the Company may establish consistent with the provisions of the Deposit Agreement. The delivery of Receipts against deposits of Shares may be suspended, deposits of Shares may be refused, or the registration of transfer of Receipts, their split-up or combination or, subject to the last sentence of paragraph 2, the withdrawal of Deposited Securities may be suspended, generally or in particular instances, when the Receipt register or any register for Shares or other Deposited Securities is closed or any time or from time to time when any such action is deemed necessary or advisable by the Depositary or the Company. The Depositary will not issue Receipts against rights to receive Shares unless (x) such Receipts are fully collateralized (marked to market daily) with cash, U.S. government securities or such other collateral as the Depositary deems appropriate until such Shares are deposited, (y) the applicant for such Receipts represents and agrees in writing that such applicant or its customer (i) beneficially owns such Shares, (ii) assigns all beneficial right, title and interest to such Shares to the Depositary, (iii) holds such Shares for the account of the Depositary and (iv) will deliver such Shares upon the Depositary's request (no evidence of ownership is required or time of delivery specified) and (z) all such Receipts which are outstanding at any time as a result of pre-release represent not more than 20%, or such other percentage as the Company may determine in its sole discretion, of the total number of Shares represented by American Depositary Receipts except to the extent, if any, that such limitation is exceeded as a result of the withdrawal of Deposited Securities subsequent to the execution and delivery of pre-released Receipts in compliance with such limitation. Such collateral, but not the earnings thereon, will be held for the benefit of the Holders. Any issue of pre-released Receipts shall also be subject to such further limitations as may be agreed between the Company and the Depositary from time to time. The Depositary may retain for its own account any compensation for the issuance of Receipts against such other rights to receive Shares, including without limitation earnings on the collateral securing such rights. Subject to the provisions of this paragraph 4 with respect to the issuance of Receipts against rights to receive Shares, neither the Depositary nor the Custodian shall lend Deposited Securities. The Depositary will not knowingly accept for deposit under the Deposit Agreement any Shares required to be registered under the Securities Act of 1933 and not so registered; the Depositary may refuse to accept for such deposit any Shares identified by the Company in order to facilitate the Company's compliance with securities laws in the United States.

A-3

Unassociated Document                                   http://www.sec.gov/Archives/edgar/data/313807/0001193805100006..

5   **Liability of Holder for Taxes**

If any tax or other governmental charge, including any interest or penalties thereon, shall become payable by or on behalf of the Custodian, the Depositary or the nominee of either of them with respect to this Receipt or any Deposited Securities represented by the American Depositary Shares evidenced by this Receipt, such tax or other governmental charge shall be payable by the Holder in whose name this Receipt is registered at the time such tax or other governmental charge is incurred, who shall pay the amount thereof to the Depositary; *provided* that to the extent that any United Kingdom stamp duty, stamp duty reserve tax or other similar United Kingdom governmental charge (or any interest or penalties thereon) (each, a "**Relevant Duty**") arises in connection with (a) the deposit of Shares, whether in registered form or in the form of share warrants to bearer (the "**Exchange Shares**"), in connection with (i) the exchange of Receipts for common stock without par value ("**Amoco Shares**") of Amoco Corporation pursuant to the Agreement and Plan of Merger dated as of August 11, 1998, as amended as of October 22, 1998 (the "**Merger Agreement**"), by and among The British Petroleum Company p.l.c., Amoco Corporation and Eagle Holdings, Inc., or (ii) the issue of Receipts upon the exercise of employee stock options over Amoco Shares outstanding as of the Effective Date (as defined in the Merger Agreement), into the facility created by the Deposit Agreement, including but not limited to the agreement to transfer, the transfer and the delivery of Exchange Shares, whether in registered form or in the form of share warrants to bearer, to the Depositary, the Custodian or the nominee of either of them and any issue of American Depositary Shares by the Depositary in respect thereof or (b) the holding of Shares in the form of share warrants to bearer, the transfer of Receipts representing Shares in the form of share warrants to bearer or the exchange of Shares in the form of share warrants to bearer for Shares in registered form by the Depositary, the Custodian or the nominee of either of them, but only, in the case of this clause (b), to the extent that such Relevant Duty arises out of, or is imposed as a consequence of, the fact that Exchange Shares were deposited in the form of share warrants to bearer as referred to in clause (a), such Relevant Duty shall be payable by the Company and not by the Holder, and the Company shall be liable for such payment. In cases where this paragraph 5 requires a payment to be made to the Depositary by a Holder, the Depositary may refuse to effect any registration of transfer of this Receipt or any split-up or combination hereof or any withdrawal of such Deposited Securities until such payment is made, and may withhold or deduct from any distributions on such Deposited Securities, or may sell for the account of the Holder hereof any part or all of such Deposited Securities (after attempting by reasonable means to notify the Holder hereof prior to such sale), and may apply such cash or the proceeds of any such sale in payment of such tax or other governmental charge, the Holder hereof remaining liable for any deficiency. Neither the Company, the Depositary nor any of their respective officers, directors, representatives or agents will be liable for failure of a Holder to comply with applicable tax laws or governmental charges.

