# Notice of meeting



## BP p.l.c.
## Annual General Meeting 2003
## Royal Festival Hall, London SE1 8XX
## 24 April 2003 at 11.00 a.m.

This document is important and requires your immediate attention.

If you are in any doubt about the action you should take, or if you have recently sold your shares in BP p.l.c., you should consult your independent financial adviser.

## Contents

Letter from the Chairman 1

### Notice of meeting
Notice of meeting and resolutions to be proposed 2
Notes on resolutions 4
Shareholder notes 8

Attending the AGM? back cover

**Registered Office**
1 St. James's Square, London SW1Y 4PD
Registered in England and Wales No. 102498

**Registrar's Office**
The BP Registrar, Lloyds TSB Registrars,
The Causeway, Worthing, West Sussex BN99 6DA

# Letter from the Chairman



*Dear Shareholder,*

On behalf of the BP board, I am pleased to invite you to the company's ninety-fourth Annual General Meeting, which will be held at the Royal Festival Hall in London on 24 April 2003, starting at 11.00 a.m. Information relating to the meeting, together with the notice and agenda, is set out in this booklet.

As the use of the internet for business and social communications increases, we have found it can provide a very effective, and environmentally kinder, means of communicating with our shareholders. We have, therefore, made all the enclosed materials available on our website, *www.bp.com*. I invite you to join me in helping the company by registering at *www.bp.com/edelivery* so that future delivery of these materials can be made to you by email. I look forward to receiving voting instructions from those of you who cannot attend the meeting. You may use the paper proxy form enclosed but if you have access to the internet then, whether or not you wish to register for edelivery, I encourage you to vote electronically at *www.bp-proxyvote.com*.

If you are able to attend the AGM we will be delighted to see you. There will be an opportunity for you to ask questions on each resolution put to the meeting, and on the company's business in general following John Browne's introduction of the Annual Report and Accounts.

As in previous years, the business to be considered at the meeting is substantial. I therefore ask those of you who want to ask questions to consider the number of others who wish to participate and keep comments brief, factual and balanced. In recent years our meetings have been attended by a very broad range of shareholders, some of whom have put their views across with great spirit. We welcome constructive interaction; however, our meetings are formal events that must be conducted in accordance with English law. Activities that interfere with the meeting or offend public order are unacceptable.

All resolutions and substantive decisions at the AGM will be put to a poll vote. We believe this to be the fairest practice given that the majority of our shareholders cannot attend the meeting. A poll vote allows the entire shareholder base to express its views.

I look forward to your participation at the AGM, either directly or indirectly, and thank you for your continued support of the company.

*Peter Sutherland*

Peter Sutherland
Chairman

14 March 2003

2

# Notice of meeting and resolutions to be proposed

Notice is hereby given that the ninety-fourth Annual General Meeting of BP p.l.c. ('the company') will be held in the Royal Festival Hall, Belvedere Road, London SE1 8XX, on Thursday 24 April 2003, commencing at 11.00 a.m., for the transaction of the following business.

## The resolutions

Resolutions 1 to 6 inclusive, 8 and 11 to 13 will be proposed as ordinary resolutions. Resolutions 7, 9 and 10 will be proposed as special resolutions. Resolutions 6 to 11 are items of special business. Voting on all resolutions will be by way of a poll.

**Resolution 1**
To re-elect Mr C F Knight as a director.
See biography on page 4.

**Resolution 2**
To elect Dr D C Allen as a director.
See biography on page 4.

**Resolution 3**
To elect Dr A B Hayward as a director.
See biography on page 4.

**Resolution 4**
To elect Mr J A Manzoni as a director.
See biography on page 4.

**Resolution 5 – Re-appointment of auditors**
To re-appoint Ernst & Young LLP as auditors until the conclusion of the next general meeting before which accounts are laid and to authorize the directors to set the auditors' remuneration for 2003.
For further information see page 5.

