# Notice of meeting and resolutions to be proposed

Notice is hereby given that the ninety-fifth Annual General Meeting of BP p.l.c. ('the company') will be held in the Royal Festival Hall, Belvedere Road, London SE1 8XX, on Thursday 15 April 2004, commencing at 11.00 a.m., for the transaction of the following business.

## The resolutions

Resolutions 1 to 8 inclusive, 10 and 13 to 16 inclusive will be proposed as ordinary resolutions. Resolutions 9, 11, 12, and 17 will be proposed as special resolutions. Resolutions 9 to 13 inclusive, 15 and 17 are items of special business. Voting on all resolutions will be by way of a poll.

**Resolution 1**
To re-elect The Lord Browne of Madingley as a director.
See biography on page 4.

**Resolution 2**
To re-elect Dr B E Grote as a director.
See biography on page 4.

**Resolution 3**
To re-elect Mr H M P Miles as a director.
See biography on page 5.

**Resolution 4**
To re-elect Sir Robin Nicholson as a director.
See biography on page 5.

**Resolution 5**
To re-elect Mr R L Olver as a director.
See biography on page 5.

**Resolution 6**
To re-elect Sir Ian Prosser as a director.
See biography on page 6.

**Resolution 7**
To elect Mr A Burgmans as a director.
See biography on page 6.

**Resolution 8—Reappointment of auditors**
To reappoint Ernst & Young LLP as auditors until the conclusion of the next general meeting before which accounts are laid and to authorize the directors to set the auditors' remuneration for 2004.
For further information see page 7.

**Resolution 9—Articles of Association**
To amend the company's Articles of Association:

(a) with immediate effect, by inserting the words, "or otherwise in accordance with section 95 of the Act," into Article 13(B)(ii) directly after the word "authority"; and

(b) with effect from the conclusion of this meeting (or any adjournment of it), by deleting the existing Article 99 (including its heading) and replacing it with the following:

"Annual Retirement of Directors

99  At each Annual General Meeting held after 31 December 2004 all the Directors shall retire from office."
For further information see page 7.

**Resolution 10—Directors' authority to allot shares**
To renew, for the period ending on the date of the Annual General Meeting in 2005 or 14 July 2005, whichever is the earlier, the authority and power conferred on the directors by Article 13 of the company's Articles of Association to allot relevant securities up to an aggregate nominal amount equal to the Section 80 amount of $1,820 million.
For further information see page 7.

**Resolution 11—Directors' authority to allot shares**
To renew, for the period ending on the date of the Annual General Meeting in 2005 or 14 July 2005, whichever is the earlier, the authority and power conferred on the directors by Article 13 of the company's Articles of Association to allot equity securities wholly for cash (a) in connection with a rights issue; and (b) otherwise than in connection with a rights issue up to an aggregate nominal amount equal to the Section 89 amount of $273 million.
For further information see page 7.

**Resolution 12—Share buyback**
To authorize the company generally and unconditionally to make market purchases (as defined in Section 163(3) of the Companies Act 1985) of ordinary shares with nominal value of $0.25 each in the company, provided that:
(a) the company does not purchase under this authority more than 2.2 billion ordinary shares;
(b) the company does not pay less than $0.25 for each share; and
(c) the company does not pay more for each share than 5% over the average of the middle market price of the ordinary shares for the five business days immediately preceding the date on which the company agrees to buy the shares concerned, based on share prices and currency exchange rates published in the Daily Official List of the London Stock Exchange.

In executing this authority the company may purchase shares using any currency, including pounds sterling, US dollars and euros.

This authority shall continue for the period ending on the date of the Annual General Meeting in 2005 or 14 July 2005, whichever is the earlier, provided that if the company has agreed before this date to purchase ordinary shares where these purchases will or may be executed after the authority terminates (either wholly or in part) the company may complete such purchases.
For further information see page 7.

### Resolution 13—Use of treasury shares for employee share schemes
To authorize the company to use shares held in treasury for the purposes of or pursuant to the employee share schemes operated by the company.
For further information see page 7.

### Resolution 14—Directors' Remuneration Report
To approve the directors' remuneration report for the year ended 31 December 2003.
For further information see page 7.

### Resolution 15—Non-executive directors' remuneration
To determine, in accordance with Article 91 of the company's Articles of Association, that the remuneration of the directors shall be such amount as the directors shall decide not exceeding in aggregate £2,500,000 per annum.
For further information see page 8.

### Resolution 16—Report and Accounts
To receive the report of the directors and accounts for the year ended 31 December 2003.
For further information see page 8.

**Shareholder Resolution**

### Resolution 17
A group of members requisitioned the circulation of the following special resolution under the provisions of Section 376 of the Companies Act 1985. The supporting statement, supplied by the requisitionists, together with the board response, is set out in the Notes on resolutions.

#### "Special Resolution
*RESOLVED, shareholders instruct the company to prepare a report disclosing, as appropriate, how the company analyses and takes steps to control significant risks to shareholder value from operating in protected and sensitive areas, including IUCN Management Categories I-IV and Marine Management Categories I-V; World Heritage Sites; and national parks, monuments, and wildlife refuges. These risks include operating, financial, and reputation risks to the business in general, the ability to attract and retain high quality staff, and the impact on BP's effort in building its reputation as a good corporate citizen. The report should be available to investors by the 2005 Annual General Meeting."*
For further information see page 8.

**The board opposes Resolution 17**

The board recommends a vote AGAINST this resolution, which is similar to one overwhelmingly rejected by shareholders at the Annual General Meeting in 2002. The board's reasons are set out below and on page 9.

BP fully recognizes the need to protect and conserve sensitive areas that house the rich biodiversity of our planet. However, we do not believe that it is in the shareholders' interest to prepare a report in the form requested in the resolution. BP already publishes details of operations in sensitive areas including IUCN (World Conservation Union) designated areas I-VI on the internet (*www.bp.com*) – the first oil and gas sector company to do so. We explain our processes for assessing environmental impacts and risks in the BP Sustainability Report (formerly the BP Environmental and Social Review).

There is no comprehensive set of globally agreed, consistently applied definitions for protected and sensitive areas. Some areas are still insufficiently defined, and assignment into IUCN categories is not consistent worldwide. Some sensitive areas remain undesignated, and some IUCN designated areas are open to limited commercial operations. We continue to work with IUCN to develop a better framework for the consistent assignment and designation of these important areas.

BP's track record reflects our long-standing commitment to prudent and responsible risk management while operating in sensitive areas. Rather than operate a blanket 'no-go' policy, we assess each potential site for investment case-by-case, thoroughly examining the risks of development. BP has demonstrated consistent leadership in this area, and provides shareholders and the public with extensive information on risk management, environmental and social issues, and our activities in protected and sensitive areas.

The issues identified in the resolution are already thoroughly and appropriately addressed. The Notes to the resolution provide further detail. In the board's opinion, the report requested in the resolution is not in the best interest of shareholders.
For further information see page 9.

By order of the board

David J Jackson
Company Secretary
5 March 2004

General notes for Ordinary and Preference shareholders, ADS holders and employee share plan participants can be found on pages 12 and 13.