## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **IN RE:  BP ERISA LITIGATION** | MDL No. 2185<br><br>Civil Action No. 4:10-cv-04214<br>Hon. Keith P. Ellison<br><br>**ORAL ARGUMENT REQUESTED** |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

OF COUNSEL:
Paul J. Ondrasik, Jr. (*pro hac vice*)
Morgan D. Hodgson (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
Office: (202) 429-3000
Fax:  (202) 429-3902
E-mail: pondrasik@steptoe.com
      mhodgson@steptoe.com
      rjenny@steptoe.com

Daryl A. Libow (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue N.W.
Washington, DC 20006-5805
Office:  (202) 956-7500
E-mail:  libowd@sullcrom.com

Richard C. Pepperman, II (*pro hac vice*)
Marc De Leeuw (*pro hac vice*)
M. David Possick
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Office:  (212) 558-4000
Email: peppermanr@sullcrom.com
      deleeuwm@sullcrom.com
      possickmd@sullcrom.com

Thomas W. Taylor
Texas State Bar No. 19723875
S.D. Tex. Bar No. 3906
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, TX 77002
Office:  (713) 220-4200
Fax:  (713) 220-4285
E-mail: ttaylor@andrewskurth.com

*Attorney-in-Charge for Defendants
BP Corporation North America, Inc., BP p.l.c.,
BP America Inc., BP Corporation North America,
Inc.'s Board of Directors, the BP Savings Plan
Investment Oversight Committee, Lord John
Browne, Stephanie C. Moore, Gregory T.
Williamson, Thomas L. Taylor, Neil Shaw,
Brian D. Smith, Stephen J. Riney, Robert A.
Malone, Jeanne M. Johns, Anthony Hayward,
Lamar McKay, Patrick Gower, James Dupree,
Richard J. Dorazil, Corey Correnti, Marvin L.
Damsma, and Patricia H. Miller*

November 7, 2011

## TABLE OF CONTENTS

**Page**

INTRODUCTION...................................................................................................1

ARGUMENT.........................................................................................................2

I.      THE PRESUMPTION OF PRUDENCE REQUIRES DISMISSAL...........................2

      A.      The *Moench* Presumption of Prudence Applies to the BP Plans' Company Stock Investments. .......................................................................................2

      B.      The Presumption of Prudence Applies at the Motion to Dismiss Stage.................8

      C.      The Presumption of Prudence Requires Dismissal of the Complaint....................10

II.      PLAINTIFFS' DUTY TO INFORM CLAIM FAILS. ..................................................15

      A.      This Case Does Not Present the Type of Special Circumstance That Could Trigger a Duty To Disclose Corporate Information Under ERISA § 404.............15

      B.      Alleged Misstatements in SEC Filings Were Not Made in an ERISA Fiduciary Capacity. .......................................................................................17

      C.      Plaintiffs' Duty to Inform Claim Sounds in Fraud and Thus Is Subject to Rule 9(b)...................................................................................................18

      D.      Reliance Cannot Be Presumed and Has Not Been Pled Here...............................19

III.      PLAINTIFFS' DERIVATIVE DUTY TO MONITOR AND CO-FIDUCIARY CLAIMS ALSO FAIL. ................................................................................19

IV.      THE CORPORATE DEFENDANTS, DIRECTORS AND DESIGNATED OFFICERS ARE NOT FIDUCIARIES WITH RESPECT TO ISSUES ALLEGED IN THE COMPLAINT.........................................................................21

      A.      BP p.l.c and BP America Inc. Should Be Dismissed.............................................22

      B.      BP North America Inc. Should Be Dismissed. .....................................................22

      C.      The BPNAI Director Defendants Should Be Dismissed.......................................23

      D.      The Designated Officers Should Be Dismissed.....................................................24

CONCLUSION ....................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bannistor v. Ullman*,
   287 F.3d 394 (5th Cir. 2002) ...................................................................22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................... passim

*Crocker v. KV Pharms. Co.*,
   No. 4:09-CV-198, 2010 WL 1257671 (E.D. Mo. Mar. 24, 2010).........................18

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
   974 F.2d 270 (2d Cir. 1992)........................................................................21

*Edgar v. Avaya, Inc.*,
   503 F.3d 340 (3d Cir. 2007)........................................................... passim

*Ehlmann v. Kaiser Found. Health Plan*,
   198 F.3d 552 (5th Cir. 2000) .................................................................15, 16

*Fisher v. JP Morgan Chase & Co.*,
   703 F. Supp. 2d 374 (S.D.N.Y. 2010)........................................................2, 4, 7

*Fulmer v. Klein*,
   No. 3:09-CV-2354, 2011 U.S. Dist. LEXIS 36602 (N.D. Tex. Mar. 16, 2011)......8, 14, 18, 20

*Gearren v. McGraw-Hill Cos.*,
   690 F. Supp. 2d 254 (S.D.N.Y. 2010).......................................................14, 15, 16

*Gearren v. McGraw-Hill Cos.*,
   No. 10-792-cv, 2011 U.S. App. LEXIS 21115 (2d Cir. Oct. 19, 2011) .........................3, 9, 22

*Graden v. Conexant Sys., Inc.*,
   574 F. Supp. 2d 456 (D.N.J. 2008) ...................................................................7

*Griffin v. Flagstar Bancorp, Inc.*,
   No. 2:10-cv-10610, 2011 U.S. Dist. LEXIS 35080 (E.D. Mich. Mar. 31, 2011)...............7, 10

*Halaris v. Viacom, Inc.*,
   No. 3:06-CV-1646, 2008 U.S. Dist. LEXIS 75557 (N.D. Tex. Aug. 19, 2008)......8, 14, 18, 20

*Harris v. Amgen, Inc.*,
   No. 07-cv-5442, 2010 U.S. Dist. LEXIS 26283 (C.D. Cal. Mar. 2, 2010)...........................19

*Harzewski v. Guidant Corp.*,
   489 F.3d 799 (7th Cir. 2007) ...................................................................14

*Herrera v. Wyeth*,
No. 08 Civ. 4688, 2010 U.S. Dist. LEXIS 27611 (S.D.N.Y. Mar. 16, 2010)......................7, 13

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999).........................................................................................................6, 24

*In re Avon Prods., Inc. Secs. Litig.*,
No. 05 Civ. 6803, 2009 WL 848083 (S.D.N.Y. Mar. 3, 2009) ...............................................17

*In re Bausch & Lomb Inc. ERISA Litig.*,
No. 06-cv-6297, 2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008) ...........................................17

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
No. 08 MDL 1963, 2011 U.S. Dist. LEXIS 6026 (S.D.N.Y. Jan. 19, 2011).........................17

*In re Citigroup ERISA Litig.*,
No. 07 Civ. 9790, 2009 U.S. Dist. LEXIS 78055 (S.D.N.Y. Aug. 31, 2009) .................15, 24

*In re Citigroup ERISA Litig.*,
No. 09-3804-cv, 2011 U.S. App. LEXIS 21463 (2d Cir. Oct. 19, 2011) ....................... passim

*In re Dell, Inc. ERISA Litig.*,
563 F. Supp. 2d 681 (W.D. Tex. 2008)......................................................................... passim

*In re Dynegy, Inc. ERISA Litig.*,
309 F. Supp. 2d 861 (S.D. Tex. 2004) ............................................................................22, 24

*In re Elec. Data Sys. Corp. "ERISA" Litig.*,
305 F. Supp. 2d 658 (E.D. Tex. 2004)...................................................................................9

*In re JDS Uniphase Corp. ERISA Litig.*,
No. C 03-04743, 2005 WL 1662131 (N.D. Cal. July 14, 2005)............................................19

*In re Morgan Stanley ERISA Litig.*,
696 F. Supp. 2d 345 (S.D.N.Y. 2009)...................................................................................17

*In re RadioShack Corp. ERISA Litig.*,
547 F. Supp. 2d 606 (N.D. Tex. 2008) ...............................................................8, 14, 19, 20

*In re Reliant Energy ERISA Litig.*,
336 F. Supp. 2d 646 (S.D. Tex. 2004) ...............................................................................5, 20

*In re Schering-Plough Corp. ERISA Litig.*,
420 F.3d 231 (3d Cir. 2005)...............................................................................................4, 5

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) .............................................................................................13

*In re UBS AG ERISA Litig.*,
    No. 08 Civ. 6696, 2011 U.S. Dist. LEXIS 40428 (S.D.N.Y. Mar. 24, 2011)..............5, 7, 9, 10

*In re Wachovia Corp. ERISA Litig.*,
    No. 3:09cv262, 2010 U.S. Dist. LEXIS 79971 (W.D.N.C. Aug. 6, 2010)..................... passim

*In re: Lehman Bros. Secs. & ERISA Litig.*,
    No. 09 MD 02017, 2011 U.S. Dist. LEXIS 114787 (S.D.N.Y. Oct. 5, 2011).................13, 15

