# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re BP p.l.c. Securities Litigation | No.  4:10-MD-02185 |
| Robert R. Glenn, | No.  4:11-cv-02941 |
| Plaintiff, | Honorable Keith P. Ellison |
| v. | JURY TRIAL DEMANDED |
| BP p.l.c., | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

## BP'S REPLY MEMORANDUM IN FURTHER
## SUPPORT OF ITS MOTION TO DISMISS

OF COUNSEL:

Daryl A. Libow (pro hac vice)
Amanda F. Davidoff
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone: (202) 956-7500
libowd@sullcrom.com
davidoffa@sullcrom.com

Richard C. Pepperman, II (pro hac vice)
Marc De Leeuw (pro hac vice)
Matthew A. Peller
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
peppermanr@sullcrom.com
deleeuwm@sullcrom.com
pellerm@sullcrom.com

November 18, 2011

Thomas W. Taylor
Texas State Bar No. 19723875
S.D. Tex. Bar No. 3906
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas  77002
Telephone:  (713) 220-4200
Facsimile:   (713) 220-4285
ttaylor@andrewskurth.com

*Attorney-in-Charge for Defendant BP p.l.c.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ...........................................................................................................3

I.      PLAINTIFF'S ATTEMPT TO AVOID SETTLED ENGLISH LAW IS BASED
ON UNSUPPORTED SPECULATION AND IS WRONG ON THE LAW.....................3

         A.      Plaintiff's New Theory Is Unsupported by the Allegations of the
Complaint and Contrary to the Documents Cited in the Complaint. .......................3

         B.      Plaintiff's Argument Based on Article 131(B)'s Use of the
Word "Declare" Is Wrong as a Matter of English Law. ..........................................7

II.      IN THE ALTERNATIVE, THIS ACTION SHOULD BE DISMISSED ON
FORUM NON CONVENIENS GROUNDS. ....................................................10

         A.      The Private Interest Factors Favor an English Forum. ...........................................12

         B.      The Public Interest Factors Favor an English Forum. ...........................................14

III.      PLAINTIFF HAS NOT ADEQUATELY ALLEGED THAT BP IS
SUBJECT TO PERSONAL JURISDICTION IN OREGON...........................................15

CONCLUSION ....................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Administrators of Tulane Educational Fund* v. *Ipsen, S.A.*,
   2011 WL 3822681 (5th Cir. Aug. 30, 2011)...........................................................16

*Ashcroft* v. *Iqbal*,
   129 S. Ct. 1937 (2009)...........................................................................................5

*Bell Atlantic Corp.* v. *Twombly*,
   550 U.S. 544 (2007)............................................................................................5, 6

*Bixby* v. *KBR, Inc.*,
   2011 WL 2971848 (D. Or. June 16, 2011) ...........................................................17

*Dalmia* v. *Commissioner of Income-tax*,
   1964 A.I.R. 1866 (India)........................................................................................9

*DiRienzo v. Philip Services Corp.*,
   232 F.3d 49 (2d Cir. 2000)...................................................................................11

*DiRienzo v. Philip Services Corp.*,
   294 F.3d 21 (2d Cir. 2002)...................................................................................11

*Edgar* v. *MITE Corp.*,
   457 U.S. 624 (1982).............................................................................................15

*Empresa Lineas Maritimas Argentinas, S.A.* v. *Schichau-Unterweser, A.G.*,
   955 F.2d 368 (5th Cir. 1992) ...............................................................................13

*Fletcher* v. *Atex, Inc.*,
   68 F.3d 1451 (2d Cir. 1995).................................................................................16

*Gilstrap* v. *Radianz Ltd.*,
   443 F. Supp. 2d 474 (S.D.N.Y. 2006)..................................................................11

*In re Assicurazioni Generali S.P.A. Holocaust Insurance Litigation*,
   228 F. Supp. 2d 348 (S.D.N.Y. 2002)..................................................................11

*In re BP Shareholder Derivative Litigation*,
   2011 WL 4345209 (S.D. Tex. Sept. 15, 2011) ........................................11, 12, 14

*In re Chinese Manufactured Drywall Products Liability Litigation*,
   767 F. Supp. 2d 649 (E.D. La. 2011)...................................................................10

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Ford Motor Co.*,
   591 F.3d 406 (5th Cir. 2009) ..................................................10

*In re Korean Airlines Disaster of September 1, 1983*,
   829 F.2d 1171 (D.C. Cir. 1987) ...............................................10

*In re Methyl Tertiary Butyl Esther ("MTBE") Products Liability Litigation*,
   2005 WL 106936 (S.D.N.Y. Jan. 18, 2005) ..................................10

*In re Volkswagen of America, Inc.*,
   545 F.3d 304 (5th Cir. 2008) ..................................................12

*Industrial Equity Ltd.* v. *Blackburn*,
   (1977) 137 C.L.R. 567 .......................................................8, 10

*Japan Petroleum Co. (Nigeria) Ltd.* v. *Ashland Oil, Inc.*,
   456 F. Supp. 831 (D. Del. 1978) .............................................16

*Koster* v. *(American) Lumbermens Mutual Casualty Co.*,
   330 U.S. 518 (1947) .......................................................11, 12

*Kotera* v. *Daioh International U.S.A. Corp.*,
   40 P.3d 506 (Or. App. 2002) ................................................16

*Lagunas Nitrate Co.* v. *J. Henry Schroeder & Co.*,
   (1901) 85 L.T. 22 (Ch.) .......................................................4, 8

