# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE BP SHAREHOLDER | § | **MDL NO.: 10-md-2185** |
| DERIVATIVE LITIGATION | § | |
| | § | **CIVIL ACTION NO.: 4:10-cv-3447** |
| | § | |
| | § | |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion to Dismiss the Verified Consolidated Amended Shareholder Derivative Complaint ("Motion") of nominal defendant BP, p.l.c. ("BP")[1] and the individual defendants[2] (collectively, "Defendants").  (Doc. No. 90.)[3] Having considered the parties' arguments and the applicable law, the Court finds that Defendants' Motion should be granted.

## I.    BACKGROUND

This is a purported shareholder derivative action[4] brought on behalf of nominal defendant BP to recover damages and other relief from various current and former officers and directors of BP and BP's United States subsidiary for alleged breaches of

---

[1] BP is a publicly traded energy company incorporated under the laws of England and Wales.

[2] The individual defendants are current and former executive and non-executive directors of BP's Board of Directors, as well as the current chairman and president of BP's United States-based subsidiary (BP America, Inc.) and his predecessor.  The current and former directors named in the Complaint are: Iain C. Conn, Robert W. Dudley, Byron E. Grote, Anthony B. Hayward, Andy G. Inglis, Antony Burgmans, Cynthia B. Carroll, William M. Castell, George David, Erroll B. Davis, Jr., Douglas J. Flint, DeAnne S. Julius, Ian M. G. Prosser, Peter Sutherland, and Carl-Henric Svanberg.  The current and former presidents of BP America, Inc. are H. Lamar McKay and Robert A. Malone.  (Compl. ¶¶ 31-49.)

[3] All docket references are to Civil Action No. 4:10-cv-3447.

[4] A derivative action is "[a] suit by a beneficiary of a fiduciary to enforce a right belonging to the fiduciary; esp., a suit asserted by a shareholder on the corporation's behalf against a third party (usu. a corporate officer) because of the corporation's failure to take some action against the third party." *Black's Law Dictionary* 509 (9th ed. 2009).

their fiduciary duties.[5]   In their Consolidated Amended Complaint ("Complaint"), Plaintiffs allege that the individual defendants engaged in a pattern of disregard for the safety of BP's energy exploration operations, which led to a series of safety violations spanning two decades. These violations culminated in the devastating Deepwater Horizon explosion and subsequent oil spill in the Gulf of Mexico.

Specifically, Plaintiffs assert, "The job of a corporate board of directors of any major oil company, first and foremost, is . . . to act in good faith to ensure that the company's business is conducted safely and lawfully.  This derivative action arises from the deliberate decision of BP's board of directors . . . to ignore its mandate." (Compl. ¶ 2, Doc. No. 81.)  Indeed, Plaintiffs contend that, over the years, "Defendants learned about numerous dangerous incidents, accidents and near-misses involving BP's oil exploration, refinery and pipeline operations," but took no corrective action.  (*Id.* ¶ 7.)  The individual defendants were aware, Plaintiffs allege, that their failure to address the company's inadequate process safety increased the risk of the disasters that ultimately followed. Plaintiffs assert that the individual defendants were informed of these issues, but consciously disregarded them.   As such, they failed to appreciate that this pattern of serious operational incidents "could be traced directly back to BP's culture and strategy of promoting budget cuts over adequate maintenance and safety processes." (*Id.* ¶ 8.) Nor did they appreciate that these management decisions continued to put the financial and reputational good of the company in jeopardy.  (*Id.* ¶ 10.)  The individual defendants'

---

[5] Shortly after the Deepwater Horizon oil spill began in the Gulf of Mexico on April 20, 2010, several plaintiffs filed shareholder derivative actions on behalf of BP in the United States District Court for the Eastern District of Louisiana.  Three of these derivative actions were transferred to this Court by the Judicial Panel on Multidistrict Litigation for coordinated or consolidated pretrial proceedings as part of MDL 2185.  In October 2010, this Court consolidated the three actions for all purposes in the above-captioned action, and ordered Plaintiffs to file a consolidated amended complaint. (Doc. No. 65.)

singular focus on BP's bottom line, Plaintiffs maintain, has been catastrophic for the company, resulting in "multiple disasters with deadly consequences throughout BP's operations, multiple felony convictions, and multiple multi-million dollar fines and other penalties imposed by regulators." (*Id.* ¶ 5.)

Based on the individual defendants' alleged long-term pattern of wrongdoing, Plaintiffs have brought various claims for breach of fiduciary duty. Specifically, Plaintiffs allege that the individual defendants: (1) acted ultra vires and caused BP to engage in unlawful conduct, and (2) failed to exercise independent judgment and due care by allowing BP to engage in dangerous activities without adequate process safety.[6] (*Id.* ¶¶ 247-72.) These obligations are derived from the recently enacted United Kingdom ("U.K.") Companies Act of 2006 (the "Companies Act"), which governs the fiduciary duties that officers and directors owe English companies. Plaintiffs seek to recover damages on behalf of BP for the substantial harm the company allegedly sustained as a result of the individual defendants' unlawful conduct and failure to exercise independent judgment and/or due care. (*Id.* ¶¶ 252, 259, 265, 271.)

Defendants have moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and 23.1, contending that: (1) Plaintiffs lack standing to sue derivatively because they have failed to secure permission from the English High Court to continue the suit, or alternatively, because they failed first to make a demand on the BP Board of Directors before bringing the suit; (2) under the doctrines of forum non conveniens and international comity, the Court should refrain from exercising jurisdiction; and (3) the Court lacks personal jurisdiction over the individual

---

[6] Plaintiffs do not bring a claim of failing to exercise independent judgment against Defendants McCay and Malone.

defendants.

