# Exhibit J

```
                                                                    1

 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2

 3   IN RE:  OIL SPILL      )   MDL NO. 2179
     BY THE OIL RIG         )
 4   "DEEPWATER HORIZON" IN )   SECTION "J"
     THE GULF OF MEXICO, ON )
 5   APRIL 20, 2010         )   JUDGE BARBIER
                            )   MAG. JUDGE SHUSHAN
 6

 7

 8

 9

10

11

12

13

14

15

16

17               ****************
                     VOLUME 1
18               ****************

19

20            Deposition of ANDREW GEORGE
21   INGLIS, taken at Kirkland & Ellis
22   International, 30 St. Mary Axe, 22nd Floor,
23   London EC3A 8AF, England, United Kingdom, on
24   the 21st day of July, 2011.
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**

```
 1  by late changes to well design and
 2  procedures.
 3           Do you agree with that?
 4      A.   Again, on the basis of what I
 5  read in the -- in the -- in the Bly Report,
 6  one of the recommendations was around the
 7  management of change process.
 8      Q.   All right.  And so based on what
 9  you read in the Bly Report, you agree with
10  that, correct?
11      A.   Within that context.
12      Q.   All right.  And then going on,
13  quote, BP did not have adequate controls in
14  place to ensure that key decisions in the
15  months leading up to the blowout were safe or
16  sound from an engineering perspective.
17           Do you -- do you agree with
18  that?
19      A.   No, not quite.
20      Q.   And -- and what about it don't
21  you agree?
22      A.   Is that BP had a -- an OMS in
23  place which sets out the processes and
24  procedures that we followed.  It had a local
25  OMS which covered the -- the drilling
```

```
 1  practices.  Within that there is a -- a DWOPs
 2  and beyond the -- the best procedures.  So
 3  there were procedures and processes in place.
 4       Q.    Is it your testimony,
 5  Mr. Inglis, that OMS applied to the Deepwater
 6  Horizon drilling operation at Macondo?
 7       A.    OMS did apply, yes.
 8       Q.    I'm sorry?
 9       A.    Yes, it did apply.
10       Q.    All right.  If there has been
11  testimony from other witnesses that OMS did
12  not apply to this operation, you would
13  disagree with that?
14       A.    I would disagree with that.
15       Q.    And if, however, the other
16  testimony that OMS did not apply to this
17  drilling operation, would you agree that it
18  should have?
19       MR. NEAL:  Object to the -- object to
20  the form of that question.
21       A.    Yeah, my belief is that OMS
22  applies.  There was an OMS at the group
23  level.  There was a local OMS.  The local OMS
24  had been implemented for -- for the drilling
25  operations in the deepwater Gulf of Mexico,
```

**PURSUANT TO CONFIDENTIALITY ORDER**

```
         1   and, therefore, under that local OMS it
         2   applied.
         3         Q.    (BY MR. DEGRAVELLES)  Again, my
         4   question is a different one because there's
12:16    5   been varying testimony on this point.
         6         A.    Uh-huh.
         7         Q.    Is it -- if -- if OMS was not
         8   applicable -- I say "not applicable."  If OMS
         9   was not applied to this drilling operation,
12:16   10   shouldn't it have been?
        11         A.    Again, you know, I've given you
        12   the answer to the question is, it is my
        13   belief that the OMS was implemented in the
        14   Gulf of Mexico for drilling.  There was a
12:16   15   drilling LOMS that had been signed off and
        16   approved in the back end of -- of 2009 -- and
        17   then -- and the -- the scope of that LOMS
        18   covered all drilling in the Gulf of Mexico.
        19         Q.    Okay.  I'm asking you a
12:17   20   hypothetical question.
        21         A.    And I've given you a -- what I
        22   believe is -- is an actual direct answer.
        23         Q.    No, I'm asking you to assume
        24   hypothetically that your testimony and your
12:17   25   belief is incorrect and that, in fact, OMS
```

**PURSUANT TO CONFIDENTIALITY ORDER**

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       |  1 | was not applied to this operation.  If that              |
|       |  2 | turns out to be true, would you agree with me            |
|       |  3 | that in your opinion -- opinion, OMS should              |
|       |  4 | have applied to this drilling operation?                 |
| 12:17 |  5 |         MR. GODFREY:  Objection to form.                 |
|       |  6 |         MR. NEAL:  Objection; form.                      |
|       |  7 |         Q.    (BY MR. DEGRAVELLES)  Do you               |
|       |  8 | understand my question?                                  |
|       |  9 |         A.    I do.  I do understand it.  I'd            |
| 12:17 | 10 | have to in a -- I have to understand the                 |
|       | 11 | circumstances of why it wasn't being applied.            |
|       | 12 | My belief deeply is that it had -- that --               |
|       | 13 | that the OMS -- the group level existed, the             |
|       | 14 | OMS -- the Gulf of Mexico existed, that there            |
| 12:17 | 15 | was a local OMS covering the drilling and                |
|       | 16 | completions activity, that had been signed               |
|       | 17 | off, then implemented at the back end of                 |
|       | 18 | 2009, and, therefore, it was applicable.                 |
|       | 19 |         Q.    Okay.  And there's no reason               |
| 12:18 | 20 | that you know of that OMS should not have                |
|       | 21 | applied to this deep -- this Deepwater                   |
|       | 22 | Horizon drilling?                                        |
|       | 23 |         A.    There wasn't any, any reason,              |
|       | 24 | no.                                                      |
| 12:18 | 25 |         Q.    Okay.  And then the nat- --                |

**PURSUANT TO CONFIDENTIALITY ORDER**

```
         1   we're back to the -- the National Commission
         2   report, and I'm reading the next sentence:
         3   While initial well design decisions undergo a
         4   serious peer-review process -- process and
12:18    5   changes to well design are subsequently
         6   subject to a management of change (MOC)
         7   process, changes to drilling procedures in
         8   the weeks and days before the implementation
         9   are typically not subject to any such peer --
12:18   10   I'm sorry, peer-review or MOC process.
        11              Do you agree with that?
        12        A.    That's not something that I've
        13   actually seen the detail of, so I'm -- I
        14   can't comment on that.  I don't know
12:19   15   whether -- I do know there was -- the --
        16   the -- the risks were identified as part of
        17   documentation that the -- that I saw, which
        18   is the FM that I signed.
        19              But in terms of the detail of --
12:19   20   of what happened in terms of peer review
        21   or -- or MOC, I haven't seen that.
        22        Q.    And then the final sentence --
        23   not the final -- second-to-last sentence of
        24   that paragraph, quote, At Macondo such
12:19   25   decisions appear to have been made by the
```

**PURSUANT TO CONFIDENTIALITY ORDER**

```
 1  THE STATE OF LOUISIANA :
    PARISH    OF   ORLEANS :
 2
    I, PHYLLIS WALTZ, a Certified Court Reporter,
 3  Registered Professional Reporter, and
    Certified Realtime Reporter in and for the
 4  State of Louisiana, do hereby certify that
    the facts as stated by me in the caption
 5  hereto are true; that the above and foregoing
    answers of the witness, ANDREW GEORGE INGLIS,
 6  to the interrogatories as indicated were made
    before me by the said witness after being
 7  first duly sworn to testify the truth, and
    same were reduced to typewriting under my
 8  direction; that the above and foregoing
    deposition as set forth in typewriting is a
 9  full, true, and correct transcript of the
    proceedings had at the time of taking of said
10  deposition.
11  I further certify that I am not, in any
    capacity, a regular employee of the party in
12  whose behalf this deposition is taken, nor in
    the regular employ of his attorney; and I
13  certify that I am not interested in the
    cause, nor of kin or counsel to either of the
14  parties.
15  GIVEN UNDER MY HAND AND SEAL OF OFFICE, on
    this, the  2ND  day of JULY, 2011.
16
17
18                    _____
                      PHYLLIS WALTZ, RPR, CRR
19                    TEXAS CSR NO. 6813
                      Expiration Date:  12/31/11
20                    LOUISIANA CCR NO. 2011010
                      Expiration Date:  12/31/11
21
22  Worldwide Court Reporters, Inc.
    Firm Certification No. 223
23  3000 Weslayan, Suite 235
    Houston, Texas  77027
24  (713) 572-2000
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2
 3   IN RE:  OIL SPILL       )   MDL NO. 2179
     BY THE OIL RIG          )
 4   "DEEPWATER HORIZON" IN  )   SECTION "J"
     THE GULF OF MEXICO, ON  )
 5   APRIL 20, 2010          )   JUDGE BARBIER
                             )   MAG. JUDGE SHUSHAN
 6
 7
 8
 9
10
11
12
13
14
15
16
17            ****************
                   VOLUME 2
18            ****************
19
20          Deposition of ANDREW GEORGE
21   INGLIS, taken at Kirkland & Ellis
22   International, 30 St. Mary Axe, 22nd Floor,
23   London EC3A 8AF, England, United Kingdom, on
24   the 22nd day of July, 2011.
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**

|   |   |   |
|---|---|---|
| | 1 | Q. It was marked as an exhibit this |
| | 2 | way, so all I can tell you is it is what it |
| | 3 | is. |
| | 4 | A. I'll just look at it. |
| 01:09 | 5 | Q. Let me just ask you a question |
| | 6 | before you go any further in the document, |
| | 7 | just as a general matter. |
| | 8 | A. Uh-huh. |
| | 9 | Q. Did you have any discussions |
| 01:09 | 10 | with Ms. Yilmaz in 2008 regarding the need to |
| | 11 | require a set of deliverables from rig |
| | 12 | contractors to assure that they conform to |
| | 13 | the integrity management standard of BP? |
| | 14 | A. Just to be precise, say that |
| 01:09 | 15 | again. |
| | 16 | Q. Did you have a discussion with |
| | 17 | Ms. Yilmaz in 2008 as to whether you |
| | 18 | needed -- BP needed to require a set of |
| | 19 | deliverables that would provide assurances on |
| 01:10 | 20 | rig contractors' conformance to BP's IM |
| | 21 | standards? |
| | 22 | A. I can't remember having a |
| | 23 | specific conversation around that, that |
| | 24 | issue. |
| 01:10 | 25 | Q. Okay. Do you recall in 2009 |

**PURSUANT TO CONFIDENTIALITY ORDER**

1 ever having a specific conversation with her
2 about the need to have a set of deliverables
3 so that BP could ensure that its IM standards
4 were being implemented on contractors' rigs?
5     A.    I can't -- I can't recall a
6 specific conversation around that. It would
7 have been through the implementation of -- of
8 OMS that you would actually do that. You
9 would take the -- as we've discussed over the
10 last two days, the segment level OMS, that
11 sets the expectations, the SPU level OMS,
12 then the local LOMS; and then within that
13 there would be the set of tools that would
14 apply.
15     Q.    Okay.
16     A.    So if there was a requirement
17 for bridging standard to the IM standard,
18 that would be outlined in that.
19     So I don't think, you know, say,
20 in that time frame of 2008 to 2009 it was
21 very much directing this at the
22 implementation of OMS.
23     Q.    Let me ask you a question. If
24 you could just close that for a minute,
25 because I feel like it's distracting a

**PURSUANT TO CONFIDENTIALITY ORDER**

```
      1  little.  I'm not going to ask you about the
      2  time.
      3       A.    You shouldn't have given it to
      4  me, then.
01:11 5       Q.    Apparently.  I didn't realize it
      6  was so fascinating.
      7             Who -- if a bridging contract
      8  says that the contractor's rig -- the
      9  contractor's safety management system will
01:11 10 apply, but that BP will compare it to OMS and
     11  fill any gaps as necessary, you understand
     12  that?
     13       A.    Yeah, I don't think it's fill
     14  any gaps as necessary.  What you want to
01:11 15 do --
     16       Q.    Supplement?
     17       A.    No, what you want to do is make
     18  sure there's conformance with it.
     19       Q.    And if there isn't conformance
01:12 20 with it, what do you do?
     21       A.    You would find a way of ensuring
     22  that, you know, one system applies, which
     23  would be in general the approach would be
     24  that the contractor's safety management
01:12 25 system applies and then you would look to
```

**PURSUANT TO CONFIDENTIALITY ORDER**

```
 1  make sure that it's bridged to the BP process
 2  and if there are areas where there needs to
 3  be a -- a supplementary approach applied, you
 4  identify those.
 5       Q.    Okay.  How does one go about --
 6  how does BP go about identifying the
 7  supplementary approach when it finds that
 8  there are areas that need additional safety
 9  management procedures on a contractor's rig?
10       A.    Well, it would go through the
11  process.  It would take the contractor's SMS,
12  compare it to the requirements for -- for
13  OMS, and it would look to create that
14  bridging document.
15       Q.    All right, okay.
16       A.    So there were expectations.
17       Q.    Who was responsible for making
18  that comparison?
19       A.    Yeah, that would be done in
20  the -- in the drilling -- in the -- in -- in
21  the drilling organization, under the BP
22  drilling and completions.
23       Q.    Who was ultimately responsible
24  for making sure that that comparison was
25  made?
```

**PURSUANT TO CONFIDENTIALITY ORDER**

```
         1      A.    As I said, it would be in each
         2   of the SPUs around the world it would be the
         3   VP of drilling and operations, and then
         4   underneath him there would be people who
01:13    5   would be accountable for the individual rigs.
         6      Q.    Okay.  So the VP of drilling and
         7   completions is responsible for ensuring that
         8   this comparison that you just testified about
         9   of --
01:13   10      A.    Yeah, what I'm just -- let's go
        11   back to --
        12      Q.    Well, can I finish my question?
        13      A.    I'm sorry.
        14      Q.    I just want to confirm that the
01:13   15   VP -- in the Gulf of Mexico for drilling and
        16   completions the vice president for D&C is
        17   respon- -- is ultimately responsible for
        18   ensuring that the comparison of the safety
        19   management systems is completed and that if
01:14   20   there are any supplementary procedures, that
        21   those be filled in on the rig?
        22          MR. NEAL:  Object to the form.
        23          MR. GODFREY:  Object to form.
        24          MR. NEAL:  Go ahead.
01:14   25      A.    The -- as we discussed, the
```

**PURSUANT TO CONFIDENTIALITY ORDER**

```
 1  operating management system that BP had in
 2  place is based around an OMS going to an SPU
 3  OMS --
 4      Q.   (BY MS. HERTZ)  I understand all
 5  that.
 6      MR. NEAL:  Please don't interrupt.
 7      A.   Let me -- I would like to be
 8  able to finish answering the question.  Which
 9  then goes to the local OMS.  The D&C for --
10  for OMS, the person accountable for
11  operations and conformance -- and conformance
12  with the LOMS is the BP drilling and
13  completions.
14      Q.   (BY MS. HERTZ)  Okay.  So the
15  person responsible for conformance of a
16  contractor's SMS --
17      A.   No, what I said was the
18  person -- the individual that's accountable
19  for conformance with the LOMS is the --
20      Q.   Right.
21      A.   -- is the VP drilling and
22  completions.
23      Q.   And is he also responsible for
24  the --
25      A.   That's -- that's part -- as part
```

**PURSUANT TO CONFIDENTIALITY ORDER**

```
 1  THE STATE OF LOUISIANA :
    PARISH    OF   ORLEANS :
 2
    I, PHYLLIS WALTZ, a Certified Court Reporter,
 3  Registered Professional Reporter, and
    Certified Realtime Reporter in and for the
 4  State of Louisiana, do hereby certify that
    the facts as stated by me in the caption
 5  hereto are true; that the above and foregoing
    answers of the witness, ANDREW GEORGE INGLIS,
 6  to the interrogatories as indicated were made
    before me by the said witness after being
 7  first duly sworn to testify the truth, and
    same were reduced to typewriting under my
 8  direction; that the above and foregoing
    deposition as set forth in typewriting is a
 9  full, true, and correct transcript of the
    proceedings had at the time of taking of said
10  deposition.
11  I further certify that I am not, in any
    capacity, a regular employee of the party in
12  whose behalf this deposition is taken, nor in
    the regular employ of his attorney; and I
13  certify that I am not interested in the
    cause, nor of kin or counsel to either of the
14  parties.
15  GIVEN UNDER MY HAND AND SEAL OF OFFICE, on
    this, the 23RD day of JULY, 2011.
16
17
18                      _____
                        PHYLLIS WALTZ, RPR, CRR
19                      TEXAS CSR NO. 6813
                        Expiration Date:  12/31/11
20                      LOUISIANA CCR NO. 2011010
                        Expiration Date:  12/31/11
21
22  Worldwide Court Reporters, Inc.
    Firm Certification No. 223
23  3000 Weslayan, Suite 235
    Houston, Texas  77027
24  (713) 572-2000
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**