PORTIONS OF THIS DOCUMENT
CONTAIN CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: BP p.l.c. SECURITIES LITIGATION | **Civil Action No. 4:10-md-2185** |
| In re: BP ERISA LITIGATION | **Civil Action No. 4:10-cv-4214** <br><br> **Honorable Keith P. Ellison** |

## ERISA PLAINTIFFS' REPLY IN SUPPORT OF MOTION
## FOR LEAVE TO FILE AMENDED COMPLAINT AND REPLY TO DEFENDANTS'
## NOTICE OF SUPPLEMENTAL AUTHORITIES

PORTIONS OF THIS DOCUMENT
CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.      INTRODUCTION ................................................................................................... 1

II.     PLAINTIFFS' REQUEST TO AMEND IS NOT UNTIMELY,
        UNSPECIFIC OR PREJUDICIAL TO DEFENDANTS .................................................. 2

        A. Plaintiffs Adequately Set Forth The Grounds For the
           Amendment ................................................................................................... 2

        B. Plaintiffs Have Pursued The Amendment With Requisite
           Diligence ...................................................................................................... 2

        C. Defendants Will Not Be Prejudiced If Plaintiffs' Motion
           Were Granted ................................................................................................ 3

III.    THE REQUESTED AMENDMENT IS NOT FUTILE ................................................. 4

        A. Plaintiffs Propose Additional Factual Allegations To
           Support Their Prudence/Loyalty Claim ...................................................... 4

           1. Plaintiffs Propose Additional Facts To Support Their
              Allegation That The Scope And Gravity Of The
              Accident Was Unknown ......................................................................... 4

              a. Additional Allegations Regarding Defendant
                 Anthony Hayward ............................................................................ 4

              b. Additional Allegations Regarding Defendant
                 Lamar McKay ................................................................................. 5

              c. Additional Allegations Regarding Defendant
                 James Dupree ................................................................................. 6

              d. Additional Allegations Regarding Defendant
                 Neil Shaw ...................................................................................... 8

           2. Other New Proposed Allegations ........................................................... 9

              a. BP Covered Up A Blow-Out Two Years Prior
                 To The *Deepwater Horizon* Disaster .............................................. 9

              b. BP Misled The Public Regarding The Gravity of The
                 *Deepwater Horizon* Spill and Its Inability To Limit Damages ........... 9

PORTIONS OF THIS DOCUMENT
CONTAIN CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

3. Additional Facts Regarding The Company's Financial
Viability ............................................................................................................10

a. Why BP's Poor Response To The *Horizon* Spill
Could Not Have Been Anticipated By The Participants.................................10

b. BP's Financial Status After The Spill .................................................................11

B. The Amendment Of Plaintiffs' Non-Disclosure Claim
Would Not Be Futile..................................................................................................12

IV. DEFENDANTS' SUPPLEMENTAL AUTHORITIES EITHER
SUPPORT PLAINTIFFS' POSITION OR ARE NEUTRAL............................................14

V. CONCLUSION……………………………………………………………………..…15

PORTIONS OF THIS DOCUMENT
ARE CONFIDENTIAL
REDACTED PURSUANT TO PROTECTIVE ORDER

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001) ................................................................. 4

*Davis v. United States*, 961 F.2d 53 (5th Cir. 1991) ....................................................... 3

*Fisher v. JP Morgan Chase & Co.*, No. 10-1303-cv, 2012 U.S. App. LEXIS 9288 (2d Cir. May 8, 2012) .......................................................... 14

*Jackler v. Byrne*, 658 F.3d 225 (2d Cir. 2011) ............................................................... 14

*Kahng v. City of Houston,* 485 F. Supp. 2d 787 (S.D. Tex. 2007) .................................... 2

*Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008)................................. 14

*Lanfear v. Home Depot, Inc.*, No. 10-13002, 2012 U.S. App. LEXIS 9321 (11th Cir. May 8, 2012) .......................................................... 14

*Lozano v. Ocwen Federal Bank*, 489 F.3d 636 (5th Cir. 2007)....................................... 3

*Smith v. EMC Corp.*, 393 F.3d 590 (5th Cir. 2004)........................................................ 3

*Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162 (5th Cir. 1997) ....................... 2

*Spotts v. U.S.*, 613 F.3d 559 (5th Cir. 2010).................................................................. 1

*United States ex rel. Doe v. Dow Chemical Co.*, 343 F.3d 325 (5th Cir. 2003)...................... 2

*United States ex rel. Willard v. Humana Health Plans of Texas, Inc.*, 336 F.3d 375 (5th Cir. 2003) .......................................................... 1

*Zaidi v. Ehrlich,* 732 F.2d 1218 (5th Cir. 1984) ............................................................. 2

*Whitaker v. City of Houston*, 963 F.2d 831 (5th Cir. 1992)............................................. 2

## <u>Federal Statutes, Regulations And Rules</u>

FED. R. CIV. P. 12(b)(6)................................................................................................13

FED. R. CIV. P. 15(a) ....................................................................................................1

## <u>Other</u>

ERISA § 404(a)(1)(B)..................................................................................................11

PORTIONS OF THIS DOCUMENT
CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

## I.  INTRODUCTION

Plaintiffs' motion to amend complies with Fed. R. Civ. P. 15(a) and Fifth Circuit jurisprudence.  The Court should reject Defendants' effort to impose burdens beyond the rules of civil procedure and their unsupported claims of prejudice or lack of diligence.   Moreover Plaintiffs' motion is not futile.[1]  Discovery in MDL 2179 and recent events establish that at least four important fiduciary Defendants and high-level BP officers (Hayward, McKay, Shaw, and Dupree) were or should have been aware of non-public information that made it imprudent to continue to invest in the inflated BP Stock Fund or to hold 1/3 of the BP Plan's $9 billion in the BP Stock Fund during a time when BP was failing to fulfill its promises to implement critical safety measures in the Gulf of Mexico.  In addition, Plaintiffs will further substantiate their "dire circumstances" allegations show that in June 2010, as oil gushed uncontrollably into the Gulf and BP misrepresented the true extent of the catastrophe, influential and credible government officials and financial experts and senior officers of BP called into question the continuing viability of BP, meeting the "dire circumstances" test.

With respect to the disclosure claims, Plaintiffs will plead additional facts to show that they were "encouraged to review or rely on allegedly misleading SEC filings" as required by the March 30 Order.  Finally, Defendants' supplemental authorities suggest another way Defendants could have exercised their discretion to protect Plan Participants by adjusting the BP Stock Fund's cash buffer.  Because there were no mandates or suggestions of the liquidity amount within the BP Stock Fund, Defendants would be entitled to, at most, a weaker presumption than was previously applied.

---

[1]  The standard of review for a decision granting or denying leave to amend is abuse of discretion.  *United States ex rel. Willard v. Humana Health Plans of Texas, Inc.*, 336 F.3d 375, 379, 398 (5th Cir. 2003).  However, the Fifth Circuit applies a *de novo* standard of review to a post-dismissal decision to deny leave to amend based solely on futility.  *Spotts v. U.S.*, 613 F.3d 559, 566 (5th Cir. 2010).

PORTIONS OF THIS DOCUMENT
CONTAIN CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

## II.  PLAINTIFFS' REQUEST TO AMEND IS NOT UNTIMELY, UNSPECIFIC OR PREJUDICIAL TO DEFENDANTS

### A.  Plaintiffs Adequately Set Forth The Grounds For The Amendment

Contrary to Defendants' suggestion, the Fifth Circuit does not require that a proposed amended complaint be submitted with a motion for leave. *Zaidi v. Ehrlich,* 732 F.2d 1218, 1220 (5th Cir. 1984) (determining that motion with description of proposed amendments supported leave to amend).[2]  In the Fifth Circuit, the substance of the proposed amendments may properly be set out in the motion for leave:  "[T]he party requesting amendment, even absent a formal motion, need only 'set forth with particularity the grounds for amendment and the relief sought.'"  *United States ex rel. Doe v. Dow Chemical Co.*, 343 F.3d 325, 330 (5th Cir. 2003) (citation omitted).  The Fifth Circuit's standard makes sense in the context of this case because  it is more efficient for the parties, and easier for the Court, to evaluate the proposed amendments by reviewing their substance in the motion for leave, rather than requiring preparation and submission of a lengthy complaint.  Should the Court grant leave, the Plaintiffs intend to file an amended complaint within thirty days.

### B.  Plaintiffs Have Pursued The Amendment With Requisite Diligence

Plaintiffs continue to review and incorporate relevant discovery from MDL 2179 and new facts that only recently have come to light.  Discovery in MDL 2179 has proceeded on issues of personal injury and property damage, not the Plaintiffs' ERISA claims.   While the facts

---

[2]    The authorities cited by Defendants do not suggest a different result.  *See Dow Chemical,* 343 F.3d at 331 (motion stating only that "[i]n the event that the dismissal is denied, plaintiff requests leave of Court to file amended pleadings adding additional plaintiffs and facts as allowed by law" not sufficiently particular to support leave to amend); *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (plaintiff's perfunctory response to motion to dismiss and request to amend complaint not sufficient to support leave to amend); *Kahng v. City of Houston,* 485 F. Supp. 2d 787, 793 (S.D. Tex. 2007) (leave to amend properly denied to plaintiff who merely asked for leave to amend, without taking opportunity to amend as matter of right, attaching amended complaint, or setting out additional facts).  The court in *Whitaker v. City of Houston*, 963 F.2d 831, 836-37 (5th Cir. 1992), cited by Defendants, ultimately ruled that the district court did not abuse its discretion in finding that the plaintiff acted too late to amend his complaint.  The decision, however, was simply a determination that the district court did not abuse its discretion in denying leave to amend based on specific, stated facts that do not apply this case.

PORTIONS OF THIS DOCUMENT
CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

discovered in MDL 2179 will support Plaintiffs' proposed amended complaint, the issues covered by the discovery, and the sheer number of depositions and documents involved in that discovery, do not present the straightforward application to the ERISA claims that the Defendants imply.

Furthermore, relevant information has not been revealed in one fell swoop. As Defendants note, depositions in MDL 2179 took place over the course of several months. New information on the explosion, BP's knowledge of safety issues, and BP employees' efforts to hide facts (such as the recent indictment of BP employee Kurt Mix) is reported gradually, as it becomes known. This flow of information has given the Plaintiffs - and the public - an accumulating base of knowledge from which to understand the events surrounding the Defendants' actions. Seeking piecemeal amendments as new facts are revealed is not only cumbersome; it is not required by the rules. The Plaintiffs' efforts to utilize this evolving body of knowledge to present in an amended complaint demonstrate diligence, not the lack thereof.[3]

## C.  Defendants Will Not Be Prejudiced If Plaintiffs' Motion Were Granted

In light of the Fifth Circuit's directive that leave to amend should be freely given, as well as the early stage of this case and the new facts being brought to light on the *Deepwater Horizon* explosion, Defendants cannot be prejudiced by an amendment.[4] Here, there has been little substantive ERISA discovery, and the case has not proceeded to the point where the parties are readying for trial. The mere passage of time in litigation, without other evidence of prejudice to

---

[3]  *Lozano v. Ocwen Federal Bank*, 489 F.3d 636 (5th Cir. 2007), which Defendants cite in support of their arguments of lack of diligence, is readily distinguishable because the district court already had allowed the plaintiffs two opportunities to supplement their complaint. *See* 489 F.3d at 644.

[4]  An amendment has been held to prejudice the defendant when, for example, the amendment would have required joinder of additional parties, s*ee Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991), or the amendment would require the defendant "to reopen discovery and prepare a defense for a claim different from the [one] ... that was before the court." *Smith v. EMC Corp*., 393 F.3d 590, 595 (5th Cir. 2004) (citation omitted).

PORTIONS OF THIS DOCUMENT
CONTAIN CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

the defendants or improper tactics of the plaintiffs, is insufficient to deny leave to amend. *Bryant v. Dupree*, 252 F.3d 1161, 1164-65 (11th Cir. 2001).

## III.  THE REQUESTED AMENDMENT IS NOT FUTILE

### A.  Plaintiffs Propose Additional Factual Allegations To Support Their Prudence/Loyalty Claim

### 1.  Plaintiffs Propose Additional Facts To Support Their Allegation That The Scope And Gravity Of The Accident Was Unknown To Plan Participants

The MDL 2179 depositions of certain ERISA fiduciary Defendants (taken after the Consolidated Complaint was filed) -- Hayward, McKay, Dupree, and Shaw -- demonstrate that they had or should have had access to non-public information that was critical to Plan Participants and show they were on notice of the impending threat to Plan assets due to the systemic failure of BP's safety controls.

#### a)  Additional Allegations Regarding Defendant Anthony Hayward

Defendant Hayward **REDACTED**

---

[5]  The Exhibits referenced in this reply are included with the Declaration of Ronald S. Kravitz filed herewith.

PORTIONS OF THIS DOCUMENT
CONTAIN CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

REDACTED



Hayward's testimony establishes that he knew of, but ignored, important

warnings concerning lax safety standards at BP.  For example, Hayward testified:

- REDACTED

- REDACTED

- REDACTED

- REDACTED

- REDACTED

- REDACTED

- REDACTED

**b)  Additional Allegations Regarding Defendant Lamar McKay**

McKay, a SPIOC member and the Appointing Officer, REDACTED

PORTIONS OF THIS DOCUMENT
CONTAIN CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

**REDACTED**

- **REDACTED**

- **REDACTED**

- **REDACTED**

c) **Additional Allegations Regarding Defendant James Dupree**

Dupree, a SPIOC member, was the Strategic Performance Unit Leader ("SPU") of BP's Gulf of Mexico division and intimately familiar with BP's safety lapses and inability to handle the *Deepwater Horizon* spill.  Dupree testified:

- **REDACTED**

- **REDACTED**

PORTIONS OF THIS DOCUMENT
CONTAIN CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

REDACTED

- REDACTED

- REDACTED

- REDACTED

- REDACTED

- REDACTED

- REDACTED

- REDACTED

PORTIONS OF THIS DOCUMENT
CONTAIN CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

**d)  Additional Allegations Regarding Defendant Neil Shaw**

> **REDACTED**

- **REDACTED**

- **REDACTED**

- **REDACTED**

- **REDACTED**

- **REDACTED**

---

[6]  He was the leader of the containment and disposal project after the *Deepwater Horizon* disaster.  *Id*. at 256:1-15.

PORTIONS OF THIS DOCUMENT
CONTAIN CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

## 2. Other New Proposed Allegations

### a) BP Covered Up A Blow-Out Two Years Prior to the *Deepwater Horizon* Disaster

In April 2012, the public learned for the first time that BP actively concealed from regulators and the public that the same dangerous, cost-cutting procedures that led to the Gulf oil spill caused a September 2008 oil spill in the Caspian Sea off the coast of Azerbaijan. "One cause of the blow-outs was the same in both cases: the use of a money-saving technique— plugging holes with 'quick-dry' cement. By hiding the disastrous failure of its penny-pinching cement process in 2008, BP was able to continue to use the dangerous methods in the Gulf of Mexico—causing the worst oil spill in U.S. history." Exhibit 7 (EcoWatch.org, 4/19/2012, "BP Covered up Blow-out Two Years Prior to Deadly *Deepwater Horizon* Spill"). According to confidential informants and a secret cable uncovered by Wikileaks, BP and other oil companies colluded to cover-up the Caspian Sea incident. *Id.*

### b) BP Misled The Public Regarding The Gravity Of The *Deepwater Horizon* Spill And Its Inability To Limit The Damages

New facts recently came to light supporting the allegations that BP misled the public regarding the calculation of the amount of oil released from the Macondo well. *See* Consolidated Complaint ¶¶ 312-22. The correct calculation was important not only to assess the environmental impact (resources and responses needed), but also to determine the amount of the fine to be paid by the offending parties (namely BP), who would be paying by the barrel. On May 12, 2012, a BP Drilling and Completions Project Engineer, Kurt Mix, was indicted for deleting numerous electronic records relating to the *Deepwater Horizon* disaster, including records concerning the amount of oil potentially flowing from the Macondo well. He deleted this sensitive information after being repeatedly informed of his obligation to maintain such records. According to an affidavit by FBI Special Agent Barbara O' Donnell, "the recovered information Mix deleted

PORTIONS OF THIS DOCUMENT
CONTAINS CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

includes real-time flow-rate analysis during the Top Kill operation indicating that Top Kill was not working, contrary to BP's public statements at the time." Exhibit 8 (O'Donnell Affidavit ¶ 6). Mix sent a text message on April 29, 2010 that provided an estimated range of between 1,000 and *146,000 barrels* of oil per day. *Id*. at ¶ 11. At that time and for many weeks after, BP consistently told the public that it estimated only approximately 5,000 barrels per day were leaking from the Macondo well. *Id*. at ¶ 12.

### 3. Additional Facts Regarding The Company's Financial Viability

The amended complaint will include additional facts showing that BP's ongoing viability was threatened following the *Deepwater Horizon* tragedy, including 1) BP's process safety deficits and its inability to properly respond to the spill and how Plan Participants could not evaluate the risk of holding BP stock; and 2) credible concerns that the spill could result in BP's bankruptcy and that shareholders should consider selling their BP stock; and 3) the devastating effect the spill had on the Company's market capitalization.

### a) Why BP's Poor Response To The *Horizon* Spill Could Not Have Been Anticipated By The Participants

While drilling for oil is a risky business, BP had not devised a proper recovery plan to stop a leak that occurred on the ocean floor, transforming the Gulf spill from a horrible accident similar to ones that had occurred many times in the history of the industry into one of the world's greatest environmental disasters that threatened the entire Gulf of Mexico. Plaintiffs will add the following showing that Plan Participants could not have anticipated such a risk:

- Hayward admitted that the Company had no ability to stop the flow of oil a mile below the water's surface. On November 8, 2010, he told the BBC that the Company's emergency response plans were being made up "day to day." Exhibit 9.

- On May 4, 2012, *The Huffington Post* reported in an article entitled "Ex-BP CEO Chooses Sea Protection Forum to Talk About Spill" that Defendant Hayward

PORTIONS OF THIS DOCUMENT
HAVE BEEN FILED UNDER SEAL AND
REDACTED PURSUANT TO PROTECTIVE ORDER

admitted that "[w]e had no equipment to contain and stop the oil on the seabed… No such equipment existed.  We found ourselves having to design and build it -- improvising, as it were, on prime-time television."  Exhibit 10.

These facts demonstrate that while Plan Participants might have been aware of the risky nature of BP's business, they were unaware that the risk they faced was investing in a business that did not mitigate safety risks in an appropriate manner after repeatedly promising to do so.

## b)  BP's Financial Status After the Spill

To evaluate whether "dire circumstances" existed at BP, the Court should consider only the circumstances prevailing during the Class Period.  *See* ERISA § 404(a)(1)(B) (Defendants had a duty "to discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence ***under the circumstances then prevailing*** . . .") (emphasis added).  Plaintiffs propose to amend the complaint by adding the following facts establishing that government officials, members of the financial industry, and BP's senior executives believed the spill threatened BP's ability to remain in business:

- On June 12, 2010, *The News Star* in Monroe, Louisiana reported that Louisiana State Treasurer John Kennedy cautioned Governor Bobby Jindal that BP did not appear to have enough assets to cover its liabilities:  "I am concerned about the solvency of BP," Kennedy said, and worried that "BP will seek protection of United States bankruptcy laws."  Exhibit 11.

- According to a June 29, 2010 article entitled "Double Dip-Fear Winners: BP, AstraZeneca" in *TheStreet.com*, the Federal Reserve Bank began "an investigation of major financial firms to make sure that a BP failure would not sink the market."  Exhibit 12.

- On June 15, 2012, *The New York Times* blog entitled "DealBook" reported that a high-level executive at Bank of America ordered its traders "not to enter into oil trades with BP that extend beyond a year from now."  Exhibit 13.

- On June 15, 2010, a *Forbes* article entitled "British Stock Analyst Utters Unthinkable: Sell BP" reported that Stephen Pope, a London-based Cantor Fitzgerald analyst, put a sell recommendation on BP on June 14, 2010:  "One of

PORTIONS OF THIS DOCUMENT
CONTAIN CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

the reasons Pope is so bearish is that the costs of the spill are continually escalating and so are the bearish bets against BP.  Pope says options to sell BP's American Depository Receipts recorded the largest increase in open interest of any contract that has traded in the past two weeks.  By buying put options, contracts that give the holder the right to sell a specific amount of an underlying security to the writer of the option at a specified strike price, investors are wagering BP's stock will fall further."  "In the options market, the puts are saying people have a high level of fear," says Pope.  He adds, adding the impolite B-word, "There's a huge sense BP could be heading towards bankruptcy."  Exhibit 14.

- On June 25, 2010, the day after the end of the Class Period, Market Watch reported that the hit to BP's market capitalization was a staggering $102 billion.  Exhibit 15.

Notably, even Hayward and Dudley believed BP was at the brink of a financial crisis:

- On November 17, 2010, in a *cbs.com* article entitled: "Hayward: BP Unprepared for Media After Oil Spill," CBS reported that Hayward had stated that during the spill crisis "We were not able to borrow in the capital markets, either short or medium term debt at all . . . It was a classic financial crisis issue."  The article also quoted Bob Dudley as stating: "'[T]hese were frightening days for BP… With a company the size of BP, its reputation, what it does - you almost can't quite believe how close you are' to financial disaster, he said."  Exhibit 16.

## B.  The Amendment Of Plaintiffs' Non-Disclosure Claim Would Not Be Futile

The Investment Options Guide ("IOG") and the undated document entitled "Your Guide to NetBenefits[,]"[7] (Exs. 17 - 18) show that Plaintiffs can plead a claim consistent with the portion of the Court's March 30 Order that held that "[i]n order to adequately allege that misrepresentations made in SEC filings are incorporated into plan documents, a plaintiff must point to plan documents that 'encouraged them to review or rely on allegedly misleading SEC filings.'"  March 30 Order at 39.   While the documents here are not identical to those in *Dynegy*,

---

[7]  *Available at* http://hr.bpglobal.com/LifeBenefits/Assets/Documents/n/NetBen_WebFNL.aspx. Metadata for this file show that it was created on January 22, 2007 at 6:02:08 pm (screen capture is Ex. 19).

PORTIONS OF THIS DOCUMENT
CONTAIN CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

in which "'each participant [was] encouraged to carefully review' the SEC filings" (March 30

Order at 39), Plaintiffs can plead analogous facts,[8] including that:

- In the IOG, Participants were "**encouraged** to seek out **all the information available** to help you make your investment decisions" and told that information about all Plan investment options was available through the Plan's website. Ex. 17 (Document 92-2, p. 8 of 18). This information directly followed generic warnings of the risk of investing in the BP Stock Fund. *Id.* Later in the same IOG, Participants were advised that additional information about BP ADSs (which is necessarily included within "all information available") was available through stock exchange filings. *Id.* (Document 92-6, p. 8 of 13). Indeed, on the prior page, Participants were instructed that they could access BP's SEC filings at the SEC's website, and given the SEC's webpage and that those SEC filings were incorporated into the Fund's prospectus. *Id.* at 7.

- Encouraging Participants to seek out information was not simply lip service. The document entitled "Your Guide to NetBenefits" states that if a Participant changes his contribution election to select a new fund, "you'll be asked how you wish to receive prospectuses and other plan literature – online or by U.S. mail. In order to continue, you must also view the prospectus online or confirm that you received it within the past 30 days." Ex. 18 (Your Guide to NetBenefits at p. 17). It also clarifies that "NetBenefits makes it easy to research any investment option in your plan. You can: . . . Read the prospectus online – which you are required to do before putting your hard-earned money into any investment." *Id.* at 19.

In short, Defendants, while acting as fiduciaries, advised Participants to "seek out all the

information available[,]" including publicly available information, in order to make informed

decisions.[9] By encouraging Participants to seek out all information available to them, and by

---

[8]  The only meaningful difference between *Dynegy* and what Plaintiffs can plead is that, here, Participants were not explicitly told to review the documents "carefully;" they were instead told that such information could help with their investment decisions. But no matter how carefully Participants reviewed all available materials, they would have found no hint that BP was significantly less serious about safety over profits than it held itself out to be. No review, from a perusal to a detailed study, would have revealed the same before the *Deepwater Horizon* inquiry, so the degree of care with which Participants were advised to review the documents is inconsequential. Plaintiffs can plead materially identical facts to the claim which survived Rule 12(b)(6) dismissal in *Dynegy*.

[9]  Several of this Court's findings in its Securities Orders support the ERISA Plaintiffs' misrepresentation claims. The Court found the New York and Ohio Securities Plaintiffs had adequately pled that:  Mr. Hayward knowingly made several false statements about BP's commitment to process safety (Securities Order, Doc. No. 324, p. 61, n. 12) and about the spill quantity following the *Deepwater Horizon* explosion (*Id.*, p. 81 n. 27); BP intentionally misrepresented its risk profile because it failed to disclose prior safety failures (*Id.*, p. 69, n. 15); and BP intentionally misrepresented that it did not retaliate against workers for reporting safety concerns while in fact engaging in a systematic pattern of retaliation (*Id.*, p. 69, n. 15 and p. 72, n. 20.)  The Court also held that the Ludlow Securities plaintiffs had sufficiently pled particularity and materiality (but not scienter -- which is not

PORTIONS OF THIS DOCUMENT
CONTAIN CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

directing Participants as to how and where to find information about the Stock Fund, Defendants effectively encouraged Participants to review the allegedly misleading SEC filings.

## IV.   DEFENDANTS' SUPPLEMENTAL AUTHORITIES EITHER SUPPORT PLAINTIFFS' POSITION OR ARE NEUTRAL

Defendants supplementally cite to *Fisher v. JP Morgan Chase & Co.*, No. 10-1303-cv, 2012 U.S. App. LEXIS 9288 (2d Cir. May 8, 2012) (Summary Order), and *Lanfear v. Home Depot, Inc.*, No. 10-13002, 2012 U.S. App. LEXIS 9321 (11th Cir. May 8, 2012).   These decisions are neutral or support Plaintiffs' position.   *Fisher*, a ruling by summary order, has no precedential effect.   *See Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011) (citing 2d Cir. Local R. 32.1.1(a)).   In any event, it did nothing to extend the prior Second Circuit rulings and is "neutral," adding nothing to the cases already before the Court.

*Lanfear* is also neutral, except for one point which favors Plaintiffs.[10]   While recognizing that the applicable plan mandated offering of a company stock fund, the *Lanfear* court noted that because the fund was defined as consisting "primarily[,]" not exclusively of Home Depot stock, its fiduciaries "retained limited discretion over investment decisions." *Id.* at *22.[11]   *Kirshbaum* addressed a similar argument, rejecting it not on legal principles but based upon the evidence before the court at summary judgment.   *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 250 (5th Cir. 2008).

---

required in the ERISA action) as to the following misrepresentations made by BP:  OMS was fully implemented in the Gulf of Mexico, *e.g,* in the 2008 Annual Report, Form 20-F Statement, and the 2008 Annual Report and 2009 Sustainability Review (Ludlow Securities Order, Doc. No. 323, p. 40, 41, 44); OMS applied across all BP operations in the Howard Weil Conference Statement (*Id.*, p.50, 53); and BP had the capacity and resources to respond to spill incidents  (*Id.*, p. 62, 63, 66).

[10]   *Lanfear*, which follows decisions of which this Court has already been advised, including *Kirshbaum*, holds that the presumption of prudence is a standard of review (2012 U.S. App. LEXIS 9321, at *35).  This Court has already recognized this principle.  March 30 Order at 25-26.

[11]   While this point has not been previously raised, Defendants opened the door by submitting *Lanfear* for the Court's consideration.

PORTIONS OF THIS DOCUMENT
FILED UNDER SEAL AND
REDACTED PURSUANT TO PROTECTIVE ORDER

While *Lanfear* is not, of course, binding on the Court, its reasoning is consistent with *Kirschbaum*'s decision of the same issue on evidentiary, as opposed to legal grounds—regarding the composition of, as opposed to the offering of, the stock fund.  Plaintiffs propose to amend to show that Defendants had considerable discretion with respect to the composition of the BP Stock Fund, and that Defendants abused this discretion by not increasing the amount of the BP Stock Fund's liquidity.  The documents that support amendment include the following:

- The relevant Investment Strategy Guidelines (Investment Manager Agreement, Defendants' Motion to Dismiss, Ex. J), like in *Lanfear*, states that the BP Stock Fund "is to invest predominantly in BP [] ADSs and a small amount of cash equivalents" and that "upon prior written approval of the Company, the fund may invest in other public and private debt and equity securities, as well as debt and equity derivatives. . . ." *Id*. at 24 and 26 of 124. Under a *Lanfear*-style analysis, the provision that the BP Stock Fund only invest "predominantly" in BP ADSs meant that the fiduciaries had at least limited discretion to reduce the percentage of BP ADSs in the BP Stock Fund and limit the Plan's losses.

- The August 2009 Update #3 to the Investment Options Guide (Ex. 20) recognizes that fiduciaries had the discretion to reduce the percentage of BP ADSs in the BP Stock Fund based on market and other conditions:   1) "[t]he BP Stock Fund is . . . passively managed except for liquidity needs[,]" (BPGOM0003319); 2)   "[t]he amount of assets in the Fund which are not BP ADSs is usually less than 5% (was 1% on average for 2008), but may be more depending upon participant transactions, *market conditions and other factors*[,]" (*Id.* at BPGOM0003344 (emphasis added)); and 3) "[s]ince the Fund holds investment other than BP ADSs. . . in general . . . [t]he Fund outperforms BP ADSs during periods where the price of BP ADSs is falling." (*Id.* at BPGOM0003345).  The August 2008 Investment Options Guide recognizes the same as the above, except for the non-passive management for liquidity needs.  Ex. 17, Doc. 92-4, at 2 of 17.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Leave to File Amended Complaint.

PORTIONS OF THIS DOCUMENT
FILED UNDER SEAL AND
REDACTED PURSUANT TO PROTECTIVE ORDER

Dated:  May 18, 2012


Respectfully Submitted:


/s/ Thomas R. Ajamie
_____

Thomas Robert Ajamie
Texas Bar No. 00952400
Dona Szak
Texas Bar No. 19597500
John W. Clay
Texas Bar No. 00796366
AJAMIE LLP
711 Louisiana, Suite 2150
Houston, TX 77002
Tel: (713) 860-1600
Fax: (713) 860-1699

*Attorneys for Plaintiff David M. Humphries
and Interim Co-Liaison Counsel*

Ronald S. Kravitz
Texas Bar No. 00795147
Kim Zeldin (*pro hac vice*)
LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGEINSTREIF & TAYLOR
LLP
199 Fremont Street, 20th Floor
San Francisco, CA 94105
Tel: (415) 489-7700
Fax: (415) 278-7701

*Attorneys for Plaintiff David M. Humphries
and Interim Co-Lead Counsel*

/s/ W. Mark Lanier
_____

W. Mark Lanier
Texas Bar No. 11934600
Evan M. Janush (*pro hac vice*)
THE LANIER LAW FIRM
6810 FM 1960 West
Houston, Texas 77069
Tel: (713) 659-5200
Fax: (713) 659-2204


Evan M. Janush (*pro hac vice*)
THE LANIER LAW FIRM
126 East 56th Street, 6th Floor
New York, New York, 10022
Tel: (212) 860-1600
Fax: (713) 860-7699

*Attorneys for Plaintiffs Charis Moule, Jerry T.
McGuire and Maureen S. Riely and Interim Co-
Liaison Counsel*

PORTIONS OF THIS DOCUMENT
CONTAINS CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO PROTECTIVE ORDER

Stephen J. Fearon, Jr. (*pro hac vice*)
Olga Anna Posmyk (*pro hac vice*)
SQUITIERI & FEARON LLP
32 East 57th Street, 12th Floor
New York, New York 10022
Tel: (212) 421-6492

*Attorneys for Plaintiffs Ralph Whitley and*
*Frankie Ramirez and Interim Counsel --*
*Executive Committee*


Gregory M. Egleston (*pro hac vice*)
EGLESTON LAW FIRM
440 Park Avenue South, 5th Floor
New York, New York 10016
 Tel: (212) 683-3400

*Attorneys for Plaintiff Ralph Whitley*

Edwin J. Mills
Michael J. Klein
STULL STULL & BRODY
6 East 45th Street
New York, NY 10017
(212) 687-7230

*Attorneys for Plaintiff Edward Mineman*


Robert A. Izard (*pro hac vice*)
IZARD NOBEL LLP
29 South Main Street Suite 215
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290

*Attorneys for Plaintiff Arshadullah Syed*


Sanford P. Dumain (*pro hac vice*)
Lori G. Feldman (*pro hac vice*)
Arvind B. Khurana (*pro hac vice*)
MILBERG LLP
One Pennsylvania Plaza
New York, New York 10119
Tel: (212) 594-5300
Fax:  (212) 868-1229

*Attorneys for Plaintiffs Charis Moule, Jerry T.*
*McGuire and Maureen S. Riely and Interim Co-*
*Lead Counsel*


Robert I. Harwood (*pro hac vice*)
Jeffrey M. Norton (*pro hac vice*)
Tanya Korkhov (*pro hac vice*)
HARWOOD FEFFER LLP
488 Madison Avenue, Suite 801
New York, NY 10022
(212) 935-7400

*Attorneys for Plaintiffs Charis Moule, Jerry T.*
*McGuire and Maureen S. Riely and Interim*
*Counsel -- Executive Committee*


Thomas J. McKenna (*pro hac vice*)
GAINEY AND MCKENNA
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel: (212) 983-1300

*Attorneys for Plaintiff Thomas P. Soesman*

PORTIONS OF THIS DOCUMENT
ARE CONFIDENTIAL AND
REDACTED PURSUANT TO PROTECTIVE ORDER

## Certificate of Service

I certify that a copy of the foregoing ERISA Plaintiffs' Reply in Support of Motion for Leave to File Amended Complaint and Reply to Defendants' Notice of Supplemental Authorities was served upon counsel of record for the parties through the Court's ECF system on May 18, 2012.

/s/ Thomas R. Ajamie
_____
Thomas R. Ajamie