## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: BP P.L.C. SECURITIES | ) | |
| LITIGATION | ) | No. 4:10-MD-2185 |
| | ) | |
| | ) | Honorable Keith P. Ellison |
| THIS DOCUMENT RELATES TO: | ) | |
| Ohio Public Employees Retirement System, | ) | |
| No. 1:12–01291 | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO REMAND

Gregory M. Utter (0032528)
Paul V. Muething (0032527)
Brian P. Muething (0076315)
W. Jeffrey Sefton (0075671)
KEATING, MUETHING & KLEKAMP
PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6400
Fax: (513) 579-6457
gmutter@kmklaw.com
pmuething@kmklaw.com
bmuething@kmklaw.com
jsefton@kmklaw.com

J. Pierre Tismo, Esq.
Dyer, Garofalo, Mann & Schultz
131 N. Ludlow St., Suite 1400
Dayton, OH 45402
Phone: (937) 223-8888
Fax: (937) 824-8630
ptismo@dgmslaw.com

OF COUNSEL

BERMAN DEVALERIO
Glen DeValerio
Kristin J. Moody
Steven J. Buttacavoli
One Liberty Square
Boston, MA 02109
Phone: (617) 542-8300
Fax: (617) 542-1194

BLOCK & LEVITON LLP
Jeffrey C. Block
Jason M. Leviton
Whitney E. Street
Mark A. Delaney
155 Federal Street, Suite 1303
Boston, MA 02110
Phone: (617) 398-5600
Fax: (617) 507-6020

*Attorneys for Plaintiffs, Ohio Public Employees Retirement System, the State Teachers Retirement System of Ohio, the School Employees Retirement System of Ohio, and the Ohio Police & Fire Pension Fund*
*Special Counsel for the Attorney General*

## TABLE OF CONTENTS

**Page No.**

NATURE AND STAGE OF THE PROCEEDING ........................................................................ 1

ISSUES TO BE RULED UPON BY THE COURT .................................................................. 2

SUMMARY OF ARGUMENT ........................................................................................... 2

I.   INTRODUCTION ........................................................................................... 3

II.  PLAINTIFFS' STATE LAW ALLEGATIONS ............................................................. 5

III. LEGAL ARGUMENT ...................................................................................... 7

     A.   Standard of Review ............................................................................ 7

     B.   Removal Was Improper Because The OCSLA Does Not Confer Subject
          Matter Jurisdiction Over Plaintiffs' Claims .......................................... 8

          1.   Resolution of Plaintiffs' Claims Will Not Affect the Efficient Exploitation
               of Minerals from the Outer Continental Shelf. ............................. 9

          2.   Plaintiffs' Claims Did Not Arise on a Situs Governed by the OCSLA. ..... 12

IV.  CONCLUSION ............................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202 (5th Cir. 1988)...................9

*ANR Pipeline Co. v. Conoco, Inc.*, 646 F. Supp. 439 (W.D. Mich. 1986) ..............10, 11

*Barker v. Hercules Offshore, Inc.*, No. H-10-0898, 2011 U.S. Dist. LEXIS 9400 (S.D. Tex. Feb. 1, 2011)...........................................................................................................12

*Brooklyn Union Exploration Co., Inc. v. Tejas Power Corp.*, 930 F. Supp. 289 (S.D. Tex. 1996) ...........................................................................................................................11

*Celestine v. TransWood, Inc.*, No. 11-30958, 2012 U.S. App. LEXIS 8371 (5th Cir. Apr. 25, 2012) ........................................................................................................................7

*De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995)................................................7

*Demette v. Falcon*, 280 F.3d 492 (5th Cir. 2002) .........................................................13

*Dominion Exploration & Prod. v. Ameron Int'l Corp.*, No. 07-3888, 2007 U.S. Dist. LEXIS 87476 (E.D. La. Nov. 27, 2007) .................................................................. 11-12

*EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563 (5th Cir. 1994) .......................2, 4, 9, 12

*Frank v. Bear Stearns & Co.*, 128 F.3d 919 (5th Cir. 1997) ..........................................7

*Golden v. Omni Energy Serv.*, 242 Fed. Appx. 965 (5th Cir. 2007)....................2, 4, 13, 14

*Gulf Island LLC v. McDermott, Inc.*, No. 0-3229, 2005 U.S. Dist. LEXIS 1117 (E.D. La. Jan. 26, 2005)........................................................................................................9, 10, 11

*Harris Trust and Sav. Bank v. Energy Assets Int'l Corp.*, 124 F.R.D. 115 (E.D. La. 1989)........11

*In re Asbestos Prods. Liab. Litig.*, 673 F. Supp. 2d 358 (E.D. Pa. 2009) ........................3

*In re Bridgestone/Firestone, Inc.*, 256 F. Supp. 2d 884 (S.D. Ind. 2003) ......................3

*In re Mut. Funds Inv. Litig.*, 767 F. Supp. 2d 542 (D. Md. 2011) ...................................3

*In re OxyContin Antitrust Litig.*, 821 F. Supp. 2d 591 (S.D.N.Y. 2011) ..........................3

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994)..............................................7

*Landry v. Island Operating Co.*, No. 09-1051, 2009 U.S. Dist. LEXIS 90806 (W.D. La. Sept. 30, 2009) .....................................................................................................13, 14

*Laredo Offshore Constructors v. Hunt Oil Co.*, 754 F.2d 1223 (5th Cir. 1985) ....................8, 12

*Llog Exploration Co., L.L.C. v. Certain Underwriters at Lloyd's of London*, No. 06-11248, 2007 U.S. Dist. LEXIS 90716 (E.D. La. Mar. 15, 2007)..............10, 11

*Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720 (5th Cir. 2002) ........................7

*Mills v. Dir., Office of Workers' Compensation Programs, U.S. Dep't of Labor*, 877 F.2d 356 (5th Cir. 1989)........................................................................................13

*NCX Co. v. Samedan Oil Corp.*, No. 03-3284, 2004 U.S. Dist. LEXIS 1338 (E.D. La. Jan. 28, 2004)..............................................................................................9, 10

*Offshore Logistics v. Tallentire*, 477 U.S. 207 (1986)........................................12, 13, 14

*Rodrigue v. Aetna Cas. and Surety Co.*, 395 U.S. 352 (1969)....................................4, 8

*United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405 (5th Cir. 1990)........9, 10

**Statutes**

28 U.S.C. § 1441 ....................................................................................................1

28 U.S.C. § 1441(a) ..............................................................................................8

28 U.S.C. § 1447 ....................................................................................................1

43 U.S.C. § 1331, *et seq.*.............................................................................. *passim*

43 U.S.C. § 1349(b)(1) ..........................................................................................8

Pursuant to 28 U.S.C. §§ 1441 and 1447, Plaintiffs Ohio Public Employees Retirement System, the State Teachers Retirement System of Ohio, the School Employees Retirement System of Ohio, and the Ohio Police and Fire Pension Fund (collectively, "Plaintiffs") move to remand this case to the Court of Common Pleas, Cuyahoga County, Ohio, where it was originally filed. Plaintiffs make this motion on the grounds that this Court lacks subject matter jurisdiction over any of the claims asserted in this case and the removal by Defendants BP p.l.c., BP America Inc., BP Exploration and Production Inc., Anthony B. Hayward, Douglas Suttles and Andrew G. Inglis (collectively, "Defendants" or "BP") was improper.

## NATURE AND STAGE OF THE PROCEEDING

This action is a state law fraud lawsuit brought solely under Ohio state law on behalf of Ohio public pension funds that purchased BP ordinary shares in Ohio. Plaintiffs have asserted claims for fraudulent misrepresentation and fraudulent concealment under Ohio common law and for violations of the Ohio Securities Act. These allegations are based on Defendants' repeated misrepresentations over a three-year period regarding BP's process safety practices across its global operations and on false statements made in the aftermath of the *Deepwater Horizon* explosion.

Plaintiffs filed suit in the Court of Common Pleas of Cuyahoga County, Ohio on April 19, 2012. On May 22, 2012, Defendants filed a notice of removal in the federal District Court for the Northern District of Ohio, *Ohio Public Employees Retirement System, et al. v. BP plc, et al.*, case no. 12-01291 (N.D. Ohio). Defendants concurrently requested that the Judicial Panel on Multidistrict Litigation transfer the action to this Court. Plaintiffs initially submitted a notice of intention to object to the Conditional Transfer Order. On June 18, 2012, Plaintiffs informed the Panel that it would not submit an objection to transfer, but that Plaintiffs did not admit that federal jurisdiction existed in this Court, and that Plaintiffs intended to submit a Motion to Remand.

## ISSUES TO BE RULED UPON BY THE COURT

This motion presents the following issue to be ruled upon by the Court:

> 1. Whether this Court may exercise subject matter jurisdiction over Plaintiffs' state law fraud claims under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.*, or whether this Court must remand this action to the Court of Common Pleas of Cuyahoga County, Ohio, where it was originally filed, for lack of jurisdiction.

### SUMMARY OF ARGUMENT

Plaintiffs' two causes of action for securities-related fraud are brought solely under Ohio state law. Defendants premise removal exclusively on the basis that this Court somehow has subject matter jurisdiction pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.* (the "OCSLA" or the "Act"), an Act whose purpose is to define a body of law for the seabed, subsoil, and structures affixed to the outer Continental Shelf ("OCS"). Defendants argue that, while the fraud did not take place on the OCS, the OCSLA nonetheless applies to this action because certain of the misstatements relate to BP's drilling operations there. At issue in this case, however, are not operations on the OCS but rather the material misstatements and omissions made by Defendants in corporate offices outside the OCS that were disseminated to Plaintiffs in Ohio. The OCSLA is not intended – and has never been found – to apply to a cause of action for securities-related misrepresentations.

The Fifth Circuit has made clear that the OCSLA does not provide jurisdiction over claims that have only an indirect connection to an operation on the OCS. Thus, the OCSLA does not confer jurisdiction where, as here, (1) resolution of the case would not "affect the efficient exploitation of resources from the [OCS]," *EP Operating Limited Partnership v. Placid Oil Co.*, 26 F.3d 563, 570 (5th Cir. 1994), and (2) the cause of action did not arise on a situs governed by the OCSLA, *Golden v. Omni Energy Serv.*, 242 Fed. Appx. 965, 966-67 (5th Cir. 2007). Resolution of these fraud claims will have no impact whatsoever on operations on the OCS. Nor

did Defendants' misstatements and omissions arise on a situs governed by the OCSLA. Consequently, the OCSLA does not confer subject matter jurisdiction over Plaintiffs' claims, and this case must be remanded.

## I.     INTRODUCTION

Plaintiffs filed this state law fraud lawsuit in the Court of Common Pleas of Cuyahoga County, Ohio on April 19, 2012, asserting causes of action against Defendants for fraudulent misrepresentation and concealment under Ohio common law and for violations of the Ohio Securities Act.  These allegations are based on Defendants' repeated misrepresentations over a three-year period regarding BP's process safety practices across its global operations and on false statements made in the aftermath of the *Deepwater Horizon* explosion.  As alleged in the Complaint, BP's misstatements artificially inflated the value of BP's ordinary shares, which Plaintiffs purchased, causing them injury when the truth about BP's inadequate safety processes came to light following the *Deepwater Horizon* explosion on April 20, 2010.  Plaintiffs' claims are brought solely under Ohio law and allege no causes of action arising under federal law.

On May 22, 2012, Defendants filed a Notice of Removal to the Northern District of Ohio and concurrently requested that the Judicial Panel on Multidistrict Litigation (the "JPML") transfer the action to this Court.  Plaintiffs move to remand because neither this Court, nor any federal court, has jurisdiction over their claims in this case.[1]  Defendants' removal notice was premised exclusively on the notion that subject matter jurisdiction over this fraud action is conferred by the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.* (the "OCSLA" or

---

[1]     As the law of the transferee court, Fifth Circuit law governs this motion.  *See In re Bridgestone/Firestone, Inc.,* 256 F. Supp. 2d 884, 888 (S.D. Ind. 2003) ("[T]he law of the circuit where the transferee court sits governs questions of federal law in MDL proceedings."); *In re OxyContin Antitrust Litig.,* 821 F. Supp. 2d 591, 595 (S.D.N.Y. 2011) (applying Second Circuit law in deciding whether to remand action removed from Kentucky state court to the Eastern District of Kentucky and then transferred by the JPML to Southern District of New York); *In re Mut. Funds Inv. Litig.,* 767 F. Supp. 2d 542, 545 (D. Md. 2011) (same); *In re Asbestos Prods. Liab. Litig.,* 673 F. Supp. 2d 358, 362-363 (E.D. Pa. 2009) (same).

the "Act"), an act whose "purpose . . . is to define a body of law applicable to the seabed, the subsoil, and the fixed structures . . . on the outer Continental Shelf," *Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352, 355 (1969).  Defendants argue that, while the fraud did not take place on the OCS, the OCSLA nonetheless applies to this action because certain of the misstatements relate to BP's drilling operations there.  This argument overlooks clear Fifth Circuit precedent holding that the OCSLA does not confer jurisdiction where, as here, resolution of the case would not "affect the efficient exploitation of resources from the [OCS]," *EP Operating Limited Partnership v. Placid Oil Co.*, 26 F.3d 563, 570 (5th Cir. 1994), and the cause of action did not arise on a situs governed by the OCSLA, *Golden v. Omni Energy Serv.*, 242 Fed. Appx. 965, 966-67 (5th Cir. 2007).  At issue in this case are material misstatements and omissions by the Defendants that were made, for example, in written reports, in press conferences, on telephone calls, and in corporate offices.[2]  These misstatements were made on dry land, not on the OCS, and were disseminated throughout the United States, including Ohio.

The OCSLA is not intended – and has never been found – to apply to a cause of action for securities-related misrepresentations.  This case does not center on the governance of activities on the OCS; rather it has everything to do with false statements made in corporate offices to the Plaintiffs in Ohio.  For purposes of this action, it is the false statements themselves that matter:  whether the statements referred to BP's global operations, the *Deepwater Horizon*, or (hypothetically) a rig in Texas, Ohio, or Alaska would have no effect on whether federal jurisdiction attaches to remove control over these state law claims.  These misstatements are not

---

[2]  *See, e.g.*, Compl. ¶ 294 (misstatements in BP 2006 Sustainability Report); ¶ 298 (misstatements made during BP "conference call with analysts and investors"); ¶ 305 (misstatements by Defendant Inglis while speaking "at the Sanford Bernstein 4th Annual Strategic Decisions Conference"); ¶ 310 (misstatements made by Defendant Hayward at 2007 Houston Forum); ¶ 325 (misstatements in speeches given at BP's 2008 Annual General Meeting); ¶ (misstatements in BP 2007 Annual Review); ¶ 441 (misstatements made by Defendant Hayward in interview "at BP's offices in Houston").

tantamount to BP's actual operations on the OCS, and evaluation of the misstatements does not relate to mineral production in a way necessary to confer federal jurisdiction. Thus, this case should be remanded to the Court of Common Pleas of Cuyahoga County, Ohio because this Court lacks any basis for jurisdiction over Plaintiffs' claims.

## II.   PLAINTIFFS' STATE LAW ALLEGATIONS

The Complaint asserts two causes of action for (i) common law fraudulent misrepresentation and fraudulent concealment, and (ii) violation of Ohio's Securities Act, Ohio Revised Code § 1707.44(J). (Compl. ¶¶ 484-504.) Plaintiffs are all purchasers of BP ordinary shares in Ohio.   (Compl. ¶¶ 24-27.)   Plaintiffs allege that Defendants made numerous misrepresentations over a three-year period relating to BP's purported adoption and implementation of internal safety and risk management practices across its global organization. (Compl. ¶¶ 294-453.) As the explosion on the *Deepwater Horizon* drilling rig on April 20, 2010 and resulting oil spill revealed, BP had misrepresented its universal adoption of improved safety standards.   (Compl. ¶ 7.)   This revelation caused the price of BP's ordinary shares to drop precipitously as BP's lack of adequate safety protocols became publicly known. (Compl. ¶ 6.)

Plaintiffs' first claim, for Ohio common law fraud, recites among other matters that Defendants joined in a course of conduct that was designed to "(a) deceive Plaintiffs and/or [Plaintiffs'] agents regarding the accuracy of Defendants' public statements; (b) artificially inflate the market price of BP's ordinary shares; and (c) cause Plaintiffs to purchase or make a decision to retain BP ordinary shares at artificially inflated prices." (Compl. ¶ 493.) Even under the most vigorous manipulation, none of that conduct arises under or can be squeezed to fit into the rubric of the OCSLA. Plaintiffs' second, and last, claim is brought under Ohio's securities act and similarly alleges, among other matters, that "Defendants' false and/or misleading representations were made for the purpose of deceiving the investing public, including Plaintiffs,

and to cause investors to purchase BP's ordinary shares at inflated prices." (Compl. ¶ 501.) Again, for obvious reasons, that claim is not brought, does not spring from, and is not governed by the OCSLA.

Defendants attempt to manufacture subject matter jurisdiction by expanding the OCSLA well beyond its bounds. The OCSLA, however, governs conduct and operations on the OCS, but it does not apply to securities-related misrepresentations made hundreds if not thousands of miles away. To no avail, Defendants selectively focus on a subset of the misrepresentations asserted in the Complaint, namely misrepresentations about BP's ability to respond to an oil spill as well as post-spill statements about the rate of oil leaking into the Gulf. (Notice of Removal ¶¶ 21-27.) In so doing, they ignore that none of the statements was made on the OCS, and that the vast majority of the alleged misstatements in the Complaint concern BP's safety practices across *all* its operations. Defendants address the bulk of the misstatements only by acknowledging the possibility that "not all of [Plaintiffs'] claims are sufficient to establish federal jurisdiction under OCSLA." (Notice of Removal ¶ 3.) But that misdirection is beside the point. Defendants' arguments suffer from a much deeper flaw: the OCSLA simply was not intended to, and does not apply to, misrepresentations regarding the purchase and sale of securities in the State of Ohio. (*See infra*, Part III.B.) To prevail in this action, Plaintiffs must demonstrate the falsity and materiality of BP's *misstatements* regarding its safety practices, and evaluation of those misstatements does not affect in any way the current or future mineral production on the OCS – which is required for OCSLA jurisdiction.

Indeed, the JPML recognized the distinction between claims connected to harms arising from actions conducted on the OCS itself and misstatements constituting securities fraud when it refused to grant BP's request to consolidate tort claims for personal injury and property damage with certain federal securities fraud claims relating to the *Deepwater Horizon* oil spill. *In re BP*

*p.l.c. Sec. Litig.*, MDL No. 2185 (Aug. 8, 2010) (attached hereto as Exhibit A).  The JPML found

that "BP's argument . . . has facial appeal, but no more.  Of course the securities action and the

[tort] actions do share an underlying genesis:  the causes and consequences of the 'Deepwater

Horizon' disaster.  However, the true factual focuses of these two dockets are vastly different.

[Tort] Plaintiffs will likely focus on the incident itself, the respective fault, if any, of the three or

four primary actors, and the incident's economic and other after effects.  In the securities actions,

discovery will likely focus on BP alone, its safety record over at least the past five years, and, in

particular, the alleged duty of BP officials to recognize and disclose the likelihood that a

calamity such as this might occur."  *Id.* at 2-3.  Thus, the OCSLA simply does not apply to

Plaintiffs' claims.

## III.   LEGAL ARGUMENT

### A.   Standard of Review

"Federal courts have limited jurisdiction, and therefore, the power to adjudicate claims

only when jurisdiction is conferred by statute and the constitution."  *Celestine v. TransWood,*

*Inc.*, 2012 U.S. App. LEXIS 8371, at *3 (5th Cir. Apr. 25, 2012).  Accordingly, the burden is on

the removing party to show that federal jurisdiction exists and that removal is proper.  *De*

*Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995); *see also Kokkonen v. Guardian Life*

*Ins. Co.*, 511 U.S. 375, 377 (1994) (burden of establishing federal subject matter jurisdiction

"rests on the party asserting jurisdiction").  ***"The removal statute should be strictly construed in***

***favor of remand."***  *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th

Cir. 2002) (emphasis added).  Any doubts or ambiguities regarding removal are to be strictly

construed against removal and in favor of remand.  *Id.*  Removal is to be viewed strictly because

it "deprives a state court of a case properly before it and thereby implicates important federalism

concerns."  *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997).

**B.    Removal Was Improper Because The OCSLA Does Not Confer Subject Matter Jurisdiction Over Plaintiffs' Claims**

Defendants premise removal solely on the basis that the OCSLA somehow confers subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1441(a).  (Notice of Removal ¶ 30.)   The OCSLA provides federal district courts with subject matter jurisdiction over "cases and controversies arising out of, or in connection with any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals."  43 U.S.C. § 1349(b)(1).  "The purpose of the [OCSLA] was to define a body of law applicable to the seabed, the subsoil, and the fixed structures . . . on the outer Continental Shelf."  *Rodrigue*, 395 U.S. at 355.

Defendants mistakenly argue that because several of BP's misstatements concern its operations on the OCS, there is a sufficient "connection" to production of minerals on the OCS for the OCSLA to confer jurisdiction.  (Notice of Removal ¶¶ 21-27.)  This argument ignores the function of the OCSLA and the case law interpreting it.  The OCSLA "extends the political power and laws of the United States to the subsoil and seabed of the Outer Continental Shelf and to the artificial islands, installations, and other devices erected thereon for the purpose of exploring for, developing, or producing subsurface resources."  *Laredo Offshore Constructors v. Hunt Oil Co.*, 754 F.2d 1223, 1226 (5th Cir. 1985).  The OCSLA has almost exclusively been applied to cases bearing a clear and direct connection to operations on the OCS – for example, personal injury claims for harm suffered working on the OCS or contract disputes relating to ongoing operations there.  Tellingly, OCSLA jurisdiction has *never* been exercised over any cause of action asserting securities-related misrepresentations.  By their removal, Defendants attempt a truly unprecedented and unauthorized expansion of federal jurisdiction at the expense of state courts.

The Fifth Circuit has made clear that while the OCSLA's jurisdictional grant is broad, claims having only an indirect connection to an operation on the OCS are excluded from its coverage. Plaintiffs' claims fall squarely within this class of actions beyond the Act's reach. *First*, OCSLA jurisdiction does not extend to an action whose resolution will not affect the efficient exploitation of minerals from the OCS. Resolving Plaintiffs' common law claims for fraudulent misrepresentation and securities violations will in no way alter the current or future production of minerals on the OCS. *Second*, subject matter jurisdiction can only be exercised over causes of action that arise on a situs governed by the OCSLA because otherwise the Act's substantive law provisions will not be applicable. Here, there is no situs that could confer jurisdiction: Plaintiffs suffered economic injuries in Ohio, where they reside, due to the decline in price of BP's ordinary shares caused by misstatements made by Defendants outside the OCS. Accordingly, the OCSLA cannot confer subject matter jurisdiction over Plaintiffs' claims.

## 1.   Resolution of Plaintiffs' Claims Will Not Affect the Efficient Exploitation of Minerals from the Outer Continental Shelf.

The OCSLA provides subject matter jurisdiction only where resolution of the case at issue "would affect the efficient exploitation of resources from the OCS." *EP Operating*, 26 F.3d at 569-70; *United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1990). A cause of action that does not impair the efficient exploitation of resources simply "does not implicate the interest expressed by Congress" in enacting the OCSLA. *NCX Co. v. Samedan Oil Corp.*, 2004 U.S. Dist. LEXIS 1338, at *9-10 (E.D. La. Jan. 28, 2004); *see also Amoco Production Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1210 (5th Cir. 1988) (adopting efficient exploitation test as "a primary purpose" of Congress in enacting the OCSLA).

Under this test, courts look to the relation between a cause of action and its impact on the production of minerals on the OCS – if the connection is merely tangential or indirect, then jurisdiction does not exist. *See Gulf Island LLC v. McDermott, Inc.*, 2005 U.S. Dist. LEXIS

1117, at *4 (E.D. La. Jan. 26, 2005) (remanding for lack of jurisdiction because contract dispute regarding equipment used on the OCS was not "intimately connected with an operation" on the OCS); *Llog Exploration Co., L.L.C. v. Certain Underwriters at Lloyd's of London*, 2007 U.S. Dist. LEXIS 90716, at *15 (E.D. La. Mar. 15, 2007) (remanding for lack of jurisdiction because insurance dispute over property installed on the OCS would not "directly affect" production on the OCS); *ANR Pipeline Co. v. Conoco, Inc.*, 646 F. Supp. 439, 445 (W.D. Mich. 1986) (rejecting jurisdiction over connection to the OCS that was "too attenuated" and not "direct"); *see also United Offshore*, 899 F.2d at 407 (exploitation of minerals is affected where a claim has a sufficient "nexus with production"). Where the complained of acts will not affect future production, federal court jurisdiction does not exist. *Gulf Island*, 2005 U.S. Dist. LEXIS 1117, at *8 (remanding for lack of jurisdiction an action for breach of contract to construct a floating oil and gas production facility on the OCS because "[t]he breach of contract over completed topsides . . . will neither affect work on the OCS nor threaten the recovery of resources from the OCS"); *NCX*, 2004 U.S. Dist. LEXIS 1338, at *9-10 (remanding for lack of jurisdiction because "the instant litigation involves the contractual provisions regarding the payment/price of services which have been already rendered, not provisions governing production or development" and thus "[had] nothing to do with . . . future operations").

Here, resolution of Plaintiffs' securities-related claims will have no impact whatsoever on the efficient exploitation of minerals from the OCS. A determination that BP made fraudulent misstatements to pension funds in Ohio has no bearing on the future production of minerals on the OCS. Plaintiffs' claims will analyze the falsity of BP's misstatements (all of which were disseminated into Ohio), Defendants' knowledge thereof, and the materiality of such statements to the Ohio Plaintiffs: these inquiries will not affect the nature, quality, or quantity of minerals extracted from the OCS. Past fraudulent statements by the Defendants simply lack the "nexus

with" or "direct relationship" to production on the OCS that is required for OCSLA jurisdiction to exist.

Numerous courts have rejected jurisdiction under the OCSLA in similar situations where, as here, a cause of action seeking economic damages was somehow related to operations on the OCS but would not affect the future exploitation of minerals therefrom. *See Llog Exploration*, 2007 U.S. Dist. LEXIS 90716, at *15 (remanding for lack of jurisdiction a dispute over an insurance policy covering equipment physically located on the OCS that had been damaged by hurricanes, finding: "The insurance coverage dispute does not affect or alter the progress of production activities on the OCS, nor does it threaten to impair the total recovery of federally owned minerals from the OCS. This case does not fall within the jurisdictional scope of Section 1349(b)(1)(A)."); *Gulf Island*, 2005 U.S. Dist. LEXIS 1117, at *4 (remanding for lack of jurisdiction a contract dispute for platforms built by plaintiff for use on the OCS because the dispute was not "intimately connected with an operation" on the OCS); *Brooklyn Union Exploration Co., Inc. v. Tejas Power Corp.*, 930 F. Supp. 289, 292 (S.D. Tex. 1996) (no jurisdiction over contract governing the price of gas extracted from the OCS because "resolution of the instant dispute . . . will not alter the flow of production or otherwise affect the efficient exploitation of natural resources in the OCS"); *Harris Trust and Sav. Bank v. Energy Assets Int'l Corp.*, 124 F.R.D. 115, 119-20 (E.D. La. 1989) (no jurisdiction over a priority dispute between holders of the mortgages covering leases on the OCS because "the fact that one of the assignments involves an oil and gas lease under the OCSLA does not make this dispute one 'arising out of, or in connection with any operation'"); *ANR Pipeline*, 646 F. Supp. at 445 (remanding a contractual dispute regarding the sale of gas extracted from the OCS because that contact alone was "too attenuated . . . with the seabed" to grant jurisdiction); *Dominion Exploration & Prod. v. Ameron Int'l Corp.*, 2007 U.S. Dist. LEXIS 87476, at *17-18 (E.D. La.

Nov. 27, 2007) (remanding a breach of contract for painting a floating production facility on the OCS for lack of jurisdiction because the breached agreement "does not alter the flow of production or otherwise affect the efficient exploitation of natural resources on the OCS; it delayed the date operation and production may begin, but it did not stop, interrupt, or suspend an operation already in progress on the OCS. Therefore, the OCSLA does not apply.").

In contrast, *no court* has ever held that jurisdiction exists under the OCSLA for common law fraud actions arising from misstatements about operations on the OCS.

### 2. Plaintiffs' Claims Did Not Arise on a Situs Governed by the OCSLA.

This Court also lacks subject matter jurisdiction for the additional reason that the OCSLA does not provide jurisdiction for claims that did not arise on a situs to which the OCSLA extends federal law. Here, Plaintiffs' claims – for economic injuries suffered in Ohio due to misstatements made by Defendants outside the OCS – do not arise on an OCSLA situs and, therefore, cannot provide this Court with subject matter jurisdiction over them.

The Fifth Circuit has made clear that the OCSLA's jurisdictional and substantive law provisions are co-extensive. *See EP Operating*, 26 F.3d at 569 ("[W]e find the most consistent reading of the [OCSLA] instructs that the jurisdictional grant of section 1349 should be read co-extensively with the substantive reach of section 1333.") (citing *Laredo*, 754 F.2d at 1228 (5th Cir. 1985)); *see also Barker v. Hercules Offshore, Inc.*, 2011 U.S. Dist. LEXIS 9400, at *13 n.5 (S.D. Tex. Feb. 1, 2011) ("The Fifth Circuit has concluded that the jurisdictional grant of section 1349 should be read co-extensively with the substantive reach of section 1333."). Thus, where the OCSLA does not extend federal law to a particular case, neither will it grant subject matter jurisdiction.

To determine the reach of the OCSLA, both the Supreme Court and the Fifth Circuit instruct courts to look to the "situs" where the claim arose. *See Offshore Logistics v. Tallentire*,

477 U.S. 207, 219 (1986); *Golden*, 242 Fed. Appx. at 966-67; *Demette v. Falcon*, 280 F.3d 492, 496 (5th Cir. 2002) ("The Supreme Court and the Fifth Circuit have held that [the OCSLA] creates a 'situs' requirement for the application of other sections of the OCSLA."). "For OCSLA jurisdictional purposes [*Offshore Logistics*] compel[s] the district court to take into account the location of incidents giving rise to the lawsuit." *Golden*, 242 Fed. Appx. at 966-67. Indeed, "the scope of OCSLA's coverage must be 'determined principally by locale.'" *Golden*, 242 Fed. Appx. at 967 (quoting *Offshore Logistics*, 477 U.S. at 219); *see also Landry v. Island Operating Co.*, 2009 U.S. Dist. LEXIS 90806, at *6-9 (W.D. La. Sept. 30, 2009) (granting motion to remand because situs of injury was not on the OCS and OCSLA therefore could not confer jurisdiction).

The Fifth Circuit has generally instructed that the situs for purposes of OCSLA jurisdiction is the location where an injury occurs. *Golden*, 242 Fed. Appx. at 967-68 (no jurisdiction where situs of injury was not on the OCS); *Mills v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor*, 877 F.2d 356, 357 (5th Cir. 1989) (noting that the OCSLA has a "situs-of-injury requirement"); *see also Landry*, 2009 U.S. Dist. LEXIS 90806, at *7-8 ("The Fifth Circuit has conclusively stated the 'situs' required to trigger OCSLA refers to the location of the injury."). Relying on the Fifth Circuit's decision in *Golden*, the court in *Landry* granted a motion to remand because the OCSLA did not confer jurisdiction over a personal injury claim that arose when a tanker negligently loaded with flammable substances at an OCS platform caught fire at a mainland dock, injuring the plaintiff. *Id.* at *2. The court held that the situs of the injury was on the dock where the injury took place and not at the OCS platform where the negligent act occurred. *Id.* at *8. The court explained that jurisdiction cannot exist where "the manner in which plaintiff allegedly sustained injury ***simply***

*bears too indirect and attenuated a relationship to any 'operation' on the OCS for defendants to be allowed to invoke OCSLA.*"[3] *Id.* at *9 (emphasis added).

Here, the situs of Plaintiffs' claims is certainly not the OCS. The injury suffered by Plaintiffs – economic harm caused by the decrease of BP's ordinary share price – occurred in Ohio, where Plaintiffs are located and suffered damages. (Compl. ¶¶ 24-27.) Even looking to the locations where the misstatements giving rise to this action were made – *i.e.*, in numerous filings and public statements in the United Kingdom and the contiguous United States – compels the same result, as none occurred on the OCS. (*See* Compl. ¶¶ 294, 298, 305, 315, 318, 325, 332, 341-42, 349, 355-56, 387, 391, 395, 401, 406, 411, 416, 420, 424, 431, 434-35, 441.) Although some of the misstatements related to or were directly about operations on the OCS, a claim's mere relation to the OCS is insufficient to establish the necessary showing that it arose on an OCSLA situs. *See Offshore Logistics*, 477 U.S. at 219 (OCSLA did not extend federal law to personal injury claim suffered when a helicopter transporting a working to a platform on the OCS crashed over land); *Golden*, 242 Fed. Appx. at 967-68 (same); *Landry*, 2009 U.S. Dist. LEXIS 90806, at *8-9 (no OCSLA jurisdiction where tanker fueled at OCS platform caused

---

[3]     Notably, the *Landry* court also rejected the argument that a mere causal connection between a claim and operations on the OCS can confer jurisdiction where that connection is simply coincidental. As the court held:

> Plaintiff allegedly sustained injuries while welding a landed tanker containing flammable material. Both the tanker's explosion and the fact that it contained allegedly flammable materials were not existent solely because they came from a platform on the OCS. The tanker could just as easily have come from a non-OCS platform which would not be subject to OCSLA. Moreover, *the location of the platform in the OCS did not change any material facts*. If the platform that sent the tanker back to land would have been located within Louisiana's territorial waters, in foreign waters, or on land, the injury would have presumably happened in the same manner. *The mere fact that the tanker involved in this incident had been in use on the OCS does not confer federal question jurisdiction*.

*Id.* at *12-13 (emphasis added). This reasoning applies equally here – Plaintiffs' claims for fraudulent misrepresentations and securities violations would still remain even if the accident revealing their falsity had occurred on a location outside the OCS.

injury at mainland dock).  Because none of the misstatements alleged in the Complaint could

possibly meet the situs requirement,  Plaintiffs' state law causes of action are not governed by

the OCSLA and, therefore, subject matter jurisdiction cannot be exercised pursuant to the Act.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court remand this

action to the Court of Common Pleas of Cuyahoga County, Ohio where it was originally filed.

Dated:   June 21, 2012

Respectfully submitted,

MICHAEL DEWINE
Attorney General of Ohio

By: _____

Gregory M. Utter (0032528)
Paul V. Muething (0032527)
Brian P. Muething (0076315)
W. Jeffrey Sefton (0075671)
KEATING, MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Phone:  (513) 579-6400
Fax:  (513) 579-6457
gmutter@kmklaw.com
pmuething@kmklaw.com
bmuething@kmklaw.com
jsefton@kmklaw.com

J. Pierre Tismo, Esq.
Dyer, Garofalo, Mann & Schultz
131 N. Ludlow St., Suite 1400
Dayton, OH 45402
Phone:  (937) 223-8888
Toll Free:  (800) 223-8897
Fax:  (937) 824-8630
ptismo@dgmslaw.com

*Attorneys for Plaintiffs, Ohio Public Employees*
*Retirement System, the State Teachers Retirement*
*System of Ohio, the School Employees Retirement*

- 15 -

*System of Ohio, and the Ohio Police & Fire Pension Fund*
*Special Counsel for the Attorney General*

OF COUNSEL

BERMAN DEVALERIO
Glen DeValerio
Kristin J. Moody
Steven J. Buttacavoli
One Liberty Square
Boston, MA 02109
Phone:  (617) 542-8300
Fax:  (617) 542-1194

BLOCK & LEVITON LLP
Jeffrey C. Block
Jason M. Leviton
Whitney E. Street
Mark A. Delaney
155 Federal Street, Suite 1303
Boston, MA 02110
Phone:  (617) 398-5600
Fax:  (617) 507-6020

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of June, 2012 a true and exact copy of the foregoing was served by United States mail, postage prepaid, addressed as follows:

Frances Floriano Goins
Isaac J. Eddington
ULMER & BRENE LLP
Skylight Office Tower
1660 West 2nd St., Suite 1100
Cleveland, Ohio 44113-1448

OF COUNSEL:

Richard C. Pepperman, II
Marc De Leeuw
SULLIVAN & CROMWELL LLP
125 Broad St.
New York, New York 1004-2498

Daryl A. Libow
Amanda F. Davidoff
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5805

_____
Paul V. Muething

4400422.6