**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re BP p.l.c. Securities Litigation | No. 4:10-MD-02185 |
| THE STATE OF OREGON, by and through the OREGON STATE TREASURER on behalf of the COMMON SCHOOL FUND, the HIGHER EDUCATION ENDOWMENT FUND, and, together with the OREGON PUBLIC EMPLOYEE RETIREMENT BOARD on behalf of the OREGON PUBLIC EMPLOYEE RETIREMENT FUND, | No. 4:12-cv-01836 |
| | Honorable Keith P. Ellison |
| Plaintiff, | |
| v. | |
| BP P.L.C.; BP AMERICA, INC.; and BP EXPLORATION & PRODUCTION, INC., | |
| Defendant. | |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN
<u>SUPPORT OF MOTION TO REMAND</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT ................................................................................................................... 2

        A.      There is No Basis for BP's Reliance on a Limitless "But-For" Test ..................... 2

                1.      The Fifth Circuit has applied a "but-for" test only to claims for
                        personal injuries or property damage ......................................................... 2

                2.      The Supreme Court has rejected the limitless "but for" test
                        advanced by BP ........................................................................................... 4

                3.      The Fifth Circuit's "but for" test requires a nexus between the
                        dispute and operations on the OCS ............................................................ 5

        B.      The Claims in This Case Do Not Arise Out of and Are Not in Connection
                With Any Operation Conducted on the OCS Involving Exploration,
                Development, or Production ................................................................................... 6

                1.      Claims regarding BP's misstatements in its OSRP and EP ...................... 7

                2.      Claims regarding BP's misstatements about oil flow rates and
                        OMS .......................................................................................................... 11

        C.      BP's Position is Inconsistent With the Authority Applying the Proper
                Standard under Section 1349(b) ........................................................................... 15

III.    CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Amoco Prod. Co. v. Sea Robin Pipeline Co.*
844 F.2d 1202 (5th Cir. 1988) ................................................................... 3, 6, 7, 10

*ANR Pipeline Co. v. Conoco, Inc.*
646 F. Supp. 439 (W.D. Mich. 1986) ................................................................. 17

*Barker v. Hercules Offshore, Inc.*
2011 WL 338812 (S.D. Tex. Feb. 1, 2011) ............................................................. 2

*Bartholomew v. CNG Producing Co.*
832 F.2d 326 (5th Cir. 1987) ........................................................................ 15

*Boone v. Citigroup Inc.*
416 F.3d 382 (5th Cir. 2005) ........................................................................ 13

*BP Exploration & Prod., Inc. v. Callidus Tech., L.L.C.*
2003 WL 193450 (E.D. La. Jan. 27, 2003)............................................................. 4

*British Borneo Exploration, Inc. v. Enserch Exploration, Inc.*
28 F.Supp.2d 999 (E.D. La. 1998)............................................................... 8, 9, 11

*Brooklyn Union Exploration Co., Inc. v. Tejas Power Corp.*
930 F. Supp. 289 (S.D. Tex. 1996) ................................................................. 3, 16

*Dominion Exploration & Prod., Inc. v. Ameron Int'l. Corp.*
2007 WL 4233562 (E.D. La. Nov. 27, 2007) ................................................... 3, 8, 16, 17

*Edwardsen v. U.S. Dep't of Interior*
268 F.3d 781 (9th Cir. 2001) ......................................................................... 7

*EP Operating Ltd. P'ship v. Placid Oil Co.*
26 F.3d 563 (5th Cir. 1994) ............................................................... 1, 3, 4, 6, 10, 11

*Gasch v. Hartford Accident & Indem. Co.*
491 F.3d 278 (5th Cir. 2007) ......................................................................... 1

*Gavin v. AT&T Corp.*
464 F.3d 634 (7th Cir. 2006) ........................................................................ 14

*Gulf Island, L.L.C. v. J. Ray McDermott, Inc.*
  2005 WL 180947 (E.D. La. Jan. 26, 2005) ....................................................................... 4, 17

*Harris Trust and Savings Bank v. Energy Assets International Corp.*
  124 F.R.D. 115 (E.D. La. 1989)........................................................................................... 16

*Hufnagel v. Omega Serv. Indus, Inc.*
  182 F.3d 340 (5th Cir. 1999) ....................................................................................... 2, 5, 13

*Humphries v. Various Federal USINS Emps*
  164 F.3d 936 (5th Cir. 1999) ................................................................................................. 6

*In re Oil Spill by the Oil Rig "Deepwater Horizon"*
  2011 WL 323866 (E.D. La. Feb. 2, 2011) ............................................................................. 9

*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico*
  747 F.Supp.2d 704, 708-09 (E.D. La. 2010)........................................................................... 2

*Landry v. Island Operating Co.*
  2009 WL 3241560 (W.D. La. Sept. 30, 2009)................................................................. 12, 14

*Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*
  754 F.2d 1223 (5th Cir. 1985) ........................................................................................... 3, 4

*LLOG Exploration Co. v. Certain Underwriters at Lloyd's of London*
  2007 WL 854307 (E.D. La. Mar. 15, 2007) ............................................................... 3, 12, 15

*Mills v. Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor*
  846 F.2d 1013 (5th Cir. 1988) ............................................................................................... 5

*Mississippi ex rel. Hood v. Gulf Coast Claims Facility*
  2011 WL 5551773 (S.D. Miss. Nov. 15, 2011)...................................................................... 9

*Native Village of Point Hope v. Salazar*
  680 F.3d 1123 (9th Cir. 2012) ........................................................................................... 7, 8

*NCX Co. v. Samedan Oil Corp.*
  2004 WL 203079 (E.D. La. Jan. 28, 2004).................................................................... 12, 16

*Offshore Logistics, Inc. v. Tallentire*
  477 U.S. 217, 219 (1986)..................................................................................................... 14

*Pacific Operators Offshore, LLP v. Valladolid*
  132 S.Ct. 680 (2012)......................................................................................................... 4, 5

*Recar v. CNG Producing Co.*
   853 F.2d 367 (5th Cir. 1988) ........................................................................ 2, 5, 13

*Rodrigue v. Aetna Cas. Co.*
   395 U.S. 352 1969) ........................................................................................ 15

*Sec'y of Interior v. California*
   464 U.S. 312 (1984) ........................................................................................ 8

*Tennessee Gas Pipeline v. Hous. Cas. Ins. Co.*
   87 F.3d 150 (5th Cir. 1996) ........................................................................... 2, 6

*Texaco Exploration and Prod., Inc. v. AmClyde Engineered Prods Co., Inc.*
   448 F.3d 760 (5th Cir. 2006) ......................................................................... 2

*United Offshore Co. v. S. Deepwater Pipeline Co.*
   899 F.2d 405 (5th Cir. 1990) ......................................................................... 3, 10

*Valladolid v. Pacific Operations Offshore, LLP*
   604 F.3d 1126 (9th Cir. 2010) ....................................................................... 5

## Other Authorities

30 C.F.R. § 550.201 ........................................................................................... 7

30 C.F.R. § 550.202 ........................................................................................... 8

30 C.F.R. § 550.207 ........................................................................................... 8

30 C.F.R. § 550.208 ........................................................................................... 8

30 C.F.R. § 550.209 ........................................................................................... 8

30 C.F.R. § 550.210 ........................................................................................... 8

30 C.F.R. § 550.219 ........................................................................................... 8

33 U.S.C. § 1321 ............................................................................................... 7

43 U.S.C. § 1331 ............................................................................................... 6

43 U.S.C. § 1333 ............................................................................................... 4

43 U.S.C. § 1340 ............................................................................................... 7

43 U.S.C. § 1349 ............................................................................................................ 5, 6, 7, 15

## I.      INTRODUCTION

In opposing remand of this case, BP seeks to expand federal court jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA") far beyond the statutory language and beyond any interpretation of the statute by any court.  The OCSLA has never been applied to a securities fraud case and no court has ever accepted BP's extreme position – that a state law fraud case belongs in federal court simply because the subject matter of some of the false statements related to activities on the Outer Continental Shelf ("OCS").  BP's position would expand the limits of jurisdiction under the OCSLA to an unprecedented and unintended degree and is therefore inconsistent with the Fifth Circuit's admonition that the removal statute must be "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

BP's arguments in favor of jurisdiction rely on the "but-for" test that had been applied by the Fifth Circuit only in very limited contexts, but never outside of the personal injury and property damage context.  Moreover, a recent Supreme Court decision expressly rejected the "but-for" test in analyzing the scope of an analogous provision of the OCSLA, so any relevance the "but-for" test might once have had is now lost.

The appropriate test to determine jurisdiction under the OCSLA is whether the case "would affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally-owned resources."  *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 570 (5th Cir. 1994).  Under this standard, which BP barely addresses, it is clear there is no federal court jurisdiction.  In this case, Plaintiff seeks to recover damages lost in connection with BP's securities fraud.  Plaintiff does not seek to enjoin BP's OCS activities nor does it request any other remedy that would have any impact whatsoever on those activities.  BP's vague

1

suggestion that this case might indirectly affect its exploration, production, and development operations is unsupported and insufficient to invoke this Court's jurisdiction.

Because this court lacks jurisdiction, the case must be remanded to Oregon state court and Plaintiff should be awarded fees and costs.

## II.   ARGUMENT

### A.   There is No Basis for BP's Reliance on a Limitless "But-For" Test

#### 1.   The Fifth Circuit has applied a "but-for" test only to claims for personal injuries or property damage

The Fifth Circuit has applied a "but for" test only in four cases, each of which involved claims for personal injuries or property damage.  *See Recar v. CNG Producing Co.*, 853 F.2d 367, 368 (5th Cir. 1988) (applying the test to claims for personal injuries suffered by a maintenance crew foreman while swinging on a rope from a platform located on the OCS to a waiting transport vessel); *Tennessee Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 152 (5th Cir. 1996) (applying the test to claims for property damage suffered as a result of a collision between a ship and a platform anchored to the OCS); *Hufnagel v. Omega Serv. Indus, Inc.*, 182 F.3d 340, 344-45 (5th Cir. 1999) (applying the test to claims for personal injuries suffered by a rigger while working on a platform located on the OCS); *Texaco Exploration and Prod., Inc. v. AmClyde Engineered Prods Co., Inc.*, 448 F.3d 760,769 (5th Cir. 2006) (applying the test to products liability claims for damages suffered when a load line failed during the construction of a platform on the OCS).[1]

---

[1] BP relies principally on these cases and other personal injury and property damage cases. *See, e.g.*, *Barker v. Hercules Offshore, Inc.*, 2011 WL 338812 at *1 (S.D. Tex. Feb. 1, 2011) (involving claims for personal injuries suffered while working on a drilling rig attached to the OCS); *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico*, 747 F.Supp.2d 704, 708-09 (E.D. La. 2010) (involving claims for the harm inflicted on coastal wildlife by "Defendants' alleged negligent actions during the drilling and exploration operation" on the OCS).  Cases involving claims for personal injury and property damage are irrelevant to this

These "but-for" cases have little, if any, relevance outside the personal injury/property damage context.  *See*, *e.g.*, *Brooklyn Union Exploration Co., Inc. v. Tejas Power Corp.*, 930 F. Supp. 289, 290 n.3 (S.D. Tex. 1996) (explaining that Fifth Circuit decisions applying § 1349(b)(1) to personal injury cases "are not particularly useful for determining jurisdiction in the instant [contract] case.").  In all other cases, the Fifth Circuit has limited the jurisdictional reach of the OCSLA to cases that "would affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally-owned resources," *EP Operating,* 26 F.3d at 570, or where the dispute is "intimately connected with an operation on the Outer Continental Shelf which involved the exploration, development, or production of subsurface resources." *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1229 (5th Cir. 1985); *see also Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1210 (5th Cir. 1988) ("[A]ny dispute that alters the progress of production activities on the OCS threatens to impair the total recovery of the federally-owned minerals from the reservoir or reservoirs underlying the OCS . . . was intended by Congress to be within the grant of federal jurisdiction contained in § 1349."); *United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1990) (finding dispute had requisite jurisdictional "nexus with production" because "the resolution of the dispute would affect the exploitation of minerals on the outer continental shelf.").[2]  This is the appropriate standard to be applied here.

---

case, which involves claims for false statements made by BP in violation of the Oregon Securities Law.

[2] District court decisions are in accord.  *See, e.g.*, *Dominion Exploration & Prod., Inc. v. Ameron Int'l. Corp.*, 2007 WL 4233562, at *5 (E.D. La. Nov. 27, 2007) (finding no OCSLA jurisdiction because "[t]he breached paint agreement [did] not alter the flow of production or otherwise affect the efficient exploitation of natural resources on the OCS"); *LLOG Exploration Co. v. Certain Underwriters at Lloyd's of London*, 2007 WL 854307, at *3 (E.D. La. Mar. 15, 2007) (finding no OCSLA jurisdiction because the dispute did "not affect or alter the progress of production activities on the OCS, nor does it threaten to impair the total recovery of federally owned

### 2.     The Supreme Court has rejected the limitless "but for" test advanced by BP

The Supreme Court, in a recent decision examining the limits of the substantive provisions of § 1333(b),[3] rejected an "expansive 'but for' interpretation" of the OCSLA similar to that advanced by BP.  *See Pacific Operators Offshore, LLP v. Valladolid*, 132 S.Ct. 680, 691 (2012).  Although "nominally based on causation," the Court held that a "but for" test was incompatible with the OCSLA because, taken to its logical conclusion, the "but for" test would extend the provisions of the OCSLA far beyond its intended scope.  *Id*. at 690 ("Taken to its logical conclusion, the 'but for' test … could reasonably be interpreted to cover land-based office employees whose jobs have virtually nothing to do with extractive operations on the OCS.").  Instead, the Court adopted the Ninth Circuit's "substantial-nexus" test, which requires the party seeking to apply the OCSLA to establish "a significant causal link" between the claims asserted and "on-OCS operations conducted for the purpose of extracting natural resources from the OCS."  *Id*. at 691.  The *Pacific Operators* holding is readily applicable to § 1349(b) of the OCSLA, which is read "co-extensively" with § 1333.  *EP Operating*, 26 F.3d at 569.

---

minerals from the OCS."); *Gulf Island, L.L.C. v. J. Ray McDermott, Inc.*, 2005 WL 180947, at *3 (E.D. La. Jan. 26, 2005) (finding no OCSLA jurisdiction where action "will neither affect work on the OCS nor threaten the recovery of resources from the OCS.")

[3] Section 1333(b) extends the federal workers' compensation scheme to injuries "occurring as the result of operations conducted on the outer Continental Shelf" for the purpose of extracting natural resources from the shelf.  The Fifth Circuit has instructed that "the jurisdictional grant of section 1349 should be read co-extensively with the substantive reach of section 1333."  *EP Operating*, 26 F.3d at 569 (footnote and citation omitted); *see also Laredo*, 754 F.2d at 1228 (describing grant of subject matter jurisdiction as "correlative" to the extension of substantive law under OCSLA); *BP Exploration & Prod., Inc. v. Callidus Tech., L.L.C.*, 2003 WL 193450 at *3 (E.D. La. Jan. 27, 2003) (explaining that "the jurisdictional grant of the Act should be read co-extensively with the substantive reach of the Act.") (citation omitted).

### 3.   The Fifth Circuit's "but for" test requires a nexus between the dispute and operations on the OCS

Even if the "but-for" test were somehow applicable here, that test is much narrower than

BP maintains.  The Fifth Circuit outlined the limits of its "but for" test as follows:

> The "but for" test this Circuit has adopted is not the simple "*causa sine qua non*"
> test of tort law, but includes the requirement that the claimant show a nexus
> between the work being done and operations on the shelf similar to the proximate
> cause test in tort law; it requires that the work "further[s] the operation of a fixed
> rig on the shelf *and [is] in the regular course of extractive operations on the
> shelf*."

*Mills v. Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor,* 846 F.2d 1013,

1015 (5th Cir. 1988) (defining "but-for" test under § 1333(b)), *rev'd en banc*, 877 F.2d 356 (5th

Cir.1989);[4] *see also Recar*, 853 F.2d at 369 (explaining the test under § 1349(b) as whether the

plaintiff's "work furthered mineral exploration and development activities and was in the regular

course of activities"); *see also Tennessee Gas*, 87 F.3d at 155 n.24 (explaining that the *Recar*

court "adopt[ed] under § 1349 the but-for test this court has applied under § 1333(b)(2)") (citing

*Recar,* 853 F.2d at 369)).  The *Mills/Recar* "but-for" test has been subsequently applied by the

Fifth Circuit to personal injury cases.  *See*, *e.g.*, *Hufnagel*, 182 F.3d at 350 (explaining that

plaintiff's claims fell within § 1349(b) because "[plaintiff]'s employment furthered mineral

production on the shelf … [and] [plaintiff]'s injuries occurred on a stationary drilling platform

involved in the 'exploration, development, or production' of minerals on the shelf.") (quoting 43

U.S.C. § 1349(b)(1).

---

[4] The Fifth Circuit's *en banc* decision in *Mills* was abrogated by *Pacific Operators*, 132 S.Ct.
680, in which the Supreme Court adopted the "substantial nexus" test set forth in the Ninth
Circuit's decision in *Valladolid v. Pacific Operations Offshore, LLP*, 604 F.3d 1126 (9th Cir.
2010).  The Ninth Circuit in *Valladolid* expressly endorsed the test applied by the Fifth Circuit
prior to its *en banc* decision in *Mills*.  *See Valladolid*, 604 F.3d at 1139-40.

**B.      The Claims in This Case Do Not Arise Out of and Are Not in Connection With Any Operation Conducted on the OCS Involving Exploration, Development, or Production**

The OCSLA grants jurisdiction to the federal district courts only with respect to "cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals[.]" 43 U.S.C. § 1349(b)(1).[5]  Interpreting the phrase "arising from" in the context of another statute, the Fifth Circuit explained that "[a]s a general matter, 'arising from' does seem to describe a nexus somewhat more tight than the also frequently used phrase 'related to'" and requires more than "a weak, remote, or tenuous connection." *Humphries v. Various Federal USINS Emps*, 164 F.3d 936, 943 (5th Cir. 1999).  In determining whether a case arises from or is in connection to OCS operations, courts ask whether the case "would affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally-owned resources." *EP Operating*, 26 F.3d at 570.

Plaintiff's claims do not "arise from" and are not "in connection with" operations on the OCS.  The purported connections identified by BP are either non-existent, irrelevant, and/or far too insignificant to invoke the OCSLA.  As explained below, numerous courts have rejected similar attempts by defendants to manufacture federal court jurisdiction where the supposed connections to OCS operations were simply too weak to satisfy the OCSLA.

---

[5]  The terms "exploration", "development" and "production" are defined in the OCSLA.  *See* 43 U.S.C. § 1331(k), (l), and (m).  Although the term "operation" is not defined in the OCSLA, the Fifth Circuit "has defined 'operation' to be 'the doing of some physical act.'" *Tennessee Gas*, 87 F.3d at 154 (quoting *Sea Robin*, 844 F.2d at 1207).

### 1.      Claims regarding BP's misstatements in its OSRP and EP

There is no basis for BP's reliance on false statements made in its Oil Spill Response Plan ("OSRP") and Exploration Plan ("EP") to establish jurisdiction under the OCSLA, which extends jurisdiction only to cases arising out of or in connection to an "operation" on the OCS "which involves exploration, development, or production[.]"  43 U.S.C. § 1349(b)(1).  First and foremost, the submission of false statements in government filings is not an "operation"[6] and did not occur "on the Outer Continental Shelf."

BP argues that there is jurisdiction for claims based on the false EP and OSRP because the filings were "a precondition to any exploration or drilling on the outer Continental Shelf."  BP Br. at 9-10.[7]  But that only shows why the claims are **_disconnected_** from any OCS operations – the EP and OSRP are filed **_before_** such operations begin.  The OCSLA prohibits exploration activities prior to the submission and approval of an EP.  *See* 43 U.S.C. § 1340(c)(1) ("[P]rior to commencing exploration . . . [the lease holder] shall submit an exploration plan to the Secretary for approval."); 43 U.S.C. § 1340(e)(2) ("All exploration activities . . . shall be conducted in accordance with an approved exploration plan[.]"); *see also* 30 C.F.R. § 550.201 ("You must

---

[6] The Fifth Circuit "has defined 'operation' to be 'the doing of some physical act.'"  *Tennessee Gas*, 87 F.3d at 154 (quoting *Sea Robin*, 844 F.2d at 1207).

[7] BP attempts to expand the jurisdictional reach of § 1349(b) of the OCSLA by improperly conflating the OCSLA with the provisions of the Clean Water Act, as amended by the Oil Pollution Act of 1990 (the "OPA").  The OPA is not part of the OCSLA: "While OCSLA focuses on development of the outer continental shelf, the [OPA] focuses on the prevention of and response to oil spills."  *Native Village of Point Hope v. Salazar*, 680 F.3d 1123, 1127 (9th Cir. 2012) (citing 33 U.S.C. § 1321).  The OPA has its own jurisdictional provisions governing controversies arising under that statute.  *See* 33 U.S.C. § 1321(n); *see also Edwardsen v. U.S. Dep't of Interior*, 268 F.3d 781, 790-91 (9th Cir. 2001).  Accordingly, the OPA, including its provisions governing the submission of an oil spill response plan ("OSRP"), are irrelevant to an inquiry regarding the scope of the grant of jurisdiction under § 1349(b) of the OCSLA.  *See Native Village*, 680 F.3d at 1130 (explaining that an EP and an OSRP referenced in the EP are considered separately for jurisdictional purposes).

submit a(n) . . . Exploration Plan (EP), Before you . . . Conduct any exploration activities on a lease or unit."); *Native Village of Point Hope v. Salazar*, 680 F.3d 1123, 1127 (9th Cir. 2012) ("Before undertaking exploration activities in the leased area, the winning bidder must obtain the Secretary's approval of an exploration plan, and obtain many other permits and approvals.") (citation omitted).  An OSRP also must be submitted and approved before any exploration activities may occur.  *See* 30 C.F.R. § 550.219(a)(1)-(2) (requiring that an EP include an OSRP or a reference to an approved OSRP); *see also Native Village*, 680 F.3d at 1127 n.3 (explaining that in addition to an EP, an approved OSRP and other state and federal permits and approvals are required before undertaking any exploration activities); *c.f.*, *Sec'y of Interior v. California*, 464 U.S. 312, 338-39 (1984) ("Under the plain language of OCSLA, the purchase of a lease entails no right to proceed with full exploration, development, or production . . . the lessee acquires only a priority in submitting plans to conduct those activities.").[8]

Courts have held that pre-operations activities lacked a sufficient connection to later operations.  For example, in *Dominion Exploration*, the court held there was no jurisdiction under the OCSLA over a dispute involving a contract to paint a spar floating production facility, which had not yet been placed on the OCS.   2007 WL 4233562, at *1 (E.D. La. Nov. 27, 2007). "Simply because the spar would eventually be placed on the OCS [did] not give it the required operation to fall under the OCSLA jurisdiction." *Id*. at *3.[9]

---

[8] Subject to submission and approval of a written notice, certain limited "ancillary activities" may be allowed prior to the submission and approval of an EP.  *See* 30 C.F.R. § 550.207-210. The notice is subject to nearly the same standard of review as an EP.  *See* 30 C.F.R. §§ 550.209 and 202.  If the notice is deficient, all "ancillary activities" are prohibited until after the submission and approval of an EP.  *See* 30 C.F.R. § 550.209.  The Complaint does not discuss any "ancillary activities" and BP does not contend that Plaintiff's claims arise from any such activities.

[9] BP relies on a single case, *British Borneo Exploration, Inc. v. Enserch Exploration, Inc.*, 28 F.Supp.2d 999 (E.D. La. 1998), to support its argument that OCSLA jurisdiction reaches back to

Moreover, BP's argument relies on the inapplicable "but-for" test and fails to meet even that standard.  *See* BP Br. at 9-10 ("These filings . . . would not have been made but for BP's exploration and development operations on the outer Continental Shelf . . . [because] the filings at issue were required . . . as a precondition to any exploration or drilling on the outer Continental Shelf.").  The "connection" that BP seeks to create based on its circular argument does not support OCSLA jurisdiction.  For example, in *Mississippi ex rel. Hood v. Gulf Coast Claims Facility*, 2011 WL 5551773 (S.D. Miss. Nov. 15, 2011), the State of Mississippi sued the Gulf Coast Claims Facility ("GCCF") – the entity established by BP to fulfill its obligations under the OPA to process damages claims related to the *Deepwater Horizon* spill – alleging that GCCF's procedures for processing claims potentially violated the Mississippi Consumer Protection Act.  *Id.* at *2.  The court held there was no jurisdiction under the OCSLA despite the fact that the claims would not exist but-for BP's OCS operations:

> Neither OCSLA's plain language nor the Fifth Circuit's decisions interpreting it contain any indication that matters so far removed as these—occurring not on the outer Continental Shelf but doing business in Dublin, Ohio, and aimed not at the "exploration, development, or product of . . . minerals" but rather at "developing and publishing standards for recoverable claims" related to the Deepwater Horizon spill—fall within the purview of Section 1349(b)(1)[.]

*Id.* at *5 (footnotes omitted).[10]

---

encompass disputes relating to pre-operation conduct.  *See* BP Br. at 14.  However, the court's conclusion that the dispute was subject to OCSLA jurisdiction was based on a different provision than at issue here – the final provision of § 1349(b)(1)(A) that provides for original jurisdiction over any case or controversy "which involves rights to [OCS] minerals[.]"  *See id.* at 1006 ("[T]he statute itself also contemplates a controversy which 'involves rights' to OCS minerals. Certainly, the instant matter concerns such a controversy[.]").  In contrast to *British Borneo*, this is a securities fraud action brought because of BP's misrepresentations to investors – mineral rights are irrelevant to this case.

[10] The genesis of the Gulf Coast Claims Facility (the "GCCF") and the relationship between BP and the GCCF is detailed in Judge Barbier's February 2, 2011, order in MDL No. 2179.  *See In re Oil Spill by the Oil Rig "Deepwater Horizon"*, 2011 WL 323866 (E.D. La. Feb. 2, 2011).

Likely realizing the inapplicability of its "but-for" test, BP also tries to satisfy the correct legal standard, which requires that the action "affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally-owned resources." *EP Operating*, 26 F.3d at 570. BP speculates that its liability under state blue sky laws for the false statements made in its OSRP and EP might somehow affect the willingness of BP and other oil companies to undertake future operations on the OCS. *See* BP Br. at 22 ("If BP were subject to liability under Oregon securities laws … 'the efficient exploitation of resources on the Outer Continental Shelf' *very well could be affected*.") (emphasis added); BP Br. at 22 ("[A]ny legal exposure that arises in connection with the submission of EPs and OSRPs to the MMS *could affect* exploration on the outer Continental Shelf.") (emphasis added); BP Br. at 23 ("If liability were to attach under state law for statements in those submissions required by MMS regulations, exploration, development and production activities *could be affected*.") (emphasis added). The argument that a judgment for Plaintiff in this securities fraud case could somehow deter future exploitation is specious. Plaintiff seeks to recover damages caused by BP's fraudulent communications to investors, not to enjoin BP's OCS operations. In contrast, in the decisions in which disputes were held to affect the exploitation of resources on the OCS, there was an immediate and direct impact by resolution of the claims. *See EP Operating*, 26 F.3d at 570 ("[R]esolution of these ownership rights will facilitate the reuse, sale or salvage of these offshore facilities."); *Sea Robin*, 844 F.2d at 1210 ("Exercise of take-or-pay rights, minimum-take rights, or both, by Sea Robin necessarily and physically has an immediate bearing on the production of the particular well[.]"); *EP Operating*, 26 F.3d at 565-66 (action sought to force the partition of "an oil pipeline, a natural gas pipeline, an offshore platform and related processing facilities" located on the OCS); *United Offshore Co.*, 899 F.2d at 406-07 (dispute involved operation of natural gas

pipeline); *British Borneo Exploration, Inc. v. Enserch Exploration, Inc.,* 28 F. Supp. 2d 999,

1005 (E.D. La. 1998) ("Without the cloud on the title of these four blocks being resolved, further

development in the area cannot occur.").  Here, there is no basis to conclude that this litigation

will affect the use of resources on the OCS and BP's speculation is insufficient to support a

finding of removal jurisdiction.[11]

> **2.     Claims regarding BP's misstatements about oil flow rates and OMS**

Plaintiff's claims based on BP's misrepresentations of oil flow rates and OMS also do not

provide a basis for jurisdiction under the OCSLA.  As to the oil flow rate statements, BP's

primary argument is that the claims based on these ***statements*** (words, not physical acts), which

were spoken ***outside of the OCS***, are nonetheless connected to OCS operations because the

statements communicated information about an operation on the OCS.  BP Br. at 16.  However,

the mere fact that the subject matter of these statements concerned BP's Gulf operations is

insufficient to create OCSLA jurisdiction because these claims would not "affect the efficient

exploitation of resources from the OCS and/or threaten the total recovery of federally-owned

resources." *EP Operating*, 26 F.3d at 570.  Indeed, BP does not even attempt to explain how a

judgment in Plaintiff's favor as to the flow rate statements would have any effect whatsoever on

OCS operations.

---

[11] BP argues that OCSLA jurisdiction is confirmed by the carve-out for cases subject to § 1349(c) in § 1349(b).  BP Br. at 15.  Section 1349(c) vests the federal appellate courts with exclusive original jurisdiction over challenges to federal government decisions approving, requiring modifications of, or disapproving any leasing program, EP, or development and production plan ("DPP") under the OCSLA.  Section 1349(c) is an exception to the entirety of § 1349(b), which encompasses disputes involving rights to minerals on the OCS and cases "the cancellation, suspension, or termination of [an OCS] lease or permit."  All the exception shows is that, but-for § 1349(c), federal district courts would have original jurisdiction over challenges to federal government decisions approving, requiring modifications of, or disapproving any leasing program, EP, or DPP under the OCSLA.  It does not follow that § 1349(b)(1)(A) necessarily encompasses claims for violations of state securities laws relating to false statements made in an EP.

Also, the purported connection to OCS operations – that the statements simply referred to such operations – is far too tenuous and indirect to create jurisdiction.  Numerous courts have refused to find jurisdiction under the OCSLA where only a tangential connection to OCS operations existed.  For instance, in *LLOG Exploration Co. v. Certain Underwriters at Lloyd's of London*, 2007 WL 854307, at *3 (E.D. La. Mar. 16, 2007), the court concluded that the OCSLA did not extend jurisdiction to an after-the-fact insurance coverage dispute even though "the coverage dispute [was] the result of interruption and loss of production on the insured property" located on the OCS.  Despite the connection to OCS operations, there was no OCSLA jurisdiction because such a dispute "does not affect or alter the progress of production activities on the OCS, nor does it threaten to impair the total recovery of federally owned minerals from the OCS."  *Id*. at *15; *see also Landry v. Island Operating Co.*, 2009 WL 3241560, at *3 (W.D. La. Sept. 30, 2009) (even though negligent acts occurred during operations on the OCS, "[t]he manner in which plaintiff allegedly sustained injury simply bears too indirect and attenuated a relationship to any 'operation' on the OCS for defendants to be allowed to invoke OCSLA."); *Brooklyn Union*, 930 F.Supp. at 291-92  (remanding case even though the "dispute strictly concerns contractual provisions governing the price of gas" produced on the OCS); *NCX Co. v. Samedan Oil Corp.*, 2004 WL 203079, at *3 (E.D. La. Jan. 28, 2004) ("The instant litigation involves the contractual provisions regarding the payment/price of services which have been already rendered, not provisions governing production or development.").  The supposed connection to OCS operations here – based solely on the content of BP's statements – is even weaker than in these cases.

BP also argues that the false flow rate statements "were made in connection with the regulatory scheme under OCSLA and OPA that governs [OCS] operations."  BP Br. at 16-17.

This is both incorrect and irrelevant.  That one of the three flow rate statements was made during a joint press conference with BP and the Coast Guard does not mean the statements were made "in connection with" any regulatory scheme.[12]  Moreover, the point is irrelevant because a claim based on a statement made in connection with the OCSLA or OPA regulatory scheme does not create OCSLA jurisdiction.  There must be a connection *to operations on the OCS*, not simply a connection to a regulatory regime that is connected to the OCS.

BP also claims that the oil flow rate statements satisfy the "but-for" test because the Macondo operations caused the false oil flow rate statements to be made.  Aside from the fact that the "but-for" test is inapplicable as discussed above, the supposed connection identified by BP is far too indirect to be considered the "but-for" cause of Plaintiff's claims.  The claims also lack the required "nexus" with OCS operations because the oil flow rate statements did not "further [] mineral exploration and development activities" on the OCS and were not made "in the regular course of activities."  *See Recar*, 853 F.2d at 369; *Hufnagel*, 182 F.3d at 350.

Similarly flawed are BP's arguments in favor of jurisdiction based on the OMS misrepresentations.  The purported connection to OCS operations is that the information omitted from the misrepresentations concerned the OCS.  BP Br. at 17.  This supposed connection to OCS operations is even more tenuous than the purported connection for the oil flow rate statements.  Next, applying the inappropriate but-for test, BP argues that the OMS statements would not be false without the OCS operations.  Not only is that untrue (because BP

---

[12] To argue, incorrectly, that the statements were made in connection with a regulatory scheme, BP relies on factual assertions that are not contained within the Complaint and which lack any evidentiary basis.  *See* BP Br. at 15-16 (making numerous unsupported statements about the "Unified Command" and BP's supposed participation in that structure).  The Court should not credit these assertions.  *See Boone v. Citigroup Inc.*, 416 F.3d 382, 388 (5th Cir. 2005) ("A motion to remand is normally analyzed with reference to the well-pleaded allegations of the complaint, which is read leniently in favor of remand under a standard similar to Rule 12(b)(6).").

misrepresented the applicability of OMS generally, not simply as to the Gulf of Mexico) but it attempts to extend the but-for test to an unprecedented and unjustified extent. Under the standard advocated by BP, almost any securities fraud case against an oil company would fall under the OCSLA. For example, a case alleging accounting fraud by an oil company would be subject to the OCSLA because the company's revenues would be derived from OCS operations and therefore the fraud claims would not exist but for the OCS operations. In order to avoid such absurd results, courts routinely narrow the concept of connectivity to realistic limits. *See, e.g.*, *Landry*, 2009 WL 3241560, at *3 ("Defendants' theory, taken to its logical conclusion, would essentially immunize them from state courts (or give them unqualified powers of removal to federal court) simply through the nature of their industry. Such a suggestion does not comport with the regulatory scheme Congress set out to create when fashioning the remedies afforded under OCSLA. Congress could not have intended so drastic a remedy."); *Gavin v. AT&T Corp.*, 464 F.3d 634, 639 (7th Cir. 2006) (interpreting another federal statute and holding but-for causation insufficient to show fraud was "in connection with" securities transaction; "Of course there is a literal sense in which anything that happens that would not have happened but for some prior event is connected to that event. In that sense the fraud of which the plaintiff complains is connected to the merger, without which there would not have been such a fraud against the plaintiff and her class. But in the same sense the fraud is connected to the Big Bang, without which there would never have been a MediaOne or even an AT&T.").

The conclusion that there is no OCSLA jurisdiction for claims based on the OMS statements is further demonstrated by the fact that the statements do not relate to any specific site on the OCS. This is significant, because the OCSLA relates only to claims involving a particular site of operation. *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 217, 219 (1986) ("The

14

general scope of OCSLA's coverage . . . [is] determined principally by locale").  It is not enough to construe these statements as referring to the Gulf of Mexico generally – the OCSLA assumes there is a particular site on the OCS that gives rise to the claim, as reflected by the fact that the law applicable to OCSLA actions is supplemented by the "state law of ***the adjacent state***[.]"  *See Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 328 (5th Cir. 1987) ("[T]he Supreme Court . . . stated that the law to be applied in actions governed by the OCSLA is 'federal law, supplemented by state law of the adjacent state[.]'") (quoting *Rodrigue v. Aetna Cas. Co.*, 395 U.S. 352, 355 (1969)).  Of course, there is no single state adjacent to the entire Gulf of Mexico.[13]

### C.     BP's Position is Inconsistent With the Authority Applying the Proper Standard under Section 1349(b)

BP fails to reconcile its broad "but for" test with the numerous decisions that have applied the proper standard under § 1349(b) to reject jurisdiction over disputes involving economic harm that are only tangentially related to a parties' offshore operations.

BP dismisses as irrelevant *LLOG Exploration* without explaining how that decision could be reconciled with its broad "but-for" test.  BP Br. at 24.  *LLOG Exploration* is highly relevant to the instant case because it demonstrates that a tangential or remote connection to operations on the OCS – even a tangential or remote causal connection – is insufficient to establish OCSLA jurisdiction.  Indeed, the court in *LLOG Exploration* remanded the case to state court despite acknowledging that the dispute could be traced back to damages suffered by OCS operations and facilities.  *See* 2007 WL 854307 at *3 (noting that "the coverage dispute [was] the result of interruption and loss of production on the insured property" located on the OCS).  The court

---

[13] For the same reason, the claims based on misrepresentations in the OSRP lack any connection to a particular site on the OCS.  *See* Complaint ¶ 161 (explaining that the OSRP covered "a massive area, including all of the United States' interests in the Gulf of Mexico" encompassing "the coastal waters of Texas, Louisiana, Alabama, Mississippi, and Florida").

concluded that the OCSLA did not extend jurisdiction to an after-the-fact coverage dispute because such a dispute "does not affect or alter the progress of production activities on the OCS, nor does it threaten to impair the total recovery of federally owned minerals from the OCS." *Id.* at *15.

BP also dismisses *Brooklyn Union* and *NCX* without making any effort to reconcile those decisions with its broad "but-for" test. BP Br. at 24. Again, those decisions show that substantially more than a remote connection to the OCS is required to establish jurisdiction under the OCSLA. In each case the court held that it had no jurisdiction over an after-the-fact dispute concerning the price paid for natural gas even though the gas had been produced on the OCS. *See Brooklyn Union*, 930 F.Supp. at 291-292 ("[T]he present dispute strictly concerns contractual provisions governing the price of gas, not provisions governing its production or development"); *NCX*, 2004 WL 203079, at *3 ("The instant litigation involves the contractual provisions regarding the payment/price of services which have been already rendered, not provisions governing production or development.").

The same is true of *Harris Trust and Savings Bank v. Energy Assets International Corp.*, 124 F.R.D. 115 (E.D. La. 1989). The dispute in that case – concerning rights in the proceeds and products from an oil and gas lease on the OCS – would not have arisen but-for OCS operations. *Id.* at 119. Yet BP dodges the question of how its broad "but-for" test can be reconciled with that case.

Likewise, BP dismisses *Dominion Exploration* without any meaningful attempt to distinguish that decision or to fit that decision into its broad "but-for" test. BP Br. at 25 n.14. However, that decision again highlights the inadequacy of BP's justification for its removal of this action – jurisdiction does not extend to every dispute having any connection to the OCS.

Although *Dominion Exploration* involved claims for breach of an agreement for the painting of

an offshore spar floating production facility, the court concluded that it did not have jurisdiction

over the dispute because "[t]he breached paint agreement [did] not alter the flow of production or

otherwise affect the efficient exploitation of natural resources on the OCS[.]"  2007 WL 4233562

at *5.  BP splits hairs by arguing that the action "only delayed, but did not impair" operations on

the OCS, BP Br. at 25 n.14, but in doing so concedes that the appropriate inquiry is indeed

whether the claim will affect efficient exploitation of resources from the OCS.[14]


/ / /


/ / /


/ / /


/ / /

---

[14] In addition, BP attempts to avoid *Gulf Island, L.L.C. v. J. Ray McDermott, Inc.*, 2005 WL
180947 (E.D. La. Jan. 26, 2005), and *ANR Pipeline Co. v. Conoco, Inc.*, 646 F. Supp. 439 (W.D.
Mich. 1986), by incorrectly contending that the resolution of the jurisdictional question in those
cases depended upon an improper application of the well-pleaded complaint rule.  The court in
*ANR Pipeline* expressly held that it lacked jurisdiction regardless of the application of the well-
pleaded complaint rule.  *See* 646 F. Supp. at 442 ("I disagree with defendant's conclusion
[regarding application of the well-pleaded complaint rule], but for analytical reasons I will
present the argument as defendant has framed it.").  And in *Gulf Island*, the court merely noted
the well-established rule that "a case 'cannot be made removable by any statement in the petition
for removal or in subsequent pleadings by the defendant.'"  2005 WL 180947 at *2.  BP also
dismisses the *Gulf Island* case as "far afield from this action", but fails to explain how a dispute
concerning a drilling rig topsides to be used on the OCS could fall beyond the jurisdictional
reach of OCSLA under BP's broad "but for" test.  *See id.* at *3 ("The breach of contract over
completed topsides that is set forth in [plaintiff]'s complaint will neither affect work on the OCS
nor threaten the recovery of resources from the OCS.")

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to remand this case to

Multnomah County Circuit Court and award fees and costs to Plaintiff.


DATED this 11th day of July, 2012.

Respectfully submitted,

STOLL STOLL BERNE LOKTING &              OREGON DEPARTMENT OF JUSTICE
SHLACHTER PC


_/s/ Jacob S. Gill_____              Keith S. Dubanevich
Gary M. Berne                                      Associate Attorney General
Scott A. Shorr                                     S.D.Tex Bar # 1451
Jacob S. Gill                                      Frederick M. Boss
209 SW Oak Street, Suite 500                       Chief Counsel Civil Enforcement Division
Portland, OR  97204                                1162 Court Street, N.E.
Telephone:  (503) 227-1600                         Salem, Oregon 97301
Facsimile:  (503) 227-6840                         Telephone: (503) 378-6002
gberne@stollberne.com                              Facsimile: (503) 378-4017
sshorr@stollberne.com                              keith.dubanevich@doj.state.or.us
jgill@stollberne.com                               fred.boss@doj.state.or.us

                                                   COHEN MILSTEIN SELLERS & TOLL
                                                   PLLC

                                                   Steven J. Toll
                                                   Julie Goldsmith Reiser
                                                   Joshua M. Kolsky
                                                   1100 New York Avenue, NW #500
                                                   Washington, D.C. 20005
                                                   Telephone:  (202) 408-4600
                                                   Facsimile:  (202) 408-4699
                                                   stoll@cohenmilstein.com
                                                   jreiser@cohenmilstein.com
                                                   jkolsky@cohenmilstein.com

                                                   *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served by

electronic CM/ECF filing on this 11th day of July, 2012.


/s/  Jacob S. Gill
Jacob S. Gill