UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: BP P.L.C. SECURITIES LITIGATION | No. 4:10-md-02185 |
| | Honorable Keith P. Ellison |
| THIS DOCUMENT RELATES TO: Ohio Public Employees Retirement System, et al. v. BP p.l.c., et al. No. 1:12–01291 | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION TO REMAND**

I. **INTRODUCTION**

Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand (Dkt #407) confirms the truly unprecedented reach of jurisdiction they are asking this Court to exercise under the Outer Continental Shelf Lands Acts ("OCSLA" or the "Act"). Despite the remand motion's explicit challenge (Dkt #384), Defendants cannot cite a single case in which a court has ever exercised OCSLA jurisdiction over an action, such as this, claiming violations of state common law and state securities law in connection with the purchase of securities. In fact, Defendants fail to cite any case in which a court has exercised OCSLA jurisdiction over any claim that was even remotely similar.

Instead, Defendants urge the court to adopt an inapplicable "but-for" causal test that would sweep within the Act's jurisdiction any claim even remotely related to operations on the outer Continental Shelf ("OCS"), including Defendants' alleged misconduct for securities-related misrepresentations. The Fifth Circuit and other district courts have consistently refused to interpret OCSLA jurisdiction so expansively – indeed, no court has come close to exercising jurisdiction as broadly as that now suggested by Defendants.

The reality is that Plaintiffs' state-law securities and fraud claims are simply too attenuated and distant from any production activity on the OCS to subject them to OCSLA jurisdiction. To hold otherwise would completely unmoor the Act from its focused role in addressing the operations on the OCS that involve "exploration, development, and production of the minerals of the outer Continental Shelf" by protecting the safety of individuals working on the OCS and ensuring the efficient exploitation of resources therefrom. 43 U.S.C. § 1332. Were Defendants' arguments to be accepted, any action that arguably affected the profits or operations of a multi-national company would be subject to the Act, so long as at least some of their

operations or profits even remotely concerned the OCS. This is not and cannot be the law. The OCSLA does not grant this Court jurisdiction over Plaintiffs' state-law claims, and Plaintiffs' Motion to Remand must therefore be granted.

## II.     ARGUMENT

Defendants have based removal jurisdiction solely upon § 1349(b)(1) of the OCSLA. This provision grants federal district courts subject matter jurisdiction over "cases and controversies arising out of, or in connection with any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . . ." 43 U.S.C. § 1349(b)(1). Congress's stated purpose in passing the OCSLA was to ensure that "operations in the [OCS] be conducted in a safe manner . . . to prevent or minimize the likelihood of [damage or injury] to other users or subsoil and seabed, or other occurrences which may cause damage to the environment or to property, or endanger life or health." 43 U.S.C. § 1332(6). Nothing in the Act or its legislative history suggests that Congress intended the OCSLA to provide federal jurisdiction over wholly state-law securities claims bearing only a tangential connection to operations on the OCS.

Nevertheless, Defendants attempt to construe the OCSLA as creating nearly limitless federal jurisdiction over any claim having some remote tie to the OCS. The Fifth Circuit and other courts have repeatedly rejected such arguments and interpret the OCSLA's jurisdictional grant as excluding claims, such as these, that are too attenuated and distinct from any activity on the OCS to fall within the OCSLA's jurisdictional reach.

### A. Defendants' Urged Jurisdictional Tests Are Contrary to Binding Precedent.

#### 1. Defendants' Authority For Its Proposed "But-For" Test or Any Similarly Broad Reading of § 1349(b)(1) Is Wholly Inapplicable.

2

Defendants contend that this Court enjoys jurisdiction over the instant case because the "[c]ourts have applied a 'broad 'but-for' test' in analyzing whether a case 'aris[es] out of or in connection with' operations on the outer Continental Shelf." (Opp. at 7.) This categorical statement conveniently fails to delineate between two very different types of cases: those involving claims for personal injuries or property damage on or related to OCS operations and other cases that involve contractual or other commercial types of causes of action. While the but-for test may apply to the former category, it does not apply at all to the latter – and Plaintiffs' claims indisputably fall into the latter category.

The but-for test advocated by Defendants has only been applied to claims for physical injury or property damage involving operations on the OCS. *See Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 155 (5th Cir. 1996) (damage to platform on OCS from collision with vessel); *Texaco Exploration & Prod. v. Amclyde Engineered Prods.*, 448 F.3d 760, 769 (5th Cir. 2006) (accident during construction of oil platform on OCS); *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988) (physical injury to platform repairman on OCS); *Barker v. Hercules Offshore, Inc.*, 2011 U.S. Dist. LEXIS 9400, at *15 (S.D. Tex. Feb. 1, 2011) (injured rig welder); *In re Oil Spill*, 747 F. Supp. 2d 704, 706 (E.D. La. 2010) (harm to wildlife from platform explosion on the OCS). Defendants' opposition fails to cite a single case to the contrary. Indeed, the but-for test has **never** been applied to an action that does not involve claims for physical or property damage, let alone an action alleging violations of state securities law.[1] *See, e.g., Brooklyn Union Exploration Co., Inc. v. Tejas Power Corp.*, 930 F.Supp. 289

---

[1] The United States Supreme Court's recent decision in *Pacific Operators Offshore, LLP v. Valladolid*, -- U.S. --, 132 S.Ct. 680 (2012) calls into doubt whether the "but for" test remains appropriate in any context at all. There, the Court considered whether claims brought pursuant to § 1333(b) would apply to a worker who was killed while working at his employer's onshore facilities (*i.e.,* not on the OCS) when he spent approximately 98 percent of his time on the OCS. *Id.*, 132 S.Ct. at 684. Although *Pacific Operators* concerned the substantive provisions of § 1333, rather than the jurisdictional provisions of § 1349, the Supreme Court rejected a "but for" test under the OCSLA:

3

(S.D. Tex. 1996) (rejecting application of the "but for" test outside personal injury and property damage cases where it is "not particularly useful for determining jurisdiction").

### 2. Applicable Fifth Circuit Precedent Limits OCSLA Jurisdiction to Cases that Will Impede the Efficient Exploitation of Resources From the OCS.

For cases that do not allege injury to persons or property, in contrast, the Fifth Circuit and District Courts have consistently interpreted the OCSLA as providing jurisdiction only over actions whose resolution would impede the efficient exploitation of minerals from the OCS. *See Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1210 (5th Cir. 1988). This distinction has been drawn to effect Congress's "primary purpose" of ensuring the efficient exploitation of minerals from the OCS. Consequently, the Act's jurisdictional reach has been limited to those cases that implicate this stated purpose. *See Amoco*, 844 F.2d at 1210 ("[T]he efficient exploitation of the minerals of the OCS . . . was at least a primary reason for OCSLA."); *EP Operating Ltd. Partnership v. Placid Oil Co.*, 26 F.3d 563, 570 (5th Cir. 1994) (noting that the efficient exploitation test was adopted to identify "any dispute that . . . was intended by Congress to come within the jurisdictional grant of section 1349"); *NCX Co. v. Samedan Oil Corp.*, 2004 U.S. Dist. LEXIS 1338, at *9 (E.D. La. Jan. 28, 2004) (noting that a case that does not impact the efficient exploitation of resources "simply . . . does not implicate the interest expressed by Congress" in enacting the OCSLA). In turn, OCSLA jurisdiction arises only when a claim "directly affects" operations on the OCS or is "intimately connected" with such an

---

> Taken to its logical conclusion, the 'but for' test would extend workers' compensation coverage to all employees of a business engaged in the extraction of natural resources from the OCS, no matter where those employees work or what they are doing when they are injured. This test could reasonably be interpreted to cover land-based office employees whose jobs have virtually nothing to do with extractive operations on the OCS.

*Id.*, -- U.S. at --, 132 S.Ct. at 689. Instead, the Supreme Court sanctioned a "substantial nexus" test, which "require[s] the injured employee to establish a significant causal link between the injury that he suffered and his employer's on-OCS operations conducted for the purpose of extracting natural resources from the OCS." *Id.*, -- U.S.. at --, 132 S.Ct at 690. This reasoning, if applied to determining the scope of § 1349(b) in the instant case, again would compel the conclusion that this Court lacks jurisdiction over Plaintiffs' state law claims.

operation. *See*, *e.g.*, *British Borneo Exploration, Inc. v. Enserch Exploration, Inc.*, 28 F. Supp. 2d 999, 1005 (E.D. La. 1998); *Llog Exploration Co., L.L.C. v. Certain Underwriters at Lloyd's of London*, 2007 U.S. Dist. LEXIS 90716, at *12-15 (E.D. La. Mar. 15, 2007); *Gulf Island, L.L.C. v. J. Ray McDermott, Inc.*, 2005 U.S. Dist. LEXIS 1117, at *8 (E.D. La. Jan. 26, 2005). Claims that are merely indirect or tangential are "too attenuated" and will not suffice. *See*, *e.g.*, *ANR Pipeline Co. v. Conoco, Inc.*, 646 F. Supp. 439, 444 (W.D. Mich. 1986) (rejecting jurisdiction over connection to the OCS that was "too attenuated" and not "direct"); *see also Dominion Exploration & Prod. v. Ameron Int'l Corp.*, 2007 U.S. Dist. LEXIS 87476, at *15-16 (E.D. La. Nov. 27, 2007 (contract dispute lacked "substantial nexus" with production).

Contrary to Defendants' suggestion, the efficient exploitation test has been repeatedly reaffirmed by the Fifth Circuit in determining the reach of OCSLA jurisdiction. *See*, *e.g.*, *Amoco*, 844 F.2d at 1210; *EP Operating*, 26 F.3d at 570; *United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1990).[2] Plaintiffs' claims here – for fraud and securities-related misrepresentations – clearly fall within the category of claims to which the efficient exploitation test applies and not the "but-for" test suggested by Defendants.

B. **Under the Proper Jurisdictional Inquiry, This Court Lacks Jurisdiction Over Plaintiffs' State-Law Securities and Fraud Claims.**

At the outset, it must be reiterated that Defendants' opposition identifies only a handful of allegations in Plaintiffs' 191-page Complaint that Defendants say establish jurisdiction under the OCSLA. Indeed, the vast majority of misstatements identified in the Complaint are not in any way limited to BP's operations on the OCS but allege fraudulent misstatements across its

---

[2] Federal district courts have also consistently applied the efficient exploitation test. *Llog Exploration*, 2007 U.S. Dist. LEXIS 90716, at *15; *British Borneo*, 28 F. Supp. 2d at 1005; *Brooklyn Union*, 930 F. Supp. at 292; *NCX*, 2004 U.S. Dist. LEXIS 1338, at *4; *Dominion Exploration*, 2007 U.S. Dist. LEXIS 87476, at *15-16; *Gulf Island*, 2005 U.S. Dist. LEXIS 1117, at *8; *Harris Trust & Sav. Bank v. Energy Assets International Corp.*, 124 F.R.D. 115, 119 (E.D. La. 1989).

5

global operations. In any event, Defendants have failed to carry their burden of demonstrating how resolution of *any* of Plaintiffs' claims falls under the OCSLA's jurisdictional reach, and Plaintiffs' Motion to Remand must therefore be granted.

### 1. Plaintiffs' Claims Will Not Disrupt the Efficient Exploitation of Resources.

When this proper interpretation of the OCSLA is applied, it is clear that § 1349(b)(1) does not grant this Court jurisdiction over Plaintiffs' state law securities and fraud claims. Resolution of this action will have no impact on the efficient exploitation of minerals from the OCS in the future: at issue are the falsity and materiality of certain misstatements disseminated by Defendants to Plaintiffs in Ohio, none of which will affect the nature, quality, or quantity of minerals extracted from the OCS. (Mot. at 9-11.) Plaintiffs seek only monetary damages for the past impact of these misstatements on BP's ordinary share price. Notably, the Complaint does not seek an injunction nor any other type of relief that would require any change to ongoing extraction operations on the OCS.

In response, Defendants argue only hypothetically that resolution of this case "could affect" or "could very well" affect operations on the OCS. (Opp. 16-19.) The only specific argument Defendants raise in support of this point is that if they "were subject to liability . . . other companies could face the possibility of such liability," which in turn might somehow affect the statements other companies operating on the OCS could make in their future exploration plans. (*Id*. at 18.) Such a speculative, indirect connection, however, is insufficient to constitute the "direct" and "intimate" connection with production operations on the OCS necessary to meet the efficient exploitation test. *See Llog Exploration*, 2007 U.S. Dist. LEXIS 90716, at *15; *Gulf Island*, 2005 U.S. Dist. LEXIS 1117, at *4; *see also Brooklyn Union*, 930 F. Supp. at 292 (rejecting argument that effect of a contract dispute should be determined by looking at the impact of all such contracts on production "as a whole," because "[t]his argument . . .

contravenes the spirit of multiple Fifth Circuit opinions *stressing the importance of isolating the particular . . . dispute* for purposes of determining jurisdiction") (emphasis added). Indeed, Defendants have made no showing whatsoever – as it is their burden to do as the removing party, *Manungo v. Prudential Prop. and Casualty Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) – that resolution of Plaintiffs' claims will impact the exploitation of resources on the OCS.

### 2. Defendants' Reliance on the MMS and OPA to Establish Jurisdiction Is Misplaced.

The bulk of Defendants' opposition rests on the premise that jurisdiction is proper because a handful of the misstatements alleged by Plaintiffs were made by Defendants in submissions to the Minerals Management Service ("MMS") of the U.S. Department of the Interior. (Opp. at 9.) In particular, Defendants aver that they were required to submit an exploration plan ("EP") as well as an oil spill response plan that satisfies the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*, in compliance with numerous statutory and regulatory requirements.[3] (*See id*. at 9-16.) In addition, Defendants note that several of the misstatements concern the rate at which oil flowed into the Gulf after the *Deepwater Horizon* explosion. (*Id*.) Defendants insist that these allegations establish jurisdiction because such misstatements would not have been made "but for" Defendants' activities on the OCS and were "necessary for eventual recovery of resources from the" OCS. (*Id*. at 13.)

This argument fails to provide a basis for jurisdiction. As noted above, it rests solely on a but-for causal test that is simply inapplicable to Plaintiffs' claims. *See supra*, pp. 4-5.

---

[3] Defendants invoke the OPA as yet another basis to establish jurisdiction under § 1349(b)(1), contending that "OCSLA and OPA are closely related statutes" that "set forth an extensive scheme governing offshore oil exploration," including the submission of an OSRP. (Opp. at 9 & n. 7.) These are, however, two different statutes with entirely different purposes. As the Ninth Circuit recently noted, the "OCSLA focuses on development of the outer continental shelf" whereas the OPA "focuses on the prevention of and response to oil spills." *Native Village of Point Hope v. Salazar*, 680 F.3d 1123, 1127 (9th Cir. 2012). The OPS has its own independent jurisdictional provisions. *See* 33 U.S.C. § 1321(n). Accordingly, the OPA's provisions concerning the submission of an OSRP do not expand the jurisdictional scope of § 1349(b)(1) of the OCSLA. Indeed, they are irrelevant. *See Native Village*, 680 F.3d at 1130 (concluding that an EP and an OSRP are considered separately in any jurisdictional analysis).

7

Accordingly, the courts have consistently rejected similar bases for OCSLA jurisdiction in which operations on the OCS constituted a but-for prerequisite to a claim's existence, but where resolution of the claim would not otherwise impact the efficient exploitation of resources from the OCS. For example, in *Llog Exploration*, the court held that OCSLA jurisdiction did not exist over an insurance dispute relating to a policy covering oil rigs affixed to the OCS after they were damaged by hurricanes in the Gulf. 2007 U.S. Dist. LEXIS 90716, at *15. The policy had been created solely because of the operation of the rigs on the OCS and would not have arisen absent their damage thereon, yet jurisdiction did not arise because resolution of the claim would not impair the future production of minerals. *Id*. Similarly, in *Brooklyn Union* the court held that it did not have jurisdiction over a contract dispute regarding the price of gas extracted from the OCS, even though the contract would not have existed but-for the extraction of minerals from the OCS. 930 F. Supp. at 292. In *Harris Trust* the court held there was no jurisdiction over a priority dispute between holders of mortgages covering leases on the OCS, despite that the leases existed for the purpose of conducting extraction operations on the OCS. 124 F.R.D. at 119-20.

In fact, at least one court has already considered – and rejected – Defendants' contention that, because Plaintiffs' claims are in some way related to the *Deepwater Horizon* spill on the OCS, federal removal jurisdiction necessarily exists under § 1349(b)(1). *See Mississippi ex rel. Hood v. Gulf Coast Claims Facility*, 2011 U.S. Dist. LEXIS 132116, at *1 (S.D. Miss. Nov. 15, 2011). Despite the defendant's argument that the payment oversight organization being investigated could not have existed but-for the *Deepwater Horizon* explosion, the court determined it had no jurisdiction and remanded the case. *Id*. at *15-16. It cautioned against precisely the nearly limitless bounds of jurisdiction Defendants claim here:

> [T]o view OCSLA's scope so far-reaching as does [defendant] would render [defendant]'s every potentially actionable decision a federal case,

> be it related to the claims process at hand or a [defendant] employee's car wreck en route to the office. Neither OCSLA's plain language nor the Fifth Circuit's decisions interpreting it contain any indication that matters so far removed as these – occurring not on the outer Continental Shelf but doing business in Dublin, Ohio, and aimed not at the "exploration, development, or product of . . . minerals" . . . – fall within the purview of Section 1349(b)(1) . . . . Therefore, OCSLA does not apply and is not a proper basis for federal jurisdiction.

*Id.* (internal citations and footnotes omitted).

The great weight of authority has, therefore, rejected the sort of but-for relation to OCS operations urged by Defendants to establish jurisdiction. The reason for this limitation is obvious: A but-for causal test, such as Defendants advise, would create nearly unlimited federal jurisdiction over cases having only a remote or tangential connection to ongoing operations on the OCS. *See ANR*, 646 F. Supp. at 445 (rejecting argument that Congress intended to confer the "widest possible jurisdiction on federal courts to address *any* legal controversy related to the Outer Continental Shelf") (emphasis in original). No court has ever reached such a result, and for good reason – all of the precedent previously discussed counsels against it. Even though Defendants' MMS submissions were necessary to commence operations on the OCS, this fact, by itself, cannot establish jurisdiction under the OCSLA, as resolving these claims will in no way impact future exploration on the OCS. The same is true for resolution of the materiality and falsity of Defendants' misstatements regarding the rate of oil leakage following the *Deepwater Horizon* disaster. This Court does not have jurisdiction over Plaintiffs' claims.

### C. **Jurisdiction Is Also Improper Because Plaintiffs' Claims Do Not Arise On An OCSLA Situs.**

In their opposition, Defendants effectively concede that Plaintiffs' claims for securities law violations and fraud do not arise on an OCSLA situs. Instead, Defendants argue that the OCSLA does not impose a situs requirement at all in determining the Act's jurisdictional reach but, rather, that the situs requirement applies only to the OCSLA's concurrent extension of

9

substantive federal law to the seabed, the subsoil, and the fixed structures on the OCS. (Opp. at 20-25.) The Fifth Circuit, however – in a case Defendants themselves rely on for various points – has rejected this argument and held that the jurisdictional and substantive law reaches of the OCSLA are commensurate, noting that the "most consistent reading of the [OCSLA] is that the jurisdictional grant of section 1349 should be read co-extensively with the substantive reach of section 1333." *EP Operating*, 26 F.3d at 569. As a result, jurisdiction under the OCSLA only exists over those claims where the Act also extends substantive law, *i.e.*, to situses located on the OCS. *See Golden v. Omni Energy Serv.*, 242 Fed. Appx. 965, 966-67 (5th Cir. 2007).

Defendants would dismiss *Golden* as "wrongly decided," but while the case is not binding precedent under the Fifth Circuit's local rules, its reasoning nonetheless remains persuasive. Indeed, the Fifth Circuit has not overturned the decision, nor has it provided any other guidance regarding the interpretation of OCSLA jurisdiction. At least one district court has relied on *Golden* in noting that OCSLA jurisdiction extends only to claims arising on a situs governed by the OCSLA. *See Landry v. Island Operating Co.*, 2009 U.S. Dist. LEXIS 90806, at *6-9 (W.D. La. Sept. 30, 2009). The current case perfectly illustrates the appropriateness of the situs requirement in limiting the reach of OCSLA jurisdiction: the misstatements affecting the price of BP securities as well as the injuries suffered by Plaintiffs all occurred outside the OCS, and Plaintiffs' claims are governed exclusively by Ohio state law. Congress did not intend for the OCSLA to wrest jurisdiction over claims from state court in favor of distant federal courts with no federal interest in the matter. As noted, the proper result obtains by applying either the situs requirement or the requirement of a demonstrated impairment of production operations.

### III.   CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion to Remand (Dkt #384).

Respectfully submitted,

MICHAEL DEWINE
Attorney General of Ohio

By: /s/ Brian P. Muething
Gregory M. Utter (*admitted pro hac vice*)
Paul V. Muething (*admitted pro hac vice*)
Brian P. Muething (*admitted pro hac vice*)
W. Jeffrey Sefton (*admitted pro hac vice*)
KEATING, MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6400
Fax: (513) 579-6457
gmutter@kmklaw.com
pmuething@kmklaw.com
bmuething@kmklaw.com
jsefton@kmklaw.com

J. Pierre Tismo, Esq. (*admitted pro hac vice*)
Dyer, Garofalo, Mann & Schultz
131 N. Ludlow St., Suite 1400
Dayton, OH 45402
Phone: (937) 223-8888
Toll Free: (800) 223-8897
Fax: (937) 824-8630
ptismo@dgmslaw.com

*Attorneys for Plaintiffs, Ohio Public Employees Retirement System, the State Teachers Retirement System of Ohio, the School Employees Retirement System of Ohio, and the Ohio Police & Fire Pension Fund*
*Special Counsel for the Attorney General*

OF COUNSEL

BERMAN DEVALERIO
Glen DeValerio
Kristin J. Moody
Steven J. Buttacavoli
One Liberty Square
Boston, MA 02109
Phone: (617) 542-8300
Fax: (617) 542-1194

BLOCK & LEVITON LLP
Jeffrey C. Block
Jason M. Leviton

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of August, 2012, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Frances Floriano Goins
Isaac J. Eddington
ULMER & BRENE LLP
Skylight Office Tower
1660 West 2nd St., Suite 1100
Cleveland, Ohio 44113-1448

OF COUNSEL:

Richard C. Pepperman, II
Marc De Leeuw
SULLIVAN & CROMWELL LLP
125 Broad St.
New York, New York 1004-2498

Daryl A. Libow
Amanda F. Davidoff
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5805

              /s/ Brian P. Muething
              Brian P. Muething

4487350.5