UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: BP p.l.c. § | | MDL No. 10-md-2185 |
| SECURITIES LITIGATION § | | |
| § | | |
| § | | |
| § | | |
| THE STATE OF OREGON § | | Civ. Act. No. 4:12-cv-1836 |
| § | | |
| v. § | | |
| § | | HON. KEITH P. ELLISON |
| BP P.L.C. et al. § | | |
| § | | |

**MEMORANDUM AND ORDER**

The State of Oregon ("Plaintiff"), on behalf of several state funds, originally brought this case in Oregon state court against Defendants BP P.L.C.; BP America, Inc.; and BP Exploration & Production, Inc. ("Defendants"). Plaintiff alleges that Defendants violated Oregon's security law and committed common law fraud, which artificially inflated the price of ordinary shares in Defendant BP P.L.C. and caused the state funds to lose considerable value following the Deepwater Horizon disaster in the Gulf of Mexico. Defendants removed the case to federal court, claiming federal question jurisdiction on the basis of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1). Pending before the Court is Plaintiff's Motion to Remand (Doc. No. 7).[1] Having considered the parties' pleadings, arguments, and the applicable law, the Court finds that Plaintiff's motion must be **DENIED**.

I.      BACKGROUND AND REMOVAL

Plaintiff filed its lawsuit against Defendants in the Circuit Court of the State of Oregon, County of Multnomah, on April 19, 2012. (Complaint ("Compl."), Doc. No. 1-1.) Broadly,

---

[1] All docket references are to Civil Action No. 12-cv-1836.

Plaintiff claims that Defendants made materially false statements that induced the state funds to purchase BP ordinary shares at artificially high prices on the London Stock Exchange from May 2007 through May 2010. (*Id.* ¶¶ 2-3.) These alleged misrepresentations include: (1) that BP had improved process safety as measured against the Baker Panel recommendations; (2) that BP's Operating Management System ("OMS") had been extended to all BP operations; (3) that BP had transitioned to OMS in the Gulf of Mexico in 2008; (4) that BP could respond to and contain a significant oil spill in the Gulf; and (5) that the spill-rate following the Deepwater Horizon explosion was much lower than internally estimated.[2] (*Id.* ¶ 2.) Plaintiff alleges that the price of BP's ordinary shares was artificially inflated as a result of BP's misrepresentations, and that the state funds suffered $18.8M in losses after the Deepwater Horizon disaster. (*Id.* ¶ 3.) Plaintiff sues for recovery under Oregon's blue sky law (*id.* ¶¶ 363-71) and for common law fraud (*id.* ¶¶ 372-78).

On May 22, 2012, Defendants removed this action from Oregon state court to the District of Oregon. (Doc. No. 1.) Defendants claimed that removal was justified because the action was "subject to the jurisdiction of the federal courts under the Outer Continental Shelf Lands Act." (*Id.* at ¶ 1.)

The same day that the action was removed, Defendants requested that the Judicial Panel on Multidistrict Litigation ("JPML") transfer the action to the Southern District of Texas, which had already been assigned responsibility for federal securities and ERISA cases arising out of the Deepwater Horizon disaster. (Doc. No. 3-1.) After Plaintiff withdrew its initial opposition to the transfer (Doc. No. 16-1), the JPML approved the transfer on June 19, 2012 (Doc. No. 16).

---

[2] A more complete statement of the facts underlying Plaintiff's claims can be found in the Court's February 13, 2012 orders on motions to dismiss filed in the related federal securities class action. (Doc. Nos. 323 and 324, *In re: BP plc Sec. Litig.*, 10-md-2185.)

2

## II. PLAINTIFF'S MOTION TO REMAND

Plaintiff moves for remand to Oregon state court. (Doc. No. 7.) Plaintiff disputes that the OSCLA gives the Court jurisdiction over its state-law securities and common law claims. Plaintiff argues that, under Fifth Circuit law, the OCSLA confers federal jurisdiction only if the case or controversy would "affect the efficient exploitation of resources" from the Outer Continental Shelf ("OCS"). (Doc. No. 8, at 15.) Plaintiff claims that resolution of this case will have no effect on extractive operations on the OCS. (*Id*. at 21.) Additionally, Plaintiff argues that OSCLA jurisdiction cannot exist because the substantive law of the OCSLA does not apply to Plaintiff's claims, and the Fifth Circuit has held that OCSLA's jurisdictional and substantive law provisions should be read "co-extensively." (Doc. No. 26, at 1-2.)

Defendants articulate the OSCLA jurisdictional test differently. Defendants claim that the Court has jurisdiction if Plaintiff's claims would not have arisen "but for" activities on the OCS. (Doc. No. 13, at 8-9.) Defendants concede that some of the misrepresentations about which Plaintiffs complain have nothing to do with the OCS or even BP's offshore drilling operations. (*Id*. at 6.) But since some or most of these alleged misrepresentations are tightly connected to BP's drilling activities on the OCS, the claims and alleged injuries would not have occurred absent those activities. (*Id*. at 10-17.)[3]

---

[3] Plaintiff and Defendants disagree about whether the OCS-related misrepresentations constitute a minority or a majority of Plaintiff's claims. (*Cf*. Doc. No. 8, at 21 *with* Doc. No. 13, at 18.) The Court is inclined to agree with Defendants that BP's drilling operations on the OCS are central to Plaintiff's claims, as even a cursory review of the Complaint makes plain. The Deepwater Horizon disaster literally sets the stage for Plaintiff's allegations (Compl. ¶¶ 5-14), and at least five of the twenty-two allegedly misleading statements identified are inextricably tied to the Macondo well (*id*. ¶¶ 288-97, 300-01, 322, 324, 331). Moreover, although Plaintiff urges the Court to view its allegations as a whole, it has identified no authority that would allow the Court to decline OCSLA jurisdiction on the grounds that the dispute connected to the OCS constitutes only a "small" portion of the case. (Doc. No. 26, at 5-7.)

### III.     LEGAL STANDARD

The federal removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed." 28 U.S.C. § 1441(a). The plaintiff in a removed action may challenge the assertion of federal jurisdiction through a motion to remand. Although a motion to remand is brought by the plaintiff, the removing defendant carries the burden of showing that removal was proper and that the federal court has jurisdiction over the action. *See Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). Federal removal jurisdiction is to be narrowly construed, with all ambiguities resolved *against* the existence of federal jurisdiction and *in favor* of remand. *See Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

### IV.     ANALYSIS

It is undisputed that Plaintiff does not seek redress under the OCSLA, nor does the OCSLA appear anywhere on the face of its Complaint. Typically, under the well-pleaded complaint rule, this would be sufficient to avoid federal jurisdiction.[4] But the Fifth Circuit has held that the well-pleaded complaint rule does not apply to removal under the OCSLA. *See Amoco Production Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir. 1988) ("In determining federal court jurisdiction, we need not traverse the Serbonian Bog of the well pleaded complaint rule . . . because § 23 of OCSLA [i.e., 43 U.S.C. § 1349(b)(1)] expressly invests jurisdiction in the United States District Courts.") (citation omitted); *see also In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 747 F.Supp.2d 704, 707 (E.D. La. 2010). Thus, Plaintiff's Complaint *may* be removable under the OCSLA even though, on its

---

[4] The well-pleaded complaint rule allows a plaintiff to avoid removal to federal court by crafting its complaint to seek relief only under state law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

face, it does not contain a federal cause of action or reference a question of federal law.

### A. Plaintiff's claims fall within the jurisdictional grant of section 1349(b)(1).

The OSCLA, in section 1349(b)(1), creates federal subject matter jurisdiction for certain OCS-related cases:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies *arising out of, or in connection with* (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . .

43 U.S.C. § 1349(b)(1) (emphasis added). The parties disagree on the relevant standard for determining when a complaint alleging only state law claims falls within this jurisdictional grant. Plaintiff urges the court to use an "efficient exploitation of resources" test. (Doc. No. 8, at 21.) By contrast, Defendants argue that OCSLA jurisdiction is triggered any time that a plaintiff's claim would not have arisen "but for" operations conducted on the Outer Continental Shelf. (Doc. No. 13, at 1.)

The Court finds that neither of these tests adequately addresses whether Plaintiff's state law claims fall within the statutory language of section 1349(b)(1). The test advocated by Plaintiff focuses on the *effect* that resolution of the claim will have on recovery of federally-owned resources from the OCS:

> [S]ubject matter jurisdiction exists under the OCSLA only where the case or controversy at issue "would affect the efficient exploitation of resources from the [Outer Continental Shelf] and/or threaten the total recovery of federally-owned resources." [*EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 570 (5th Cir. 1994).] Accordingly . . . the Court does not have jurisdiction over this dispute which involves only claims for violations of Oregon state securities laws and common law fraud arising out of BP's false and misleading statements. The resolution of this case will have no impact on the efficient exploration of resources on the Outer Continental Shelf, and will not threaten the total recovery of federally-owned resources on the Outer Continental Shelf.

(Doc. No. 8, at 19-20.) But section 1349(b)(1) requires only that cases and controversies arise out of, or in connection with an OCS operation. 43 U.S.C. § 1349(b)(1). It says nothing about the impact of the claim on the OCS. This disconnect between the focus of the purported "efficient exploitation of resources" test, and the language of section 1349(b)(1), counsels against using it as the sole arbiter of jurisdiction. Indeed, the Court notes that the Fifth Circuit cases expressing concern with the "efficient exploitation" of federally-owned resources all found OCSLA jurisdiction to be present. *See EP Operating*, 26 F.3d at 570; *United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405, 406-07 (5th Cir. 1990); *Amoco*, 844 F.2d at 1210. No Fifth Circuit case has ever held that a controversy's lack of effect on operations on the OCS is a *bar* to jurisdiction under section 1349(b)(1). The Court declines to do so here.[5]

The "but for" test proposed by Defendants is supported by Fifth Circuit jurisprudence, but difficult to administer in this case. A literal application of the test would find OCSLA jurisdiction simply because BP's operations on the OCS appear in Plaintiff's complaint, regardless of how closely tied these operations are to the issues that will be decided in the case.

---

[5] The Court acknowledges that some district courts in the Fifth Circuit—most notably in the Eastern District of Louisiana—have relied on the "efficient exploitation of resources" test, or similarly worded standards focusing on the effect of a claim on the OCS, in deciding that commercial disputes with only retrospective damages claims do not fall within the scope of OCSLA's jurisdictional grant. *See, e.g., LLOG Exploration Co., LLC v. Certain Underwriters at Lloyd's of London*, Civ. Act. No. 06-11248, 2007 WL 854307, at *5 (E.D. La. Mar. 16, 2007) (finding no OCSLA jurisdiction because "[t]he [parties'] insurance coverage dispute does not affect or alter the progress of production activities on the OCS, nor does it threaten to impair the total recovery of federally owned minerals from the OCS"); *NCX Co., LLC v. Samedan Oil Corp.*, Civ. Act. No. 03-3284, 2004 WL 203079, at *3 (E.D. La. Jan. 28, 2004) ("[T]his Court finds that the present dispute does not affect the flow of production or development, nor does it affect the efficient exploitation of natural resources in the OCS. It is simply a breach of contract claim which does not implicate the interest expressed by Congress in the efficient exploitation of natural resources of the OCS."). For the reasons cited in the text, the Court does not find these cases instructive.

Additionally, the continued validity of the "but for" test has been cast into some doubt by the Supreme Court's recent decision in *Pacific Operators Offshore, LLP v. Valladolid*, 132 S.Ct. 680 (2012). In *Vallodolid*, the Supreme Court rejected a "but for" test to construe section 1333(b) of the OSCLA, which extends the Longshore and Harbor Workers' Compensation Act to injuries "occurring *as the result* of operations conducted on the outer Continental Shelf." 43 U.S.C. § 1333(b) (emphasis added). The Supreme Court expressed concern that the "but for" test for section 1333(b) "could reasonably be interpreted to cover land-based office employees whose jobs have virtually nothing to do with extractive operations on the OCS." *Valladolid*, 132 S.Ct. at 690. Arguably, the language used in OCSLA's jurisdictional grant—"arising out of, or in connection with"—is broader than the language interpreted in *Valladolid*. Nevertheless, the Court shares the Supreme Court's concerns about the difficulties of constraining the reach of a broadly causal "but for" test.

As neither test advocated by the parties is wholly satisfactory, the Court turns instead to the plain language of section 1349(b)(1). Under that section, the Court has jurisdiction if Plaintiff's claims "aris[e] out of, or in connection with" an operation conducted on the OCS "involv[ing] exploration, development, or production" of subsurface minerals. 43 U.S.C. § 1349(b)(1).

Plaintiff complains that Defendants made false statements which artificially inflated the price of BP stock and induced Plaintiff to invest in BP. (Compl. ¶¶ 363-78.) Several of these allegedly misleading statements are found in documents—the Exploration Plan ("EP") and the regional Oil Spill Response Plan ("OSRP") for the Gulf of Mexico—filed with the U.S. government as a prerequisite to exploration and drilling on the OCS. (*Id*. ¶¶ 288-97, 300-01.) Defendants contend, and Plaintiff has not disputed, that the very statements identified as

misleading in these filings were (1) required by Minerals Management Service ("MMS") regulations and (2) calculated by using specific MMS formulas. (Doc. No. 13, at 10-13.) Other allegedly misleading statements involved the amount of oil gushing from the Macondo well after the Deepwater Horizon explosion. (Compl. ¶¶ 322, 324, 331.)

The Court finds that these statements were made "in connection" with BP's "operation" conducted on the OCS involving "exploration" of subsurface minerals. If BP had not conducted exploratory operations on the OCS, the EP and the regional OSRP would never have been filed. If BP had not conducted exploratory operations on the OCS, oil would not have been gushing into the Gulf from the Macondo well. In short, if BP had not conducted exploratory operations on the OCS, Defendants would have had no opportunity or reason to make the allegedly misleading statements at all. Consequently, Plaintiff's claims that the statements artificially inflated BP's stock price and/or were fraudulent fall comfortably within the statutory language of section 1349(b)(1).[6]

### B. Section 1349(b)(1) does not have an OCS situs requirement.

Plaintiff raises one final argument against OCSLA jurisdiction: that OCSLA jurisdiction cannot exist because the alleged misrepresentations at issue were not made on an OCS situs. (Hrg. Tr. 9:12-21, Sept. 14, 2012.) In making this argument, Plaintiff acknowledges that section 1349(b)(1) does not contain a situs requirement on its face. But Plaintiff points to situs requirements in section 1333, the "substantive law" provision of the OCSLA:

---

[6] The Court confines its holding to the statements made in the EP and the regional OSRP for the Gulf of Mexico and the statements concerning the amount of oil spilling into the Gulf of Mexico following the Deepwater Horizon explosion. These statements are sufficient to decide the subject matter jurisdiction of the Court. Of course, Plaintiff is the master of its complaint. If Plaintiff wishes to amend its allegations to avoid federal subject matter jurisdiction under OCSLA, the Court hereby grants it leave to do so within 14 days of the entry of this order.

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed . . . to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State.

43 U.S.C. § 1333(a)(1); *see also id.* § 1333(a)(2)(A) (adopting as federal law "the civil and criminal laws of each adjacent State . . . for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf"). Plaintiff also notes the Fifth Circuit's pronouncement that section 1349 and section 1333 are to be read "co-extensively." *EP Operating*, 26 F.3d at 569. Piecing these authorities together, Plaintiff argues that section 1349(b)(1) borrows the situs requirement from section 1333(a)(2)(A), and thus contains a situs requirement "in effect." (Hrg. Tr. 9:12-21, Sept. 14, 2012.)

The Court finds Plaintiff's argument unpersuasive. Once again, Plaintiff's argument ignores or minimizes the actual language of section 1349(b)(1), which does not contain a situs requirement. The fact that section 1333 contains situs requirements only underscores that, if Congress meant for section 1349(b)(1) to contain a situs requirement, it knew how to include one. *See Valladolid*, 132 S.Ct. at 688 ("Congress' decision to specify, in scrupulous detail, exactly where the other subsections of § 1333 apply, but to include no similar restrictions on injuries in § 1333(b), convinces us that Congress did not intend § 1333(b) to apply only to injuries suffered on the OCS."). Moreover, Plaintiff's argument fails to contextualize the Fifth Circuit's holding in *EP Operating*. In that case, the Fifth Circuit justified its broad reading of OCSLA's jurisdictional grant by noting the "expansive substantive reach of [section 1333]." *EP*

9

*Operating*, 26 F.3d at 569. The Fifth Circuit then reasoned that "the jurisdictional grant of section 1349 should be read co-extensively with the substantive reach of section 1333." *Id*. This confirmed that the reach of section 1349(b)(1) is *at least* as extensive as section 1333. But it did not resolve the question of whether section 1349(b)(1) might reach *further* than section 1333.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand (Doc. No. 7) is **DENIED**. Plaintiff is hereby granted leave to amend its complaint within 14 days of the entry of this Order to avoid federal subject matter jurisdiction under OCSLA, if it wishes.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 1st day of October, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE