UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: BP p.l.c. | § | MDL No. 10-md-2185 |
| SECURITIES LITIGATION | § | |
| | § | |
| | § | |
| | § | |
| MONDRIAN GLOBAL EQUITY | § | Civ. Act. No. 4:12-cv-3621 |
| FUND, L.P. et al. | § | |
| | § | |
| v. | § | HON. KEITH P. ELLISON |
| | § | |
| BP P.L.C. et al. | § | |

<u>MEMORANDUM AND ORDER</u>

Pending before the Court is Defendants' Amended Second Tranche Consolidated Motion to Dismiss. (Doc. Nos. 48, 54.)[1] Having reviewed the original motion (Doc. No. 23), the amended motion, Plaintiffs' response (Doc. Nos. 64, 70), Defendants' reply (Doc. Nos. 76, 77), all papers in support thereof, and having heard oral argument, the Court finds that Defendants' Amended Motion (Doc. Nos. 48, 54) must be **GRANTED IN PART** and **DENIED IN PART**. The Court hereby incorporates, as relevant, its reasoning articulated in the Memorandum and Order (the "*Avalon Holdings* Opinion") issued this day in a related case—*Avalon Holdings, Inc. et al. v. B.P. p.l.c. et al.* [12-cv-3715]. The Court also separately addresses arguments raised in Defendants' Amended Motion which were not implicated by the allegations and claims in *Avalon Holdings*.

I.      **SPECIFICS OF THIS ACTION**

        A.      **The parties**

        Plaintiffs in *Mondrian Global Equity Fund, L.P. et al. v. B.P. p.l.c. et al.* are Mondrian

---

[1] Unless otherwise indicated, all docket references are to 12-cv-3621.

Global Equity Fund, L.P.; Mondrian International Equity Fund, L.P.; Mondrian Focused International Equity Fund, L.P.; Mondrian All Countries World Ex-US Equity Fund, L.P.; and Mondrian Group Trust. These are all U.S.-based, private investment funds. (Doc. Nos. 19, 20 ("Mondrian Compl."), at ¶¶ 22-26.)

The "Mondrian Defendants" or "Defendants" consist of three corporate entities in the BP family of companies—BP p.l.c.; BP America, Inc.; and BP Exploration & Production, Inc.—as well as five individual defendants. BP p.l.c. ("BP" or the "Company") is a U.K. corporation. (Mondrian Compl. ¶ 27.) BP America, Inc. ("BP America") and BP Exploration & Production, Inc. ("BP E&P"), both wholly-owned subsidiaries of BP, are Delaware corporations with their principal places of business in Houston, Texas. (*Id.* ¶¶ 31-32.)

The individual defendants were directors and officers of one or more of the corporate defendants prior to and during the Deepwater Horizon disaster.[2] They are Anthony B. Hayward, executive director from 2003 to November 2010 and Chief Executive Officer at BP from May 2007 to October 2010; Douglas Suttles, Chief Operating Officer for BP E&P from January 2009 to at least January 2011; Andrew Inglis, CEO of BP E&P and an executive director of the Company from February 2007 until October 2010; H. Lamar McKay, the Chairman and President of BP America since January 2009; and Robert Dudley, executive director of BP since April 2009 and its Group Chief Executive since October 2010 (i.e., Mr. Hayward's successor). (Mondrian Compl. ¶¶ 34-36, 39-40.)

B.    The claims

The Mondrian Plaintiffs purchased BP Ordinary Shares on the London Stock Exchange

---

[2] The Mondrian Complaint also names Robert Malone and David Rainey as defendants, but they have been dismissed by stipulation of the parties. (Doc. No. 50 ("Conforming Stip."), at 4, 6.)

between November 29, 2006 and June 25, 2010. (Mondrian Compl. ¶ 1.) They allege that

Defendants made a series of misrepresentations regarding:

> (i) the extent of BP's commitment to a "safety first" approach to oil
> drilling . . .; (ii) the size of the oil spill that followed the April 20, 2010
> explosion on one of BP's Gulf of Mexico . . . oil rigs . . . and BP's ability
> to contain the spill; and (iii) the extent of BP's likely responsibility for the
> catastrophe once it occurred.

(*Id*. ¶ 2.) They claim that, following the Deepwater Horizon explosion, the "truth [about BP]

slowly emerged," causing BP stock to "plunge[] in value" and costing Plaintiffs "tens of millions

of dollars in losses." (*Id*. ¶ 17.) They assert English common law deceit and negligent

misrepresentation claims against all defendants.[3] (*Id*. ¶¶ 510-16, 522-32; Doc. No. 50

("Conforming Stip."), at 3.)

### C.    Alleged misrepresentations not addressed in prior orders

In addition to misrepresentations previously addressed by the Court in the Class Action,

the first tranche cases, and *Avalon Holdings*, the Mondrian Plaintiffs claim that they were misled

by two public statements from May 2010. The two statements were contained in press releases

issued only four days apart—May 20 and May 24, 2010—at a time when the oil spill was a

month old, but still ongoing.[4] The statements in these press releases drawing Plaintiffs' criticism

are strikingly similar. Both press releases indicated that a "riser insertion tube tool (RITT)

containment system at the end of the leaking riser"[5] was collecting up to 3,000 barrels of oil per

---

[3] The Mondrian Complaint also asserts a common law aiding and abetting fraud claim and a
statutory fraud claim under Texas law, but these claims have been dismissed by stipulation of the
parties. (Conforming Stip. at 3.)

[4] The May 20th and May 24th press releases were filed with the SEC as Form 6-Ks. (Mondrian
Compl. ¶¶ 434, 441.)

[5] After the Deepwater Horizon drilling rig exploded, it sank to the bottom of the Gulf of Mexico,

day and up to 17 million standard cubic feet of gas per day.[6] (Mondrian Compl. ¶¶ 434, 441.)

## II.   DEFENDANTS' MOTION TO DISMISS

Defendants raise two arguments for dismissal not pertinent to the *Avalon Holdings* case and therefore not addressed in the *Avalon Holdings* Opinion. First, Defendants argue that the Mondrian Plaintiffs' negligent misstatement claims—which parties have stipulated will be governed by English law—are time-barred pursuant to Texas's 2-year statute of limitations for such claims. (Doc. Nos. 49, 55 ("Mot."), at 38.) Second, Defendants contend that the two new public misrepresentations alleged in the Mondrian Complaint cannot support Plaintiffs' English law claims. According to Defendants, these alleged misrepresentations are true statements not adequately alleged to be false by omission. (Mot. at 23-24; Doc. Nos. 49-3 and 55-3, at 4.) Defendants also argue that Plaintiffs have failed to adequately allege the statements were made with knowledge of their falsity. (Mot. at 24; Doc. Nos. 49-3 and 55-3, at 4.)

## III.   ANALYSIS

### A.   Plaintiffs' negligent misstatement claims are time-barred under Texas law.

Plaintiffs filed this case in Texas state court on November 29, 2012. The last alleged misrepresentation in the Complaint is dated May 24, 2010. Defendants argue that Plaintiffs' negligent misstatement claims—indeed, any negligent misstatement claim filed by any plaintiff

---

damaging the pipe which connected the rig to the ocean floor. This pipe is known as the "riser." (Mondrian Compl. ¶¶ 59, 294.)

[6] There are slight deviations in the numerical estimates included in and in the time frames addressed by the two press releases. Specifically, the May 20th press release indicated that the RITT's oil collection per day was estimated at 3,000 barrels, and the RITT's gas collection per day was estimated at 14 million standard cubic feet. (Mondrian Compl. ¶ 434.) By comparison, the May 24th press release indicated that, in the period from May 17th to May 23rd, the RITT's oil collection per day ranged from 1,360 to 3,000 barrels, and its gas collection per day ranged from 4 million to 17 million standard cubic feet. (*Id*. ¶ 441.)

in any Texas state or federal court more than two years after the alleged misstatement issued—are time-barred and must be dismissed.

Plaintiffs suggest that the substance of Defendants' statute of limitations argument cannot be addressed until the parties have had the opportunity to conduct discovery. (Doc. Nos. 64, 70 ("Mondrian Opp."), at 36-37.) But they have not identified any factual issues on which discovery will inform the Court's analysis. Because this is a purely legal issue capable of resolution at the current stage, the Court will address the merits of Defendants' arguments.

### 1.    Texas's statute of limitations controls.

The parties acknowledge that Plaintiffs' claims are controlled by English law. (Conforming Stip. at 3.) But they disagree about which jurisdiction's statute of limitations should be applied to Plaintiffs' negligent misstatement claims. The answer to this question determines the fate of those claims. England's statute of limitations for negligent misstatement is six years. (Doc. No. 66, at ¶ 6.) Texas's statute of limitation for negligent misrepresentation is only two years. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998).

Defendants argue that the law of the state in which the claims were filed—here, Texas—determines which statute of limitations controls. (Mot. at 38-39.) The Court must agree, although the legal reasoning which returns this result is less than intuitive.

It is axiomatic that, when administering non-federal claims, federal courts apply federal procedural law and state substantive law.[7] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Federal courts view statutes of limitations as substantive law. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 110 (1945). Therefore, pursuant to *Erie*, the Court looks to the law of

---

[7] Although the *Erie* doctrine is most commonly invoked in cases involving diversity jurisdiction—and the cases cited in this paragraph are diversity cases—the rationale applies to any case in which federal law does not govern the substance of the claim.

forum to choose which statute of limitations applies. *See Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1103 (5th Cir. 1981) ("[I]n diversity lawsuits, a federal court is ordinarily bound to look to the choice of law rules of the state in which it sits to determine whether the state courts of that state would apply their own state's statute of limitations or the statute of limitations of some other state.")

Texas courts, unlike federal courts, view statutes of limitations as procedural in nature. *See Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126, 141 (Tex. 2010). Thus, Texas courts do not undertake a "choice of law" analysis when it comes to statutes of limitations; they simply enforce Texas's own limitations periods. *See Hill v. Perel*, 923 S.W.2d 636, 639 (Tex. Civ. App.—Houston [1st Dist.] 1995, no writ) (rejecting argument that statute of limitations to be applied to legal malpractice claim is decided by "most significant relationship" test); *Hollander v. Capon*, 853 S.W.2d 723, 727 (Tex. Civ. App.—Houston [1st Dist.] 1993, writ denied) (same, regarding contract claim). There are only two exceptions to this general rule. First, when limitations are included in a statute which creates the right sued upon, such limitations are enforced as substantive, not procedural. *State of Cal. v. Copus*, 158 Tex. 196, 201-03 (Tex. 1958). Second, actions for "death or personal injury" filed on behalf of non-residents are limited both by Texas's statute of limitations and by the statute of limitations of the jurisdiction "in which the wrongful act, neglect, or default took place." TEX. CIV. PRAC. & REM. CODE § 71.031(a)(2)-(3).

Plaintiffs attempt to avoid this result by arguing that it is inequitable to allow the "where" of a claim's filing to determine "whether" it can proceed.  (Mondrian Opp. at 37-39.) They claim that federal courts "routinely prevent defendants from using statutes of limitations inequitably." (*Id.* at 39.) The problem is that Defendants are not to blame for the inequitable treatment of

6

Plaintiffs' claims—Texas rules regarding statutes of limitations are. There is no federal law regarding statute of limitations for negligent misstatement which the Court can apply here. It must look to Texas law for determination of which statute of limitations controls. And while Texas uses the "most significant relationship" test for choosing substantive law, it does not consider statutes of limitations to be substantive.

Plaintiffs also argue that Texas courts will apply the statute of limitations of the jurisdiction whose law governs the claim if that jurisdiction views the statute of limitations as substantive. (Mondrian Opp. at 40.) In other words, Plaintiffs urge the Court to decide whether *English law* considers statute of limitations to be procedural or substantive, and then import this decision into Texas's "choice of law" regarding statute of limitations. They provide expert testimony and authority on the topic and conclude that statute of limitations *may* be considered substantive in England. (*Id*. at 40-41.)  Even assuming that English law definitively considers statutes of limitations to be substantive—an assumption not warranted by Plaintiffs' submissions—Texas law does not support the argument. As noted above, Texas courts view statutes of limitations as procedural except in two circumstances. Plaintiffs' negligent misstatement claims are not claims for "death or personal injury," so Section 71.031 of the Texas Civil Practice and Remedies Code is clearly inapplicable. The only other exception is also not implicated, because common law claims are not statutorily enacted. *See Hill*, 923 S.W.2d at 639 ("Only when the very statute that created a right of action incorporates an express limitation upon the time within which the suit could be brought is the statute of limitations considered substantive.").

2.     **The statute of limitations was not tolled by the filing of the Class Action.**

Alternatively, Plaintiffs claim that Texas's statute of limitations was tolled by the filing of the first federal class action complaint.[8] (Mondrian Opp. at 42-45.) Defendants disagree.

Once again, the parties hold conflicting views as to the source of law which resolves this question. Plaintiffs direct the Court to *federal* law, particularly *American Pipe & Construction Company v. Utah*, 414 U.S. 538 (1974). (Mondrian Opp. at 42-43.) *American Pipe* provides that the filing of a class action suspends the applicable statute of limitations as to all putative class members until either class certification is denied or until the individual member ceases to be a member of the class—a phenomenon commonly known as *American Pipe* tolling. *See* 414 U.S. at 552-54. Although *American Pipe* speaks in terms of a court's decision on class certification, the tolling should also apply—and cease to be operative—when a putative class action fails to survive a Rule 12 motion to dismiss. *See Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir. 2002); *Jenson v. Allison-Williams Co.*, 1999 WL 35133748, at *4 (S.D. Cal. Aug. 23, 1999).

Defendants counter that the issue of tolling is governed by Texas state law. (Mot. at 39-40.) Fifth Circuit authority decisively supports Defendants' position. *See Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1145 (5th Cir. 1997) ("[T]he Supreme Court has stated that generally, for diversity actions, a federal court should apply not only state statutes of limitation but also any accompanying tolling rules.") (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750-53 (1980)); *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989) ("In diversity cases, of

---

[8] Plaintiffs have not provided the information which the Court needs to administer tolling here. Most importantly, Plaintiffs fail to identify the first-filed putative class action complaint which included common law negligent misstatement claims. For purposes of the foregoing analysis, however, the Court will assume that such a complaint was filed at a time which would render Plaintiffs' negligent misstatement claims timely pursuant to the relevant tolling doctrines.

course, federal courts apply state statutes of limitations and related state law governing tolling of the limitation period.").

Plaintiffs suggest that Texas law on tolling does not differ from *American Pipe*. (Mondrian Opp. at 45.) Defendants, however, contend that Texas does not recognize cross-jurisdictional tolling, and that a federal class action cannot toll state statutes of limitations. (Mot. at 39-40.)

As a general proposition, Plaintiffs are correct that the Texas tolling rule is very similar to the federal tolling rule. Indeed, the first Texas court to adopt a tolling rule relied primarily on *American Pipe* and related federal cases. *See Grant v. Austin Bridge Constr. Co.*, 725 S.W.2d 366, 370 (Tex. Civ. App.—Houston [14th Dist.] 1987, no writ). The *Grant* court held:

> [E]ven though the statute of limitations on a class member's individual cause of action would expire during the pendency of a class action, the filing of the class action suspends the applicable statute of limitations as [to] all purported members of the class. Thus, the right to pursue an individual cause of action is not foreclosed by decertification of the class. Any time remaining on the statute of limitations of the unnamed property owners' individual cause of action on the date of the filing of the lawsuit was restored and began to run again on the date the class was decertified.

*Id*.

At the same time, Defendants correctly note that there are limits to Texas (and *American Pipe*) tolling. Most importantly, a class action does not toll a later-filed individual claim unless the class action provides defendant with "notice of the type and potential number of the claims against it. *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 758 (Tex. Civ. App.—Amarillo 1995, writ denied). For example, in *Bell*, the court refused to find that the filing of a "mass personal injury suit, in a federal court, in [New Mexico], with the variety of claims necessarily involved in such a case" tolled the statute of limitations for the plaintiff's products liability action, later filed

in Texas state court. *See id*. Thus, under *Bell*, the availability of tolling appears to depend on the following context-specific questions: (1) was the same defendant involved in both the class action and the later-filed individual suit; (2) did the class action give defendant sufficient notice of the type of claim(s) asserted in the later-filed individual suit; and (3) did the class action give defendant sufficient notice of the potential number of claims that could be asserted against it?

The Fifth Circuit, however, has not interpreted *Bell* to be context-dependent. Instead, the Fifth Circuit has cited *Bell* for the proposition that a federal class action likely *cannot* toll the statute of limitations for a claim filed in state court—i.e., that Texas does not recognize "cross-jurisdictional tolling." *See Vaught*, 107 F.3d at 1144 ("The *Bell* court construed *Grant* to apply only to the tolling effect of a *state* class action on *state* claims.") (emphasis original). Even if the Fifth Circuit has not technically foreclosed another reading of *Bell*, it has stated in very strong terms that it doubts "a *federal* class action filed in Texas or in any other State would ever toll a Texas statute of limitations, regardless of the type of claims raised." *Id*. at 1147 (emphasis original); *see also Newby v. Enron Corp.*, 542 F.3d 463, 472 (5th Cir. 2008) (characterizing argument that a federal class action tolled state statute of limitations as "weak" due to *Vaught* and *Bell* and approving district court's conclusion that "Texas courts likely will not extend *American Pipe* tolling to this situation").

The Court has some doubts that *Bell* reaches as far as the Fifth Circuit has intimated. Nonetheless, it is bound to adopt and apply the Fifth Circuit's reasoning. Moreover, the Court's review of case law in other jurisdictions suggests that cross-jurisdictional tolling is a controversial doctrine, and has, to date, been accepted by few states. *See, e.g., In re Fosamax Prods. Liability Litig.*, 694 F. Supp. 2d 253, 258 (S.D.N.Y. 2010) ("Only a small fraction of states have addressed the cross-jurisdictional tolling issue, though, and there is no clear

10

consensus among them.") Therefore, even if *Bell* itself does not conclusively supply this rule, it is doubtful that this Court or the Fifth Circuit—undertaking an *Erie* analysis of Texas tolling rules—would reach any different result. *See Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 281 (S.D.N.Y. 2011) ("Of the federal courts that have considered [cross-jurisdictional tolling], most have refused to extend the doctrine into a state that has yet to consider it.").

### 3.   The Court will not impose equitable tolling.

Finally, Plaintiffs urge the Court to impose equitable tolling. (Mondrian Opp. at 50-51.) The Fifth Circuit has described equitable tolling as "preserv[ing] a plaintiff's claim when strict application of the statute of limitations would be inequitable." *Fonseca v. USG Ins. Servs., Inc.*, 467 Fed. App'x 260, 261 (5th Cir. 2012) (internal quotation marks and citation omitted). "It principally applies when the plaintiff is actively misled by the defendant . . . or is prevented in some extraordinary way from exerting his rights." *Id*. (internal quotation marks and citation omitted).

Defendants correctly note that they have not done anything to mislead Plaintiffs regarding the statute of limitations. Nor have Plaintiffs been prevented in some extraordinary way from asserting their rights. (Doc. Nos. 76, 77 ("Reply"), at 33 n.40.) While the Texas rule applying its own statute of limitations to non-Texas claims can produce counterintuitive results, it has been that way for quite some time. Equitable tolling is not warranted.

### B.   Plaintiffs fail to state a claim based on two new alleged misrepresentations.

Plaintiffs claim to have been misled by two press releases issued approximately one month after the Deepwater Horizon explosion, on May 20 and May 24, 2010. These press releases reported on a device called the "riser insertion tube tool (RITT)" which was collecting oil and gas from the leaking riser. Although the press releases covered different time frames, and

11

consequently contained slightly different numerical values as to the amount of oil and gas captured by the RITT, these variations appear not to be at issue. Indeed, Plaintiffs apparently accept that the numerical values included in these press releases accurately represented the amount of oil and gas being collected by the RITT. (Mondrian Opp. at 51-52.)

Plaintiffs nonetheless characterize the press releases as misleading by placing them in the context of the alleged, contemporaneous fraud regarding the estimated oil spill rate. On multiple occasions between April 28 and May 22, BP and its spokespeople on the disaster had reiterated a "best guess" that the oil spill rate was approximately 5,000 barrels of oil per day ("BOPD"). Mondrian Plaintiffs—like every other plaintiff involved in this MDL—assert that multiple experts within and employed by BP had calculated the likely spill rate to be higher than 5,000 BOPD, but that these internal estimates were withheld from the public to prevent a freefall in BP's stock price.

According to Plaintiffs, the May 20th and May 24th RITT collection rate statements were an extension of the alleged spill rate fraud. They claim that the RITT collection rates were material to the public only in comparison to the overall estimated spill rate. (Mondrian Opp. at 52.) They note that a 3,000 BOPD collection rate is reassuring if the overall spill rate is only 5,000 BOPD, but alarming if the overall spill rate is 70,000 BOPD. (*Id*.)

Defendants argue that Plaintiffs may not create liability for factually true statements by "boot-strapping" them to the alleged oil spill rate misrepresentations. (Reply at 20.) They acknowledge that facially true statements may be rendered "false by omission," but dispute that the withholding of the internal oil spill rate estimates made the RITT collection rate statements

12

"absolutely false."[9] (Mot. at 24.) Alternatively, Defendants note that Plaintiffs have failed to attribute the RITT collection rate statements to a specific individual with the requisite mental state that can be attributed to BP. (*Id.*)

Because the Court finds Defendants' alternative argument more easily resolved—and dispositive—it will assume but not decide that the May 20th and May 24th press releases have been adequately alleged as false by omission. Plaintiffs may not proceed on their deceit claims, however, unless their allegations also support that the persons responsible for the RITT collection rate statements possessed the requisite mental state for deceit. *See Alameda Cnty. Employees' Ret. Ass'n v. BP p.l.c.*, 2013 WL 6383968, at *36 (S.D. Tex. Dec. 5, 2013) (listing as elements of English common law deceit: "(1) Defendant makes a false representation; (2) *knowing it to be untrue, or being reckless as to whether it is true*; (3) and *intend[ing] that Plaintiff should act in reliance on it* and (4) Plaintiff does rely on it and suffers loss") (emphasis added).

As noted above, Plaintiffs apparently concede that the factual representations in the RITT collection rate statements were facially accurate. This makes them actionable *only* to the extent that they were made by someone with (1) knowledge of the allegedly withheld internal spill rate estimates and (2) an understanding (malicious or otherwise) that the import of the RITT collection rates would be altered by the failure to disclose the internal spill rate estimates.

Plaintiffs' allegations fall short of this preliminary showing. The Complaint does not identify the specific individual or individuals who were involved in creating the May 20th and May 24th press releases. (Mondrian Compl. ¶¶ 434, 441.) Consequently, there is no indication of

---

[9] English law recognizes an action for deceit if there is a "partial and fragmentary statement of facts;" in other words, if "the withholding of that which is not stated makes that which is stated absolutely false." *Peek v. Gurney* [1873] LR 6 HL 377.

what understanding or exposure those individuals had to the allegedly withheld internal spill rate estimates. For these reasons, the Court finds that Plaintiffs have failed to articulate viable deceit claims based on the two RITT collection rate statements.

## IV.    CONCLUSION

For the foregoing reasons, and pursuant to the reasoning articulated in the *Avalon Holdings* Opinion, the Court **GRANTS** the Motion to Dismiss as to the following claims:

- All negligent misstatement claims.

- All claims based on Mr. Inglis's statements made in the 2008 Strategy Presentation on February 27, 2008.[10] (Mondrian Compl. ¶ 352(b).)

- All claims based on statements made in the May 20, 2010 press release and Form 6-K. (*Id*. ¶ 434.)

- All claims based on statements made in the May 24, 2010 press release and Form 6-K. (*Id*. ¶ 441.)

In all other respects, the Motion is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the thirtieth day of September, 2014.


_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[10] Plaintiffs have acquiesced to the dismissal of these claims. (Mondrian Opp. at 52-53.)