**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re BP p.l.c. Securities Litigation | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.: 4:10-MD-02185<br><br>Honorable Keith P. Ellison |

**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND APPROVAL OF NOTICE TO THE
SETTLEMENT CLASS**

Lead Plaintiffs Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of New York State and Local Retirement Systems and the sole Trustee of the New York State Common Retirement Fund ("New York"), and the Ohio Public Employees Retirement System ("OPERS") (collectively, "Lead Plaintiffs"), on behalf of themselves and the Settlement Class, have reached a proposed settlement in the above-captioned action with Defendants BP p.l.c. ("BP"), Anthony Hayward, and Douglas Suttles (collectively, the "Settling Defendants") for $175 million (the "Settlement").[1] Lead Plaintiffs respectfully submit this unopposed motion for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"): (i) granting preliminary approval to the proposed settlement set forth in the Stipulation, dated September 15, 2016, (ii) approving the form and manner of giving notice of the proposed settlement to the Settlement Class; and (iii) setting a hearing date at which the Court will consider (a) final approval of the settlement and entry of the proposed Final Judgment and Order of Dismissal with Prejudice, (b) the Plan of Allocation of settlement proceeds, and (c) Lead Counsel's application for an award of attorneys' fees and expenses (the "Final Approval Hearing").

## I.     INTRODUCTION

This litigation arises from the April 20, 2010 *Deepwater Horizon* explosion. Lead Plaintiffs alleged that BP and two of its senior executives misled investors about the severity of the oil spill in the Gulf of Mexico, which impeded investors' ability to assess the financial implications of the spill on BP. Lead Plaintiffs have reached an agreement with Defendants BP,

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, a copy of which is attached as Exhibit A hereto. For ease of reference, the "Settlement Class" means all Persons who, during the period of April 26, 2010 to and through May 28, 2010, inclusive, purchased or otherwise acquired BP ADSs (subject to the exclusions set forth in the Stipulation).

1

Suttles and Hayward to settle this action in return for the release of Post-Explosion ADS class claims, as set forth in greater detail herein.

The Settlement was reached after six years of litigation, including extensive investigation and discovery led by Lead Plaintiffs and Lead Counsel. Lead Plaintiffs pursued these claims vigorously on behalf of the Settlement Class through multiple motions to dismiss, motions for class certification and a related appeal, and hundreds of pages of summary judgment briefing. Fact discovery and expert discovery was completed, enabling the parties to fully appreciate the relative strengths and weaknesses of the claims and defenses in this securities fraud action, and the action was scheduled to proceed to trial in less than a month.

The proposed settlement now before the Court for preliminary approval provides for the payment of $175,000,000 in cash (the "Settlement Fund"), plus interest earned thereon, for the benefit of the Settlement Class. The Settlement is the result of extensive arm's-length negotiations between the parties, with the substantial assistance of Hon. Daniel Weinstein (Ret.) as mediator. As discussed below, Lead Plaintiffs and Lead Counsel submit that the proposed Settlement is in the best interests of the Settlement Class and clearly meets the standards for preliminary approval.

At this juncture, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement so that notice may be disseminated to members of the Settlement Class and a Final Approval Hearing scheduled.

## II.  PROCEDURAL HISTORY

In May 2010, following the *Deepwater Horizon* explosion, and the ensuing collapse in BP's value, several federal securities class actions were filed on behalf of investors in BP's publicly-traded securities, including its ADSs and its foreign-traded ordinary shares.

On December 28, 2010, the securities actions were consolidated, and Lead Plaintiffs were appointed by the Court to lead the consolidated class action, while a separate group of plaintiffs (the "Ludlow Plaintiffs") was appointed to serve as lead plaintiffs for a separate subclass of investors who invested in BP before the April 20, 2010 *Deepwater Horizon* explosion (the "Ludlow Period").

On February 14, 2011, Lead Plaintiffs filed Lead Plaintiffs New York and Ohio's Consolidated Class Action Complaint For All Purchasers of BP Securities From January 16, 2007 Through May 28, 2010 (the "New York and Ohio Complaint"). The New York and Ohio Complaint alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 thereunder on behalf of a proposed class of all persons or entities that purchased or otherwise acquired BP ADSs or ordinary shares between January 16, 2007 and May 28, 2010. The New York and Ohio Complaint included allegations that BP and other defendants made misrepresentations in two broad categories: (i) misrepresentations regarding certain safety practices prior to the April 20, 2010 Deepwater Horizon disaster ("Pre-Explosion Claims"); and (ii) misrepresentations regarding the amount of oil being spilled into the Gulf of Mexico in late April and early May 2010 ("Post-Explosion Claims"). The Ludlow Plaintiffs filed a separate complaint on February 11, 2011 alleging only Pre-Explosion Claims within the Ludlow Period.

On February 13, 2012, the Court denied, in part, defendants' motion to dismiss the New York and Ohio Complaint, dismissing all claims brought on behalf of investors in BP's foreign-traded ordinary shares and claims concerning certain alleged pre-explosion misrepresentations. In a separate order also issued on February 12, 2012, the Court granted defendants' motion to dismiss the Ludlow Plaintiffs' complaint but granted the Ludlow Plaintiffs leave to amend.

Pursuant to direction from the Court, on April 2, 2012, Lead Plaintiffs and the Ludlow Plaintiffs filed the Second Consolidated Amended Class Action Complaint For All Purchasers of BP ADS Securities (the "SAC"). The SAC asserted claims on behalf of a putative class of investors who purchased BP ADSs between May 9, 2007 and May 28, 2010, as well as a subclass of investors who purchased BP ADSs within the Ludlow Period.

On February 6, 2013, the Court denied, in part, defendants' motion to dismiss the SAC. The Court's rulings permitted Lead Plaintiffs to advance claims based on alleged misstatements relating to four broad subjects:  (1) BP's progress in addressing the process-safety recommendations contained in a 2007 report issued by an independent panel (known as the "Baker Panel"); (2) BP's implementation in the Gulf of Mexico of its Operating Management System ("OMS"), the Company's new framework for operations that includes process-safety requirements; (3) BP's ability to respond to an oil spill in the Gulf of Mexico as set forth in two filings with the former Minerals Management Service ("MMS"); and (4) BP's estimates of the rate of oil flowing from the Macondo well immediately after the Deepwater Horizon rig sank and leaking oil was discovered.

The parties then engaged in heavy fact and expert discovery.  Among other things, Lead Counsel analyzed the more than one million documents produced in the related MDL 2179 litigation, which involved allegations that BP caused environmental and business harm from the oil spill.  Lead Counsel also attended or reviewed the transcripts of 435 depositions taken in MDL 2179, as well as seven deposition transcripts from testimony elicited by the Securities and Exchange Commission.  Further, Lead Counsel obtained 375,000 pages of additional documents in this litigation from BP, and took an additional 14 fact-witness depositions.

Expert discovery was equally extensive. In connection with Class Certification, Lead Plaintiffs filed two opening expert reports and responded to two opening expert reports filed by Defendants and took and defended four expert depositions. At the merits stage, Lead Plaintiffs submitted two expert reports on the Post-Explosion Claims and deposed all five experts who submitted reports in support of Defendants' positions on those claims. In total, 18 expert reports, including rebuttal reports, were submitted in this Action.

On June 14, 2013, Lead Plaintiffs and the Ludlow Plaintiffs filed a motion for the Court to certify the action as a class action pursuant to Fed. R. Civ. P. 23. On December 6, 2013, the Court denied the motion with leave to move a second time. Thereafter, on January 6, 2014, Lead Plaintiffs and the Ludlow Plaintiffs filed a motion to certify two subclasses: first, a class of all those who purchased ADS securities before the explosion (the "Pre-Explosion Class"), and second, a class of all those who purchased ADS securities after the explosion (the "Post-Explosion Class"). Lead Plaintiffs also sought (and were granted) leave to file a Third Consolidated Amended Class Action Complaint ("TAC"), which was filed on July 24, 2014.

On May 20, 2014, the Court granted the motion to certify the Post-Explosion Class, but denied the motion to certify the Pre-Explosion Class. The United States Court of Appeals for the Fifth Circuit granted cross-requests to review the Court's ruling, and affirmed the ruling in its entirety on November 4, 2015.

On February 26, 2016, following extensive briefing, the parties argued cross-motions for summary judgment. On June 2, 2016, after the parties submitted supplemental briefing at the Court's request, the Court granted in part and denied in part the cross-motions for summary judgment.

Meanwhile, on December 7, 2015, with the assistance of the Honorable Daniel R. Weinstein (ret.) ("Judge Weinstein"), a well-respected and highly experienced mediator, the Settling Parties engaged in the first in-person mediation session held in this Action to explore a possible negotiated resolution of the Post-Explosion Claims. The mediation involved an extended effort to settle these claims and was preceded by the exchange of confidential mediation statements.

The parties' settlement efforts continued and ultimately this settlement was reached. As set forth in the Stipulation, the Settlement requires BP to pay to the Settlement Class $175 million as follows: $50 million is due within 10 days of the execution of the Stipulation of Settlement; $50 million within 10 days of the Court granting final approval of this Settlement; and $75 million on July 1, 2017.

Lead Plaintiffs and Lead Counsel believe that the Settlement set forth in the Stipulation confers a meaningful benefit to the Settlement Class and is in the best interests of Lead Plaintiffs and the Settlement Class.

## ARGUMENT

### III. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Under Federal Rule of Civil Procedure 23(e), the Court must review any settlement that would result in dismissal of a class action, Fed. R. Civ. P. 23(e), and preliminary approval is the first in a two-step process required before a class action may be settled. *See McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002). Whether a proposed settlement should be granted preliminary approval is a matter within the sound discretion of the district court, which should be exercised in the context of public policy strongly favoring the pretrial settlement of class action lawsuits. *See, e.g.*, *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir.), *cert. denied sub nom. BP Expl. & Prod. Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S. Ct. 754, 190

L. Ed. 2d 641 (2014) (noting that there is an "overriding public interest in favor of settlement that we have recognized particularly in class action suits.") (internal quotations, modifications, and citations omitted); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (settlements of class actions are "'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'") (citation omitted); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981) (noting "strong judicial policy favoring settlement of disputes"); *see also Jarallah v. Sodexo, Inc.*, 452 F. App'x 465, 468 (5th Cir. 2011) ("[S]ettlement agreements are highly favored by the law and will be upheld whenever possible."); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002).

On preliminary approval, courts consider the following factors: whether the settlement "discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval." *In re OCA, Inc. Secs. & Derivative Litig.*, No. 05-2165, 2008 WL 4681369, *11 (E.D. La. Oct. 17, 2008); *see also McNamara*, 214 F.R.D. at 430 ("[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing . . .").

### A. There Are No Obvious Deficiencies in the Settlement or Reasons to Doubt Its Fairness

In determining whether the settlement contains obvious deficiencies for purposes of preliminary approval, courts examine both the process and stage of litigation at which the settlement was reached and also whether the terms fall within the range of reasonableness. *E.g., In re OCA*, 2008 WL 4681369 at *11. Courts recognize "a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012). Here, the process and stage of litigation weigh strongly in favor of preliminary approval of the Settlement.

Settlement negotiations were intense, arm's-length, extended, and extensive. Judge Weinstein, an experienced and well-respected mediator, presided over these negotiations throughout. Negotiations were carried out on behalf of the parties by highly experienced and well-regarded attorneys, who have been litigating this case from its outset, and who have intimate knowledge about its strengths and weaknesses. Lead Plaintiffs or their State counsel attended each of the in-person mediation sessions, and ultimately approved all settlement offers exchanged. Defendants are represented by Sullivan & Cromwell LLP, Paul, Weiss, Rifkind, Wharton & Garrison LLP, and Kirkland & Ellis LLP, three preeminent law firms.

Because the parties had fully briefed summary judgment, they had full information to conduct informed bargaining for a settlement that adequately reflects the merits of claims remaining in the case and risks attendant to those that could be appealed. In particular, the settlement was reached six years into the litigation. Discovery included the collection and review of nearly 1.4 million documents; 14 fact depositions; 18 expert reports; and eight

8

expert depositions. Thereafter, Defendants filed motions to exclude the testimony of Lead Plaintiffs' experts. There can be no doubt that the parties reached the settlement with a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

### B. The Settlement Is Well Within the Range of Reasonableness

Under the proposed Settlement, the Settlement Class will receive $175,000,000 in exchange for the release of the Settlement Class' claims against Defendants. In evaluating whether this falls within the range of reasonableness, "the court is not to decide the issues or try the case via the fairness hearing because, 'the very purpose of the compromise is to avoid the delay and expense of such a trial.'" *Garza*, 1996 U.S. Dist. LEXIS 2009, at *49 (citing *Reed*, 703 F.2d at 172) (additional citation omitted). Rather, the Court inquiry "should contrast settlement rewards with likely rewards if case goes to trial." *In re Chicken, Antitrust Litig.*, 669 F.2d 228, 239 (5th Cir. 1982).

Lead Plaintiffs believe their case against Defendants BP and Suttles is strong. However, Lead Plaintiffs recognize there are substantial risks in terms of establishing liability and proving damages at trial. *Garza*, 1996 U.S. Dist. LEXIS 2009, at *49 ("both sides recognize the uncertainty of litigation"). Lead Counsel estimates that the Settlement represents over 40% of recoverable damages, which is an excellent result for the Class.

There can be no doubt that Lead Plaintiffs faced significant risks in obtaining a larger recovery for the Settlement Class, if they had taken the case to trial. This Court's summary judgment ruling highlights the risks faced by Lead Plaintiffs, in that it resulted in the dismissal of Defendant Hayward from the case entirely and dismissed four of the six alleged corrective events that had associated price declines composing a significant amount of Lead Plaintiffs' alleged damages. And, although the risk that Lead Plaintiffs would fail to persuade a jury on liability

9

and damages was lower based on the claims that Lead Plaintiffs were permitted to prove to a jury, the risk that the jury would award damages for only a portion of the associated price declines in light of the Court's summary judgment opinion could be very real. This is especially true given the risk posed by the fact that Defendants' motion to exclude Lead Plaintiffs' damages expert was pending at the time of settlement. If the Court were to exclude testimony from Lead Plaintiff's damages expert, Lead Plaintiffs would have a difficult time convincing a jury of their damages. And even if Defendants' motion were denied, the arguments presented therein could persuade a jury to attach little weight to the expert's testimony.

In light of these risks, Lead Plaintiffs respectfully submit that the $175,000,000 Settlement amount represents a significant recovery relative to the value of recoverable damages remaining in the case that clearly falls within the range of reasonableness.

### C. The Settlement Treats All Settlement Class Members Fairly and Does Not Improperly Grant Preferential Treatment to Lead Plaintiffs or Any Segment of the Settlement Class

The Settlement should also be preliminarily approved because it does not improperly grant preferential treatment to either Lead Plaintiffs or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Lead Plaintiffs, will receive an allocation of the Settlement Fund pursuant to the proposed Plan of Allocation to be approved by the Court. This Plan of Allocation, developed in compliance with the prior expert damages and loss causation reports in the action, applies to and compensates all Settlement Class Members, including Lead Plaintiffs, fairly and equally. The Plan of Allocation makes appropriate recognition of the status of the proceedings in the litigation and provides compensation to all Settlement Class Members. Lead Counsel respectfully submits that the Plan of Allocation provides an appropriate discounted recovery to those Settlement Class Members whose purchases of BP ADSs occurred during the period in which the Court has ruled that there is no

loss causation, but for which a right of appeal exists. Such a discounted recovery is appropriate and does not improperly grant preferential treatment to Lead Plaintiffs or particular members of the Settlement Class. *See, e.g.*, *In re Enron Corp. Sec., Derivative & ERISA Litig.*, MDL-1446, 2008 WL 4178151, *2 (S.D. Tex. Sept. 8, 2008) ("A class action settlement need not necessarily treat all class members equally."). In addition, the reimbursement of Lead Plaintiffs' reasonable costs and expenses incurred in connection with serving as Lead Plaintiffs is explicitly contemplated by the PSLRA. *See* 15 U.S.C. § 78u–4(a)(4). Thus, such reimbursement does not improperly grant preferential treatment to Lead Plaintiffs.

> **D. The Requested Attorneys' Fees and Expenses are Fair and Reasonable, and the Settlement Does Not Excessively Compensate Lead Counsel**

Lead Counsel will seek 11.57% of the Settlement Amount, pursuant to retainer agreements that Lead Counsel negotiated and entered into with Lead Plaintiffs at the outset of the litigation. This is far below percentages that courts routinely approve in securities class actions. For instance, in *In re Anadarko Petroleum Corp. Class Action Litigation*, No. 12-cv-00900 (S.D. Tex. Sep. 11, 2014) (Dkt. 108), this court approved attorneys' fees of 25%, in a case that involved substantially less litigation and discovery than this case. *See also Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005) ("courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Shaw v. Toshiba Am. Info. Sys.*, Inc., 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("based on the opinions of other courts and the available studies of class action attorneys' fees awards . . . this Court concludes that attorneys' fees in the range from twenty-five percent (25%) to [33%] have been routinely awarded in class actions"); *see also Jenkins*, 2014 WL 1229661, at *13 ("it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third").

11

## IV. THE PROPOSED FORM AND METHOD OF NOTICE TO THE SETTLEMENT CLASS

Lead Counsel respectfully submits that it is in the best interests of the class to proceed with a notice program that provides for the mailing of a short-form of Settlement Notice that directs Class Members to a website maintained by the Claims Administrator. The website would contain the long-form notice for Class Members to view and download, as well as copies of downloadable and printable claim forms that must be submitted in connection with the Claims Process.  Further, as an alternative for Class Members that may not have sufficient computer access, the short-form of the Settlement notice provides instructions for obtaining copies of the long-form notice and claims packet by mail from the Claims Administrator.  In connection with the notice of pendency of class action previously approved by the Court, the Claims Administrator mailed over 500,000 notices to potential Class Members.  The costs involved with printing and mailing a similar number of long-form notices and hard copies of the claim forms would be substantial – potentially approaching one million dollars in postage, printing, and associated charges.  Lead Counsel believes that the best interests of the class would be better served by minimizing the cost of mailing of paper forms, when proven and effective electronic alternatives are available.

In connection with a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both Rule 23(c)(2) and Rule 23(e). *See Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 744 (E.D. Tex. 2007), *stay granted, order amended sub nom.*, *Vaughn v. Am. Honda Motor Co., Inc.*, 507 F.3d 295 (5th Cir. 2007); *Schwartz*, 2005 WL 3148350, at *10.  Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Rule 23(e) is less specific, requiring only that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal."

As detailed in the proposed Preliminary Approval Order, Lead Counsel and the Claims Administrator propose to mail copies of a Summary Notice of Proposed Settlement of Class Action ("Summary Notice"), substantially in the form attached as Exhibit 1 to the Stipulation, by first class mail, to all identifiable Settlement Class Members, at their last known address appearing in the transfer records maintained by or on behalf of BP.  The Summary Notice commands the attention of potential Settlement Class members, provides summarized information about the Settlement, and directs potential Settlement Class Members to the website already established for this litigation in connection with the Court-approved notice of pendency of class action (www.bpsecuritieslitigation.com), where the Stipulation, a Notice of Proposed Settlement of Class Action ("Long-Form Notice"), substantially in the form attached as Exhibit 2 to the Stipulation, and a Proof of Claim form ("Proof of Claim"), substantially in the form attached as Exhibit 3 to the Stipulation, can be viewed and downloaded.  The Summary Notice also informs potential Settlement Class Members, including those who may lack computer access or have other limitations, how to obtain copies of the Long-Form Notice and Proof of Claim by mail from the Claims Administrator.  Copies of the Summary Notice will also be mailed to the largest banks and brokerage houses requesting that the Summary Notice be sent to all persons and entities for whom they act as nominee purchasers.  In addition, Lead Counsel will publish the relevant text of Summary Notice once in the national edition of *Investor's Business Daily* and once over the *PR Newswire* shortly after mailing of the Summary Notice.

With respect to content, the notice must contain the information outlined in Rule 23(c)(2)(B) and the additional information required by the PSLRA.  *See* 15 U.S.C.A. §78u-

13

4(a)(7). The proposed Long-Form Notice satisfies these requirements and will provide Settlement Class Members with the information necessary for them to make a decision whether to remain in, opt-out, or object to the settlement. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977) (notice must contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment."); *Vaughn*, 627 F. Supp. 2d at 744; *In re Shell Oil Refinery*, 155 F.R.D 552, 558 (E.D. La. 1993). The proposed Long-Form Notice describes: (i) the nature, history, and status of the Litigation; (ii) the Settlement; (iii) the definition of the Settlement Class; (iv) how a class member may exclude her-, him-, or itself from the settlement; (v) the process by which class members may enter an appearance through their own counsel; (vi) the binding effect of the settlement approval proceedings; (vii) the proposed plan of distribution; and (viii) the reasons the parties are proposing the Settlement. It also supplies the date, time, and place of the Fairness Hearing, and the procedures for commenting on the Settlement and appearing at the hearing.

As required by the PSLRA, the Summary and Long-Form Notice combined include the following information: (i) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per-share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiff prevailed, a statement from each settling party concerning the issue(s) on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs (including the amount of such fees and costs determined on an average per-share basis), and a brief explanation supporting the fees and costs sought; (iv) the name, telephone number, and address of one or more representatives of counsel

for the plaintiff class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement published or otherwise disseminated to the class; (v) a brief statement explaining the reasons why the parties are proposing the settlement; and (vi) such other information as may be required by the Court. *See* 15 U.S.C.A. §78u-4(a)(7)(A)-(F).

The proposed notice program fulfills the requirements of due process because it alerts and informs those Settlement Class Members who can be identified through reasonable efforts of all of the information set forth above. Courts routinely find that comparable notice programs meet the requirements of due process, the PSLRA, and Rule 23. *See In re Mut. Funds Inv. Litig.*, No. 04-MD-15863, 2010 WL 2077972, at *4 (D. Md. May 19, 2010) (approving notice program that involved mailing a summary notice with instructions for obtaining long-form notice online); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014) (same); *Trombley v. Bank of Am. Corp.*, No. 08-CV-456-JD, 2011 WL 3740488, at *2 (D.R.I. Aug. 24, 2011) (same). *See also In re Enron Corp. Sec. & ERISA Litig.*, Civ. No. H-01-3624, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003); *In re OCA, Inc. Sec. & Deriv. Litig.*, CIV A 05-2165, 2008 WL 4681369, at *14-16 (E.D. La. Oct. 17, 2008); *W. Wash. Laborers-Employers Pension Trust v. Panera Bread Co.*, No. 4:08CV00120 ERW, 2011 WL 720060, at *2-3 (E.D. Mo. Feb. 22, 2011); *In re General Elec. Co. Sec. Litig.*, No. 1:09-cv-01951-DLC, Dkt. No. 201 (S.D.N.Y. May 30, 2013) (approving notice program that included mailing of postcard settlement notices with instructions for obtaining long-form notice); *Ross v. Career Educ. Corp.*, No. 1:12-cv-00276, Dkt. No. 113 (N.D. Ill. Nov. 6, 2013) (same); *In re New Oriental Educ. & Tech. Group Sec. Litig.*, No 1:12-cv-05724-JGK, Dkt. No. 80 (S.D.N.Y. June 10, 2014) (same); .

## V. PROPOSED SCHEDULE

If the Court grants preliminary approval to the proposed Settlement, the parties respectfully submit the following procedural schedule for the Court's consideration. The

proposed Preliminary Approval Order includes blank dates that must be established by the Court to properly effectuate the Settlement. In this regard, the parties present the following general schedule of events to the Court:

| EVENT | PROPOSED DUE DATE |
|---|---|
| Deadline to commence mailing of Summary Notice to Settlement Class Members (the "Notice Date") | 10 days after entry of Preliminary Approval Order |
| Deadline to publish Summary Notice | 10 days after entry of Preliminary Approval Order |
| Deadline to file Motion for Final Approval and Motion for Award of Attorneys' Fees | 35 days before Final Approval Hearing |
| Deadline for objections to be filed with the Court | 28 days before Final Approval Hearing |
| Deadline for Settlement Class Members to submit exclusion requests to the Claims Administrator | 28 days before Final Approval Hearing |
| Deadline to file replies in support of Motions for Final Approval and for Award of Attorneys' Fees | 7 days before Final Approval Hearing |
| Deadline for Class Members to submit claim forms to the settlement administrator | April 1, 2017 |
| Final Approval Hearing | 75 days after Notice Date, or at the Court's convenience |

If this schedule is not convenient for the Court, Lead Plaintiffs respectfully request that the Court use at least the same or greater intervals between each event listed in the proposed schedule to provide all parties with sufficient time to comply with the proposed Preliminary Approval Order.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request the Court: (a) grant preliminary approval of the Settlement, including approving the form and substance of the proposed forms of notice and directing that notice be provided to the members of the Settlement Class; (b) appoint A.B. Data to serve as Claims Administrator; (c) schedule a hearing at which Final Approval of the Settlement, Plan of Allocation, and an award of attorneys' fees and

reimbursement of litigation expenses to Lead Counsel may be considered; and (d) grant such further relief as the Court deems just and proper.

DATED: September 15, 2016

                                              Respectfully submitted,

                                              /s/ Steven J. Buttacavoli
**BERMAN DEVALERIO**
Glen DeValerio (admitted *pro hac vice*)
Steven J. Buttacavoli (admitted *pro hac vice*)
One Liberty Square
Boston, MA 02109
Tel: (617) 542-8300
Fax: (617) 542-1194

*Counsel for the Ohio Public Employees Retirement System and the Post-Explosion Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (admitted *pro hac vice*)
Daniel S. Sommers (admitted *pro hac vice*)
Julie Goldsmith Reiser (admitted *pro hac vice*)
Joshua S. Devore (admitted *pro hac vice*)
1100 New York Avenue N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
Tel: (202) 408-4600
Fax: (202) 408-4699

*Counsel for New York and the Post-Explosion Class*

**BLOCK & LEVITON LLP**
Jeffrey C. Block (admitted *pro hac vice*)
Jason M. Leviton (admitted *pro hac vice*)
Erica Langsen (admitted *pro hac vice*)
155 Federal Street, Suite 400
Boston, MA 02110
Tel: (617) 398-5600

*Counsel for the Ohio Public Employees Retirement System*

17

**YETTER COLEMAN LLP**
R. Paul Yetter (Federal Bar No. 3639)
Autry W. Ross (Federal Bar No. 9731)
Wynn B. McCloskey (Federal Bar No. 99)
909 Fannin, Suite 3600
Houston, TX 77010
Tel: (713) 632-8000
Fax: (713) 632-8002

*Additional Counsel for New York and the Ohio Public Employees Retirement System*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2016, the foregoing was electronically served on counsel of record in this matter who are registered with the Court's ECF filing system through ECF notification and by electronic mail.

/s/ Steven J. Buttacavoli
Steven J. Buttacavoli

2156845.1