UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re BP p.l.c. Securities Litigation | Civil Action No.: 4:10-MD-02185 |
| | Honorable Keith P. Ellison |

**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

I.    The Settlement Warrants Final Approval ...................................................................... 3

    A.    The Evidence That The Settlement Was Negotiated At Arm's-Length Supports Final Approval .......................................................................... 4

    B.    The Complexity, Expense, And Likely Duration Of Continued Litigation Support Final Approval ................................................................. 5

    C.    The Stage Of The Litigation And Available Discovery Support Final Approval .................................................................................................. 6

    D.    The Risks To Prevailing On The Merits At Trial Support Final Approval .......................................................................................................... 7

    E.    The Range Of Possible Recovery And Certainty Of Damages Support Final Approval .......................................................................................... 8

    F.    The Opinions Of Class Counsel, Class Representatives, And Absent Class Members Support Final Approval ................................................ 9

II.    The Plan Of Allocation Is Fair, Reasonable, And Adequate ........................................ 11

III.    The Notice To The Settlement Class Satisfies The Requirements Of Due Process And Rule 23 ................................................................................................... 12

CONCLUSION ........................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................................................13

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ....................................................................................13

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) ................................................................................................5, 6

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ................................................................................................3, 8

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ..............................................................................................3, 9

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014), *cert. denied sub nom.*, 135 S. Ct. 754 (2014) .......................1, 3

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) ........................................................................................7, 9

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   No. MDL-1446, 2008 WL 4178151 (S.D. Tex. Sept. 8, 2008) ..............................................12

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ........................................................................3, 4, 6, 8

*Jarallah v. Sodexo, Inc.*,
   452 F. App'x 465 (5th Cir. 2011) .............................................................................................3

*Jenkins v. Trustmark Nat. Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) .........................................................................................13

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) .....................................................................................5

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ....................................................................................................8

*Miller v. Republic Nat'l Life Ins. Co.*,
   559 F.2d 426 (5th Cir. 1977) ....................................................................................................3

*In re Mutual Funds Inv. Litig.*,
   MDL No. 1586, 2010 WL 2342413 (D. Md. May 19, 2010) .................................................13

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) ................................................................................................4

*In re OCA, Inc. Sec. & Derivative Litig.*,
   No. 05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) ..................................................11, 13

*Reed v. General Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ..................................................................................4, 6, 7, 8

*Rodriguez v. West Pub'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................................................6

*Schwartz v. TXU Corp.*,
   No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex Nov. 8, 2005) .......................................12

*Stott v. Capital Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) .....................................................................................6, 9

*Vaughn v. Am. Honda Motor Co.*,
   627 F. Supp. 2d 738 (E.D. Tex. 2007), *stay granted, order amended sub nom.*,
   507 F.3d 295 (5th Cir. 2007) ..............................................................................................12

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed.
   2002) ....................................................................................................................................3

Fed. R. Civ. P. 23 .................................................................................................1, 3, 12, 13

*Full-Year Review*, NERA Economic Consulting (Jan. 25, 2016),
   http://www.nera.com/content/dam/nera/publications/2016/2015_Securities_Tr
   ends_Report_NERA.pdf .......................................................................................................9

Lead Plaintiffs Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of New York State and Local Retirement Systems and the sole Trustee of the New York State Common Retirement Fund ("New York"), and the Ohio Public Employees Retirement System ("OPERS") (collectively, "Lead Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this motion for final approval of the $175 million Settlement[1] reached between Lead Plaintiffs and Defendants BP p.l.c. ("BP"), Anthony Hayward, and Douglas Suttles (collectively, the "Settling Defendants"), on behalf of the Post-Explosion Class.

Lead Plaintiffs respectfully submit that, for the reasons set forth below, the Settlement is "fair, reasonable, and adequate" under Rule 23(e), and the Court should now grant final approval.

## INTRODUCTION

This litigation arose from the April 20, 2010 *Deepwater Horizon* explosion. Lead Plaintiffs alleged that BP and two of its senior executives misled investors about the severity of the oil spill in the Gulf of Mexico, which impeded investors' ability to assess the financial implications of the spill on BP.

The Settlement comes before this Court after six years of hard-fought litigation, including multiple motions to dismiss, multiple motions for class certification and a related appeal, the completion of intensive fact and expert discovery, and hundreds of pages of summary judgment briefing, and argument and a decision thereon. The parties have a full appreciation of the strengths and weaknesses of the claims and defenses in this action. The Settlement resulted from

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement Regarding "Post-Explosion" American Depositary Shares Class Action ("Stipulation"), filed on September 22, 2016 (ECF No. 1399).

1

arm's-length negotiations conducted with the substantial assistance of Hon. Daniel Weinstein (Ret.) as mediator, including multiple in-person mediation sessions (in which New York and OPERS participated) and extensive communications between the parties. It provides for a substantial payment of $175,000,000 in cash (the "Settlement Amount") for the benefit of the Settlement Class.

In reaching the Settlement, Lead Plaintiffs and Lead Counsel considered the numerous risks associated with continuing the litigation, including the risk of recovering less than the Settlement Amount after substantial delay or the risk of no recovery at all. Indeed, a summary judgment ruling on loss causation significantly constrained the amount of damages recoverable to the class. Moreover, Lead Plaintiffs faced yet additional hurdles: defeating Defendants' *Daubert* challenges, obtaining favorable jury verdicts on liability and damages at trial, and defending those verdicts through multiple rounds of post-trial proceedings and appeals, all of which likely would have taken years to complete, and none of which was guaranteed to result in a favorable outcome for Lead Plaintiffs and the Settlement Class.

Instead, the $175 million Settlement provides an immediate and concrete benefit to the Settlement Class. Moreover, Lead Counsel, in consultation with Plaintiffs' damages expert, estimates that the Settlement Amount represents a substantial portion of the recoverable damages that were available at trial following the summary judgment decision. Lead Plaintiffs and Lead Counsel respectfully submit that this is an outstanding result for the Class, and a more than fair and reasonable resolution of this Action.

This Court granted preliminary approval of the Settlement on November 4, 2016 (ECF No. 1444), and approved the process by which potential Settlement Class Members would receive notice of the Settlement and submit claims, objections, or requests for exclusion. That

process is now substantially underway, and, as of today, no Settlement Class Member has objected to the Settlement, and no additional opt-out requests have been received from investors who had not already previously opted-out in response to the notice of pendency. In fact, certain investors have *opted back into* the Settlement Class. At this juncture, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement. A separate motion for attorneys' fees and reimbursement of litigation expenses is being filed concurrently.

## ARGUMENT

**I.     THE SETTLEMENT WARRANTS FINAL APPROVAL**

The Fifth Circuit has long recognized that there is a strong public policy in favor of the pretrial settlement of class action lawsuits. *See, e.g.*, *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014), *cert. denied sub nom.*, 135 S. Ct. 754 (2014) (noting that there is an "overriding public interest in favor of settlement that we have recognized particularly in class action suits.") (internal quotations, modifications, and citations omitted); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (settlements of class actions are "'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'") (citation omitted); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981) (noting "strong judicial policy favoring settlement of disputes"); *see also Jarallah v. Sodexo, Inc.*, 452 F. App'x 465, 468 (5th Cir. 2011) ("[S]ettlement agreements are highly favored by the law and will be upheld whenever possible."); *see also* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002).

Under Federal Rule of Civil Procedure 23(e), the Court should grant final approval of the Settlement if it finds that it is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *In re*

3

*Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012). In making this assessment, courts in this circuit consider what are known as the *Reed* factors, after *Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983):

> (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*Newby v. Enron Corp.,* 394 F.3d 296, 301 (5th Cir. 2004).

Here, all factors weigh in favor of approval.

### A. The Evidence That the Settlement Was Negotiated at Arm's-Length Supports Final Approval

The first *Reed* factor is readily satisfied here, where there is no evidence of fraud or collusion in connection with the Settlement. To the contrary, the Settlement was reached after extensive, arm's-length, settlement negotiations, presided over by Judge Daniel Weinstein (Ret.), an experienced and well-respected mediator. Notably, representatives of Lead Plaintiffs were substantially involved in the negotiations, including by attending in-person mediation sessions, and the settlement has been approved by both of these highly sophisticated institutional investors with substantial stakes in the outcome. *See* Declaration of Nancy G. Groenwegen on Behalf of Lead Plaintiff New York State Common Retirement Fund, dated January 9, 2017 ("Groenwegen Declaration") and Declaration of Julie Becker on Behalf of Lead Plaintiff Ohio Public Employees Retirement System, dated January 9, 2017 ("Becker Declaration"), attached as Exhibits 2 and 3 to the Joint Declaration of Julie Goldsmith Reiser and Glen DeVelario, dated January 9, 2017 ("Joint Declaration").

Accordingly, the first factor weighs in favor of approval. *See, e.g.*, *In re Heartland*, 851 F. Supp. 2d at 1063 (describing arms'-length negotiations that led to approved settlement).

### B.     The Complexity, Expense, and Likely Duration of Continued Litigation Support Final Approval

"When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). Here, continued litigation would have entailed a complex, expensive, and risky trial; and the inevitable lengthy post-trial proceedings, including years of appellate litigation, given the stakes involved and Defendants' resources and entrenched positions.

While the summary judgment decision decided certain of the outstanding issues and narrowed the scope of this litigation, there remained significant issues of expert witness admissibility pending before the Court, as well as substantial and complex issues of liability, causation and damages that would have needed to be resolved by the jury. For instance, with respect to falsity and scienter, the Court held that misrepresentations that remain in the case were statements of opinion, which would require the jury to apply a more "demanding legal standard" than if they were statements of fact. Memorandum and Order dated May 31, 2016 (ECF No. 1356) ("Summary Judgment Order") at 15 ("Statements of fact are subject to a less demanding legal standard.") As another example, with respect to loss causation, the Court held that there was non-fraudulent information released on the dates of the alleged corrective disclosures, which would require the jury to "disentangle the effects of this confounding information from the effects of the fraud-related statements." *Id*. at 62.

A trial of this highly complex action would have taken enormous resources, costing millions of dollars. And regardless of the outcome of the trial, there likely would have been numerous issues that would have remained for either side to pursue on appeal, delaying any

5

payment to the Class for years. Thus, the second *Reed* factor also supports final approval. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1064 ("Litigating this case to trial would be time consuming, and '[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years.'") (quoting *Rodriguez v. West Pub'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

**C.     The Stage of the Litigation and Available Discovery Support Final Approval**

Under the third *Reed* factor, the question is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. This information should allow the parties and the Court to "gauge the strengths and weaknesses of the claims and defenses," "determine the settlement's adequacy in relation to the probability of success on the merits," and understand the "legal issues" involved with continued litigation. *In re Heartland*, 851 F. Supp. 2d at 1065 (citing *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 344 (N.D. Tex. 2011).

Here, there can be no question the parties and the Court have such information. Fact and expert discovery has been completed in this Action, and entailed the collection and review of nearly 375,000 pages of documents; 14 fact witness depositions; 18 expert reports; and eight expert depositions. Moreover, the parties have brief and argued, and the Court now has ruled on, the parties' voluminous competing summary judgment motions. The Court also has the benefit of extensive briefing on *Daubert* issues. Additionally, Lead Counsel had the benefit of receiving and analyzing substantial discovery from the related MDL 2179 oil spill litigation, including millions of pages of documents produced in that matter (including more than one million documents produced by BP and certain of its contractors) and 435 depositions (some of which Plaintiffs' counsel attended). Thus, the parties and the Court

clearly have "ample information." Accordingly, this factor favors final approval of the Settlement.

### D. The Risks to Prevailing on the Merits at Trial Support Final Approval

In evaluating the fourth *Reed* factor, the Court must assess "the likelihood of plaintiffs' success on the merits if the case were to proceed to trial," taking into consideration "the rewards the class would have been likely to receive" upon such success, and measuring "the terms of the settlement" against those factors. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007). *Reed* cautions, however, there is some "internal tension" in making this inquiry, as the Court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotation marks and alteration omitted).

Here, Lead Plaintiffs and Lead Counsel believe that the claims asserted have substantial merit. However, it is also clear that Lead Plaintiffs faced significant risks to prevailing on the merits. Indeed, while the Court denied Lead Plaintiffs' motion for partial summary judgment on the issues of falsity and scienter, the Court also denied summary judgment for Defendants, including on the issues of falsity and scienter for the alleged misrepresentations that remain in the case (Defendant Hayward was dismissed only as a consequence of the Court's ruling on corrective disclosures and loss causation). The Court's denial of Lead Plaintiffs' motion for partial summary judgment implies that, in the Court's view, a reasonable juror could find for Defendants on any or all merits issues. Indeed, for example, the Court held that there was "insufficient evidence to warrant summary judgment in Plaintiffs' favor" on the issue of defendant Suttles' scienter for the April 24th, 2010 statement. Summary Judgment Order at 23. Thus, whatever the precise likelihood of a jury verdict on the merits in Lead Plaintiffs' favor, there would exist meaningful risks that a jury would decide that, for example, the alleged

7

misrepresentations (or certain of them) were either not false, not made with scienter, or both. Moreover, there would remain substantial risk related to Lead Plaintiffs' showing of loss causation even for those disclosures that survived summary judgment, as well with respect to the jury's determination of damages. Any adverse jury findings on loss causation or damages would have meant no recovery or a substantially reduced recovery for the class.

By contrast, the Settlement provides for a prompt and certain payment of $175 million to resolve the claims of the Settlement Class. Compared to the risk and uncertainty of success on the merits at trial (and on any appeals likely to follow), this weighs in favor of final approval.

### E. The Range of Possible Recovery and Certainty of Damages Support Final Approval

The fifth *Reed* factor requires the district court to consider "the range of possible damages that could be recovered at trial and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiff settlors." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983) (internal quotation marks omitted) (*quoting In re Corrugated Container*, 643 F.2d at 213). The Court need not determine "exactly the remedy they would have asked the Court to enter absent the settlement," but only "whether the settlement's terms fall within a *reasonable range of recovery*, given the likelihood of the plaintiffs' success on the merits." *In re Heartland*, 851 F. Supp. 2d at 1067. (internal quotation marks omitted).

Here, the $175 million recovery represents a substantial portion of the total recoverable damages remaining following the summary judgment decision. *See* Joint Declaration, ¶ 35. Lead Plaintiffs and Lead Counsel submit that this is thus well within the range of reasonableness in light of the risks, and indeed is an excellent result. For example, according to a report by NERA Economic Consulting published in 2015, between 1996 and 2015, the median settlement of

8

securities class actions involving between $400 and $599 million in investor losses was a settlement that represented just 1.8% of such losses. *See* Svetlana Starykh & Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review*, NERA Economic Consulting (Jan. 25, 2016), http://www.nera.com/content/dam/nera/publications/2016/2015_Securities_Trends_Report_NERA.pdf. The settlement here, which is for a substantial portion of the maximum recoverable damages, compares favorably to that percentage. Thus, Lead Plaintiffs and Lead Counsel submit that the Settlement is clearly within the range of reasonableness.

### F. The Opinions of Class Counsel, Class Representatives, and Absent Class Members Support Final Approval

"The final factor is the opinions of class counsel, class representatives, and absent class members." *Stott*, 277 F.R.D. at 346. Here, the opinions of all three groups—Lead Counsel, Lead Plaintiffs, and Settlement Class Members—weigh in favor of final approval.

Lead Counsel strongly endorse the Settlement, and has submitted a detailed declaration to that effect. *See* Joint Declaration, ¶¶ 35-40. In sum, as set forth above, Lead Counsel believe the Settlement is an excellent result for the Settlement Class in light of the risks that remained. "The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *DeHoyos*, 240 F.R.D. at 292; *see also Stott*, 277 F.R.D. at 346 ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'" (quoting *Cotton*, 559 F.2d at 1330).

Both New York and OPERS also strongly endorse the Settlement, and have submitted declarations strongly endorsing the settlement as well. *See* Groenwegen Declaration, ¶ 19 and

Becker Declaration, ¶¶ 8-9. These endorsements come after representatives of Lead Plaintiffs participated in and directed the settlement negotiations both at in-person mediation sessions and through guiding the ensuing communications that led to the Settlement. The endorsements of both New York and OPERS weighs strongly in favor of approval of the Settlement.

The reaction of Settlement Class Members also strongly supports final approval. Indeed, after learning the terms of the Settlement, certain investors have requested to *opt back into* the Settlement Class despite previously opting out. *See*, *e.g.*, Letter dated October 3, 2016 (ECF No. 1424) (requesting permission to opt back into the Settlement Class on behalf of certain investment funds and individuals who purchased BP ADS after April 26, 2010). Needless to say, this reaction evidences approval of the Settlement by Settlement Class Members.

Moreover, no "new" opt-out requests have been received since the details of the Settlement have been announced. There have been only 23 requests for exclusion from the Settlement Class received to date, all of which are from individuals and entities that had previously submitted requests for exclusion in response to the Notice of Pendency approved by the Court on November 18, 2015. *See* Declaration of Eric Schachter on Behalf of A.B. Data, Ltd., dated January 9, 2017, attached as Exhibit 1 to the Joint Declaration ("A.B. Data Declaration"), ¶¶ 16-17. Many of these are plaintiffs who are pursuing their own individual actions. Additionally, no notices of intent to appear and object to the settlement have been received to date.

The miniscule relative amount of requests for exclusion, combined with the fact that certain investors who previously requested exclusion have now opted back in, show that

Settlement Class Members overwhelmingly support the Settlement, which weighs in favor of final approval.[2]

## II. THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The Settlement should also be finally approved because it does not improperly grant preferential treatment to either Lead Plaintiffs or any segment of the Settlement Class. *See, e.g.*, *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *11 (E.D. La. Mar. 2, 2009) (granting final approval to plan of allocation that "does not give unfair or preferential treatment to the lead plaintiff or any segment of the class."). Rather, all members of the Settlement Class, including Lead Plaintiffs, will receive an allocation of the Settlement Fund pursuant to the proposed Plan of Allocation. The Plan of Allocation awards a set measure of inflation for each day during the Class Period that will be used to calculate each claimant's pro rata share of the Settlement. *See* Plan of Allocation, attached as Exhibit 12 to the Joint Declaration. This Plan of Allocation, developed in compliance with the expert damages and loss causation reports in the action, applies equally to and compensates all Settlement Class Members, including Lead Plaintiffs, fairly.

---

[2] In connection with preliminary approval briefing, plaintiffs in related individual actions raised various objections to the Settlement's opt-out procedure. In particular, those plaintiffs argued that it was possible that the opt-out requirement would result in the inadvertent release of **all** the claims asserted in the individual actions, if the individual action plaintiffs erroneously concluded that they did not have Class-Period purchases and failed to timely opt out. The Court held that the individual action plaintiffs' concerns were overstated, because under their hypothetical, only post-explosion ADS claims would be released. The Court then preliminarily approved the Settlement and its opt-out procedure. *See* Memorandum and Order dated November 4, 2016 (ECF No. 1444). Lead Plaintiffs understand that approval as overruling of the individual action plaintiffs' objection. To the extent those objections have not been conclusively overruled, Lead Plaintiffs respectfully request they be overruled now, for the same reasons set forth in the parties' earlier briefing, and in the Court's November 4, 2016 order.

The Plan of Allocation makes appropriate recognition of the status of the proceedings in the litigation and provides compensation to all Settlement Class Members based on the strength and value of the claims remaining in the action. Class Members who purchased during the period prior to May 3, 2010 receive a proportionately larger recovery than those that purchased after the latest date that the court found loss causation could be shown. *See* Plan of Allocation. Lead Counsel respectfully submits that the Plan of Allocation provides an appropriate discounted recovery to those Settlement Class Members whose purchases of BP ADSs occurred during the period in which the Court has ruled that there is no loss causation, but for which a right of appeal exists. Such a discounted recovery is appropriate and does not improperly grant preferential treatment to Lead Plaintiffs or particular members of the Settlement Class. *See, e.g.*, *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. MDL-1446, 2008 WL 4178151, at *2 (S.D. Tex. Sept. 8, 2008) ("A class action settlement need not necessarily treat all class members equally.")

### III. THE NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF DUE PROCESS AND RULE 23

In connection with a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both Rule 23(c)(2) and Rule 23(e). *See Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 744 (E.D. Tex. 2007), *stay granted, order amended sub nom.*, 507 F.3d 295 (5th Cir. 2007); *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *10 (N.D. Tex. Nov. 8, 2005). Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(e) is less specific, requiring only that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal."

Here, notice was disseminated in accordance with the Court's Preliminary Approval Order. As of January 6, 2017, the Claims Administrator mailed 674,644 copies of the Summary Notice to potential Class Members and their nominees. A.B. Data Declaration, ¶¶ 6-11, 13; *see also, e.g.*, *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 301 (S.D. Miss. 2014) (approving use of postcards); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts.") (citing *In re Mutual Funds Inv. Litig.*, MDL No. 1586, 2010 WL 2342413, at *6–7 (D. Md. May 19, 2010) and *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011)). In addition, the Claims Administrator caused the Summary Notice to be published in the *Wall Street Journal* and disseminated on *PR Newswire* and copies of the Long-Form Notice and Claim Form were made available on a dedicated website maintained by the Claims Administrator. *Id.*, ¶ 13. As of January 6, 2017, the website has received 43,765 hits. *Id.*

This combination of individual mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely-circulated publication, and set forth on Internet websites, was "the best notice … practicable under the circumstances" and satisfies the requirements of due process and Rule 23. Fed. R. Civ. P. 23(c)(2)(B). *See, e.g.*, *In re OCA,* 2009 WL 512081, at *8 (finding program where notice was published in *The Wall Street Journal* and disseminated on *PR Newswire*, posted on a dedicated website, and mailed to class members compliant with Rule 23 and due process).

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request the Court approved the Settlement and Plan of Allocation as fair, reasonable, and adequate.

DATED: January 9, 2017            Respectfully submitted,

*/s/ Julie Goldsmith Reiser*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (admitted pro hac vice)
Daniel S. Sommers (admitted pro hac vice)
Julie Goldsmith Reiser (admitted pro hac vice)
Joshua S. Devore (admitted pro hac vice)
1100 New York Avenue N.W.
Fifth Floor
Washington, D.C. 20005-3964
Tel: (202) 408-4600
Fax: (202) 408-4699

*Counsel for New York and the Post-Explosion Class*

**BERMAN DEVALERIO**
Glen DeValerio (admitted pro hac vice)
Bryan A. Wood (admitted pro hac vice)
Steven J. Buttacavoli (admitted pro hac vice)
One Liberty Square
Boston, MA 02109
Tel: (617) 542-8300
Fax: (617) 542-1194

*Counsel for the Ohio Public Employees Retirement System and the Post-Explosion Class*

**BLOCK & LEVITON LLP**
Jeffrey C. Block (admitted pro hac vice)
Jason M. Leviton (admitted pro hac vice)
Erica Langsen (admitted pro hac vice)
155 Federal Street, Suite 400
Boston, MA 02110
Tel: (617) 398-5600
Fax: (617) 507-6020

*Counsel for the Ohio Public Employees Retirement System*

**YETTER COLEMAN LLP**
R. Paul Yetter (Federal Bar No. 3639)
Autry W. Ross (Federal Bar No. 9731)

Wynn B. McCloskey (Federal Bar No. 99)
909 Fannin, Suite 3600
Houston, TX 77010
Tel: (713) 632-8000
Fax: (713) 632-8002

***Additional Counsel for New York and the Ohio Public Employees Retirement System***

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2016, the foregoing was electronically served on counsel of record in this matter who are registered with the Court's ECF filing system through ECF notification and by electronic mail.

*/s/ Julie Goldsmith Reiser*
Julie Goldsmith Reiser