A-4

6     **Warranties by Depositor**

Every person depositing Shares under the Deposit Agreement shall be deemed thereby to represent and warrant that such Shares and any certificate therefor are validly issued and outstanding, fully paid, nonassessable and free of preemptive rights, that the person making such deposit is duly authorized so to do and that such Shares are not "restricted securities" as such term is defined in Rule 144 of the Securities Act of 1933 unless at the time of deposit they may be freely transferred in accordance with Rule 144(k) and may otherwise be offered and sold freely in the United States. Such representations and warranties shall survive the deposit of Shares and the execution and delivery of Receipts.

7     **Disclosure of Interests**

Notwithstanding any other provision of the Deposit Agreement or this Receipt, the Holder hereof agrees to comply with requests from the Company which are made under statutory provisions in the United Kingdom to provide information as to the capacity in which such Holder owns this Receipt and regarding the identity of any other person interested in this Receipt and the nature of such interest and may, pursuant to such statutory provisions and any provisions of the constituent documents of the Company, forfeit the right to vote and to direct the voting of, and be prohibited from transferring, this Receipt if compliance is not made, all as if this Receipt were to the extent practicable the Shares represented hereby, and the Depositary agrees to use its reasonable efforts to comply with any instructions received from the Company requesting that the Depositary take the reasonable actions specified therein to obtain such information.

A-5

Unassociated Document

http://www.sec.gov/Archives/edgar/data/313807/0001193805100006..

16 of 28

8     **Charges of Depositary**

The Depositary will charge each person to whom Receipts are delivered against deposits of Shares, and each person surrendering Receipts for withdrawal of Deposited Securities, U.S. $5.00 for each 100 American Depositary Shares (or portion thereof) evidenced by the Receipts delivered or surrendered. The Company will pay all other charges and expenses of the Depositary and those of any Receipt registrar, co-transfer agent, co-registrar and any other agent of the Depositary (except the Custodian, other than as provided in the Deposit Agreement), except (i) stock transfer or other taxes and other governmental charges (which are payable by Holders or persons depositing Shares or other Deposited Securities, except as otherwise provided in paragraph 5), (ii) cable, telex, electronic and facsimile transmission and delivery charges incurred at the request of persons depositing Shares or Holders delivering Shares, Receipts or Deposited Securities (which are payable by such persons or Holders), (iii) transfer or registration fees for the registration of transfers of deposited Shares and other Deposited Securities on any applicable register in the name of the Custodian or its nominee in connection with the deposit of Shares or in the name of such person as a Holder may direct in connection with any withdrawal of Deposited Securities (which are payable by persons depositing Shares or Holders withdrawing Deposited Securities; there are no such fees payable by such persons or Holders in respect of the Shares as of the date of the Deposit Agreement), and (iv) expenses of the Depositary in connection with the conversion of foreign currency into U.S. dollars (which are paid out of such foreign currency). The provisions in respect of these charges may be changed in the manner indicated in paragraph 21.

A-6

9   **Title to Receipts**

Title to this Receipt (and to the Deposited Securities represented by the American Depositary Shares evidenced hereby), when properly endorsed or accompanied by properly executed instruments of transfer, is transferable by delivery with the same effect as in the case of a negotiable instrument; *provided* that the Company and the Depositary, notwithstanding any notice to the contrary, may treat the person in whose name this Receipt is registered on the register maintained by the Depositary as the absolute owner hereof for the purpose of determining the person entitled to any distribution or notice and for all other purposes.

10   **Validity of Receipt**

This Receipt shall not be entitled to any benefits under the Deposit Agreement or be valid or obligatory for any purpose unless executed by the Depositary by the manual or facsimile signature of a duly authorized officer of the Depositary.

11   **Available Information**

The Company is subject to the periodic reporting requirements of the Securities Exchange Act of 1934 and accordingly files certain reports with the Securities and Exchange Commission. Such reports and other information may be inspected and copied at the public reference facilities maintained by the Commission and located at the date of the Deposit Agreement at 100 F Street, NE, Room 1580, Washington, D.C. 20549.

Dated:

JPMorgan Chase Bank N.A., as Depositary

By _____
    Authorized Officer

The address of the Depositary's Office is 4 New York Plaza, 13th Floor., New York, NY 10004 Attention: ADR Department

A-7

Unassociated Document

http://www.sec.gov/Archives/edgar/data/313807/0001193805100006...

[FORM OF REVERSE OF RECEIPT]

SUMMARY OF CERTAIN ADDITIONAL PROVISIONS
OF THE DEPOSIT AGREEMENT

12  Distributions Upon Deposited Securities

Whenever the Company shall make any cash dividend or other cash distribution on Deposited Securities available in U.S. dollars and it is possible, whether by election or other action, for the Depositary to receive that dividend or distribution in U.S. dollars, the Depositary shall take any action to enable it to receive such dividend or distribution in U.S. dollars. In respect of any other cash dividend or cash distribution by the Company on any Deposited Securities, whenever the Depositary or the Custodian shall receive any cash dividend or other cash distribution upon any Deposited Securities, the Depositary shall after any necessary conversion of such distribution into U.S. dollars and after fixing a record date in respect thereof, subject to the Deposit Agreement, distribute as promptly as reasonably practicable the amount thus received, by checks drawn on or electronic transfers from a bank in the United States, to the Holders of record on the record date set by the Depositary therefor of Receipts evidencing American Depositary Shares representing such Deposited Securities, in proportion to the number of American Depositary Shares representing such Deposited Securities held by each of them respectively; *provided* that the Depositary shall make appropriate adjustments in the amounts so distributed in respect of (a) any of the Deposited Securities being not entitled, by reason of its date of issuance or otherwise, to receive all or any portion of such distribution or (b) any amounts (i) required to be withheld by the Company, the Custodian or the Depositary on account of taxes or (ii) charged by the Depositary in connection with the conversion of foreign currency into U.S. dollars, *provided* that if the Company shall announce any cash dividend on Deposited Securities in U.S. dollars, the Company shall cause the amount of U.S. dollars paid to the Depositary to be such that, subject to (i) above, the amount paid in respect of each Deposited Security hereunder is equal to the amount of the cash dividend per Share as so announced. The Depositary shall distribute only such amount as can be distributed without distributing to any Holder a fraction of one cent. Fractional cents will be withheld without liability and dealt with by the Depositary in accordance with its then current practices. Cash distributions and cash proceeds from sales of non-cash distributions in foreign currency which, in the judgment of the Depositary can then be converted on a reasonable basis into U.S. dollars which can then be transferred to the United States, will, as promptly as practicable, be converted by sale or in such other manner as the Depositary may determine into U.S. dollars (net of the Depositary's charges and expenses in effecting such conversion) before distribution to Holders. If in the reasonable judgment of the Depositary amounts received in foreign currency may not be converted on a reasonable basis into U.S. dollars transferable to the United States, or may not be so convertible for all of the Holders entitled thereto, the Depositary may in its discretion make such conversion and distribution in U.S. dollars to the extent reasonable and permissible to the Holders entitled thereto and may distribute the balance in foreign currency to the Holders entitled thereto or hold such balance or all such foreign currency for the Holders entitled thereto (uninvested and without liability for interest thereon). So long as the Company may list its Shares on a stock exchange in Canada and maintain a co-transfer agent in Canada, in the case of Holders who are registered on the books of the Depositary with an address in Canada ("**Canadian Holders**") and who have not filed the election referred to in the next following sentence, references above in this paragraph 12 to "U.S. dollars" shall mean and be deemed to refer to Canadian dollars, references to "transferred to the United States" shall mean and be deemed to refer to "transferred to Canada", references to "transferable to the United States" shall mean and be deemed to refer to "transferable to Canada" and references to "bank in the United States" shall mean and be deemed to refer to "bank in Canada". Canadian Holders may file with the Depositary an election, in form and substance satisfactory to the Depositary, stating that they wish to receive any cash dividends or other cash distributions in U.S. dollars, *provided* that in order to take effect with respect to any distribution such election must be duly completed and received by the Depositary not less than 30 days before the record date for such distribution. If any distribution upon any Deposited Securities consists of a dividend in, or free distribution of, Shares, the Depositary may or shall, if the Company shall so request, subject to this Deposit Agreement, distribute to the Holders on a record date fixed pursuant to Section 4.6, in proportion to the number of American Depositary Shares representing such Deposited Securities held by each of them respectively, additional Receipts for an aggregate number of American Depositary Shares representing the number of Shares received as such dividend or free distribution. If additional Receipts are not so distributed, each American Depositary Share shall thenceforth also represent its proportionate interest in the additional Shares so distributed upon such Deposited Securities.

A-8

Whenever the Company shall declare a dividend to be payable at the election of the holders of Shares in cash or in additional Shares (each an "Elective Distribution"), the Company and the Depositary agree to consult with each other to determine if it is reasonably practicable to extend such Elective Distribution to Holders and on the terms and procedures thereof. In connection with each Elective Distribution, the Company shall furnish an opinion of U.S. counsel to the Company, which counsel and opinion shall be reasonably acceptable to the Depositary, to the effect that the Company may make the Elective Distribution available to Holders and the Depositary may extend such Elective Distribution to Holders in each case without registration under the Securities Act of 1933 of the Shares issued pursuant to such Elective Distribution, or, if such opinion has been previously furnished, a letter from such counsel stating that the opinion previously provided may be relied upon by the Depositary as if such opinion were dated and delivered to the Depositary as of the date of such letter. If the Company and the Depositary have agreed that it is reasonably practicable to extend the Elective Distribution to Holders and on the terms and procedures thereof, the Depositary shall, if the Company shall request in writing, make such Elective Distribution available to Holders on the terms and following such procedures as agreed with the Company. If an Elective Distribution is not extended to Holders, the Depositary shall, to the extent permitted by law, distribute to the Holders, on the basis of the same determination as is made in the local market in respect of the Shares for which no election is made, either (x) cash upon the terms described above or (y) additional American Depositary Shares representing such additional Shares upon the terms described in the first paragraph of Section 4.2 of the Deposit Agreement. Issuance fees owing to the Depositary pursuant to the terms hereof will be deducted from each electing Holder's dividend entitlement by adding such issuance fee to the reference price used in calculating the ADS entitlement of each Elective Distribution. If an Elective Distribution is extended to Holders, the Depositary shall establish a record date in the manner described in Section 4.6 of the Deposit Agreement and inform Holders of the procedures necessary to permit them to participate in such Elective Distribution. Unless otherwise agreed in writing by the Company and the Depositary, to the extent a Holder shall make an election with respect to an Elective Distribution, such election shall remain in full force and effect until such time as a notice revoking such election is received from such Holder (in which case the Holder will be treated as having elected to receive the default consideration) or a further election is received from such Holder or the Depositary notifies such Holder that the election previously received from such Holder ceases to be valid for further Elective Distributions. The Company shall assist the Depositary in establishing such procedures to the extent reasonably necessary. Subject to Section 5.9 of the Deposit Agreement and paragraph 8 hereof, if a Holder elects to receive the proposed dividend (x) in cash, the dividend shall be distributed upon the terms described in Section 4.1 of the Deposit Agreement, or (y) in American Depositary Shares, the dividend shall be distributed upon the terms described in the first paragraph of this Section 4.2 of the Deposit Agreement.

A-9