**Resolution 6 – Directors' authority to allot shares**
To renew for the period ending on the date of the AGM in 2004 or 23 July 2004, whichever is the earlier, the authority and power conferred on the directors by Article 11 of the company's Articles of Association to allot relevant securities up to an aggregate nominal amount (the Section 80 amount) of $1,840 million.
For further information see page 5.

**Resolution 7 – Directors' authority to allot shares**
To renew for the period ending on the date of the AGM in 2004 or 23 July 2004, whichever is the earlier, the authority and power conferred on the directors by Article 11 of the company's Articles of Association to allot equity securities wholly for cash in connection with a rights issue, up to an aggregate nominal amount (the Section 89 amount) of $276 million.
For further information see page 5.

**Resolution 8 – Directors' authority to allot shares**
To authorize the directors at any time or times during a period ending on the date of the AGM in 2008 or 23 April 2008, whichever is the earlier, to allot relevant securities up to a nominal amount of $500 million in connection with the combination or combinations of certain of the company's Russian assets with certain of the Russian assets of Alfa Finance Holdings S.A., AI Petroleum Management LLC and Renova Inc., collectively referred to as 'AAR', provided that the total nominal amount allotted under this authority shall not, when added to any other allotment made by the directors under any general authority granted to them, exceed the amount of that general authority.
For further information see page 5.

**Resolution 9 – Share buyback**
To authorize the company generally and unconditionally to make market purchases (as defined in Section 163(3) of the Companies Act 1985) of ordinary shares with nominal value of $0.25 each in the company, provided that:

(a) the company does not purchase under this authority more than 2.2 billion ordinary shares;
(b) the company does not pay less than $0.25 for each share; and
(c) the company does not pay more for each share than 5% over the average of the closing mid market price of the ordinary shares for the five business days immediately preceding the date on which the company agrees to buy the shares concerned, based on share prices and currency exchange rates published in the Daily Official List of the London Stock Exchange.

In executing this authority the company may purchase shares using any currency, including pounds sterling, US dollars and euros.

This authority shall continue for the period ending on the date of the AGM in 2004 or 23 July 2004, whichever is the earlier, provided that if the company has agreed before this date to purchase ordinary shares where these purchases will

or may be executed after the authority terminates (either wholly or in part) the company may complete such a purchase.
For further information see page 5.

Resolution 10 – Articles of Association
To adopt as the new Articles of Association of the company the draft Articles of Association as set out in the document produced to the meeting and, for the purposes of identification, signed by the chairman.
For further information see page 5.

Resolution 11 – Political Parties, Elections and Referendums Act 2000
To authorize the company to:

(a) make Donations to EU Political Organisations; and
(b) incur EU Political Expenditure

in an aggregate amount not exceeding £100,000 per annum during a four-year period ending on 23 April 2007 or the date of the AGM in 2007, whichever is the earlier. Such authority shall extend to enable any such donation to be made or expenditure to be incurred either by the company or by its wholly owned subsidiary, BP International Limited. For the purposes of this Resolution, 'Donations', 'EU Political Organisations' and 'EU Political Expenditure' have the meanings ascribed thereto in Part XA of the Companies Act 1985 (as amended by the Political Parties, Elections and Referendums Act 2000).
For further information see page 6.

Resolution 12 – Directors' Remuneration Report
To approve the directors' remuneration report for the year ended 31 December 2002.
For further information see page 6.

Resolution 13 – Report and Accounts
To receive the report of the directors and accounts for the year ended 31 December 2002.
For further information see page 7.

By order of the board
**Judith C Hanratty**
Company Secretary

14 March 2003

Notes for Ordinary and Preference shareholders, ADS holders and employee share plan participants can be found on pages 8 and 9.

J. Gill Declaration Exhibit R Page 5 of 12

4

# Notes on resolutions

**Notes to Resolutions 1 to 4 – Re-election or election of directors**

As set out in the company's Articles of Association, Mr C F Knight retires by rotation and offers himself for re-election.

In accordance with the Articles of Association, Dr D C Allen, Dr A B Hayward and Mr J A Manzoni offer themselves for election as directors.

**Biographies**

**Mr C F Knight**



Charles Knight was appointed a non-executive director of BP in 1987. He is chairman of Emerson Electric Co., a position he has held since 1974.

Mr Knight was born in 1936 and graduated from Cornell University in 1958 with a bachelor's degree in mechanical engineering. In 1959, he received a master's degree in business administration from Cornell.

Mr Knight was appointed a director of Emerson Electric Co., a manufacturer of a broad range of electrical and electronic products and systems, in 1972.

Mr Knight is also a non-executive director of Anheuser-Busch Companies Inc., Morgan Stanley Dean Witter, SBC Communications Inc. and IBM Corporation.

**Dr D C Allen**



David Allen was appointed an executive director of BP in February 2003.

He holds a doctorate in chemistry from Oxford University. He joined BP Gas in 1978, handling Middle East and Far East gas trading, before moving to BP's corporate offices in New York. He returned to London in the mid-1980s, taking up management roles in BP Exploration.

In 1986, Dr Allen moved to BP's corporate planning department, following which he was appointed to lead BP's international crude oil trading activities. In 1990, he became general manager, European gas, and subsequently, planning manager, BP Exploration. In 1994, he was appointed a general manager of BP Exploration Europe.

In 1995, he became general manager, commercial, BP Exploration, and subsequently took over the role of director of planning for the BP group. In 1997, Dr Allen joined the executive committee of BP Exploration as a director.

Following the merger of BP and Amoco, in January 1999 Dr Allen became group vice president, planning, of the newly formed BP Amoco. He was appointed an executive vice president and group chief of staff in 2000.

**Dr A B Hayward**



Tony Hayward was appointed an executive director of BP in February 2003.

He graduated from the University of Edinburgh with a PhD in geology in 1982. He joined BP in the same year and, following a series of technical and commercial roles in BP Exploration in London, Aberdeen, France, China and Glasgow, he moved to Colombia as exploration manager. In 1995, he became president of the BP group in Venezuela.

In 1997, Dr Hayward returned to London as a director of BP Exploration. He became a group vice president and a member of the upstream executive committee in 1999 and was appointed group treasurer in 2000 and an executive vice president in 2002. In November 2002, he became chief operating officer for Exploration and Production and, in February 2003, its chief executive.

He is a non-executive director of Corus Group.

**Mr J A Manzoni**



John Manzoni was appointed an executive director of BP in February 2003.

He graduated from Imperial College, London, in 1983 with an honours degree in civil engineering and a masters in petroleum engineering. In 1994, he was a Sloan fellow at Stanford University where he earned a master's degree in business management.

He joined BP in 1983 and spent the early part of his career working in the North Sea. In 1990, he became head of investor relations. He also managed BP's operations at Prudhoe Bay in Alaska. More recently he was the executive from BP responsible for the merger integration process between BP and Amoco, and then became downstream group vice president in charge of European marketing, in addition to downstream planning and performance globally.

In 2000, he was appointed BP regional president for the eastern USA and, in 2001, an executive vice president and the chief executive for Gas, Power and Renewables. He became chief executive of Refining and Marketing in 2002.

Mr Manzoni is a member of the advisory board of the Stanford Graduate School of Business.

## Notes on resolutions – continued

**Notes to Resolution 5 – Re-appointment of auditors**
The appointment of Ernst & Young LLP as auditors of the company terminates at the conclusion of the AGM. They have advised their willingness to stand for re-election as auditors of the company until the conclusion of the 2004 AGM. The directors recommend their re-appointment and seek authority to set their remuneration.

**Notes to Resolutions 6 and 7 – Directors' authority to allot shares**
The Articles of Association permit the directors to allot shares and other securities, in accordance with Sections 80 and 89 of the Companies Act 1985, up to an amount authorized by the shareholders in general meeting, should a reason arise in the course of the year for such an action. At the last AGM, the directors were given authority to allot shares up to a maximum of one-third of the company's issued share capital (the Section 80 amount) and to allot shares for cash, other than by way of a rights issue, up to a maximum of 5% of the issued share capital (the Section 89 amount).

These authorities expire at the conclusion of this year's meeting and Resolutions 6 and 7 renew them on similar terms. They follow the guidelines issued by institutional investors and are within the authorized but unissued share capital of the company. There is no present intention of exercising these authorities.

**Notes to Resolution 8 – Directors' authority to allot shares**
On 11 February 2003, the company announced that it had reached a preliminary agreement with Alfa Finance Holdings S.A., Al Petroleum Management LLC, Renova Inc., collectively referred to as 'AAR', whereby they would combine certain of their respective interests in Russia to create that country's third largest oil and gas business. It is proposed, subject to a final agreement expected to be completed later this year, that BP will pay AAR an initial cash sum on completion and subsequently make three annual payments in BP shares. This resolution gives authority to the directors to allot shares up to the limit specified. The directors are seeking authority for a period of five years (as permitted under the Articles and Section 80 of the Companies Act 1985) to meet the extended settlement requirements contemplated under the preliminary agreement. In exercising this authority the directors may not cause any limit on the amount of relevant securities that may be allotted during any prescribed period under any general authority granted by shareholders to be exceeded.

**Notes to Resolution 9 – Share buyback**
Authority is sought to purchase up to 10% of the ordinary issued share capital of the company during the period stated below, continuing the authority granted by the shareholders at previous annual general meetings.

Resolution 9 specifies the maximum number of shares that may be purchased and the minimum and maximum prices at which they may be bought. The directors will exercise this authority only when to do so would be in the best interests of the shareholders generally. The authority will expire at the conclusion of the AGM in 2004 or on 23 July 2004, whichever is the earlier.

As of 31 January 2003, there were options outstanding over 477 million ordinary shares, representing 2.13% of the company's ordinary issued share capital. If the authority given by Resolution 9 were to be fully used, these would represent 2.36% of the company's ordinary issued share capital. The company has no warrants in issue in relation to its shares.

**Notes to Resolution 10 – Articles of Association**
Authority is sought to adopt new Articles of Association. Copies of the new Articles of Association and interlined copies of the current Articles are available on *www.bp.com*, and from the company secretary's office on request.

The current Articles of Association of the company were adopted in 1983 and have been amended on twelve occasions since that date as various corporate events have taken place or legislation passed. Further amendments are necessary to implement recent legislation. The opportunity has been taken to review the Articles of Association with a view to producing a set of Articles which follows a logical order, is easier to use and reflects modern practice. The new Articles of Association are the product of that review.

The following changes, using the new Article numbers, are drawn to members' attention.

**Definitions, construction and interpretation**
All defined terms have been gathered in one Article and put into alphabetical order (Article 2). Guidance on the construction and interpretation of a number of terms contained in the Articles has also been gathered into one Article (Article 3).

**Clarifying amendments**
Certain Articles have been amended or new Articles introduced to clarify, consolidate or confirm the powers already in the possession of the company or its officers. None of these amendments or new provisions affects the rights currently held by shareholders.

**Security of Meetings**
Specific powers are given to the company and its officers to ensure the security at general meetings and the safety of those attending (Article 63).

**Expenses**
The authority of the company to pay the expenses of directors in relation to their activities in advancing the business or interests of the company has been clarified (Article 92).

## Notes on resolutions – continued

#### Approved Depositary mechanism
A new Article has been added to clarify the rights of a person who holds ordinary shares as a nominee of an Approved Depositary (Article 158). A further new Article has been added to clarify the relationship between the company and the Approved Depositary in respect of the exercise of voting rights (Article 164).

This will not, however, affect the position as between the Approved Depositary and a person appointed as its proxy which is governed by the relationship between them.

#### Substantive amendments
**Repurchase of shares**
The Government has announced that it intends, during the course of this year, to implement through delegated legislation proposals first made in 2001 for companies to retain shares repurchased in accordance with the relevant provisions of the Articles and the Statutes. At present, any such shares so repurchased are required to be cancelled. The Articles have been amended to allow the company to hold such shares, to be known as treasury shares, once such powers are introduced by HM Government (Article 13A).

#### Form of shares
Shares can now be held in certificated and uncertificated form and the Articles have been changed so as more clearly to permit the use of the CREST system as provided by the Uncertificated Securities Regulations 2001 (Articles 17-19).

There are numerous consequential amendments which recognize that shares can be held in either certificated or uncertificated form.

#### Retention of records
More explicit rules are introduced in respect of the need to retain registrars' records (Article 50).

#### Interests of directors
In determining whether or not a director has a material interest in a contract or arrangement or other proposal which is the subject of a vote at a board meeting, the definition of interest has been broadened to include the interest of spouses, children, companies and trusts (Article 109(F)).

#### Written and email resolutions
The methods by which a written resolution of the directors can be effected have been broadened to permit the use of electronic communication and to determine the time when such resolution is effective (Article 113).

#### The company seal
The methods by which the company seal can be affixed to a document have been broadened to include printing the seal or the use of a facsimile (Article 127(B)).

#### Dividends
In November 1998, the company took powers for a period of five years for the directors to announce and pay dividends in US dollars (subject to the right of ordinary shareholders to be paid in sterling). This power has been broadened to give the directors powers to declare and pay dividends in any currency provided that a sterling equivalent shall be announced and the right of holders of ordinary shares to be paid in sterling is preserved. It is not the company's intention to change its current policy of paying dividends on ordinary shares in US dollars (Article 129).

### Notes to Resolution 11 – Political Parties, Elections and Referendums Act 2000
The company does not intend to change its current practice of not making donations to political parties in the European Union ('EU'). However, the Political Parties, Elections and Referendums Act 2000 (the 'Act'), which contains restrictions on companies making donations or incurring expenditure in relation to EU Political Organisations, defines EU Political Organisations very widely. As a result, it is possible that EU Political Organisations may include, for example, bodies concerned with policy review and law reform, with the representation of the business community or sections of it or with the representation of other communities or special interest groups which it is in the shareholders' interest for the company to support.

The company believes that the authority proposed under this resolution to allow it (or BP International Limited, one of its principal operating subsidiaries) to fund donations and/or incur expenditure to a limit of £100,000 per annum is necessary to be sure that, if it is in the shareholders' interests, support can be given to organisations that are not believed to be political, but which might come within the extended and uncertain scope of the Act. However, in recognition of the fact that the company did not make donations or incur expenditure in relation to any EU Political Organisations during 2002, the authority is sought in respect of an aggregate amount of £100,000 per annum for the full period of four years as permitted by the Act. The annual amount of the authority is as granted at the 2001 AGM.

This resolution does not authorize any particular donations or expenditure. As required by the Act, the company will make disclosure in its next Annual Report of any donation made by it or its subsidiaries to an EU Political Organisation or any EU Political Expenditure incurred which in aggregate exceeds £200.

### Notes to Resolution 12 – Directors' Remuneration Report
The directors' remuneration report is included in the Annual Report 2002 on pages 30 to 39. It is designed to comply with new requirements introduced by the Directors' Remuneration Report Regulations 2002 for a report on the remuneration of all directors, both executive and non-executive.

## Notes on resolutions – continued

The report is divided into two parts. Each part contains a section of information that is subject to audit. Executive director remuneration is contained in the first part of the report, which was prepared by the remuneration committee. Non-executive director remuneration is contained in the second part of the report, which was prepared by the company secretary on behalf of the board.

The report has been approved by the board and signed on its behalf by the company secretary.

### Notes to Resolution 13 – Report and Accounts

The board of directors will present their report and the accounts for the year ended 31 December 2002.

# Shareholder notes

## Ordinary shareholders and Preference shareholders

**Ordinary shareholders' and Preference shareholders' right to attend and vote at the AGM**
Ordinary shareholders and Preference shareholders may attend and vote at the AGM only if their name is on the Register of Members by 5.30 p.m. on Tuesday 22 April 2003. Their voting entitlement will depend on the number of shares held at that time.

**Members' right to appoint a proxy**
A member entitled to attend and vote at the AGM may appoint a proxy or proxies to attend and vote on his/her behalf. A proxy need not be a member of the company. Our Registrar must receive proxy appointments and instructions by 5.30 p.m. on Tuesday 22 April 2003.

## Voting notes for Ordinary and Preference shareholders

**Alterations**
Alterations to proxy cards or poll cards must be signed and initialled next to any changes that are made.

**Changes to proxy voting instructions**
Changes to proxy voting instructions for the chairman must be made in writing and signed by the shareholder. To be certain these changes are accepted, they must be received by the Registrar by 5.30 p.m. on Tuesday 22 April 2003. The directors have laid down procedures concerning changes to proxy voting instructions submitted after that time. Their decision will be final. Alternatively, shareholders wishing to over-ride their proxy voting instructions may do so by attending the meeting in person and voting.

**Multiple proxy instructions**
If several instructions for one shareholder account are received, the instruction received last will be used. However, if a postal instruction and an internet instruction are received on the same day, the internet instruction will be followed.

**Unclear proxy appointments**
The directors have laid down procedures to decide any unclear proxy appointments. Their decision will be final.

**Abstentions**
Abstentions are not accepted as voting instructions and will not be counted.

**Unclear voting instructions**
The chairman of the AGM will decide any unclear voting instructions he receives. His decision will be final.

**Joint shareholders**
Joint shareholders may attend the meeting. Any one shareholder may sign a proxy form or poll card on behalf of all joint shareholders.

If more than one joint shareholder fills in a proxy form or poll card, the vote of the shareholder named first on our register of members will be accepted, whether the vote was made in person or by proxy.

**Nominee shareholders**
If more than one proxy is to be appointed to attend the meeting to represent and vote on their individual interests, please call the Shareholder Helpline on 0800 701107 or on +44 (0) 121 415 7005 outside the UK. If you hold shares on behalf of others and some of that holding is to be voted separately, you may do so by internet at *www.bp-proxyvote.com*.

**Corporate shareholders**
Corporate shareholders wishing to send a representative to the AGM should fill in the name of the representative on the admission card and apply the company's common seal or have it signed by an authorized officer, stating his or her position.

Corporate shareholders may also appoint proxies and vote on-line at *www.bp-proxyvote.com*. 'Split' and 'discretionary' votes can also be submitted on this system.

**Powers of attorney**
A shareholder who has given a power of attorney must ensure that the power of attorney has been sent to the Registrar.

## Notes for BP employees – Ordinary share plans

If you hold shares through a BP employee share plan and want to instruct the share plan trustee how to vote at the AGM, you should refer to the Form of Direction sent to you separately. If you wish to attend the meeting or have any queries, please contact Computershare on 0870 703 6207.

## ADS registered holders

If you hold BP American Depositary Shares ('ADSs') directly, your name will appear on the register of JPMorgan Chase Bank ('the Depositary'), and you are referred to as a 'registered holder'.

Registered holders at the close of business on 11 April 2003 will be entitled to attend, speak and vote at this meeting. If you do not plan to attend the meeting, you are entitled to appoint a proxy, the Depositary or someone else, to attend, speak and vote on your behalf.

If you wish to appoint the Depositary as your proxy, you may do so by providing your voting instruction to the Depositary via the internet, telephone or by sending in a completed US proxy form, as described on the reverse of that form. Voting instructions must be received by the Depositary before 12 noon EST on 22 April 2003.

## Shareholder notes – continued

If you wish to appoint someone other than the Depositary as your proxy, you will need to complete the US proxy form and give it to your appointee.

If you wish to attend the meeting and vote in person, the Depositary will be present at the Royal Festival Hall to verify your right to attend. Please bring proof of identity.

If you do not hold your ADSs directly, but through a bank, broker or nominee, you should contact them for information on how to vote your ADSs.

## BP Employees ADS Plan Participants

If you are allocated ADSs under selected BP or subsidiary employee savings plans ('a Plan') you are referred to as a 'Plan Participant'. Plan Participants are not registered holders.

Plan Participants at the close of business on 11 April 2003 are entitled to attend and speak at the meeting but may not vote at the meeting except as validly appointed proxies for registered holders. If you wish to vote, whether you plan to attend the meeting or not, you should direct the Trustee of your Plan how you wish to vote your ADSs.

You may direct the Trustee to vote your shares, via the internet, by telephone or by sending in a completed US proxy form, as described on that form. The Trustee will then appoint the Depositary as proxy to vote in accordance with your instructions. Voting instructions must be received by the Depositary before 12 noon EST on 16 April 2003.

## General notes

**Documents available for inspection**

The following documents are available for inspection during normal business hours at 1 St James's Square, London SW1Y 4PD and at the Royal Festival Hall from 9.30 a.m. on 24 April 2003 until the conclusion of the AGM:

- the Register of Directors' Interests, together with copies of directors' service contracts with the company;
- the Articles of Association;
- the proposed changes to the Articles of Association and the new Articles of Association;
- biographies of directors seeking re-election/election.

**Poll results**

The total of the votes cast by shareholders 'for' and 'against' each resolution are intended to be published in the *Financial Times* and on *www.bp.com* on Monday 28 April 2003.

# Attending the AGM?

## Where
Royal Festival Hall, Belvedere Road,
London SE1 8XX

**Date**
24 April 2003

**Time**
Registration desks open at 9.30 a.m.

Allow 30 minutes for registration and security checks.

Meeting starts at 11.00 a.m.

**Refreshments**
Tea and coffee from 9.30 a.m.

Lunch will be available from 1.00 p.m.

## How to get there

**Underground stations**
Waterloo – Northern, Bakerloo, Jubilee, Waterloo & City lines
Embankment – District, Circle, Bakerloo, Northern lines
Note – the connecting pedestrian bridges across the Thames from Embankment to Waterloo have a large number of stairs.

**Railway stations**
Waterloo, Charing Cross

**Car parking**
Car park A – Hungerford Bridge (open 24 hrs)
Car park B – Hayward Gallery (open from 8.00 a.m.)
Car park C – Royal National Theatre (open from 7.00 a.m.)

Please note that a London congestion charge of £5 will be in force. This must be paid to Transport for London before 10.00 p.m. on the day of travel in order to avoid a penalty.



# At the Royal Festival Hall

**Security**
We check everyone's bag or briefcase.
We do not permit behaviour that may interfere with the good order of the meeting.
We do not have crèche facilities.
We do not permit cameras or recording equipment in the Hall.
Please switch off your pager or mobile telephone.

**Cloakroom**
There is a cloakroom on level 2. We suggest you leave your coats and bags there before going to Registration.

**Seating**
We will give you a seat ticket at Registration. If you wish to ask questions during the meeting, please tell us at Registration.

**Shareholders with special needs**
There is a dedicated special needs registration desk with wheelchair access.

We have sign language interpreters at the meeting. Please tell us at Registration if you need to be seated nearby. We also have 'Sennheiser' handsets.

If you are in a wheelchair or in need of help from a companion, we will arrange for your helper to be allowed into the meeting.

If you have difficulty walking, or climbing stairs, please let us know at Registration.

The Royal Festival Hall Disability Access Line is 020 7921 0926 (10.00 a.m. to 6.00 p.m. daily).