*Izzarelli v. Rexene Prods. Co.*,
    24 F.3d 1506 (5th Cir. 1994) ...............................................................................20

*Kirschbaum v. Reliant Energy, Inc.*,
    526 F.3d 243 (5th Cir. 2008) ........................................................................ passim

*Kuper v. Iovenko*,
    66 F.3d 1447 (6th Cir. 1995) ...............................................................................21

*Langbecker v. Elec. Data Sys. Corp.*,
    476 F.3d 299 (5th Cir. 2007) ............................................................................4, 8

*McDonald v. Provident Indemnity Life Ins*. Co., 60 F.3d 234 (5th Cir. 1995) ............................16

*Moench v. Robertson*,
    62 F.3d 553 (3d Cir. 1995)........................................................................... passim

*Morrison v. Moneygram Int'l, Inc.*,
    607 F. Supp. 2d 1033 (D. Minn. 2009) ...................................................................14

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)..........................................................................17, 22, 24

*Powell v. Dallas Morning News LP*,
    610 F. Supp. 2d 569 (N.D. Tex. 2009) ...................................................................21

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) ...............................................................................14

*Quan v. Computer Scis. Corp.*,
    623 F.3d 870 (9th Cir. 2010) ....................................................................8, 13, 14, 20

*Shea v. Esensten*,
    107 F.3d 625 (8th Cir.1997) ...............................................................................16

*Tittle v. Enron*,
    284 F. Supp. 2d 511 (S.D. Tex. 2003) ....................................................................9

*Urban v. Comcast Corp.*,
    No. 08-773, 2008 U.S. Dist. LEXIS 87445 (E.D. Pa. Oct. 28, 2008) ......................................7

*Varity v. Howe*,
   516 U.S. 489 (1996) ................................................................................................24

*Wright v. Medtronic, Inc.*,
   No. 09-CV-0443, 2010 U.S. Dist. LEXIS 24748 (D. Minn. Mar. 17, 2010) ...........3, 4, 10, 13

*Wright v. Medtronic, Inc.*,
   No. 09-CV-0443, 2011 WL 31501 (D. Minn. Jan. 5, 2011) .....................................19

*Wright v. Oregon Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ...............................................................................10

## STATUTES

15 U.S.C. § 77e ..........................................................................................................18

29 U.S.C. § 1104(c) ....................................................................................................8

29 U.S.C. § 1109 ........................................................................................................21

29 U.S.C. § 1144(d) ...................................................................................................19

## RULES

Fed. R. Civ. P. 9(b) ..............................................................................................15, 18-19

Fed. R. Civ. P. 12(b)(6) .......................................................................................... passim

## CODE OF FEDERAL REGULATIONS

17 C.F.R. §§ 230.428(a)(1), (b)(1) ............................................................................18

17 C.F.R. § 239.16(b) .................................................................................................18

29 C.F.R. § 2550.404c-1(c)(2)(ii) (2008) ..................................................................19

## INTRODUCTION

As Defendants demonstrated in their opening brief, the Consolidated Complaint fails to state a plausible ERISA fiduciary breach claim based on Defendants' failure to eliminate the BP Stock Fund as an investment option in the BP Plans or to liquidate the Plans' company stock holdings.  Because the BP plans are "eligible individual account plans" ("EIAPs") under ERISA, Defendants' failure to liquidate or eliminate the BP Stock Fund is protected by the *Moench* "presumption of prudence," which provides fiduciaries with a "substantial shield" against the type of breach of fiduciary duty claims asserted in this case.  *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 256 (5th Cir. 2008); *see also Moench v. Robertson*, 62 F.3d 553, 570-72 (3d Cir. 1995).  To overcome that presumption, Plaintiffs must allege "persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest" – typically allegations showing that the company's viability as an ongoing concern was threatened or that its stock "was in danger of becoming essentially worthless." *Kirschbaum*, 526 F.3d at 255-56.  Given BP's market capitalization, significant revenues, and stock performance both during and after Plaintiffs' "cherry-picked" class period, Plaintiffs' allegations fall far short of that rigorous standard.

Implicitly conceding that they cannot overcome the *Moench* presumption, Plaintiffs devote much of their opposition to two arguments that have been specifically rejected in the Fifth Circuit and elsewhere:  (a) that the presumption does not apply to BP's Plans because they do not "require" investment in company stock; and (b) that the presumption is inapplicable at the motion to dismiss stage.  There is no merit to either argument.  Indeed, Plaintiffs' unsuccessful attempt to "end run" the presumption only underscores that it presents an insurmountable obstacle and that the Consolidated Complaint thus should be dismissed at this time.

1

Plaintiffs' arguments in support of their other claims likewise fail.  Their fiduciary disclosure claim arguments reflect a fundamental misunderstanding of the scope of ERISA's disclosure obligations and key distinctions between fiduciary and corporate acts under the statute, both of which require dismissal.  Plaintiffs' remaining monitoring and co-fiduciary liability claims fail both as derivative of their unsustainable primary claims for breach of fiduciary duty and for other reasons.

## ARGUMENT

### I.   THE PRESUMPTION OF PRUDENCE REQUIRES DISMISSAL.

#### A.   The *Moench* Presumption of Prudence Applies to the BP Plans' Company Stock Investments.

Plaintiffs contend that Defendants are not entitled to a presumption of prudence because the BP Plans, in their view, do not require, but rather "simply permit," investment in company stock.  Opp'n at 15.  Even if the BP Plans merely permitted such investment – and they do far more (*see infra*) – that contention fails as a matter of law.  In *Kirschbaum*, the Fifth Circuit made clear that "[t]he *Moench* presumption logically applies to *any* allegations of fiduciary duty breach for failure to divest an EIAP or ESOP of company stock."  526 F.3d at 254 (emphasis added).  In accord with *Kirschbaum*, courts both within and outside the Fifth Circuit have rejected the precise argument advanced by Plaintiffs here.  For example, in *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681, 691 (W.D. Tex. 2008), the court squarely held, based on *Kirschbaum*, that "[t]his protection is not limited by whether the plan requires, encourages, or permits investment so long as the investment is an EIAP or ESOP."  Citing both *Kirschbaum* and *Dell*, the court in *Fisher v. JP Morgan Chase & Co.*, 703 F. Supp. 2d 374, 383 (S.D.N.Y. 2010), likewise held "that the presumption applies to any allegations of fiduciary duty breach for failure to divest an EIAP or ESOP of company stock, regardless of whether the plan requires,

encourages, or permits investment so long as the investment is an EIAP or ESOP" (internal citations and quotation marks omitted).[1]

The Second Circuit reached the same conclusion in its recent decisions affirming two Rule 12(b)(6) dismissals based on the *Moench* presumption of prudence, relying specifically on *Kirschbaum*.  In *In re Citigroup ERISA Litig.*, No. 09-3804-cv, 2011 U.S. App. LEXIS 21463, at *20 (2d Cir. Oct. 19, 2011), the Second Circuit noted that the "Fifth and Ninth Circuits have . . . applied the presumption to situations in which employer stock funds were offered as investment options within EIAPs."  The Second Circuit went on to "join our sister circuits in adopting the *Moench* presumption – and do so with respect to both EIAPs and ESOPs – because, as those courts have recognized, it provides the best accommodation between the competing ERISA values of protecting retirement assets and encouraging investment in employer stock."  *Id.* at *21; *see also Gearren v. McGraw-Hill Cos.*, No. 10-792-cv, 2011 U.S. App. LEXIS 21115, at *8-9 (2d Cir. Oct. 19, 2011); *Wright v. Medtronic, Inc.*, No. 09-CV-0443, 2010 U.S. Dist. LEXIS 24748, at *22 (D. Minn. Mar. 17, 2010) ("Plaintiffs urge this Court to . . . hold that the *Moench* presumption does not apply unless, under the terms of the plan, the fiduciaries have no choice but to invest in employer stock.  This argument misconstrues *Moench*.").[2]

---

[1] Plaintiffs' effort to distinguish *Dell* (Opp'n at 22 n. 25) on the ground that the *Dell* fiduciaries had no authority to direct the investment of employer contributions is twice wrong.  As an initial matter, such authority (or lack thereof) is not relevant to whether a company stock option is a permissive or mandatory plan feature.  Factually Plaintiffs are wrong too – participants had full investment discretion over *all* contributions in both the BP and Dell plans; in contrast, the *Enron* and *Dynegy* plans required employer contributions to be invested in company stock. *Dell*, 563 F. Supp. 2d at 688-89; Ex. A, ESP §§ 6.1(a), 3.4; *see also* Ex. G (the 2009 ESP SPD) at 26-27.

[2] Plaintiffs assert that "the Fifth Circuit left open the possibility that the presumption may not apply in all circumstances." Opp'n at 16.  But the only EIAP context in which *Kirschbaum* suggested that the presumption of prudence might not apply is where the plan's terms expressly mandated investment in company stock – in such cases, the fiduciary's actions might not be subject to *any* fiduciary breach claim.  526 F.3d at 254-55; *see also Edgar v. Avaya, Inc.*, 503 F.3d 340, 346 n.10 (3d Cir. 2007) (explaining that *Moench* "left open the issue of whether there could still be a breach of fiduciary duty" where "plan in absolute unmistakable terms requires that the fiduciary invest the assets in the employer's securities regardless of the surrounding circumstances"); *cf. In re Wachovia Corp. ERISA Litig.*, No. 3:09cv262, 2010 U.S. Dist. LEXIS 79971, at *32-35 (W.D.N.C. Aug. 6, 2010) (where "the Plans require the maintenance of the Wachovia Stock Fund as an available investment option . . . the Defendants are not liable for breach of their fiduciary duties for failing to eliminate the Wachovia Stock Fund . . . .").

The conclusion that the *Moench* presumption protects all EIAPs is based on Congress's preference for company stock investment and employee stock ownership, a preference reflected in the special rules crafted for such plans in ERISA.  *See*, *e.g.*, *Kirschbaum*, 526 F.3d at 248 ("Congress, for well-documented policy reasons, has encouraged plan ownership of employer stock and has exempted such investments from certain of ERISA's fiduciary requirements . . . . [A]n EIAP fiduciary's decision to purchase or hold the employer's securities is exempt from the duty to diversify and the related duty of prudence insofar as it concerns asset diversification.") (internal citation omitted).  These policy choice would be undermined if an EIAP's investment in company stock were subject to the same fiduciary scrutiny as any other plan investment.  *See*, *e.g.*, *Citigroup*, 2011 U.S. App. LEXIS 21463, at *15 (due to "the 'favored status Congress has granted to employee stock investments in their own companies[,] . . . decisions not to divest the Plans of Citigroup stock or impose restrictions on participants' investment in that stock are entitled to a presumption of prudence and should be reviewed for an abuse of discretion") (quoting *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 308 (5th Cir. 2007)); *Dell*, 563 F. Supp. 2d at 687, 691-92 ("EIAPs serve a dual statutory purpose – they are not only a 'vehicle for retirement savings,' but also serve to encourage employee stock ownership . . . . Accordingly, judicial review of a fiduciary's decision to invest an EIAP plan's assets in employer stock must take into account this mixed purpose.").[3]

Plaintiffs' reliance (Opp'n at 15) on a Third Circuit decision, *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005), to support their argument that the *Moench*

---

[3] *See also Fisher*, 703 F. Supp. 2d at 383 ("ERISA expresses a strong preference for employee ownership in the context of ESOPs and EIAPs.  Accordingly, . . . the presumption . . .  does not require a plan agreement to mandate or state a preference for such investments.") (internal citations, punctuation omitted); *Wright*, 2010 U.S. Dist. LEXIS 24748, at *24-25 ("the *Moench* presumption is the logical consequence of ERISA's exemption of EIAPs from the duty to diversify . . . . [B]ecause § 1104(a)(2) exempts all EIAPs from the duty to diversify – whether or not a particular EIAP gives the fiduciary discretion to eliminate the employer-stock fund – the *Moench* presumption likewise applies to all EIAPs.").

4

presumption does not apply here is misplaced.  Not only did the Fifth Circuit in *Kirschbaum* reject *Schering-Plough*'s view that the presumption applies only to ESOPs, but the Third Circuit itself later held in *Edgar v. Avaya, Inc.*, 503 F.3d 340, 347 (3d Cir. 2007), that the *Moench* presumption "applies equally" to ESOPs and EIAPs.[4]  As another court recently explained, "Plaintiffs' reliance on the Third Circuit's decision in *In re Schering-Plough* . . . for the proposition that the *Moench* presumption applies only to ESOPs is of little persuasive value given that subsequent Third Circuit case law makes clear that the presumption of prudence applies to all EIAPs."  *In re UBS AG ERISA Litig.*, No. 08 Civ. 6696, 2011 U.S. Dist. LEXIS 40428, at *21 n.14 (S.D.N.Y. Mar. 24, 2011) (citing *Edgar*).

In addition to being contrary to Fifth Circuit law, Plaintiffs' argument (Opp'n at 16-17) also fails because it misinterprets and ignores key provisions of the BP Plans that make clear that the Plans do far more than "simply permit" the offering of the BP Stock Fund.  The BP Plans reflect in multiple ways the sponsor's intent – as a matter of plan design – that the BP Stock Fund will be provided to participants as a key investment option.  The Plans specifically single out and define the Company Stock Fund as the BP Stock Fund Investment Option – no other investment option is so treated in the Plans' text.  *See* ESP § 1.32.  The Plans' investment appendix, which is part of the Plans themselves, also identifies the BP Stock Fund as a "core investment option."[5]  ESP Appendix 1.58.  Moreover, numerous other Plan provisions specifically reference the Company Stock Fund and thus would be rendered meaningless if the Fund were not available for participant investment.  These provisions include:  (a) ESP § 6.5,

---

[4] As the Third Circuit itself explained in *Edgar*, the *Moench* reference in *Schering-Plough* (on which Plaintiffs rely in this case) was *dicta* in a portion of the *Schering-Plough* opinion that addressed standing, not ERISA § 404 issues.  *Schering-Plough* did not express a view on the significance of the exemption of EIAPs from the duty to diversify under ERISA.  *Edgar*, 503 F. 3d at 347 n.12.

[5] In *Kirschbaum*, the company stock fund was similarly included as a plan option in an attachment that was part of the plan document.  *See Kirschbaum*, 526 F.3d at 250; *In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 667 (S.D. Tex. 2004).

which provides that "purchases and sales in the Company Stock Fund will be restricted for Participants subject to applicable statutory, stock exchange or Company trading restrictions;" (b) the Plans' withdrawal provisions, which provide that the BP Stock Fund is the only option from which a withdrawal or payment may be made in kind, rather than in cash (ESP §9.7(f) (withdrawal provision), § 10.3(b) (payments for inactive participants)); and (c) the Plans' "Notice and Information Requirements" description, which refers to the disclosure of Company-related information in connection with the Plans' purchase, distribution, or transfer of Company Stock (ESP § 18.14).  In addition, the Trust Agreement, signed by the Plans' settlor, names the BP Stock Fund as an investment option.  Ex. I, Master Trust at Ex. B, Ex. C, 2d Am. ¶ 5.  In short, Plan documents presuppose the existence of the Company Stock Fund.

Plaintiffs incorrectly assert that the SPIOC could eliminate the BP Stock Fund as an investment option as a matter of fiduciary discretion.  The contrary is true.  Because the Fund is embedded in and part of the Plans as Appendix 1.58, that option can be eliminated *only by Plan amendment* – a quintessential non-fiduciary, settlor act.  *See Kirschbaum*, 526 F.3d at 251 (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999)).  The SPIOC itself has no authority to make such an amendment; rather, such amendment could be made only by a Designated Officer acting as a settlor on behalf of BPNAI's Board.  ESP §§ 6.3, 16.1(a), 16.1(c), 14.1(a), 14.1(p), 14.5.  Thus, unless and until removed by Plan amendment, the Company Stock Fund constitutes an integral part of the Plans; it is not, as Plaintiffs suggest, a discretionary or permissive Plan feature.[6]

---

[6] Plaintiffs' brief incorrectly states (Opp'n at 17) that four Northern Trust investment options were closed without settlor involvement.  In fact, the Plans were amended to reflect the closures in Exhibit 4.  *See* ESP at Amend. 18 (stamped BPGOM ERISA 0001247-54) (Ex. T hereto), produced prior to the Consolidated Complaint. *See* Ex. 1 at ¶ 3 & Attachment A at ¶ 2; Ex. 2 at p.1.

Even outside the Fifth Circuit, courts have applied the presumption of prudence to EIAPs that "embed" the company stock fund in the plan's terms. *See Herrera v. Wyeth*, No. 08 Civ. 4688, 2010 U.S. Dist. LEXIS 27611, at *15, *17 (S.D.N.Y. Mar. 16, 2010) ("From the references to the Stock Fund found throughout the plan agreements, it is clear that the agreements presuppose the existence of the Stock Fund . . . . Even though the mandatory language discussed above does not explicitly constrain the fiduciaries' discretion, it does provide evidence of the settlor's clear intent that the Stock Fund be offered as an investment option."); *UBS*, 2011 U.S. Dist. LEXIS 40428, at *18-20 (following *Wyeth* and dismissing case under *Moench*); *Fisher*, 703 F. Supp. 2d at 379, 382-83 (where plan "did not require the Company Stock Fund to be offered" but "implies that the Stock Fund will be an investment option," court holds that "*Moench* presumption most certainly applies").[7]  The case for applying the presumption is even stronger here because, unlike the BP Plans, the plans at issue in those other cases did not specifically include the company stock fund as a listed option that could be removed only by plan amendment.

Finally, *Kirschbaum*'s rationale for applying the *Moench* presumption to all EIAPs is directly applicable here.  If they had eliminated the BP Stock Fund option or liquidated the Plans' company stock holdings, the BP Plans' fiduciaries *would* have been subject to potential

---

Plaintiffs' implication that Plan fiduciaries could eliminate the Company stock option because they had the "ability to direct the investment of employer contributions" (Opp'n at 22 n.25) is flatly refuted by the Plans. *See* ESP §§ 6.1(a), 3.4; *see also* Ex. G, the 2009 ESP Summary Plan Description ("SPD") at 26-27.

[7] *Graden v. Conexant Sys., Inc.*, 574 F. Supp. 2d 456 (D.N.J. 2008), and *Urban v. Comcast Corp.*, No. 08-773, 2008 U.S. Dist. LEXIS 87445 (E.D. Pa. Oct. 28, 2008), are distinguishable because the company stock fund in those cases was not embedded in the applicable plan.  And, to the extent those decisions are inconsistent with *Kirschbaum* and its progeny, they are contrary to Fifth Circuit law and thus of no value to this Court.  Plaintiffs also attempt to distinguish the plan in *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2011 U.S. Dist. LEXIS 35080 (E.D. Mich. Mar. 31, 2011), as having stronger language requiring the offering of a company stock fund than do the BP Plans. Opp'n at 16 n.18.  Not so.  The plan there merely noted that an investment statement did not apply to the company stock fund. *Id.* at *31-32.  The BP Plans similarly provide for different "Investment Strategy Guidelines" for the BP Stock Fund than for all other investment options (*see* Ex. J, at Ex. C-1), and, more importantly, the BP Plans "embed" the BP Stock Fund as an investment option as explained above.

7

lawsuits from participants.  *See Kirschbaum*, 526 F.3d at 256; *Citigroup*, 2011 U.S. App. LEXIS

21463, at *22.  Not only was the BP Stock Fund part of the Plans unless and until eliminated by

amendment, Defendants would have had to override participants' investment decisions and Plan

terms giving participants such investment authority.  Defendants also would have faced the

insider trading concerns that the presumption is designed to mitigate.  *Kirschbaum*, 526 F.3d at

256; *Quan v. Computer Scis. Corp.*, 623 F.3d 870, 881-883, & n.8 (9th Cir. 2010).  Thus,

Plaintiffs' arguments are contrary to *Kirschbaum* and ignore the Fifth Circuit's rationale for

adopting the presumption of prudence as a "substantial shield" for fiduciaries.  526 F.3d at 256.[8]

### B.      The Presumption of Prudence Applies at the Motion to Dismiss Stage.

Plaintiffs incorrectly argue (Opp'n at 18) that the presumption of prudence is an

evidentiary concept that is inappropriate for consideration on a motion to dismiss.  This

argument ignores the avalanche of post- *Kirschbaum* decisions rejecting that contention and

making clear that the *Moench* presumption is a standard of review fully applicable at the motion

to dismiss stage.  Indeed, since *Kirschbaum* was decided, every reported decision in this Circuit

addressing fiduciary challenges to employer stock investments has dismissed the complaints

under Rule 12(b)(6) on the basis of the presumption.  *See Fulmer v. Klein*, No. 3:09-CV-2354,

2011 U.S. Dist. LEXIS 36602, at *14-16 (N.D. Tex. Mar. 16, 2011); *Halaris v. Viacom, Inc.*, No.

3:06-CV-1646, 2008 U.S. Dist. LEXIS 75557, at *8 (N.D. Tex. Aug. 19, 2008); *In re Dell, Inc.

ERISA Litig.*, 563 F. Supp. 2d 681, 694 (W.D. Tex. 2008); *see also In re RadioShack Corp.

ERISA Litig.*, 547 F. Supp. 2d 606, 614-16 (N.D. Tex. 2008).  Plaintiffs' observation that

---

[8] Plaintiffs' ERISA § 404(c) arguments (Opp'n at 17 n.20) are both wrong and irrelevant to Defendants'
motion to dismiss.  *See* Defs.' Brief at 25 n.28.  The Plans are § 404(c) plans (*see, e.g.*, ESP § 6.6), and Plan
participants are responsible for their investment decisions.  Defendants cannot be held liable for any losses resulting
from those decisions.  *See* 29 U.S.C. § 1104(c); *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 309-13 (5th Cir.
2007).  Indeed, the Fifth Circuit in *Langbecker* rejected Plaintiffs' argument that § 404(c) protection does not extend
to the choice of options available under a plan. 476 F.3d at 310-11.

8

*Kirschbaum* itself affirmed a grant of a summary judgment is of no moment.  In adopting the *Moench* presumption, the Fifth Circuit in *Kirschbaum* said nothing to suggest that its analysis of the governing legal standard is inapplicable at the pleading stage.  Moreover, not only did the district court not have the benefit of the Fifth Circuit's teachings, but its ruling also predated the Supreme Court's decisions in *Iqbal* and *Twombly*, which rejected the prior "no set of facts" standard for resolving Rule 12(b)(6) motions.  For the same reasons, the pre- *Kirschbaum* decisions in *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658 (E.D. Tex. 2004), and *Tittle v. Enron*, 284 F. Supp. 2d 511 (S.D. Tex. 2003), also cited by Plaintiffs, are out-of-date.[9]

Courts outside the Fifth Circuit also routinely apply the *Moench* presumption to dispose of stock drop claims under ERISA at the motion to dismiss stage, particularly after *Iqbal* and *Twombly*.  In affirming a Rule 12(b)(6) dismissal in *Citigroup*, the Second Circuit explained:

> [W]e reject plaintiffs' argument that the *Moench* presumption should not apply at the pleading stage.  The "presumption" is not an evidentiary presumption; it is a standard of review applied to a decision made by an ERISA fiduciary.  Where plaintiffs do not allege facts sufficient to establish that a plan fiduciary has abused his discretion, there is no reason not to grant a motion to dismiss.

2011 U.S. App. LEXIS 21463, at *25 (citations omitted); *see also Gearren*, 2011 U.S. App. LEXIS 21115, at *8-10 (Rule 12(b)(6) dismissal of ERISA stock drop case affirmed).  Contrary to Plaintiffs' assertion (Opp'n at 17, n.19), the Third Circuit in *Edgar* likewise held that the *Moench* presumption can be applied on a Rule 12(b)(6) motion, rejecting the same argument advanced by Plaintiffs here:

---

[9] *See also Edgar*, 503 F.3d at 349 n.14 (criticizing *In re Elec. Data Sys. Corp. "ERISA" Litigation*); *UBS*, 2011 U.S. Dist. LEXIS 40428, at *21-22 (criticizing *Tittle* as one of "a handful of cases, many of which were decided prior to *Twombly*, in which a district court declined to apply the presumption at the motion to dismiss stage").

> Edgar argues that the District Court's application of *Moench*'s presumption of prudence at the motion to dismiss stage is somehow inconsistent with the liberal pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure.  We are unconvinced.  Quite simply, if a plaintiff does not plead all of the essential elements of his or her legal claim, a district court is required to dismiss the complaint pursuant to Rule 12(b)(6) . . . . We . . . see no reason to allow this case to proceed to discovery when, even if the allegations are proven true, Edgar cannot establish that defendants abused their discretion.

503 F.3d at 349 (footnote omitted).[10]  In short, Plaintiffs' argument that the presumption of prudence does not apply at this stage of the proceedings has been roundly rejected and should be here as well.

### C.    The Presumption of Prudence Requires Dismissal of the Complaint.

To overcome *Moench*, Plaintiffs must allege "persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest." *Kirschbaum*, 526 F.3d at 256.  Courts have rejected efforts to rebut the presumption where, as here, "[t]here is no indication that [the company's] viability as a going concern was ever threatened, nor that [the company's] stock was in danger of becoming essentially worthless."  *Id*. at 255.  Plaintiffs' allegations fall far short of that standard.  Indeed, Plaintiffs' opposition effectively admits as much; it simply ignores facts appropriate for consideration that are fatal to any effort to rebut the *Moench* presumption here – (a) BP's substantial revenues throughout the class period and thereafter; (b) the relative insignificance of the drop in BP's stock price in

---

[10] *See also Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1098-99 (9th Cir. 2004); *Griffin*, 2011 U.S. Dist. LEXIS 35080, at *36 ("although the term 'presumption' often describes evidentiary standards, in this context the presumption merely indicates the standard required for plaintiffs to state claims in 'stock drop' cases. Accordingly, the Court chooses to follow those authorities applying the presumption when deciding a motion to dismiss."); *UBS*, 2011 U.S. Dist. LEXIS 40428, at *21-23 (rejecting argument that "*Moench* presumption is an evidentiary presumption that should not be invoked on a motion to dismiss"); *Wachovia*, 2010 U.S. Dist. LEXIS 79971, at *43-44 (rejecting argument that presumption of prudence "is an evidentiary standard that is inappropriate to apply until after the parties have had an opportunity to engage in discovery"); *cf. Wright*, 2010 U.S. Dist. LEXIS 24748, at *25 n.9 ("it is somewhat misleading to say, in the context of a Rule 12(b)(6) motion, that the Court is applying a 'presumption' or that a plaintiff must plead sufficient facts to 'overcome' it.  A plaintiff who has failed to plead facts that, if proven, would establish that an EIAP should not have invested in any employer stock has failed to state a claim, not failed to overcome a presumption.").

10

comparison to other cases dismissed under *Moench*; (c) BP's strong stock price rebound; (d) the "hold" recommendation of numerous analysts on its stock even after the Deepwater Horizon explosion; and (e) the continued investment quality of BP's debt, both during and after the proposed class period.  These facts – all of which are properly before this Court, either because they are alleged in the Complaint itself or as appropriate matters for judicial notice – point to BP's continuing vitality and the absence of any danger that its stock would become worthless, the key factors in determining whether Plaintiffs can surmount the presumption here.

Rather than attempting to meet *Kirschbaum*'s strict standard, Plaintiffs attack it, arguing that "requiring Plaintiffs to show an imminent collapse in order to overcome the *Moench* presumption is illogical because imminent collapse is not an administrable standard."  Opp'n at 21.  Instead, they assert that they can overcome the presumption merely by alleging (a) that BP's stock price was artificially inflated due to BP's "risky business strategies;" and (b) that Defendants knew of that inflation, but permitted further participant investment in BP stock and failed to liquidate the Plans' company stock holdings. *Id*. at 18-19.  By definition, this type of "artificial inflation" argument could be made in *every* "stock drop" case, and thus does not distinguish this case from the numerous decisions dismissing ERISA stock drop complaints based on the *Moench* presumption.  And, not surprisingly, Plaintiffs' artificial inflation argument has been rejected both in the Fifth Circuit and elsewhere.

*Kirschbaum* itself rejected Plaintiffs' "artificial inflation" theory, requiring far more in the way of "dire circumstances" to overcome the presumption:

> [Plaintiff] contends that the presumption in favor of continuing company stock investment should not apply at all where allegations, like his, relate to the fiduciaries' knowing purchases of stock at an artificially inflated price . . . . We reject this limitation.

11

526 F.3d at 254.  The Fifth Circuit not only found that the presumption of prudence applied, but also explained that the presumption

> may only be rebutted if unforeseen circumstances would defeat or substantially impair the accomplishment of the trust's purposes.  *One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from ESOP or EIAP plan provisions.*

*Id*. at 256 (internal citation omitted, emphasis added).  Notwithstanding plaintiff's artificial inflation claim, the Fifth Circuit held that the presumption had *not* been overcome, emphasizing that there was "no indication that REI's viability as a going concern was ever threatened, nor that REI's stock was in danger of becoming essentially worthless."  *Id*. at 255-56.  Without that type of "dire situation" (*Edgar*, 503 F.3d at 348), the presumption simply cannot be overcome, and such a situation is not alleged here.

Other courts likewise have held that claims of artificial inflation, in the absence of dire circumstances, are insufficient.  Relying on *Kirschbaum*, the Second Circuit in *Citigroup* recently held that allegations that company stock was "inflated" did not "sufficiently plead a fiduciary breach" claim because such allegations are "insufficient to show that the company was in a 'dire situation.'"  2011 U.S. App. LEXIS 21463, at *28.[11]  District courts have reached the same conclusion in dismissing ERISA stock drop claims under the *Moench* presumption.  For example, applying *Kirschbaum*, *Dell* dismissed stock drop claims grounded on allegations of artificial inflation.  563 F. Supp. 2d at 694.  Likewise, the court in *In re Wachovia Corp. ERISA Litig.*, No. 3:09-cv-262, 2010 U.S. Dist. LEXIS 79971, at *48 (W.D.N.C. Aug. 6, 2010), ruled that allegations of artificial inflation due to a "myriad of improper business . . . practices" could

---

[11] As the Second Circuit observed, "that Citigroup made bad business decisions is insufficient to show that the company was in a 'dire situation,' much less that the Investment Committee or the Administration Committee knew or should have known that the situation was dire."  *Id.* at *28.  The court of appeals cited the company's "market capitalization of almost $200 billion" and its stock drop of 50% as evidence that the company did not face a dire situation sufficient to overcome the *Moench* presumption.  *Id.* at *30-31.

12

not stave off dismissal.  Even with an 87% decline in the company's stock price, the *Wachovia* court found that the *Moench* presumption required dismissal because the stock "continued to have real value" and, months after the end of the class period, "recorded double-digit growth." *Id.* at *48-49; *see also Herrera*, 2010 U.S. Dist. LEXIS 97397, at *6 (citing *Kirschbaum* and holding that "the presumption of prudence is not rebutted simply by [defendant's] knowledge that the stock is inflated"); *In re: Lehman Bros. Secs. & ERISA Litig.*, No. 09 MD 02017, 2011 U.S. Dist. LEXIS 114787, at *15 (S.D.N.Y. Oct. 5, 2011) (dismissing prudence claim and holding that "cause for concern is not a dire situation"); *Wright*, 2010 U.S. Dist. LEXIS 24748, at *26-27 (citing *Kirschbaum* and holding that "[a]llowing plaintiffs to evade the *Moench* presumption merely by pleading that the stock was artificially inflated for one reason or another would eviscerate the presumption").[12]

In sum, Plaintiffs' artificial inflation theory cannot save the Complaint from dismissal. Indeed, if Plaintiffs' theory were accepted, the *Moench* presumption would be stripped of its protective force – virtually *no* stock drop action could be dismissed based on the presumption of prudence because, just as in the securities fraud context, all such cases allege that the company's stock was "artificially inflated."[13]  Numerous courts not only have dismissed such complaints,

---

[12] In *Wright*, the court rejected artificial inflation arguments virtually identical to those advanced by Plaintiffs.  In their opposition here, Plaintiffs assert that it is a breach of fiduciary duty for plan fiduciaries "to pay $10 for a $5 stock." Opp'n at 20-21.  *Wright* found this same argument (quoted below) unavailing:

> Plaintiffs' argument is straightforward:  It is imprudent for a fiduciary to buy any stock that is selling at, say, $20 per share, when the fiduciary knows that the real value of the stock is only, say, $15.  The fiduciary is just throwing $5 per share out of the window. The fiduciary of an EIAP therefore breaches the duty of prudence when he invests *any* plan assets in the stock of an employer—even if the employer is profitable and robustly healthy—if he knows the employer's stock is overpriced.

*Wright*, 2010 U.S. Dist. LEXIS 2478, at *26.

[13] Plaintiffs' authorities, all outside the Fifth Circuit, are easily distinguishable.  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1102 (9th Cir. 2008), predates the Ninth Circuit's adoption of the *Moench* presumption in *Quan v. Computer Scis. Corp.*, 623 F.3d 870 (9th Cir. 2010).  In adopting *Moench*, the Ninth Circuit placed *Syncor*'s continued vitality in doubt, emphasizing that *Syncor*'s result was dependent on an "illegal scheme" and a more severe stock drop than occurred in *Quan*.  623 F.3d at 885.  The Ninth Circuit also adopted much of the Fifth

but they have done so at an accelerating rate in the wake of *Kirschbaum*, *Twombly* and *Iqbal*. This authority demonstrates that Plaintiffs' reliance "artificial inflation" theory is misplaced and that they have failed to plead facts sufficient to overcome the presumption.

Finally, Plaintiffs' reliance on this theory exposes this case for what it is – a disguised "securities fraud" case whose central theme is that fiduciaries should have used insider knowledge for the Plans' benefit. The Fifth Circuit and other courts routinely have held that fiduciaries cannot engage in such insider trading. *See Kirschbaum*, 526 F.3d at 256; *Quan*, 623 F.3d at 881, 883 n.8 ("*Moench* gives fiduciaries a safe harbor from failing to use insider information to divest from employer stock" and "fiduciaries are under no obligation to violate securities laws in order to satisfy their ERISA fiduciary duties . . . ."); *Wachovia*, 2010 U.S. Dist. LEXIS 79971, at *56 n.12. This Court should dismiss the Consolidated Complaint and reject Plaintiffs' invitation to use ERISA to displace the federal securities law.[14]

---

Circuit's analysis in *Kirschbaum*, including its statement that "'[o]ne cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from [Plan] provisions.'" *Id.* at 884 (quoting *Kirschbaum*, 526 F.3d at 256) (alterations in original).

*Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007), another ESOP case relied on by Plaintiffs, reversed a dismissal granted on a standing issue (*id.* at 801) and did not hold that bare allegations of artificial inflation are sufficient to state a claim. *Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008), affirmed a Rule 12(b)(6) dismissal, and also did not hold that bare allegations of artificial inflation are sufficient to state a claim. *Morrison v. Moneygram Int'l, Inc.*, 607 F. Supp. 2d 1033 (D. Minn. 2009), did not hold that allegations of "risky business strategies" (Opp'n at 19) alone are sufficient to overcome the presumption, but that it could be overcome "only by proof that the fiduciary should not have invested *at all* in employer stock." *Id.* at 1053. In that case, the company "was suffering enormous investment losses throughout the class period," and its "stock price was poised to collapse, and ultimately, as of March 2008, it had lost 92% of its value over the preceding year." *Id.*

Plaintiffs' attempts to distinguish *RadioShack*, *Fulmer*, and *Halaris* (Opp'n at 21-22) miss the mark. None of these decisions supports Plaintiffs' misreading of *Kirschbaum*, and any purported distinctions Plaintiffs attempt to draw are irrelevant.

[14] *See Gearren v. McGraw-Hill Cos.*, 690 F. Supp. 2d 254, 273 (S.D.N.Y. 2010) (rejecting argument that "when a company offers its stock to employees, its disclosure obligations, as to all current and potential investors, are governed by ERISA . . . . This conclusion would either render much of securities law a dead letter, or (more likely) dissuade employers from offering company stock to employees in the first place, in direct contravention of Congress's objectives when it passed ERISA."), *aff'd*, 2011 U.S. App. LEXIS 21115 (2d Cir. Oct. 19, 2011).

II.     **PLAINTIFFS' DUTY TO INFORM CLAIM FAILS.**

Plaintiffs assert (Opp'n at 24-31) that (a) § 404 of ERISA required Plan fiduciaries to

provide participants with non-public information about the safety of BP's operations and risk

management; (b) BP's corporate statements in SEC filings constituted Plan fiduciary

communications; (c) Fed. R. Civ. P. 9(b) does not apply to their duty to inform claim; and

(d) reliance on alleged misrepresentations need not be pled under ERISA.  All of these

contentions are wrong as a matter of law.

> A.     **This Case Does Not Present the Type of Special Circumstance That Could Trigger a Duty To Disclose Corporate Information Under ERISA § 404.**

Under the guise of saying that all aspects of a company's operations "relate to Plan

benefits," Plaintiffs attempt to graft a general disclosure obligation on fiduciaries far beyond

ERISA's specified disclosure provisions.[15]  In so doing, Plaintiffs seek to turn ERISA fiduciaries

into investment advisors responsible for educating plan participants with respect to the

"investment risks of employer stock."  Opp'n at 24.  That is not the law.  To the contrary, the

Fifth Circuit has held that, as a general matter, ERISA fiduciaries have *no* disclosure obligations

beyond those expressly set forth in the statute.  *See Ehlmann v. Kaiser Found. Health Plan*, 198

F.3d 552, 555 (5th Cir. 2000).  And specifically with respect to corporate information such as

that here at issue, numerous courts have held that ERISA imposes no fiduciary duty to "inform

plan participants about nonpublic corporate developments that might affect the value of

employer stock."  *In re Citigroup ERISA Litig.*, No. 07 Civ. 9790, 2009 U.S. Dist. LEXIS 78055,

at *62 (S.D.N.Y. Aug. 31, 2009), *aff'd*, 2011 U.S. App. LEXIS 21462, at *32-35; *see also*

*Lehman Bros.*, 2011 U.S. Dist. LEXIS 114787, at *16-17; *Gearren*, 690 F. Supp. 2d at 271-72;

*Edgar*, 503 F.3d at 350.  The Fifth Circuit's *dicta* in *Ehlmann*, while affirming the *dismissal* of

---

[15] Plaintiffs, of course, do not contend that Defendants violated any of ERISA's detailed  and specific disclosure requirements.  Defs.' Br. at 26.

an ERISA disclosure claim, that there might be "unique circumstances" giving rise to a disclosure duty beyond ERISA's specific dictates simply has no application here.[16]

According to Plaintiffs' theory, all aspects of a company's operations somehow "relate" to plan benefits because information about a company's operations is relevant to the investment risks inherent in a company stock fund. Courts readily distinguish, however, between information about plan benefits and information about plan investments, recognizing that a contrary requirement "would improperly 'transform fiduciaries into investment advisors.'" *Citigroup*, 2011 U.S. App. LEXIS 21462, at *35; *see also Edgar*, 503 F.3d at 350. Moreover, if Plaintiffs were correct that all information about a company's operations "relate[s] to plan benefits" and thus must be disclosed under ERISA's fiduciary standards, employers would be dissuaded from offering company stock in their plans, contravening Congress's intent. *See Gearren,* 690 F. Supp. 2d at 273. This Court should reject Plaintiffs' invitation to use ERISA's generalized fiduciary provisions to vastly expand the detailed disclosure rules that Congress set forth in ERISA itself. *See Ehlmann*, 198 F.3d at 555-56.

Plaintiffs misread the Third Circuit's decision in *Edgar* (Opp'n at 25-26), which holds that a fiduciary satisfies any obligation it might have not to misinform participants about the investment risks associated with a company stock fund by providing appropriate warnings and information about the investment and allowing participants to make their own informed investment choice. 503 F.3d at 350. That is exactly what the fiduciaries did here. *See*, *e.g.*, Defs.' Br. at 7-8, 27. Moreover, the Second Circuit's decision in *Citigroup* discredits Plaintiffs'

---

[16] The cases discussed in *Ehlmann* as having such "unique circumstances" are far removed from the present case, as both related to matters concerning *plan administration*, not investment matters. *Cf. McDonald v. Provident Indemnity Life Ins*. Co., 60 F.3d 234, 237 (5th Cir. 1995) (while ERISA § 404 would require disclosure of rate schedule change that resulted in prohibitive health plan premiums, non-disclosure claim failed as plaintiff could not show loss to plan as required by ERISA § 409); *Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir.1997) (§ 404 required disclosure of doctor's compensation arrangement discouraging specialist referrals where patient, after inquiry, was told not to see heart specialist and subsequently died of heart attack), *cert. denied*, 522 U.S. 914 (1997).

reliance on *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 360 (S.D.N.Y. 2009).[17]
The Second Circuit held that fiduciaries owe no "duty to provide participants with nonpublic
information pertaining to specific investment options" where participants were warned about the
volatility of the company stock investment option. *Citigroup*, 2011 U.S. App. LEXIS 21463, at
*35. BP Plan participants received just such warnings in this case. *See* Defs.' Br. at 8, 27.

Finally, Plaintiffs' suggestion (Opp'n at 26-27) that this issue cannot be resolved on the
pleadings is refuted by well-settled case law. Numerous courts have disposed of disclosure
claims like those advanced by Plaintiffs at the motion to dismiss stage. *See Citigroup*, 2011 U.S.
App. LEXIS 21462, at *32, *35; *Edgar*, 503 F.3d at 350; *In re Bausch & Lomb Inc. ERISA
Litig.*, No. 06-cv-6297, 2008 WL 5234281, at *9 (W.D.N.Y. Dec. 12, 2008); *In re Avon Prods.,
Inc. Secs. Litig.*, No. 05 Civ. 6803, 2009 WL 848083, at *13 (S.D.N.Y. Mar. 3, 2009).

**B.  Alleged Misstatements in SEC Filings Were Not Made in an ERISA
Fiduciary Capacity.**

Ignoring hornbook ERISA law, Plaintiffs continue to assert that Defendants' alleged
failure to disclose "important information about BP's operations and prospects" (Compl. ¶ 396)
in SEC filings is sufficient to state an ERISA claim. Such a claim fails as a matter of law
because Defendants did not act as ERISA fiduciaries in making those statements.[18] As numerous
courts have held, statements made to the market in SEC filings and other documents created in
the regular course of business do not implicate ERISA's fiduciary obligations because they are
made while the employer wears its "corporate hat." *Pegram v. Herdrich*, 530 U.S. 211, 225-26

---

[17] The district judge in the *Morgan Stanley* case retreated from much of his analysis of ERISA disclosure
requirements on which Plaintiffs rely in his subsequent opinion in *In re Bear Stearns Cos., Inc. Sec., Derivative, &
ERISA Litig.*, No. 08 MDL 1963, 2011 U.S. Dist. LEXIS 6026, at *397-99 (S.D.N.Y. Jan. 19, 2011).

[18] Furthermore, the Complaint does not state a claim to relief as to most of the individual Defendants, who
are not alleged to have signed the SEC filings.

(2000); *Kirschbaum*, 526 F.3d at 257.  Plaintiffs' allegations to the contrary (Opp'n at 26) cannot change the law.

Plaintiffs fail to identify an SPD or other ERISA document that specifically incorporates BP's SEC filings by reference; without such well-pled facts, their argument that Defendants somehow converted BP's SEC filings into fiduciary communications is pointless.  *See*, *e.g.*, *Fulmer*, 2011 U.S. Dist. LEXIS 36602, at *11-12 (dismissing claims based on allegations of misrepresentations in SEC filings).  The only document Plaintiffs *do* identify – the prospectus covering securities offered by the Plans (*see* Compl. ¶¶ 85, 396; Opp'n at 27) – is not an ERISA fiduciary document, and the Fifth Circuit has expressly so held.  *See Kirschbaum*, 526 F.3d at 257 (citing 15 U.S.C. § 77e; 17 C.F.R. §§ 230.428(a)(1), (b)(1); 17 C.F.R. § 239.16(b)).  Plaintiffs' remaining contention – that the SPD and Investment Options Guide "encouraged" review of BP's SEC filings and thus somehow transformed them into fiduciary communications – is not based on well-pled allegations of fact, as is evident from Plaintiffs' own citations.  *See* Opp'n at 27-28.  Because Plaintiffs have not pled an ERISA claim based on BP's SEC filings that is "plausible on its face," dismissal is required under *Twombly* and *Iqbal*.

### C.    Plaintiffs' Duty to Inform Claim Sounds in Fraud and Thus Is Subject to Rule 9(b).

Plaintiffs attempt to back-pedal from their own complaint in arguing that Rule 9(b)'s heightened pleading requirements do not apply because their breach of fiduciary duty allegations do not sound in fraud.  Opp'n at 29-30.  The language of Plaintiffs' own complaint (*e.g.*, "BP's conduct represented a *calculated decision by its leaders* – many of whom also served as fiduciaries to the Plans – . . . *to conceal material information about its reckless management and deceptive practices*" (Compl. ¶ 11 (emphasis added)) establishes otherwise.  Such allegations are similar to those in *Halaris*, 2007 U.S. Dist. LEXIS 85831, at *27-31, and *Crocker v. KV Pharms.*

18

*Co.*, No. 4:09-CV-198, 2010 WL 1257671, at *8-9 (E.D. Mo. Mar. 24, 2010), both of which

applied Rule 9(b).  The very core of Plaintiffs' case is their allegation that Defendants knowingly

failed to disclose their purported scheme to place profit over safety.  Such a claim sounds in

fraud and thus requires adherence to Rule 9(b) pleading standards.  Plaintiffs' allegations fall

woefully short of Rule 9(b)'s particularity requirement – a fatal flaw that Plaintiffs half-heartedly

attempt to dispute in a single conclusory line in a footnote.  *See* Opp'n at 30 n.36.

### D.    Reliance Cannot Be Presumed Under ERISA and Has Not Been Pled Here.

Plaintiffs have no response to the ample case law holding that the essential element of

reliance cannot be presumed under ERISA.  *See Wright v. Medtronic*, *Inc.,* No. 09-CV-0443,

2011 WL 31501, at *5 (D. Minn. Jan. 5, 2011); *see also RadioShack*, 547 F. Supp. 2d at 616;

*Harris v. Amgen, Inc*., No. 07-cv-5442, 2010 U.S. Dist. LEXIS 26283, at *40 (C.D. Cal. Mar. 2,

2010).  Plaintiffs instead assert that they can survive a motion to dismiss simply by alleging "the

Plans' losses from the decimated value of BP ADSs were 'a direct and proximate result of the

breaches of fiduciary duty alleged [in the Complaint]'[at] ¶ 400."  Opp'n at 30 (first alteration in

original).  Such allegations say nothing about reliance.  They also are formulaic legal

conclusions, rather than the well-pled facts required to survive dismissal under *Twombly* and

*Iqbal*.[19]

### III.   PLAINTIFFS' DERIVATIVE DUTY TO MONITOR AND CO-FIDUCIARY CLAIMS ALSO FAIL AS A MATTER OF LAW.

Plaintiffs insist that their duty to monitor claim (Count III) is not derivative (Opp'n at

40), but their arguments are out of step with recent case law.  Plaintiffs' lone authority – *In re

JDS Uniphase Corp. ERISA Litig.*, No. C 03-04743, 2005 WL 1662131 (N.D. Cal. July 14,

---

[19] Plaintiffs have no answer to, and thus ignore, Defendants' observation that disclosure of material information to Plan participants before the public would have violated securities laws, and that ERISA may not be interpreted to require violation of other federal laws. *See* 29 U.S.C. § 1144(d); 29 C.F.R. §2550.404c-1(c)(2)(ii) (2008); *see also Kirschbaum*, 526 F.3d at 256.

19

2005) –  is not apposite.  In that dated case (decided before *Iqbal* and *Twombly* and before the

Ninth Circuit adopted the *Moench* presumption in *Quan*), a monitoring claim against director

defendants survived dismissal, but so did the underlying claims against the fiduciaries appointed

by the directors.  *Id.* at *15.  Hence, the issue of whether the monitoring claim is derivative of a

legally deficient underlying fiduciary breach claim did not arise.  It is well settled in the Fifth

Circuit and elsewhere that monitoring and co-fiduciary claims are derivative and thus must be

dismissed if the underlying breach of fiduciary duty claims fail.  *See, e.g.*, *Izzarelli v. Rexene

Prods. Co.*, 24 F.3d 1506, 1525 n.34 (5th Cir. 1994) ("Because there was no breach of fiduciary

duty on the part of the Rexene defendants, it goes without saying that the Bank cannot be liable

as a co-fiduciary for the same conduct"); *Citigroup*, 2011 U.S. App. LEXIS 21463, at *9-10, *42

(dismissing duty to monitor and co-fiduciary claims as "derivative"); *Fulmer*, 2011 U.S. Dist.

LEXIS 36602, at *17 (same); *Halaris*, 2008 U.S. Dist. LEXIS 75557, at *16 (same);

*RadioShack*, 547 F. Supp. 2d at 616 (same).

        Plaintiffs' duty to monitor claim separately fails because their argument that "red flags"

known to Defendants and "extraordinary circumstances" should have triggered a review and a

duty to inform the SPIOC appointees ignores Plaintiffs' own allegations.  The prior safety issues

that Plaintiffs identify (Opp'n at 39) were publicly known, and BP's business operations and

revenues (as well as its stock price) remained strong notwithstanding the Deepwater Horizon

explosion and subsequent oil spill.  Plaintiffs' bald assertion (Opp'n at 39-40) that the appointees

failed to review the BP Stock Fund after those events finds no support in their Complaint.[20]  As a

result Plaintiffs are left with no duty to monitor claim at all.  *See In re Reliant Energy ERISA

Litig.*, 336 F. Supp. 2d 646, 657 n.13 (S.D. Tex. 2004).

---

[20] Nor could such an allegation be made.  Plaintiffs' counsel have the SPIOC minutes that contradict any
assertion as to a lack of review by the SPIOC Defendants.  *See* Ex. 1 at ¶ 3 & Attachment A at ¶ 1.

As to Plaintiffs' claim of a failure to monitor State Street, whose inaction allegedly caused plan losses, Plaintiffs cannot establish loss causation under ERISA § 409.  Under that section, a fiduciary may be subject to personal liability only for "losses to the plan resulting from each such breach" of the fiduciary.  29 U.S.C. § 1109; *see also Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2d Cir. 1992) ("proof of a causal connection . . . is required between a breach of fiduciary duty and the loss alleged"); *Kuper v. Iovenko*, 66 F.3d 1447, 1459-60 (6th Cir. 1995) (same).   It is entirely speculative to assume what State Street might or might not have done – whether its actions would have eliminated the Plans' losses, exacerbated the losses, or had no effect on them at all.  Having dropped all claims against State Street, Plaintiffs cannot base a claim against the SPIOC Defendants as appointing fiduciaries on conjecture as to what State Street as their appointee might or might not have done.  Once again, this is the type of claim that *Twombly* bars.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs concede that their co-fiduciary liability claim (*see* Compl. ¶¶ 392, 401, 410) parrots the statute.  Yet, relying largely on pre-*Twombly* and *Iqbal* precedents, they insist that such allegations are sufficient to state a claim.  Opp'n at 41.  As Defendants' authorities show, Plaintiffs' bare-bones co-fiduciary liability claim is too generalized and conclusory to survive dismissal under *Iqbal* and *Twombly* pleading standards.  *See* Defs.' Br. at 35-36.

## IV.   THE CORPORATE DEFENDANTS, DIRECTORS AND DESIGNATED OFFICERS ARE NOT FIDUCIARIES WITH RESPECT TO ISSUES ALLEGED IN THE COMPLAINT.

Because Plaintiffs' breach of fiduciary duty claims fail as a matter of law, the Consolidated Complaint should be dismissed in its entirety as to all Defendants.  But even if such claims were to survive in whole or part, Plaintiffs cannot rely upon conclusory legal assertions to justify naming the Corporate Defendants, the Board of Directors, and Designated Officers as fiduciaries.  *See Powell v. Dallas Morning News LP*, 610 F. Supp. 2d 569, 580 (N.D.

Tex. 2009) (claims against administrative committee dismissed because they were "unsupported by underlying facts and based entirely on conclusory allegations that are insufficient to state a claim").  Accordingly, these Defendants should be dismissed from the action in all events.

### A.    BP p.l.c and BP America Inc. Should Be Dismissed.

Plaintiffs' *respondeat superior* claims against BP p.l.c. and BP America Inc. cannot stand.  Although Plaintiffs acknowledge that allegations of "'active[] and knowing[]' participat[ion]" are required by *Bannistor v. Ullman*, 287 F.3d 394, 408 (5th Cir. 2002), their conclusory assertion (Opp'n at 36) that the Corporate Defendants knew the BP Stock Fund was offered in the Plans and that they knew or should have known about BP's risk "strategy" (referencing Compl. ¶¶ 84-86) is not based on well-pled allegations of fact.  As such, the Complaint fails to establish active and knowing participation in an alleged breach of fiduciary duty.  Plaintiffs' further assertion that *respondeat superior* liability necessarily attaches because officers of the corporations served in Plan roles as well as roles in their corporate capacity (Opp'n at 37) runs directly contrary to well-settled "two hats" jurisprudence under ERISA.  *See*, *e.g.*, *Pegram*, 540 U.S. at 225; *see also Gearren*, 2011 U.S. App. LEXIS 21115, at *11 (citing *Kirschbaum*).  No basis thus exists for including these Defendants in this litigation.

### B.    BP North America Inc. Should Be Dismissed.

Implicitly acknowledging that the role of BP North America Inc. (BPNAI) as Plan sponsor is insufficient to subject it to fiduciary liability,[21] Plaintiffs argue that the Complaint alleges that BPNAI had additional powers with respect to the Plans' BP Stock Fund that made it a fiduciary.  Opp'n at 32.  Those additional powers, however, consisted of authority to amend the

---

[21] *See In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 899 (S.D. Tex. 2004) ("A company cannot be subject to fiduciary liability simply by virtue of its role as plan sponsor.").

Plans.  ESP §§ 16.1, 16.4.  It is well-settled that plan amendments are made by an employer in a settlor, not a fiduciary, capacity.  *See* Defs.' Br. at 40 (citing cases).

Plaintiffs' contention that BPNAI is a *de facto* fiduciary, based on statements outside the controlling Plan documents, is likewise without merit.  Plaintiffs incorrectly claim that BPNAI has a fiduciary responsibility to monitor State Street under the Investment Manager Agreement.  In so arguing, however, Plaintiffs rely on the April 5, 2000 Investment Manager Agreement that was entered into four years *before* the creation of the SPIOC.  After the SPIOC was created in 2004 (and years before the beginning of the putative class period), the operative Plan documents delegated such investment oversight authority to the SPIOC and limited BPNAI's responsibility to Plan amendments made in a settlor capacity.  *See* ESP §§ 6.3, 14.1(p), 16.4; *see also* SPIOC By-Laws §1.2(a) (incorporating into Plan documents SPIOC's authority to "select, direct, monitor and terminate external investment managers").  In fact, every amendment to the Investment Manager Agreement during Plaintiffs' proposed class period shows the amendment, and thus the fiduciary relationship, was between the SPIOC and State Street, not BPNAI and State Street.  *See, e.g.*, Ex. J, IMA Amendments 8-10 (Ex. J to MTD).  BPNAI therefore has no fiduciary responsibility to monitor State Street, and is not a *de facto* fiduciary.[22]

### C.    The BPNAI Director Defendants Should Be Dismissed.

The Director Defendants also should be dismissed because the Plans do not name them as Plan fiduciaries and they do not have fiduciary authority or control over the BP Stock Fund.  Plaintiffs base their contrary argument on a Plan provision that grants the BPNAI Board and Designated Officers authority to act on behalf of BPNAI.  But that provision merely reflects their authority as BPNAI agents to engage in BPNAI's *settlor* functions.  *See* ESP § 14.5 (limiting

___
[22] Plaintiffs' assertion that BPNAI is a *de facto* fiduciary based on a statement in the Investment Option Guide is also wrong.  The Investment Option Guide's "tracking section" does not trump the operative Plan documents and, at best, refers to BPNAI's ability to amend the Plans.  *See* Defs.' Br. at 40-41.

Board and Directors' corporate agency to instances where Plans have given BPNAI authority to take action under Plans); *see also* ESP § 14.1(a) (stating that BPNAI, "through the authority vested in its Board of Directors, has amended the Plan . . . ."). Plan amendments are a settlor function and do not make the Director Defendants fiduciaries. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-45 (1999).

Plaintiffs' additional contention – that the Board had a duty to monitor the SPIOC because it receives an annual report from the SPIOC – is insufficient as a matter of law. As detailed in Defendants' initial brief (*see* Defs.' Br. at 41-42), both courts and the Department of Labor have rejected such an argument, which effectively would impose fiduciary status on board members based simply on their corporate positions. *See also Dynegy*, 309 F. Supp. 2d at 899.

**D.      The Designated Officers Should Be Dismissed.**

Plaintiffs make two arguments that Defendants Hayward and Browne, in their Designated Officer capacities, were fiduciaries over the BP Stock Fund. The first – that those Designated Officers qualified as having "functional fiduciary" responsibility for the BP Stock Fund – fails because the Plan documents plainly reserve that role to the SPIOC, which, as the investment named fiduciary, in turn delegated that function to State Street. *See* Defs.' Br. at 12-13. Plaintiffs' "information and belief" allegations in response are legally insufficient under *Iqbal* and *Twombly*. The Complaint's only factual allegations with respect to Designated Officers refer to actions taken in their corporate capacities, which are not actionable under ERISA. *See Pegram*, 530 U.S. at 225-26; *Citigroup*, 2009 WL 2762708 at *23; *see also Varity v. Howe*, 516 U.S. 489, 505 (1996); *Kirschbaum*, 526 F.3d at 257. Plaintiffs' second argument – that certain Designated Officers also served as Investment and/or Administrative Named Fiduciaries and were so identified in correspondence between counsel (Opp'n at 35) – ignores the structure of the Plans. Under the Plans' terms, these Designated Officers had no fiduciary role with respect

24

to the BP Stock Fund in their capacity as such.  *See* Defs.' Br. at 10-11, Plan references cited

therein, and Ex. A.


## CONCLUSION

The Consolidated Complaint should be dismissed in its entirety with prejudice.


November 7, 2011

OF COUNSEL:

Paul J. Ondrasik, Jr. (*pro hac vice*)
Morgan D. Hodgson (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
Office: (202) 429-3000
Fax:  (202) 429-3902
E-mail: pondrasik@steptoe.com
        mhodgson@steptoe.com
        rjenny@steptoe.com


Daryl A Libow (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue N.W.
Washington, DC 20006-5805
Office:  (202) 956-7500
E-mail:  libowd@sullcrom.com


Richard C. Pepperman, II (*pro hac vice*)
Marc De Leeuw (*pro hac vice*)
M. David Possick
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Office:  (212) 558-4000
Email: peppermanr@sullcrom.com
       deleeuwm@sullcrom.com
       possickmd@sullcrom.com

Respectfully submitted,


/s/ *Thomas W. Taylor*_____
 Thomas W. Taylor
 Texas State Bar No. 19723875
 S.D. Tex. Bar No. 3906
 ANDREWS KURTH LLP
 600 Travis, Suite 4200
 Houston, TX 77002
 Office:  (713) 220-4200
 Fax:  (713) 220-4285
 E-mail: ttaylor@andrewskurth.com

 *Attorney-in-Charge for Defendants*
 *BP Corporation North America, Inc., BP p.l.c.,*
 *BP America Inc., BP Corporation North America,*
 *Inc.'s Board of Directors, the BP Savings Plan*
 *Investment Oversight Committee, Lord John*
 *Browne, Stephanie C. Moore, Gregory T.*
 *Williamson, Thomas L. Taylor, Neil Shaw, Brian*
 *D. Smith, Stephen J. Riney, Robert A. Malone,*
 *Jeanne M. Johns, Anthony Hayward, Lamar*
 *McKay, Patrick Gower, James Dupree, Richard J.*
 *Dorazil, Corey Correnti, Marvin L. Damsma, and*
 *Patricia H. Miller*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing has been served by electronic CM/ECF filing, on this 7th day of November, 2011.

*s/Thomas W. Taylor*
Thomas W. Taylor