*N. Cypress Medical Center Operating Co.* v. *CIGNA Healthcare*,
   2011 WL 5325785 (S.D. Tex. Nov. 3, 2011) ...............................6

*Paul* v. *Aviva Life & Annuity Co.*,
   2011 WL 2713649 (N.D. Tex. July 12, 2011) ..............................10

*Piper Aircraft Co.* v. *Reyno*,
   454 U.S. 235 (1981) .......................................................13, 14

*Potel* v. *Inland Revenue Commissioners*,
   [1971], 1970 WL 30063 (Ch.) ................................................4

*Raptor Inc.* v. *Elanex Pharmaceuticals Corp.*,
   2000 WL 1617998 (D. Or. Oct. 30, 2000) ..................................15

*Sams* v. *Geico Corp.*,
   2002 WL 31975065 (D. Or. Nov. 27, 2002) ...............................17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Schexnider* v. *McDermott International, Inc.*,
817 F.2d 1159 (5th Cir. 1987) ...............................................................14

*Syndicate 420 at Lloyd's London* v. *Early American Insurance Co.*,
796 F.2d 821 (5th Cir. 1986) ................................................................14

*Williams* v. *Green Bay & Western Railroad Co.*,
326 U.S. 549 (1946) ........................................................................14, 15

*Wolcott* v. *Sebelius*,
635 F.3d 757 (5th Cir. 2011) ...................................................................5

STATUTES AND RULES

28 U.S.C. § 1404(a) .....................................................................................12

Fed. R. Civ. P. 8 ............................................................................................5

OTHER AUTHORITIES

15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL
PRACTICE AND PROCEDURE § 3866 (2007) ...........................................10

14 HALSBURY'S LAWS OF ENGLAND ¶ 1414 (5th ed. 2008)...........................8

PALMERS COMPANY LAW § 9.710......................................................................10

PALMERS COMPANY LAW § 9.712........................................................................8

RESTATEMENT (THIRD) OF AGENCY § 1.02 ..................................................16

Plaintiff and his English-law expert do not dispute much of the basis for this motion to dismiss. *First*, Plaintiff "stipulates" that because BP p.l.c. ("BP") is an English corporation, "the authority of the BP directors under BP's articles of association will be governed by English law." (Opp'n at 4.) *Second*, Plaintiff admits that it "may be an accurate statement of the law" that the board of directors of an English corporation "may reverse a decision to pay interim dividends." (*Id.* at 8-9.) *Third*, Plaintiff's expert, David Mabb QC, acknowledges that the BP Board of Directors' resolutions of April 15, 2010 delegated authority over a "first quarter interim dividend" to the Results Committee (Mabb Decl. ¶¶ 97, 98(iv); *see* Supp. Ex. A), which subsequently announced that "interim dividend" to shareholders on April 27, 2010.[1]  Under well-settled English law, the announcement of an "interim dividend" does not create a debt to shareholders, and such a dividend can be canceled by the board of directors at any time prior to payment.

To avoid dismissal, Plaintiff speculates that even though the BP Board minutes and resolutions refer (three times) to a "first quarter interim dividend" and multiple company announcements also refer to an "interim dividend," it is *possible* that the dividend instead was a "final" dividend that created a binding obligation on the company.  Plaintiff premises this theory on a provision of BP's Articles of Association nowhere cited in the Complaint that, according to Plaintiff's expert, permits BP's directors to declare a final dividend even absent shareholder approval.  This theory is based on sheer conjecture unsupported by any well-pled allegations of fact in the Complaint or by any of the Board resolutions or announcements to which the Complaint refers.  Plaintiff thus fails to satisfy his pleading burden, and the Complaint should be

---

[1] Citations to "Supp. Ex. A" are to Exhibit A to the Supplemental Declaration of Thomas W. Taylor, dated November 18, 2011, submitted herewith.  Citations to "Ex. _" are to exhibits to the Declaration of Thomas W. Taylor (Dkt. No. 17-5).  Citations to "Moore Supp. Decl." are to the Supplemental Declaration of Martin Moore QC, dated November 15, 2011, submitted herewith.

dismissed.  In any event, as the Supplemental Declaration of Martin Moore explains, Plaintiff is wrong as a matter of English law:  The provision of BP's Articles cited by Plaintiff does *not* permit BP's directors to declare a dividend that cannot be canceled simply because it uses the word "declare."

Plaintiff's Opposition also makes it abundantly clear that this action alternatively should be dismissed on *forum non conveniens* grounds.  Plaintiff asks the Court to overturn a century of well-settled English corporate law holding that interim dividends can be canceled at any time and to order BP, for the first time in the long history of English companies, to pay *all* of its shareholders a canceled interim dividend.  Such a drastic change in English law, if appropriate, should originate from an English court well versed in English corporate law.  Moreover, Plaintiff's expert admits that any factual issues that would need to be resolved under Plaintiff's theory concern activities by BP's Board of Directors in England that have no connection to Oregon or even the United States.  And "Plaintiff agrees that England satisfies the requirements for an adequate alternative forum."  (Opp'n at 17.)

Finally, Plaintiff attempts to manufacture personal jurisdiction over BP by pointing to contacts between a BP subsidiary, BP America Inc. ("BP America"), and the United States as a whole.  This effort fails both on the law and on the pleadings.  Indeed, the only relevant fact alleged in the Complaint is that BP America is authorized to conduct business in Oregon, which alone is insufficient to establish that BP is subject to personal jurisdiction in that state.

## ARGUMENT

I.   **PLAINTIFF'S ATTEMPT TO AVOID SETTLED ENGLISH LAW IS BASED ON UNSUPPORTED SPECULATION AND IS WRONG ON THE LAW.**

      A.   **Plaintiff's New Theory Is Unsupported by the Allegations of the Complaint and Contrary to the Documents Cited in the Complaint.**

Plaintiff's expert acknowledges (Mabb Decl. ¶ 97) that the minutes of the April 15, 2010 BP Board of Directors meeting state that the Board "gave preliminary consideration to the *first quarter interim dividend*" and resolved that the Audit Committee "consider the announcement of a *first quarter interim dividend*" and that "the Results Committee be authorised . . . to finalise the amount of the *first quarter interim dividend*." (Supp. Ex. A (emphasis added).) As also recognized by Plaintiff's expert (Mabb Decl. ¶ 90), the April 26, 2010 Results Committee resolution states that "[i]t was resolved that a *first quarterly* dividend for 2010 of 14 cents per Ordinary share of $0.25 each *be paid*." (Dkt. No. 18-7 at 2 (emphasis added).) The fact that the resolution said "be paid" rather than "declared and paid" is evidence that the dividend was an interim dividend, not a final dividend. (*See* Mabb Decl. ¶ 97.)

If the three separate references in the BP Board's April 15, 2010 minutes to an "interim dividend" were not enough to eliminate any uncertainty, the company's public announcements of the dividend—upon which the Complaint relies—also refer to an "interim dividend."[2] In BP's announcement of its first quarter results on April 27, 2010, BP expressly referred to the June 2010 dividend as a "first quarter *interim* dividend." (Ex. A at 3 (emphasis added); *see* Compl. ¶ 24.) Likewise, in its second announcement concerning the dividend on June 8, 2010, BP stated that "[o]n 27 April 2010, the Directors of BP plc announced a first quarter *interim* dividend for

---

[2] BP's April 27, 2010 announcement also disclosed that it "contains forward-looking statements[,] particularly those regarding," among other things, "dividend and optional scrip dividend," and that such "forward-looking statements involve risk and uncertainty because they relate to events and depend on circumstances that will or may occur in the future." (Ex. A at 8.)

2010 of US $0.14 per ordinary share (US $0.84 per ADS)."  (Ex. C (emphasis added).)  Finally, BP's June 16, 2010 press release announcing the creation of the $20 billion claims fund and the cancellation of the June 2010 first quarter dividend states that BP's Board "decided to cancel the previously declared *first quarter* dividend scheduled for payment on 21st June, and that no *interim dividends* will be declared in respect of the second and third quarters of 2010."  (Ex. D (emphasis added).)

Under well-settled English law (*see* Opening Br. at 11-15),[3] because the June 2010 first quarter dividend announced on April 27, 2010 was an "interim" dividend, BP's directors were permitted to cancel it at any time prior to payment.  *See*, *e.g.*, *Potel* v. *Inland Revenue Comm'n*, [1971] 2 All E.R. 504 at 511, 1970 WL 30063 (Ch.); *Lagunas Nitrate Co.* v. *J. Henry Schroeder & Co.*, (1901) 85 L.T. 22 (Ch.).  Indeed, the parties' experts appear to agree that directors' decision to pay an interim dividend may be reversed at any time under English law. (*See* Moore Supp. Decl. ¶ 13; Mabb Decl. ¶ 47 ("[W]here directors resolve to pay an interim dividend pursuant to an authority such as . . . regulation 103 in the 1985 Table A . . . that does not give rise to a debt owing by the company to each shareholder and, prior to paying the dividend, the directors are able to reverse their decision.").)

In response, Plaintiff and his English-law expert now argue that "it is not possible to dismiss the alternative" that the June 2010 interim dividend was instead a "final" dividend "declared" pursuant to Article 131(B) of BP's Articles of Association rather than Article 132, which provides for announcements of "interim" dividends.  (Mabb. Decl. ¶ 98(iii); *see also*

---

[3] Plaintiff points out that BP ADSs "are issued pursuant to an Amended and Restated Deposit Agreement," which "includes a New York choice-of-law provision."  (Opp'n at 3.)  But Plaintiff never explains the supposed relevance of that choice-of-law provision to the issues before the Court.  Instead, "Plaintiff stipulates for purposes of BP's motion to dismiss" that the activities of BP's Board of Directors are "governed by English law" (*id.* at 4) and argues that the first quarter dividend announced by BP on April 27, 2010 was irrevocable under English law (*id.* at 6-8, 9-10).  Plaintiff also submitted a declaration from an expert in English law.

Opp'n at 10-14.)   Because this possibility cannot be ruled out, Plaintiff argues that the Court should deny BP's motion to dismiss and permit Plaintiff to take discovery of BP's directors on the question of whether they really intended to announce an "interim" dividend.  (Opp'n at 8-9; Mabb Decl. ¶¶ 98-99.)

This new theory is pure speculation and is not based on any well-pled allegations of fact in the Complaint, which does not even mention Article 131(B) of BP's Articles of Association. Plaintiff's theory is also at odds with the very documents on which his Complaint relies.  As noted above, the relevant Board resolutions and BP announcements cited by Plaintiff state that the June 2010 first quarter dividend was an "interim" dividend, which, as a matter of settled English law, might be canceled at any time.  Indeed, Plaintiff's expert concedes that the April 15, 2010 Board resolutions and the April 26, 2010 Results Committee resolution, "viewed in isolation, . . . would lead to the conclusion that [they were] passed in reliance on Article 132," and thus that the dividend in question was an interim dividend.  (Mabb Decl. ¶ 98; *see also id.* ¶ 59(ii).)

A plaintiff's obligation under Rule 8(a)(2) "to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, and "a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement."  *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations omitted). "[C]onfidence in finding facts in the future is not enough to save a claim for which sufficient factual allegations have not already been pled."  *Wolcott* v. *Sebelius*, 635 F.3d 757, 772 (5th Cir. 2011).

The Complaint here does not even mention Article 131(B) or Article 132, let alone allege facts that, if proven, would show that BP's Board attempted to declare a final dividend in reliance on Article 131(B) rather than announce an "interim dividend" (as their resolutions expressly stated three times) pursuant to Article 132.   Based instead on BP's public announcements regarding the June 2010 first quarter dividend (all of which state that it was an "interim dividend"), the Complaint simply asserts that BP's Board, by announcing a dividend, created an enforceable debt owed to shareholders.  (Compl. ¶¶ 50-51.)  Apparently recognizing that his claims as pled fly in the face of over a century of English law holding that interim dividends may be canceled prior to payment (Opening Br. 11-14), Plaintiff now speculates that the Board instead may have relied on Article 131(B) in an attempt to declare a final dividend and argues that he should be permitted to conduct discovery of BP's directors to explore that possibility.  (Opp'n at 8-9; Mabb Decl. ¶ 106.)

The Board minutes and resolutions and the BP announcements on which the Complaint itself relies make clear that the first quarter dividend announced on April 27, 2010 was an interim dividend.   Thus, under the black-letter English law, which Plaintiff does not dispute, BP's Board was permitted to cancel that dividend prior to payment.   Plaintiff's unsupported speculation that the dividend instead might have been a final dividend declared pursuant to Article 131(B) is not enough to "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  On a motion to dismiss, this Court need not "strain to find inferences favorable to the plaintiffs or accept . . . unwarranted deductions." *N. Cypress Med. Ctr. Operating Co.* v. *CIGNA Healthcare*, 2011 WL 5325785, at *3 (S.D. Tex. Nov. 3, 2011) (quotations omitted).

**B.     Plaintiff's Argument Based on Article 131(B)'s Use of the
         Word "Declare" Is Wrong as a Matter of English Law.**

Plaintiff's argument that the inclusion of the word "declare" in Article 131(B) of BP's Articles of Association permitted BP's Board to declare a final, binding dividend is wrong as a matter of English law. As Martin Moore explains, Article 131(A) is the sole provision in BP's Articles of Association concerning the declaration of final dividends, and that provision vests the power to declare final dividends in the company's shareholders in general meeting. (Moore Supp. Decl. ¶ 29; *see also id.* ¶¶ 9(c), 27, 30(c).) Consistent with general principles of English corporate law, Article 131(B) should not be read as also granting that same power to BP's directors. According to Mr. Moore, "the true difference is primarily in the nature of the body taking the decision, and the decision itself. The shareholders in general meeting are the ultimate deliberative body of the company." (Moore Supp. Decl. ¶ 27.) As a result, "[a] shareholders' resolution to declare a dividend is a decision of the ultimate authority in the company," and "[i]t is not appropriate that the directors should have a discretion to countermand their decision at a later date by deciding not to pay the dividend." (*Id.* ¶ 27(a).) "By contrast, if the shareholders have not decided the question, the directors in exercising a delegated power are entitled to reconsider their *own* resolution at any time, just as they could with any other decision." (*Id.* ¶ 27(b) (emphasis in original).) As Mr. Moore also explains, "[t]he distinction between the bodies that declare the dividend is also reflected by the different words of Article 131(B), in particular the use of the words 'declare and pay,'" which identifies two different steps by the directors and implies that the directors can reconsider their decision prior to payment. (*Id.* ¶ 28; *see also id.* ¶¶ 30-31; BP Articles § 132.)

Plaintiff's contrary theory based on the use of the word "declare" in Article 131(B) and the reference to "the previously declared first quarter dividend" in BP's June 16, 2010

announcement canceling the June 2010 dividend (*see* Opp'n at 10, 13) is unfounded.[4]  Use of the word "declare," by itself, does not make a dividend binding.  As Martin Moore explains, "the reason why a binding obligation is created under the standard articles for a final dividend is because the decision is by the shareholders in general meeting, not because of the use of a talismanic word, 'declare.'"  (Moore Supp. Decl. ¶ 26 (citing cases).)  In the seminal 1901 case on interim dividends, the court, construing a board resolution "that an interim dividend *be declared*," held that it did "not see why the board of directors might not before an interim dividend [was] actually paid, acting *bona fide*, reconsider the question as to whether it ought to be paid at all."  *Lagunas Nitrate*, 85 L.T. at 23 (emphasis added).

Plaintiff cites no English case law to the contrary.[5]  In fact, the word "declare" is regularly used to describe directors' announcement of non-binding interim dividends, including in the very authorities cited by Plaintiff and Mr. Mabb.  *See*, *e.g.*, PALMERS COMPANY LAW § 9.712 ("if the articles empower the directors to pay interim dividends . . . a *declaration* by the directors of an intended dividend to be paid at some future date may be rescinded by a resolution of the directors before that date arrives") (emphasis added); 14 HALSBURY'S LAWS OF ENGLAND

---

[4] Plaintiff also argues, based on Article 143, that "BP's directors could not cancel the 2010 first quarter dividend after the record date" of May 7, 2010.  (Opp'n at 15.)  The Complaint alleges no facts in support of that argument, and tellingly, Plaintiff asked his expert, Mr. Mabb, not to consider the issue.  (Mabb Decl. ¶ 15(IV) ("I am asked at this stage not to consider that question, but simply to reserve it.").)  As Mr. Moore explains, Article 143 simply permits directors to specify an operative record date for dividends eventually paid; it does not create any independent right to an announced interim dividend, either before or after the record date.  (*See* Moore Supp. Decl. ¶¶ 34-38.)

[5] The Australian case cited by Plaintiffs, *Industrial Equity Ltd.* v. *Blackburn*, (1977) 137 C.L.R. 567, is readily distinguishable.  (Opp'n at 9-10.)  Unlike Article 131(A) in BP's Articles, the articles of association in *Industrial Equity* "vest[ed] in the directors, not in the Company in general meeting, the power to declare a dividend," and thus the board in that case was permitted to declare final dividends or pay interim dividends.  *Id.* at 571.  Moreover, the board resolution in *Industrial Equity* stated that the dividend was "hereby declared," *id.* at 570, in contrast to the April 26, 2010 BP Results Committee resolution, which "resolved that a first quarterly dividend . . . be paid."

¶ 1414 (5th ed. 2008) ("[D]irectors' *declaration* of an interim dividend may be rescinded before payment has been made.") (emphasis added).

The only authority of which BP is aware explicitly rejects the argument that the inclusion of the word "declare" in an article permitting directors to pay interim dividends renders those dividends final and irrevocable.  (*See* Moore Supp. Decl. ¶ 26(b).)  In *Dalmia* v. *Commissioner of Income-tax*, 1964 A.I.R. 1866 (India), the corporation's articles provided that the company was permitted in general meeting to declare dividends, but also provided that "[w]hen in their opinion the profits of the company permit, the directors may *declare* an interim dividend."  *Id.* at 1867 (emphasis added).  After setting forth the general rule that a final dividend declared in general meeting is irrevocable while directors may rescind interim dividends, the Supreme Court of India rejected the notion that the board's power to "declare" an interim dividend rendered such a dividend binding on the company and irreversible by the board:

> [A] declaration by a company in general meeting gives rise to an enforceable obligation, but a resolution of the Board of Directors resolving to pay interim dividend or *even resolving to declare interim dividend pursuant to the authority conferred upon them by the Articles of Association gives rise to no enforceable obligation against the company, because the resolution is always capable of being rescinded.*  Therefore departure in the text of Art. 74 of the Articles [of the company] from the statutory version [of the articles] of the power in respect of interim dividend, dividend which may be entrusted to the directors, makes no real difference in the true character of the right arising in favour of the members of the company on execution of the power.

*Id.* at 1868 (emphasis added).  Accordingly, Plaintiff's argument that the characterization of a dividend as "interim" or "final" is irrelevant and that the dispositive issue is whether the Board had the power to "declare" a dividend (Mabb Decl. ¶ 98(iv)) is incorrect.  (*See* Moore Supp.

Decl. ¶¶ 16-18, 25-33.)[6]  Under English law, directors are always entitled to revisit and rescind their own resolutions regarding the payment of dividends.

## II.      IN THE ALTERNATIVE, THIS ACTION SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS.

Plaintiff seeks a declaration that BP, an English corporation, violated English law by canceling a previously announced interim dividend.  The courts of England are a more appropriate forum to resolve such claims, which could be asserted by any BP shareholder worldwide and have no particular connection to Oregon except that the named Plaintiff in this case happens to be an Oregon resident.  Significantly, Plaintiff readily admits "that England satisfies the requirements for an adequate alternative forum."[7]  (Opp'n at 17.)[8]

---

[6] Plaintiff contends (Opp'n at 7) that "[i]t is possible to lay down in the articles that a dividend shall be declared by the directors."  PALMERS COMPANY LAW § 9.710.  For the directors to have the power to declare a final dividend, however, the articles must "clearly exclude the inference that [a] dividend is to be declared in the usual manner," *i.e.*, by the shareholders in general meeting.  *Id.*  Here, Mr. Mabb admits that Article 131(A) of BP's Articles of Association grants BP's shareholders the power to declare a final dividend in general meeting (*see* Mabb Decl. ¶ 59(i)), and thus the Articles plainly do not exclude that inference.  (*See* Moore Supp. Decl. ¶ 30(c).)  That is also the distinction between BP's articles and the articles at issue in *Industrial Equity*.  *See supra* note 5.

[7] To alleviate any conceivable doubt on the question, BP hereby stipulates that it is subject to personal jurisdiction in England.

[8] Relying on a footnote in *In re Ford Motor Co.*, 591 F.3d 406, 413 n.15 (5th Cir. 2009), Plaintiff asserts that "the federal law that applies to this case is the law of the Ninth Circuit," not the Fifth Circuit. (Opp'n at 3.)  The cited language in *Ford* is dictum because the issue there was whether the transferor court in which the case was filed erred in refusing to reconsider a pretrial ruling by the MDL transferee court after the case was returned to it for trial.  *Ford*, 591 F.3d at 410.  If applied more broadly, the *Ford* dictum is directly contrary to the prevailing rule in MDL actions.  Nearly 25 years ago, the D.C. Circuit held in *In re Korean Airlines Disaster of September 1, 1983*, 829 F.2d 1171, 1174 (D.C. Cir. 1987), that the MDL transferee court need not defer to the interpretation of federal law prevailing in the transferor court's circuit.  "Following this decision, the circuit and district courts have uniformly applied the law of the transferee circuit to issues of federal law."  *In re Methyl Tertiary Butyl Esther ("MTBE") Prods. Liab. Litig.*, 2005 WL 106936, at *4 & n.37 (S.D.N.Y. Jan. 18, 2005).  "[T]he application of federal law, as defined by the transferee court's circuit has the advantage of producing a single governing law rather than multiple constructions of federal law that might exist in the different circuits of the several transferor courts."  15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3866, at 535-36 (2007).  Even after *Ford*, district courts in the Fifth Circuit have continued to follow the prevailing rule and apply the law of the transferee circuit to questions of federal law.  *See, e.g.*, *Paul* v. *Aviva Life & Annuity Co.*, 2011 WL 2713649, at *1 (N.D. Tex. July 12, 2011) ("As to matters of federal law, . . . the Court applies the law of the transferee court."); *In re Chinese*

Because Plaintiff seeks to sue in a representative capacity on behalf of a putative class of BP shareholders, his choice of Oregon as the forum for this action is entitled to less deference. *See In re BP S'holder Deriv. Litig.*, 2011 WL 4345209, at *5 n.9 (S.D. Tex. Sept. 15, 2011) ("Plaintiffs are not entitled to the same deference normally accorded home forum plaintiffs because they are suing only in their representative capacities.").  Seeking to distinguish class actions from derivative actions, Plaintiff argues that "a representative plaintiff's choice of forum is not diminished merely because of the class-action nature of the suit."  (Opp'n at 19.)  In so arguing, Plaintiff relies entirely on *In re Assicurazioni Generali S.p.A. Holocaust Insurance Litigation*, 228 F. Supp. 2d 348, 351-53 (S.D.N.Y. 2002), which, in turn, relied on the Second Circuit's decision in *DiRienzo v. Philip Services Corp.*, 232 F.3d 49 (2d Cir. 2000) ("*DiRienzo I*").  On rehearing two years later, the Second Circuit vacated that portion of the *DiRienzo I* opinion.  *See DiRienzo* v. *Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002) ("*DiRienzo II*").  In subsequent class actions, courts in the Second Circuit have cited *DiRienzo II* for the proposition that "Plaintiffs' choice of forum is . . . entitled to less deference where . . . they are suing in a representative capacity."  *Gilstrap* v. *Radianz Ltd.*, 443 F. Supp. 2d 474, 479 (S.D.N.Y. 2006), *aff'd*, 233 F. App'x 83 (2d Cir. 2007).

Plaintiff also argues that BP's reliance on *Koster* v. *(American) Lumbermens Mutual Casualty Co.*, 330 U.S. 518 (1947), is "misplaced" because "*Koster* was a derivative action." (Opp'n at 18.)  In *Koster*, however, the Supreme Court recognized that "where there are hundreds of potential plaintiffs, . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is

---

*Manufactured Drywall Prods. Liab. Litig.*, 767 F. Supp. 2d 649, 656-57 n.2 (E.D. La. 2011) ("It appears to be reasonably well established, given the plethora of cases on the point, that  . . . in cases involving federal questions, the transferee court follows the interpretation of federal law that has been established by its own court of appeals.").

his home forum is considerably weakened." 330 U.S. at 524. That reasoning also applies to this class action. Any of BP's shareholders worldwide could have asserted similar claims that BP's Board of Directors improperly rescinded the 2010 first quarter dividend under English law.

Plaintiff contends that because he limited the proposed class in this case to holders of BP ADSs, which trade on the New York Stock Exchange, class members "are likely to be United States citizens or residents." (Opp'n at 18.) But some ADS holders are not U.S. residents, and in any event, Plaintiff's contention misses the big picture. As a practical matter, if this Court were to hold that BP violated English law by canceling its 2010 first quarter dividend, that ruling potentially would have implications for all BP shareholders globally. This Court previously recognized that "more than 60 percent of BP's shareholders are not" Americans. *In re BP S'holder Deriv. Litig.*, 2011 WL 4345209, at *5.

## A.     The Private Interest Factors Favor an English Forum.

All of the relevant private interest factors point to England as the more convenient forum to litigate the question raised by this action. Plaintiff concedes—as he must—that most of the relevant documents are located in London, where BP is headquartered. Indeed, the only document located in the United States that Plaintiff identifies as potentially relevant to this action is "the register of BP ADS shareholders maintained by JPMorgan Chase under the terms of the Deposit Agreement," a document that has no bearing on the merits of Plaintiff's claims. (Opp'n at 20.)[9] Plaintiff's expert, Mr. Mabb, lists as "relevant" to this action the following materials:

---

[9] Plaintiff argues that the location of the documents "should be accorded less weight in light of the substantial advancements in communications and transportation." (Opp'n at 20.) Although "this factor has somewhat diminished significance in light of technological advancements," it is not "*inconsequential* to the forum non conveniens analysis" and thus must be given its "appropriate weight." *In re BP S'holder Deriv. Litig.*, 2011 WL 4345209, at *8 (emphasis in original); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) (en banc) (rejecting district court's conclusion, in considering transfer under 28 U.S.C. § 1404(a), that "the relative ease of access to sources of proof is neutral because of advances in copying technology and information storage").

(i) "any further evidence as to the terms of the 26th April 2010 Resolution and any debate thereon at the meeting of the Results Committee on 26th April 2010," (ii) "board papers circulated prior to the meetings of the Board on 15th April 2010 and of the Results Committee on 26th April 2010," and (iii) "what practice BP adopted in relation to its periodic dividends prior to 24th April 2003, when the predecessor of Article 131(B) was adopted." (Mabb Decl. ¶ 101.) To the extent they exist, such documents are located in London.

Plaintiff disputes that the availability of compulsory process for attendance of unwilling witnesses and the cost of attendance for willing witnesses favor England as the more convenient forum, arguing that "BP does not identify which of its directors should be considered or provide any information concerning the materiality or importance of their testimony." (Opp'n at 20-21.) The proponent of a *forum non conveniens* dismissal, however, need not identify in "detail" the potentially relevant witnesses in the case. *See Empresa Lineas Maritimas Argentinas, S.A.* v. *Schichau-Unterweser, A.G.*, 955 F.2d 368, 371 (5th Cir. 1992) (quoting *Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 258 (1981). As the Supreme Court recognized, "[r]equiring extensive investigation would defeat the purpose of" a *forum non conveniens* motion, and thus defendants need only "provide enough information to enable the District Court to balance the parties' interests." *Piper*, 454 U.S. at 258. In this case, there can be little doubt that most of the witnesses concerning the relevant meetings and resolutions of the BP Board and Results Committee are located in London, where BP is headquartered and its Board meets. (*See* Mabb Decl. ¶¶ 99-101.) For those witnesses, the cost of attendance at trial obviously will be far less in England than in Oregon or anywhere else in the United States.

Finally, Plaintiff states that "the court must consider the efficiency of the class action mechanism available in the United States." (Opp'n at 21.) As Martin Moore explains, however,

Plaintiff is wrong in suggesting that the claims in this case could not be pursued on a collective or representative basis in England.  (*See* Moore Supp. Decl. ¶¶ 39-44.)  In sum, all of the private interest factors here weigh in favor of an English forum.

> **B.    The Public Interest Factors Favor an English Forum.**

Plaintiff does not dispute that the decision of BP's Board to rescind the 2010 first quarter dividend is governed by English law.  (*See* Opp'n at 22.)[10]  "Although the need to apply foreign law is alone insufficient to dismiss under the doctrine of forum non conveniens, it 'certainly is a factor weighing in favor of trying the case in' England."  *In re BP S'holder Deriv. Litig.*, 2011 WL 4345209, at *14 (quoting *Schexnider* v. *McDermott Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987)); *see also Piper*, 454 U.S. at 260; *Syndicate 420 at Lloyd's London* v. *Early Am. Ins. Co.*, 796 F.2d 821, 832 (5th Cir. 1986) ("One of the purposes of a forum non conveniens dismissal is the avoidance of . . . the application of foreign law.") (quotations omitted).  As in the derivative action recently dismissed by this Court on *forum non conveniens* grounds, the competing expert declarations filed by the parties in connection with this motion provide "a preview of the intricate questions of [English] law that proceeding with this case would require [this Court] to resolve," a fact that clearly weighs in favor of *forum non conveniens* dismissal.  *In re BP S'holder Deriv. Litig.*, 2011 WL 4345209, at *14.

In arguing otherwise, Plaintiff states that *Williams* v. *Green Bay & Western Railroad Co.*, 326 U.S. 549 (1946), "controls this issue."  (Opp'n at 23.)  That 1946 case involved a suit against a Wisconsin corporation that was filed in New York federal court.  The Supreme Court held that the case could not be dismissed on *forum non conveniens* grounds simply because "the

---

[10] Plaintiff asserts that "an English court addressing plaintiff's claims would be required to apply New York state law" because the Deposit Agreement contains a New York choice-of-law provision. (Opp'n at 23-24.)  Once again, however, Plaintiff nowhere explains what issues in this case are supposedly governed by New York law pursuant to that provision.

corporation law of another State is involved." *Williams*, 326 U.S. at 553.  After reviewing the very different facts of that case, the Supreme Court concluded that "[t]here are no special circumstances . . . which should lead the District Court in New York to decline to exercise the jurisdiction which it has." *Id*. at 557.  The Court noted that the corporation "maintains its financial as well as a traffic office" in New York, that "[f]ive of [its] six directors are to be found in New York," that "[d]irectors' meetings are customarily held in New York," and that "[f]inancial records, transfer books, minute books and the like are kept in New York." *Id*. at 560.

In discussing whether this is a "localized controversy," Plaintiff asserts that "Oregon clearly has an interest in this lawsuit" because it was filed by an Oregon resident.[11]  (Opp'n at 24.)  Plaintiff's residence, however, hardly makes this putative class action concerning whether an English corporation with shareholders around the globe violated English law by canceling a previously announced dividend a local Oregon controversy.  Indeed, Plaintiff's suggestion that Oregon has a "meaningful interest" in this litigation that makes it a more appropriate forum to resolve the question presented should be rejected out of hand.  *See Edgar* v. *MITE Corp.*, 457 U.S. 624, 645-46 (1982) (a state "has no interest in regulating the internal affairs of foreign corporations").

## III.    PLAINTIFF HAS NOT ADEQUATELY ALLEGED THAT BP IS SUBJECT TO PERSONAL JURISDICTION IN OREGON.

Plaintiff contends that BP is subject to personal jurisdiction in the District of Oregon because its subsidiary, BP America, does business in the United States, is authorized to transact

---

[11] In support of this assertion, Plaintiff cites *Raptor Inc.* v. *Elanex Pharmaceuticals Corp.*, 2000 WL 1617998, at *2 (D. Or. Oct. 30, 2000), a case that bears no resemblance to this one.  *Raptor* involved a contract where the underlying work was performed in Oregon.  Although Washington law applied, the court concluded that "Washington law on the[] common law claims [did not] var[y] so significantly from Oregon law that the court would have trouble applying it."  *Id.*

business in Oregon and maintains a registered office and agent in Oregon.  (Opp'n at 26-27.)
Plaintiff is wrong on the law and has not satisfied his pleading burden in any event.

"Where federal jurisdiction is based on diversity of citizenship, this court [should]
appl[y] the applicable state law [*i.e.*, Oregon] to determine whether contacts should be imputed
to a parent company due to an alter-ego or agency relationship."  *Adm'rs of Tulane Educ. Fund*
v. *Ipsen, S.A.*, 2011 WL 3822681, at *3 n.5 (5th Cir. Aug. 30, 2011).  Under Oregon law, there
are only two types of recognized agency relationships that may establish personal jurisdiction:
"actual agency and apparent agency."  *Kotera* v. *Daioh Int'l U.S.A. Corp.*, 40 P.3d 506, 520 (Or.
App. 2002).  "[A]ctual agency is based on a delegation of actual authority."  *Id.*  In the absence
of such actual authority, a plaintiff must allege that the principal held out the third-party as its
agent and that plaintiff justifiably relied on that "holding out."  *Id.* at 521.

Although there are no such allegations in the Complaint, Plaintiff argues that BP America
was BP's agent based on a statement in BP's Annual Reports referring to BP America as "[o]ur
agent" in the United States.  (Opp'n at 27 & n.18.)  But "[w]hether a relationship is characterized
as agency in an agreement between parties or in the context of industry or popular usage is not
controlling."  Restatement (Third) of Agency § 1.02.  In facts, courts recognize that a
statement by a parent corporation in its annual reports that a subsidiary serves as an agent "may
result from public relations motives or an attempt at simplification" and thus does not, standing
alone, establish legal agency.  *Japan Petrol. Co. (Nigeria) Ltd.* v. *Ashland Oil, Inc.*, 456 F. Supp.
831, 846 (D. Del. 1978).  Plaintiff does not allege that both BP and BP America consented to an
agency relationship, as required to establish actual agency, *see Kotera*, 40 P.3d at 521, or that he
relied in any way upon BP's statement in its Annual Report that BP America is "[o]ur agent," as
required to establish apparent agency, *see id.* at 521; *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1462

(2d Cir. 1995) (rejecting apparent agency argument based on statements in corporate documents, where "the record contains no evidence that the plaintiffs relied on the documents at issue").

In arguing that the Complaint satisfies the pleading requirements for personal jurisdiction, Plaintiff points to four paragraphs of the Complaint.  (*See* Opp'n at 31-32 (citing Compl. ¶¶ 10-12, 14).)  Three of those paragraphs (¶¶ 10-12) allege no facts that are relevant to whether BP is subject to personal jurisdiction in Oregon.  Indeed, only one sentence in the entire Complaint is potentially relevant to personal jurisdiction under Plaintiff's agency theory.  In paragraph 14, Plaintiff alleges:  "BP operates through its affiliates and subsidiaries, and its designated agent in the United States is BP America, Inc., a Delaware corporation registered and authorized to conduct business in the state of Oregon."  (Compl. ¶ 14.)  The fact that a BP subsidiary, BP America, is authorized to conduct business in Oregon does not by itself establish personal jurisdiction over BP.  *See Bixby* v. *KBR, Inc.*, 2011 WL 2971848, at *2, *6 (D. Or. June 16, 2011) (holding that parent corporation was not subject to general jurisdiction based on contacts of subsidiary registered to do business in Oregon); *Sams* v. *Geico Corp.*, 2002 WL 31975065, at *5-6 (D. Or. Nov. 27, 2002) (declining to exercise personal jurisdiction under agency theory even though "each of the [defendant's] subsidiaries is registered with the Insurance Division of the Oregon Department of Consumer and Business Services").  The Complaint does not allege anything else.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice for failure to state a claim upon which relief can be granted.  In the alternative, the Complaint should be dismissed on *forum non conveniens* grounds or for lack of personal jurisdiction.

Dated:      November 18, 2011

OF COUNSEL:

Daryl A. Libow (pro hac vice)
Amanda F. Davidoff
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone: (202) 956-7500

Richard C. Pepperman, II (pro hac vice)
Marc De Leeuw (pro hac vice)
Matthew A. Peller
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000

Respectfully submitted,

*/s/ Thomas W. Taylor*
Thomas W. Taylor
Texas State Bar No. 19723875
S.D. Tex. Bar No. 3906
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas  77002
Telephone:  (713) 220-4200
Facsimile:   (713) 220-4285
ttaylor@andrewskurth.com

*Attorney-in-Charge for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Memorandum has

been served by electronic CM/ECF filing, on this 18th day of November, 2011.

                                        */s/ Thomas W. Taylor*
                                        Thomas W. Taylor