As discussed below, the Court concludes that the English High Court is a far more appropriate forum for this litigation and, accordingly, exercises its discretion to dismiss Plaintiffs' Complaint on forum non conveniens grounds. It is therefore unnecessary to address Defendants' alternative grounds for dismissal.[7]

## II.     FORUM NON CONVENIENS LEGAL STANDARD

A federal court sitting in diversity applies the federal law of forum non conveniens in deciding a motion to dismiss in favor of a foreign forum. *De Aguilar v. Boeing Co.*, 11 F.3d 55, 59 (5th Cir. 1993); *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1159 (5th Cir. 1987) (*en banc*), *vacated on other grounds sub. nom.*, *Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989), *reinstated except as to damages by In re Air Crash Disaster Near New Orleans, La.*, 883 F.2d 17 (5th Cir. 1989) (*en banc*). The doctrine of forum non conveniens enables a district court, at its discretion, to decline to exercise jurisdiction "if the moving party establishes that the convenience of the parties and the court and the interests of justice indicate that the case should be tried in another forum." *Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir. 2001). Indeed, "the ultimate inquiry is where trial will best serve the

---

[7] Although a district court must determine whether it has jurisdiction to hear a case before proceeding to adjudicate the merits, the Supreme Court has held that a district court is not required to first establish its own jurisdiction before dismissing a suit on grounds of forum non conveniens when considerations of convenience, fairness, and judicial economy so warrant. *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 431 (2007) (stating that federal courts have leeway to choose among threshold grounds for denying audience to a case on the merits) (citations omitted). The Court is persuaded that, given the strength of England as the more convenient forum and the fact that resolving Defendants' personal jurisdiction challenge may require discovery, it serves considerations of convenience, fairness, and judicial economy to dismiss the case on forum non conveniens grounds. *See id.* at 435 (finding that discovery concerning personal jurisdiction would have burdened the defendant with expense and delay and all to scant purpose, as the district court inevitably would dismiss the case without reaching the merits on forum non conveniens grounds).

convenience of the parties and the ends of justice." *Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527 (1947).

In analyzing whether to dismiss a case on forum non conveniens grounds, a district court first considers whether an available and adequate alternative forum exists. If it does, the court then determines which forum is best suited to the litigation. *Karim*, 265 F.3d at 268 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22, 255 (1981)). In assessing whether an available and adequate alternative forum exists, a district court generally considers the following factors: "(1) amenability of the defendant to service of process and (2) availability of an adequate remedy in the alternative forum." *Karim*, 265 F.3d at 268; *see also Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379-80 (5th Cir. 2002), *cert. denied*, 538 U.S. 1012 (2003); *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001).

"If the court concludes that the foreign forum is both available and adequate, it should then consider all of the relevant factors of private interest, weighing in the balance the relevant deference given the particular plaintiff's initial choice of forum." *In re Air Crash*, 821 F.2d at 1165. The private interest factors to be considered by the Court relate primarily to the convenience of the litigants. They are:

> (1) the relative ease of access to sources of proof;
> (2) the availability of compulsory process to secure the attendance of witnesses;
> (3) the cost of attendance for willing witnesses; and
> (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Syndicate 420 at Lloyd's London v. Early American Ins. Co.*, 796 F.2d 821, 831 (5th Cir. 1986) (citing *Piper Aircraft*, 454 U.S. at 241).

"If consideration of these private interest factors counsels against dismissal, the district court . . . must weigh numerous public interest factors.  If these factors weigh in the moving party's favor, the district court may dismiss the case."  *Gonzalez*, 301 F.3d at 380 (citing *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 837 (5th Cir. 1993)); *see also In re Air Crash*, 821 F.2d at 1165 ("If the district court finds that the private interests do not weigh in favor of the dismissal, it must then consider the public interest factors."); *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1550-51 (5th Cir. 1991) ("[O]nly if the court cannot determine whether such private factors weigh in favor of dismissal is it required to examine the public interest factors at all.").

The public interest factors relevant to the analysis are:

(1) the administrative difficulties flowing from court congestion;
(2) the local interest in having localized controversies decided at home;
(3) the familiarity of the forum with the law that will govern the case;
(4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law; and
(5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Saqui v. Pride Cent. America, LLC*, 595 F.3d 206, 214 (5th Cir. 2010) (citing *In re Air Crash*, 821 F.2d at 1162-63).  In cases where the private interest factors do not weigh heavily in favor of the alternative forum, a court may still dismiss an action in light of the relevant public interest considerations.  *See Piper Aircraft*, 454 U.S. at 256 n.23 ("[I]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."); *In re Air Crash*, 821 F.2d at 1165-66 (citing *Pain v. United Technologies Corp.*, 637 F.2d 775, 792 (D.C. Cir. 1980), *cert. denied*, 454 U.S. 1128 (1981)) ("[E]ven when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant forum non conveniens

dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute or that foreign law will predominate if jurisdiction is retained.").

When undertaking the required balancing, "no one private or public interest factor should be given conclusive weight." *In re Air Crash*, 821 F.2d at 1163. Ordinarily a favorable presumption is applied to the plaintiff's choice of forum. Thus, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *see also Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) ("[A] forum non conveniens dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate and available alternative forum." (citing *Gulf Oil*, 330 U.S. 501)).

A plaintiff's choice of forum is never dispositive, however, and not all plaintiffs are accorded equal deference with regard to their forum selection. As one of the central purposes of the forum non conveniens inquiry is to ensure that the trial is convenient, courts generally give greater deference to the plaintiff's choice of forum when the plaintiff has chosen its home forum. *Piper Aircraft*, 454 U.S. at 255-56 ("When the plaintiff has chosen the home forum, it is reasonable to assume that this choice is convenient."). This principle is not absolute, though, and may yield when circumstances undercut the rationale behind according such deference. For example, in shareholder derivative cases "where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts," courts have declined to

accord the plaintiff's forum choice increased weight.  *See Koster*, 330 U.S. at 524-25 (finding that plaintiffs' choice of forum, although their home forum, was not entitled to greater deference, at least where they did not "have a substantial interest of [their] own to protect" or "any knowledge by which [their] presence would help to make whatever case can be made in behalf of the corporation"); *Tjontveit v. Den Norske Bank ASA*, 997 F. Supp. 799, 804-05 (S.D. Tex. 1998) (observing that federal courts have generally refused to give special deference to the domestic forum choices of nominal plaintiffs from the United States suing as assignees, subrogees, or representatives of a foreign company); *cf. DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 795 (5th Cir. 2007) (noting that when an American corporation doing extensive foreign business brings an action for injury occurring in foreign country, many courts partially discount plaintiff's preference of United States forum).  In such circumstances, "the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Koster*, 330 U.S. at 524.  Applying less deference, however, is "not an invitation to accord . . . an American forum no deference since dismissal for forum non conveniens is the exception rather than the rule." *In re Air Crash*, 821 F.2d at 1164 n.26 (citations omitted).

### III.   ANALYSIS

This case is a shareholder derivative action brought under a recently enacted U.K. statute on behalf of an English company against numerous English defendants and other foreign nationals. The Court is persuaded that the Complaint should be dismissed under the doctrine of forum non conveniens, as the English High Court is the more appropriate forum for this case. As a threshold matter, the Court will determine the degree of

deference to which Plaintiffs' choice of forum is entitled under the circumstances of this litigation, so that it may be accounted for appropriately throughout the Court's analysis of the private and public interest factors.  *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003) ("[The] 'first level of inquiry' pertains to 'determining whether the plaintiff's choice of forum is entitled to more or less deference.'" (quoting *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 73 (2d Cir. 2001))).  As discussed above, when a plaintiff sues in its home forum, that choice is generally entitled to greater deference in balancing the private conveniences of the parties because it is assumed to be convenient.  The increased deference normally accorded to a home plaintiff's choice of forum is not necessarily applied, however, where the plaintiffs are several of thousands of shareholders who could have brought the lawsuit on behalf of the corporation.  *See Koster*, 330 U.S. at 524.  As the *Koster* Court explained, unlike in a traditional two-party lawsuit, in a derivative action the corporation is the true beneficiary; the plaintiffs, suing in a strictly representative capacity, have only an indirect interest in the outcome.  *Id.* at 522-23.  The "peculiarities" of derivative actions "should not be overlooked" in the forum non conveniens analysis.  *Id.* at 524.

Although the plaintiff shareholders who brought the cases consolidated before this Court are American, more than 60 percent of BP's shareholders are not.[8]  As the Supreme Court noted in *Koster*, each of these foreign shareholders is equally entitled to bring the corporation's cause of action in a representative capacity, with an accompanying right to proceed in any one of their many home courts.  Plaintiffs have not demonstrated that they have a substantial interest of their own to protect or any knowledge that would aid in the

---

[8] *Ownership Statistics*, BP p.l.c.,
http://www.bp.com/extendedsectiongenericarticle.do?categoryId=9010453&contentId=7019612 (last visited Sep. 3, 2011).

prosecution of breach of fiduciary duty claims on behalf of BP. Indeed, the evidence in the record indicates that Plaintiffs are "mere phantom plaintiff[s] with interest enough to enable [them] to institute the action and little more." *Id.* at 525. Accordingly, as the Supreme Court has instructed, Plaintiffs' contention that this forum is appropriate merely because it is their home forum is considerably weakened. Therefore, the Court will not accord their choice the "greater deference" normally given home plaintiffs in balancing the conveniences in a forum non conveniens case.[9]

### A.  Available and Adequate Alternative Forum

To demonstrate that an alternative forum exists for purposes of forum non conveniens, a defendant must show that the proposed alternative is both available and adequate. *Syndicate 420*, 796 F.2d at 828. To sustain its burden, the Fifth Circuit "require[s] a defendant to put forth unequivocal, substantiated evidence presented by affidavit testimony." *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1550 n.14 (5th Cir. 1991). "[A] moving defendant need not submit overly detailed affidavits to carry its burden, but it 'must provide enough information to enable the district court to balance the parties['] interests.'" *In re Air Crash*, 821 F.2d at 1164-65 (quoting *Piper Aircraft*, 454 U.S. at 258).

"An alternative forum is available when 'the entire case and all parties can come within the jurisdiction of that forum.'" *Saqui*, 595 F.3d at 211 (quoting *In re Air Crash*,

---

[9] Defendants contend that because this litigation was transferred to this Court for the purpose of MDL pretrial proceedings, the focus of the forum non conveniens analysis is properly the Eastern District of Louisiana where plaintiffs brought suit and where an eventual trial would take place. With two exceptions, Plaintiffs are not Louisiana residents. Thus, according to Defendants, their choice to bring suit in the Eastern District of Louisiana deserves less deference. Plaintiffs disagree, arguing that the relevant inquiry is whether the plaintiff who has selected the forum is a *United States* citizen, not whether the plaintiff resides in the particular district where the case was brought. The Court need not resolve this dispute, however, as it has already found that Plaintiffs are not entitled to the same deference normally accorded home forum plaintiffs because they are suing only in their representative capacities.

821 F.2d at 1165).   Ordinarily, the availability requirement is "satisfied when the defendant is 'amenable to process' in the other jurisdiction."  *Piper Aircraft*, 454 U.S. at 255 n.22 (quoting *Gulf Oil*, 330 U.S. at 506-07).   Defendants argue that the English courts are an available forum for the present case because the individual defendants are amenable to process there.  (Mot. at 15.)  Many of the individual defendants are English citizens residing in England, and therefore, Defendants maintain, they are obviously subject to the jurisdiction of its courts.  Defendants contend that the remaining defendants would be subject to the jurisdiction of the English courts in connection with claims arising out of and directly related to their duties as directors of an English company.  (*Id.* at 16.)

Plaintiffs respond that Defendants' "unsupported assertion" that the individual defendants are amenable to process in England is insufficient to sustain their burden of showing the availability of English courts as an alternative forum.  Indeed, they urge, Defendants must put forth substantiated evidence presented through affidavit testimony to fulfill this key threshold requirement of any forum non conveniens dismissal.

The Court is unable to locate in Defendants' filings affidavit evidence establishing that all of the individual defendants would be amenable to process in England.  Although the Court has no reason to doubt the assertions contained in Defendants' briefing, Fifth Circuit precedent is clear that the Defendants' amenability to process in the alternative forum must be established before the Court may properly dismiss the case under forum non conveniens.  Accordingly, the dismissal of this case is conditioned upon Defendants (1) providing such proof, or (2) stipulating that the individual defendants will submit to the jurisdiction of the English courts.  *See Saqui*, 595

F.3d at 210 ("Fifth Circuit law has consistently held that when a defendant submits to the jurisdiction of an alternate forum, that renders the forum available for purposes of FNC analysis.").  Subject to Defendants furnishing such proof or stipulation, the Court finds that English courts provide an available alternative forum in which to proceed with this case.

An alternative forum is considered adequate "when the parties will not be deprived of all remedies or treated unfairly, even though they might not enjoy the same benefits as they might receive in an American court."  *Saqui*, 595 F.3d at 212 (quoting *In re Air Crash,* 821 F.2d at 1165).  In this case, Defendants have offered evidence that the Companies Act expressly permits litigation of derivative claims before the English High Court.  (*See* Mot. at 16; Declaration of Martin Moore ("Moore Decl.") ¶¶ 8-11, Doc. No. 91-2.)  According to Defendants' expert, a successful shareholder would have at its disposal all of the remedies for breach of fiduciary duty that would have been available had the claim been brought by BP itself.  Such remedies would include injunctive and/or declaratory relief as well as equitable compensation, damages, and/or an account of profits.  (Moore Decl. ¶ 42.)  Plaintiffs do not dispute that the courts of England provide an adequate forum in which to litigate their claims.  As it is undisputed that Plaintiffs would not be deprived of all remedies or treated unfairly in English courts, the Court finds that they present an adequate alternative forum.

### B.  Private Interest Factors

In accordance with the Fifth Circuit's framework, the Court will next consider all of the relevant private interest factors.  The private interest factors favor England only slightly as the more convenient forum.

### 1.   Access to Evidence

The first private interest factor, relative ease of access to sources of proof, favors England as the appropriate forum. Although many of Plaintiffs' allegations relate to the Deepwater Horizon oil spill in the Gulf of Mexico, Defendants argue that the relevant evidence in a *derivative* action is the information available to and the actions undertaken by the corporation's management. In this case, Defendants contend, the relevant inquiry surrounds the actions taken by BP's Board of Directors in *England*.

Defendants support their argument with citation to *Koster*, in which the Supreme Court noted that sources of proof in a derivative action are more likely to come from the defendant. 330 U.S. at 526. In an ordinary lawsuit, a plaintiff's own books, records, and transactions are likely to be central to its claims. *Id.* In a derivative action, the Supreme Court explained, "it is more likely that only the *corporation's* books, records and transactions will be important and only the defendant will be affected by the choice of the place of production of records." *Id* (emphasis added). Defendants contend that the *Koster* Court's observation holds true in this case. They maintain that the corporate records relevant to this lawsuit are maintained at BP's headquarters in London, England. (*See* Declaration of David J. Jackson ¶ 5, Doc. No. 91-9.) Thus, Defendants urge, the parties will have easy access to relevant corporate documents if this case is litigated in England, a factor that strongly supports the English High Court as the more appropriate forum. Defendants identify several cases in which courts have affirmed the dismissal of a case on forum non conveniens grounds in part because the majority of the relevant documents were located in England. *See, e.g.*, *Piper Aircraft*, 454 U.S. at 258 (affirming dismissal of action where "[a] large proportion of the relevant evidence is located in Great

Britain"); *Scottish Air Int'l, Inc. v. British Caledonian Group, p.l.c.*, 81 F.3d 1224, 1233 (2d Cir. 1996) (affirming dismissal of action where "most—if not all—relevant documents are located in Great Britain"); *Syndicate 420*, 796 F.2d at 831 (affirming dismissal of action where "[m]ost, if not all, of the pertinent documentary and other evidence is in England").

Plaintiffs respond that the relevant corporate documents include not only those corporate records maintained at the company's headquarters in London, but also those related to the individual defendants' failure to ensure adequate process safety in BP's Gulf of Mexico operations.  Plaintiffs anticipate that there will be extensive, relevant records of these operations located in the Gulf Coast states and BP's American headquarters in Houston, Texas.  In addition, Plaintiffs urge, even if the majority of the key documents in this case are located in England, "rapid international travel, e-mail, and electronic storage, transferability, and access to documents have reduced, if not eliminated, the importance of the location of documents."  (Resp. at 26); *see also In re Corel Corp. Sec. Litig.*, 147 F. Supp. 2d 363, 366 (E.D. Pa. 2001) ("While the initial repository of most relevant documents may be in Canada, this fact is of lesser significance in the modern electronic age. Documents can easily be photocopied or otherwise transferred to this jurisdiction."); *Itoba Ltd. v. LEP Group PLC*, 930 F. Supp. 36, 44 (D. Conn. 1996) ("To the extent documents exist in England, advances in transportation and communication accord this issue less weight.").

Defendants counter that, even if an extensive record relating to BP's process safety in BP's Gulf of Mexico operations were located in the Gulf Coast states, those records are not relevant to *this* litigation.  The relevant evidence in this derivative action,

they urge, is the information actually provided to, and the actions undertaken in response by, the individual defendants, who are current and former officers and directors of the company.  The documents that would reveal the individual defendants' knowledge and actions related to the company's process safety, they maintain, are located at the company's headquarters in London.

The Court agrees with Defendants that, due to the character of this litigation, the majority of the relevant documents in this case are likely to be located at BP's headquarters in London.  It is undisputed that BP's Board of Directors meets in England and that the records of their discussions and decisions are maintained there.  The Court also recognizes that a cache of documents related to the safety of BP's Gulf Coast operations is likely to be located in this district and in the Eastern District of Louisiana. These documents are undoubtedly critical to determining BP's tort and other liability arising out of the Deepwater Horizon disaster.  Such documents, however, are of questionable relevance to the current inquiry into key management decisions made at the highest levels of BP by its Board of Directors headquartered in London.  Moreover, Plaintiffs' Complaint alleges that the individual defendants engaged in a pattern of disregard for process safety spanning two decades and involving various BP operations, not just the Macondo drilling project in the Gulf of Mexico.  Thus, any potentially relevant documents regarding the Macondo project located in Texas and Louisiana are unlikely to outnumber the extensive corporate records located in England.

Thus, the Court concludes that, with regard to relative access to sources of proof, England is the more convenient forum.  As Plaintiff insists, this factor has somewhat diminished significance in light of technological advancements that have eased the

burdens of transnational discovery.  None of the cases Plaintiffs cite, however, suggest that such innovations render this issue *inconsequential* to the forum non conveniens analysis.  The Court will accord appropriate weight to the relative ease of access to proof, accounting for the fact that electronic discovery and other advancements mitigate the inconvenience posed by large-scale document transfers.

## 2. Availability of Compulsory Process and Cost of Securing Witness Attendance

Defendants assert that the availability of compulsory process to secure the attendance of witnesses is far more certain in England.  Indeed, Defendants note, none of the individual defendants lives in Louisiana. A majority of the individual defendants most likely to be key witnesses are non-United States nationals, and largely reside in the United Kingdom and other European counties.  Consequently, Defendants argue, the vast majority of the witnesses are likely to be subject to the compulsory process of the English courts.  By contrast, the Eastern District of Louisiana may be without a mechanism to compel the individual defendants' attendance at trial.[10]  Defendants also note that non-party witnesses are more likely to be found in London where BP is headquartered and where its Board of Directors frequently meets.  According to Defendants, these witnesses would also be beyond the subpoena power of the Louisiana courts.

Moreover, Defendants assert, the cost of securing attendance of even willing witnesses would be substantial in this case.  As the Fifth Circuit stated in *Syndicate 420*, "[m]ost of th[e] witnesses are British, many may prove unwilling to travel to Louisiana to

---

[10] The three shareholder derivative cases that were consolidated for pre-trial proceedings before this Court were originally filed in the Eastern District of Louisiana.  If the case were to advance to trial, it would take place in the Eastern District of Louisiana pursuant to the statute governing multidistrict litigation.  28 U.S.C. § 1407 (2006) ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated.").

testify, and an American federal court is without power to compel them to do so. In any event, the cost of obtaining the attendance of even those witnesses who are willing to come to Louisiana to offer their evidence would certainly be considerable, and could prove to be prohibitive." 796 F.2d at 831.

Plaintiffs respond that England is not more convenient on the grounds of the relative ability to secure witness attendance. They remind the Court that eight of the seventeen individual defendants are United States citizens who can be found in the United States. Moreover, Plaintiffs urge, BP has already proven its ability to make its employees available for depositions in the MDL 2179 proceeding.

There are two types of potential witnesses in this case. First, there are the individual defendants, all of whom would be considered party witnesses. As parties, the individual defendants are required to present themselves for depositions, participate in discovery, and appear at trial or face potential sanctions. *See* Fed. R. Civ. P. 37. However, the cost of the individual defendants' attendance would be less if the case were to proceed in England. Based on the allegations in Plaintiffs' Complaint, the Court calculates that, of the seventeen individual defendants, six are British citizens, three are citizens of other European countries, and eight are United States citizens, one of whom resides in London. This breakdown slightly favors England as the more convenient forum, as ten of the individual Defendants would have to travel from Europe to present their evidence, whereas only seven Defendants would have to travel to England.

Second, there are non-party witnesses. Defendants are correct that the Court would be without a mechanism to compel the attendance of unwilling nonparty witnesses outside the jurisdiction of the Eastern District of Louisiana. As for Plaintiffs' contention

17

regarding the depositions that have already taken place in MDL 2179, there are substantial differences between MDL 2179 and the derivative action pending here. First, the deponents in MDL 2179 are largely employees of BP and other companies who were involved in the Macondo drilling project.[11]  It is unclear whether the deponents in MDL 2179 are relevant fact witnesses in a case that focuses on the individual defendants' awareness of safety violations and corresponding breaches of fiduciary duties. Second, MDL 2179 comprises cases brought against BP as a defendant, while the instant case has been brought against the individual defendants with BP named only as a nominal defendant. It is unclear whether BP, as nominal defendant, can be compelled to produce unwilling nonparty witnesses outside the jurisdiction of the Eastern District of Louisiana. It is unlikely that the individual defendants can be compelled to produce these types of individuals either. Finally, to the extent that nonparty witnesses are relevant to this case, Defendants have asserted that a greater number of nonparty witnesses are located in England and are subject to the compulsory process of the English courts.

The Court concludes that, in light of the private factors, England is the more convenient forum. Indeed, this is a derivative action involving the internal governance of a company both incorporated and headquartered in England. As such, the records documenting the highest management decisions of BP are located there. These documents may reveal whether the individual defendants acted ultra vires and/or failed to exercise independent judgment and due care in undertaking their duties. Notwithstanding

---

[11] *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 2:10-md-02179-CJB-SS, Doc. No. 1075, Pretrial Order No. 27 at 7 (E.D. La. Jan. 27, 2011) (Barbier, J.) ("It appears to the Court that the majority of BP and other fact witnesses to be deposed in the MDL No. 2179 proceedings (such as occurrence witnesses involved in the casualty and/or with rig or drilling operations) are of limited relevance to the shareholder securities, derivative, and ERISA claims that are consolidated in MDL No. 2185.").

electronic discovery and other advancements that have eased the burden of defending this suit in the United States, the private interest factors still favor England as a more convenient forum.

Moreover, nonparty witnesses and a majority of party witnesses are likely to be found in England and subject to the compulsory process of English courts. The cost of securing witness attendance in the United States would be significant because many individual defendants and nonparty witnesses will be found in England. A large minority of the individual defendants is American, however; thus, the cost of attending proceedings in England would be significant for the American individual defendants. The cost and availability of mechanisms to secure attendance of witnesses therefore weigh only slightly in favor of England as the more convenient forum.

Thus, the private factors do not tip the scales considerably in favor of dismissing this suit in favor of an English forum. Although Plaintiffs are entitled to less deference than the average plaintiff suing in its home forum, their choice is still entitled to some consideration. The Court will proceed to an examination of the public interest factors, which do strongly favor dismissal.

### C.  Public Interest Factors

When a court cannot determine whether the private interest factors weigh in favor of dismissal, it must examine the public interest factors. *In re Air Crash*, 821 F.2d at 1164. As the Fifth Circuit has stated:

> The relevant public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens

in an unrelated forum with jury duty.

*Saqui*, 595 F.3d at 214 (citing *In re Air Crash*, 821 F.2d at 1162-63).  The Court will now examine each of these prongs in turn.[12]

### 1.    Administrative Difficulties

The first public factor recognizes that "[a]dministrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin."  *American Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994) (citing *Gulf Oil*, 330 U.S. at 508-09).  Defendants argue that due to its unique character as a derivative action, this lawsuit creates increased administrative difficulties for the Court. These difficulties, Defendants contend, militate in favor of dismissal on forum non conveniens grounds.  As the Supreme Court has stated, entertaining a derivative action

> places the forum in a position of responsibility toward the whole class which the plaintiff assumes to represent. To prevent collusive settlements and abuses, the Court must approve dismissal or compromise and often must give notice to the other potential plaintiffs, in this case to the other members and policy holders in whose behalf plaintiff sues and who have a right to be heard on the propriety of settlement. Rule 23, Rules of Civil Procedure. It also takes on the troublesome business of fixing allowances to counsel and accountants for the plaintiff payable out of the defendant corporation's recovery against other defendants. Thus, such a litigation brings to the court more than an ordinary task of adjudication; it brings a task of administration; and what forum is appropriate for such a task may require consideration of its relation to the whole group of members and stockholders whom plaintiff volunteers to represent as well as to the nominal plaintiff himself.

*Koster*, 330 U.S. 525-26.

Plaintiffs counter that the Court's continued role in MDL 2185 will require it to adjudicate claims arising from the oil spill, regardless of whether the instant suit is dismissed.  Thus, they maintain, Defendants cannot show that "dismissing [this suit] . . .

---

[12] The Court will consider the third and fourth factors together, as both concern the impact of foreign law.

would actually reduce the burden on the Court, which is, ultimately the purpose underlying this factor." *Blum v. Gen. Elec. Co.*, 547 F. Supp. 2d 717, 734 (W.D. Tex. 2008).

The Court is convinced that this lawsuit represents a substantial burden on the Court's docket. In *Blum*, the district court was faced with the decision of whether to dismiss a group of German plaintiffs on forum non conveniens grounds. The court concluded that dismissing the German plaintiffs would not significantly lessen the encumbrance on its docket because, notwithstanding the German plaintiffs' dismissal, a group of American plaintiffs would continue pursuing the same claims against the same defendants in the Western District of Texas. *Id.* By contrast, in this case, the two other pending cases in MDL 2185 involve distinct legal issues and parties.[13] Despite some potential overlap in discovery, over which the Court will have only a limited supervisory role, each case would generate separate pre-trial motions and proceed with separate trials. (*See* MDL Hr'g Tr., at 29-31, Apr. 13, 2011.) Moreover, as the Supreme Court explained in *Koster*, shareholder derivative actions such as the present case typically generate increased administrative oversight duties for courts. 330 U.S. at 526. Accordingly, dismissing this derivative suit, which constitutes one-third of the Court's MDL cases, would undoubtedly relieve a substantial burden on the Court's already ample caseload.

## 2.  Localized Controversies

---

[13] The other pending cases in the MDL 2185 area also include a securities class action and an Employee Retirement Income Security Act of 1974 ("ERISA") lawsuit. The ERISA plaintiffs have sued BP Corporation North America, Inc. and other alleged fiduciaries of several BP employee retirement plans for breach of fiduciary duty under ERISA on behalf of plan participants and beneficiaries. The securities class action has been brought against BP, p.l.c. alleging that the company engaged in securities fraud under Securities Exchange Act of 1934.

The Supreme Court has recognized that "[t]here is a local interest in having localized controversies decided at home." *Gilbert*, 330 U.S. at 508-09. Thus one factor to examine is the degree to which the controversies in this case are local in nature. Defendants emphasize that this is a derivative action brought on *BP's behalf* against current and former directors and executives of the English company for alleged breaches of fiduciary duty under English law. They urge that Plaintiffs' attempts to "Americanize" the controversy by focusing on the environmental and economic consequences suffered by the United States should be ignored because such damage is irrelevant to the Court's forum non conveniens analysis. Defendants appear to concede that such factors might be relevant if the present case were a lawsuit *against BP* to compensate the citizens of Louisiana for harm resulting from the oil spill. Defendants argue, however, that this case is different in character because it involves the internal corporate governance of a company incorporated under the laws of England and Wales. Indeed, they maintain, the English High Court, and the U.K. as a whole, have a greater interest in the resolution of this derivative suit involving the internal governance of an English corporation and brought pursuant to the Companies Act. Plaintiffs, on the other hand, argue that it is disingenuous to characterize this lawsuit as a controversy localized to England, as BP is a multi-national corporation with extensive operations that have caused significant harm in the United States.

Although the Court agrees with Plaintiffs that many of the negative externalities of the individual defendants' alleged wrongs have been felt in the Gulf Coast and in other parts of the United States, this derivative suit is designed to recover damages on behalf of BP for harm done to the company, not to compensate the victims of the company's

alleged wrongdoing here in the United States.  *See Kamen*, 500 U.S. at 95 (noting that derivative litigation acts as "a means to protect the interests of the corporation").  Any damages award secured in this case would be paid directly into BP's treasury.  The posture of this case sets it apart from the MDL 2179 proceeding in Louisiana, and even the two other cases pending before this Court in MDL 2185.

At base, this case seeks to resolve questions surrounding the appropriate internal governance of an English company.  In such situations, courts have found that the country of incorporation has the greatest interest.  *See Koster*, 330 U.S. at 522-24 (upholding the dismissal of a derivative action in part because the real party in interest was a corporation organized under the laws of an alternative forum); *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 489 (S.D.N.Y. 2006) ("The matters at issue here are, in large part, those of 'internal corporate governance' of English companies, in which English courts would have a much greater local interest than the citizens of this District." (citing *Scottish Air Intern., Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224**,** 1234 (2d Cir. 1996))).

The Court is persuaded that this lawsuit is not intended to redress the devastating impact of the Deepwater Horizon disaster in the United States. Instead, the lawsuit is intended to compensate BP for the financial and reputational harm the company suffered as a result of its high level management's alleged disregard for the safety of its operations.  The English courts have a greater interest in resolving a dispute related to the internal governance of an English company, especially one about whether the company's directors violated their fiduciary duties.

### 3.  Foreign Law

The third and fourth factors instruct the Court to analyze the interest in (1) trying the case in a forum that is familiar with the law that governs the action, and (2) avoiding the unnecessary problems in conflict of laws or in the application of foreign law.  *See Saqui*, 595 F.3d at 214; *see also Gilbert*, 330 U.S. at 508-09 ("There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."). In this case, it is undisputed that English law governs the individual defendants' substantive duties.  As this is a diversity case transferred from the United States District Court for the Eastern District of Louisiana, Louisiana choice-of-law rules apply.  *See Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v. Stockstill*, 561 F.3d 377, 386 n.7 (5th Cir. 2009) (noting that, in diversity actions, federal courts apply the choice of law rules of the state in which the district court where the complaint was filed sits); *In re Parmalat Sec. Litig.*, 659 F. Supp. 2d 504, 517 (S.D.N.Y. 2009) ("[T]he [MDL] transferee court applies the state substantive law that would have been applied in the transferor court pursuant to the state choice of law rules that would have governed in that forum.").  "Under Louisiana law, the law of the place where the corporation was incorporated governs disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties."  *Torch Liquidating Trust*, 561 F.3d at 386 n.7. This choice-of-law principle, known as the internal affairs doctrine, has been widely adopted by most states, including Texas.  *See Hollis v. Hill*, 232 F.3d 460, 464-65 (5th Cir. 2000).   The rationale for the rule is that it promotes consistency and uniformity and prevents corporations from facing conflicting demands in various jurisdictions.  *See First*

*Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) ("As a general matter, the law of the state of incorporation normally determines issues relating to the *internal* affairs of a corporation. Application of that body of law achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation.") (emphasis in original); *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (noting that without the internal affairs doctrine, "a corporation could be faced with conflicting demands" from multiple states).  As BP is incorporated under the laws of England and Wales, the parties agree that English law applies to the merits of this action.

Specifically, the Companies Act governs the substantive duties that the individual defendants owed to BP.  These duties are codified in Chapter 2 of Part 10 of the Companies Act, and include: (1) the duty to act within powers (section 171); (2) the duty to promote the success of the company (section 172); (3) the duty to exercise independent judgment (section 173); and, (4) the duty to exercise reasonable skill, care, and diligence (section 174).   (Declaration of Stuart Adair ("Adair Decl.") ¶ 56, Doc. No. 109-16.) According to Plaintiffs' expert, section 172 makes material changes to the pre-existing common law duties owed by directors. These changes broaden directors' obligations relating to the matters that they must consider when making a decision.  Subsection 172(1) provides:

> A director of a company must act in the way he considers, in good faith, would be most likely to promote the success of the company for the benefit of its members as a whole, and in doing so have regard (amongst other matters) to—
> (a) the likely consequences of any decision in the long term,
> (b) the interests of the company's employees,
> (c) the need to foster the company's business relationships with suppliers, customers and others,

(d) the impact of the company's operations on the community and the environment,
(e) the desirability of the company maintaining a reputation for high standards of business conduct, and
(f) the need to act fairly as between members of the company.

Defendants argue that the need to apply this recently enacted U.K. statute, which substantively alters directors' duties, weighs strongly in favor of proceeding with the case in England.  Indeed, they argue, litigating this case before the English High Court would ensure a "forum that is at home with the law that must govern the action" and avoid "unnecessary problems . . . in the application of foreign law."  (Mot. at 21.)  Because the Companies Act went into effect less than four years ago, they maintain, the English High Court has had only limited opportunities to apply its provisions, many of which diverge from the preexisting common law rules.  Defendants' expert asserts, "[t]here are relatively few decided cases since the 2006 Act came into force—derivative claims remain fairly rare in England and Wales. . . . To date, the decided cases have related to shareholder disputes in much smaller companies than BP Plc."  (Moore Decl. ¶ 38.) Given the lack of precedent to guide this Court and the evolving nature of the jurisprudence under the Companies Act, Defendants urge that the English High Court should resolve issues of first impression arising out of its own statute rather than having this Court "untangle problems in conflict of laws, and in law foreign to itself."  (Mot. at 21) (quoting *Piper*, 454 U.S. at 251 ("The doctrine of forum non conveniens . . . is designed in part to help courts avoid conducting complex exercises in comparative law . . . .") (quotations omitted)); *see also Denmark v. Tzimas*, 871 F. Supp. 261, 271 (E.D. La. 1994) ("Although this court is capable of applying English law, the courts of England are certainly better suited for such a task.").

Defendants further observe that the parties have submitted vastly divergent expert declarations on English law in connection with the instant motion to dismiss. Citing a recent case in the Southern District of Florida, Defendants claim that the divergent declarations underscore the importance of having an English court hear this dispute. *See In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1339 (S.D. Fla. 2010) (dismissing case on forum non conveniens grounds where Irish law would apply to the merits and "the substantial disagreements between the parties' respective experts on several basic legal matters . . . [had] given the Court a preview of even thornier problems to come").

Plaintiffs counter that "'the need to apply foreign law is not alone sufficient to dismiss under the doctrine of forum non conveniens.'" *Karim v. Finch Shipping Co.*, 94 F. Supp. 2d 727, 737 (E.D. La. 2000) (quoting *R. Maganlal & Co. v. M.G. Chemical Co., Inc.*, 942 F.2d 164, 169); *see also Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1164 (5th Cir. 1987) (noting that courts "must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform") (quotations omitted).

Although the need to apply foreign law is alone insufficient to dismiss under the doctrine of forum non conveniens, it "certainly is a factor weighing in favor of trying the case in" England. *Schexnider*, 817 F.2d at 1163. Moreover, this case is exceptional in that it would require the Court to interpret a recently enacted statutory corporate governance scheme that has replaced the common law derivative action. The Court has already received a preview of the intricate questions of law that proceeding with this case would require it to resolve, as well as the significant disagreements between the parties as

to the appropriate standards to apply.  Indeed, seventy pages of expert declarations alone were filed on the single issue of whether Section 261 of the Companies Act requires Plaintiffs to first seek permission from the English High Court to continue their lawsuit.

Further complicating the Court's task is the fact that it would enjoy little guidance from the English courts, as few relevant legal issues have been addressed.  Given the continued evolution of Companies Act jurisprudence, the Court is deeply concerned that, if it were to proceed to the merits of this case, intervening pronouncements from the English courts could significantly interfere with its progress.  Accordingly, the third and fourth public interest favors weigh heavily in favor of England as the more convenient forum.[14]

### 4.  Burden on Forum Citizens

Finally, courts should evaluate the "unfairness of burdening citizens in an unrelated forum with jury duty."  *Saqui*, 595 F.3d at 214; *see also Gilbert*, 330 U.S. at 508-09 ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.").  Plaintiffs argue that it would not be "unfair" to ask a local jury to decide whether Defendants are liable for conscious breaches of duties regarding process safety requirements that ruined a multi-national corporation, particularly in light of the personal injury and environmental consequences of the breaches felt in the United States.  Resolving Plaintiffs' claims, however, would require a jury to delve deeply into whether a group of current and former BP officers and directors, headquartered in England, properly governed an English corporation. The jury

---

[14] Derivative Plaintiffs' Supplemental Brief in Opposition to Defendants' Motion to Dismiss ("Supp. Brief.") (Doc. No. 252) leaves little doubt that, if the Court does not dismiss the suit, it will need to adjudicate complex issues of English law. Plaintiff's standing arguments require the Court to consider two such issues, namely (1) how to apply the factors set out in Sections 260-63 of the Companies Act, and (2) whether to apply the common law rule of *Foss v. Harbottle*, [1843] 2 Hare 461. (Supp. Brief. at 5.)

would further have to decide the facts with reference to standards set forth by the U.K. Parliament.  As the Court has noted several times with regard to other factors, the only party that stands to gain from the successful prosecution of this derivative action is BP itself, not the citizens of Louisiana.  When considering the distinct nature of the claims Plaintiffs advance—which seek to compensate BP for reputational and financial damage stemming from disasters the company allegedly caused—it is clear that it would be unfair to burden the citizens of Louisiana with the lawsuit.

## IV.    CONCLUSION

The Court concludes that England, as the focal point of this litigation, is the far more appropriate forum. Because this derivative lawsuit involves the internal governance of an English corporation, the convenience of the parties and the interests of justice favor England as a more convenient forum. *See Turan v. Universal Plan Investments Ltd.*, 248 F.3d 1139, 2001 WL 85902, at *5 (5th Cir. Jan. 24, 2001) (unpublished) ("Hong Kong is the *focal point* of this litigation, because it involves the internal governance of a Hong Kong corporation." (citing *Koster*, 330 U.S. at 527 (finding that although *no* rule requires dismissal upon mere showing that trial will involve issues relating to internal affairs of foreign corporation, it is factor which may "show convenience of parties or witnesses, the appropriateness of trial in a forum familiar with the law of the corporation's domicile, and the enforceability of the remedy if one be granted")))).   This case is unique because it is a derivative lawsuit involving the internal affairs of a foreign corporation. Indeed, because Plaintiffs are just a handful of the thousands of potential shareholders that could sue the individual defendants on behalf of BP, their choice of forum is accorded less deference than the typical home forum plaintiff in a traditional two party lawsuit.

Moreover, because this lawsuit calls for an inquiry into the knowledge and actions of BP's Board of Directors, the lion's share of the relevant documents and the majority of the individual defendants are located in England.   Given the decreased deference accorded to Plaintiffs' choice of an American forum, the private interest factors weigh slightly in favor of dismissal.

It is the public interest factors, however, that most strongly favor England as the appropriate forum in which to proceed with this case. These factors persuade the Court that this action should be dismissed.  The primary concern of this derivative litigation is the internal affairs of an English corporation, and the suit seeks to recover damages *for* the benefit of BP only.  Accordingly, England has a greater interest in the resolution of this dispute.  Moreover, English law governs this dispute and will determine whether the individual defendants breached their fiduciary duties and harmed BP in the process. Thus, English law would predominate and, if the case were to continue here, the Court would be faced with the formidable exercise of interpreting and applying a still nascent and evolving body of foreign law.   The Court would be saddled with not only the ordinary task of adjudication, but also the additional administrative tasks characteristic of derivative actions articulated in *Koster*.   Dismissing this case would relieve this Court of the substantial burdens of such undertakings.   Finally, the citizens of Louisiana should not be burdened, as factfinders, with the exercise of applying complex English law to determine whether the individual defendants harmed an English company through unlawful acts and inadequate oversight.   As these public interest considerations counsel strongly in favor of dismissal, Defendants' Motion is hereby **GRANTED**.

As articulated, *supra*, however, the dismissal of this action is conditioned on Defendants either (1) proffering adequate proof that they are, in fact, amenable to process in England, or (2) submitting a stipulation that they will submit to the jurisdiction of the appropriate English court.  This Court may reassert jurisdiction upon timely notification if the courts of England refuse to accept jurisdiction for reasons other than Plaintiffs' failure to comply with the procedural requirements of English courts.  The Court retains jurisdiction to supervise the terms of this dismissal.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 15th day of September, 2011.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE