**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re BP p.l.c. Securities Litigation | ) ) ) ) ) ) ) ) ) ) | Civil Action No.: 4:10-MD-02185<br><br>Honorable Keith P. Ellison |

**LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...........................................................................................................................5

I.    LEAD COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND .....................................................................................................4

II.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD ............................4

    A.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method ........................................................................................................................6

    B.    The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method ....................8

III.    OTHER FACTORS CONSIDERED BY COURTS IN THE FIFTH CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE ...................................................10

    A.    The *Johnson* Factors Confirm that the Requested Fee is Fair and Reasonable .................11

        1.    The Time and Labor Required ........................................................................11

        2.    The Novelty and Difficulty of the Issues ........................................................12

        3.    The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys ........................................................13

        4.    The Preclusion of Other Employment ............................................................15

        5.    The Customary Fee ......................................................................................15

        6.    The Contingent Nature of the Fee .................................................................15

        7.    The Amount Involved and the Results Achieved ..............................................17

        8.    The Undesirability of the Case ......................................................................17

        9.    Awards in Similar Cases ...............................................................................18

    B.    Other Factors Considered by the Courts Further Support the Requested Fee as Fair and Reasonable .......................................................................................................18

        1.    Public Policy Considerations Support the Requested Fee..................................18

        2.    The Lead Plaintiffs Negotiated this Fee at the Inception of the Litigation .....................19

**3.    The Reaction of the Settlement Class to Date Supports the Requested Fee** .................... **20**

**CONCLUSION** ................................................................................................................................. **22**

# TABLE OF AUTHORITIES

**Cases**

*Barton v. Drummond Co.*,
    636 F.2d 978 (5th Cir. 1981) ................................................................... 4

*Billitteri v. Securities Am., Inc.*,
    3:09-CV-01568-F, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) ................................... passim

*Blum v. Stenson*,
    465 U.S. 886 (1984) ................................................................... 6

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................... 4

*Braud v. Transport Serv. Co.*,
    No. 051898, 2010 WL 3283398 (E.D. La. Aug. 17, 2010) ................................... 17

*Burford v. Cargill, Inc.*,
    No. 05-0283, 2012 WL 5471985 (W.D. La Nov. 8, 2012) ................................... 15

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ................................................................... 18

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ................................................................... 9, 15

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ................................................................... 16

*Garber v. Pharmacia Corp. et al*,
    No. 3:03-cv-01519 (D.N.J. Jan. 30, 2013) ................................................................... 8

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................... 5

*In re Anadarko Sec. Litig.*,
    957 F.Supp.2d 806 (S.D. Tex. July 15, 2013) ................................................................... 7

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*,
    148 F. Supp. 3d 303 (S.D.N.Y. 2015) ................................................................... 7

*In re Beacon Assocs. Litig.*,
    No. 09 CIV. 3907, 2013 WL 2450960 (S.D.N.Y. May 9, 2013) ....................................... 7

*In re Bristol-Myers Squibb Sec. Litig.*,
No. 06-2964, 2007 WL 2153284 (3d Cir. July 27, 2007) ...................................................... 7

*In re Broadcom Corp. Sec. Litig.*,
No. 2:06-cv-05036 (C.D. Cal. Feb. 4, 2012) .......................................................................... 7

*In re Brocade Sec. Litig.*,
No. 3:05-cv-02042 (N.D. Cal. Jan. 1, 2009) ........................................................................... 8

*In re CMS Energy Sec. Litig.*,
No. 02 CV 72004(GCS), 2007 WL 9611274 (E.D. Mich. Sept. 6, 2007) ................................ 7

*In re Comverse Technology, Inc.*,
No. 06-cv-1825 (E.D.N.Y. June 23, 2010) ............................................................................. 7

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ............................................................................... 9, 14

*In re Fannie Mae 2008 Sec. Litig.*,
No. 1:08-cv-07831 (S.D.N.Y. Mar. 3, 2015) ........................................................................... 8

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..................... 5, 19

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................... 7

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................................................. 10

*In re Lucent Techs., Inc. Sec. Litig.*,
327 F. Supp. 2d 426 (D.N.J. 2004) ....................................................................................... 20

*In re Maxim Integrated Products, Inc., Sec. Litig.*,
No. 5:08-cv-00832 (N.D. Cal. Nov. 1, 2010) .......................................................................... 7

*In re Microstrategy Inc. Sec. Litig.*,
172 F.Supp.2d 778 (E.D. Va. 2001) ....................................................................................... 8

*In re OCA, Inc. Sec. & Derivative Litig.*,
No. 05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) .............................................. 6, 13, 16

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
No. 08-cv-397 (D.N.J. Oct. 1, 2013) ...................................................................................... 7

*In re Schering-Plough Corp. Sec. Litig.*,

iv

No. 01-cv-0829, 2009 WL 5218066 (D.N.J. Dec. 31, 2009).................................................. 8

*In re Sears, Roebuck & Co. Sec. Litig.,*
No. 02-cv-7527 (N.D. Ill. Jan. 8, 2007) ....................................................................... 7

*In re The Mills Corp. Sec. Litig.,*
265 F.R.D. 246 (E.D. Va. 2009) ................................................................................... 7

*In re Veeco Instruments Inc. Sec. Litig.,*
No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)..................... 20

*In re WellCare Health Plans Sec. Litig.,*
No. 07-cv-01940 (M.D. Fla. May 4, 2011) ................................................................... 7

*Jenkins v. Trustmark Nat'l Bank,*
300 F.R.D. 291 (S.D. Miss. Mar. 25, 2014)........................................................ 5, 6, 18

*Johnson v. Georgia Highway Express, Inc.,*
488 F.2d 714 (5th Cir. 1974)................................................................................ 8, 11, 14

*King v. United SA Fed. Credit Union,*
744 F. Supp. 2d 607 (W.D. Tex. 2010)........................................................................ 14

*Klein et al. v. O'Neal, Inc. et al.,*
705 F. Supp. 2d 632 (N.D. Tex. Apr. 9, 2010)........................................... 9, 10, 16, 18

*Leroy v. City of Houston,*
831 F.2d 576 (5th Cir. 1987)......................................................................................... 9

*Maley v. Del Global Techs. Corp.,*
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................................... 10

*Missouri v. Jenkins,*
491 U.S. 274 (1989)...................................................................................................... 9

*Omnicare v. Laborers Dist. Council Const. Industry Pension Fund,*
135 S. Ct. 1318 (2015).................................................................................................. 13

*Roussel v. Brinker Int'l, Inc.,*
No. H-05-3733, 2010 WL 1881898 (S.D. Tex. Jan. 13, 2010), *aff'd,* 441 F. App'x 222
(5th Cir. 2011) ............................................................................................................. 17

*Schuh v. HCA Holdings, Inc. et al,*
No. 3:11-cv-01033 (M.D. Tenn. Apr. 14, 2016)........................................................... 7

*Schwartz v. TXU Corp.*,
 No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................ 2, 6, 15, 18

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
 91 F. Supp. 2d 942 (E.D. Tex. 2000) ............................................................................. 6, 15

*Silverman v. Motorola, Inc.*,
 No. 07-cv-4507 (N.D. Ill. May 7, 2012) .............................................................................. 7

*Turner v. Murphy Oil USA, Inc.*,
 472 F. Supp. 2d 830 (E.D. La. 2007) ................................................................................... 9

*Union Asset Mgm't Holding A.G. v. Dell, Inc.*,
 669 F.3d 632 (5th Cir. 2012) ....................................................................................... 5, 6, 8, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) ..................................................................................................... 6

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995) .......................................................................................... 19

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 14.121 (2004) .................................. 6

Court appointed Co-Lead Class Counsel Cohen Milstein Sellers & Toll, P.C. ("Cohen Milstein") and Berman DeValerio, and Counsel to Lead Plaintiff the Ohio Public Employees System ("OPERS") Block & Leviton LLP ("Block Firm") ("Lead Counsel"),[1] having achieved a Settlement of $175,000,000 for the benefit of the Settlement Class, respectfully bring this motion for an award of attorneys' fees in the total combined amount of $20,250,000, approximately 11.57% of the Settlement Fund.  Lead Counsel, as well as the New York State Common Retirement System ("New York") (together with OPERS the "Lead Plaintiffs") and the Ohio Attorney General's office, statutory litigation counsel to OPERS, seek reimbursement of $2,741,783.36 in expenses reasonably incurred in prosecuting the Action. The Ludlow Plaintiffs' Counsel also seek reimbursement of $1,310,941.89 in expenses that have been reviewed by Lead Counsel and which were incurred in connection with the prosecution of the post-explosion class claims. The total expense reimbursement request is $4,052,725.25.

## PRELIMINARY STATEMENT

After almost seven years of hard fought litigation involving multiple motions to dismiss and motions for class certification, reviewing more than 1.4 million pages of documents, submitting and responding to 18 different expert reports, taking and defending 22 merits and expert depositions, defending an appeal before the Fifth Circuit, briefing and arguing a motion for summary judgment, and briefing *Daubert* challenges to their experts' testimony, Lead Counsel now seek an award of attorneys' fees and expenses.  Lead Counsel's requested fee is aligned with the fee agreement entered into between Lead Counsel and Lead Plaintiffs at the outset of the litigation, which provides for a reasonable and modest attorney fee award of only

---

[1] As used herein, "Lead Counsel" includes: (a) the Court-appointed Lead Counsel for the Class, the law firms Cohen Milstein and Berman DeValerio; (b) Counsel for OPERS, the law firms Block & Leviton LLP ("B&L"), Keating Muething & Klekamp PLL ("KMK"), and Dyer, Garofalo, Mann & Schultz LPA ("DGMS"); and (c) additional counsel for Lead Plaintiffs New York and OPERS, Yetter Coleman LLP.

1

approximately 11.57% of the common fund achieved.  Lead Counsel's total lodestar far exceeds the $20,250,000 request, resulting in a "multiplier" of 0.39, which is far below the range of multipliers routinely awarded in class actions with substantial contingency risks such as this one.

This fee request is well below requests made in similar cases and is especially fair and reasonable in light of the outstanding recovery achieved for the Settlement Class, amounting to a substantial amount of the maximum losses recoverable by the Class at trial.  In the Fifth Circuit, district courts routinely award as much as 25-30% of the common fund, even where the litigation has not even reached the discovery phase. *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005).

As detailed in the accompanying Declaration of Julie Goldsmith Reiser and Glen DeValerio ("Joint Declaration"), to achieve the recovery here, Lead Counsel devoted substantial resources to pursuing this litigation by, among other things, (i) conducting a thorough factual investigation into the Macondo Well oil spill and BP's public statements concerning its safety record, safety programs and statements concerning the amount of oil being spilled after the *Deepwater Horizon* explosion; (ii) preparing three detailed amended complaints based on this investigation; (iii) litigating three motions to dismiss; (iv) reviewing more than 1.4 million pages of documents; (v) consulting with experts in the oil well drilling industry and an economic expert on damages under the securities laws; (v) taking and defending eight expert depositions; (vi) reviewing more than 435 depositions taken in the MDL 2179 litigation including attending key depositions taken in the MDL 2179 litigation; (vii) taking and defending 14 merits depositions in this action; (viii) preparing two motions for class certification; (ix) defending this Court's decision certifying the class before the Fifth Circuit; (x) preparing and opposing motions for summary judgment and *Daubert* oppositions to

their experts' testimony and arguing the summary judgment motion; and (xi) engaging in extensive settlement negotiations that included preparing detailed mediation statements and participating in a mediation session conducted by former California Supreme Court Judge Daniel Weinstein. *See* Joint Declaration, ¶¶ 13-27 and 34.

Lead Counsel undertook these substantial efforts and achieved the proposed Settlement in the face of daunting litigation risks. The case was subject to the heightened pleading standards of the Private Sec. Litig. Reform Act of 1995 ("PSLRA") and Lead Plaintiffs had to overcome detailed arguments in support of Defendants' motions to dismiss, in opposition to class certification and in support of summary judgment. In addition, Lead Plaintiffs faced obstacles establishing loss causation, which had a strong impact on the size and scope of the class that was eventually certified and which substantially trimmed the size of the class and the recoverable damages. Lead Plaintiffs also faced significant additional risk, absent this settlement, including prevailing at trial and defending any verdict on appeal.

As compensation for their significant efforts and achievements on behalf of the Settlement Class, Lead Counsel requests a fee award and reimbursement of litigation expenses. Lead Counsel's request is supported by the endorsement of Lead their Plaintiffs, sophisticated institutional investors who negotiated a favorable fee arrangement for the class at the beginning of the case. *See* Declarations of Nancy G. Groenwegen on behalf of New York ("Groenwegen Declaration") and Julie Becker on behalf of OPERS ("Becker Declaration"), attached as Exhibits 2 and 3 to the Joint Declaration. It is further supported by the reaction of the Settlement Class to date. Pursuant to the Court's Preliminary Approval Order (ECF No. 1444), as of January 6, 2017, 674,644 copies of the Notice have been mailed to potential Settlement Class Members and nominees, and the Summary Notice was published in *The Wall Street Journal* and

3

transmitted over *PR Newswire*.[2]  The Notice advised potential Settlement Class Members that Lead Counsel would seek attorneys' fees of up to $20,250,000 from the Settlement Fund and reimbursement of litigation expenses in an amount not to exceed $5,000,000.  *See* Joint Declaration, ¶ 63. While the deadline for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the attorneys' fees or expenses set forth in the Notice have been received.

The expenses incurred by Lead Counsel were reasonable and appropriate.  A significant amount of expenses were incurred in paying experts, hosting documents, travel costs to attend court hearings and take and defend depositions, legal research and other costs necessary to prosecute a large class action.  These out-of-pocket expenses are typical and necessary expenditures and Lead Counsel respectfully submit they should be approved.  Likewise, Lead Plaintiffs have themselves incurred reasonable out-of-pocket costs in acting in their roles on behalf of the class.  Lead Plaintiffs respectfully request reimbursement of these necessary costs in order to fulfill their obligations.

For all the reasons set forth below, Lead Counsel and Lead Plaintiffs respectfully requests that the Court approve their application for an award of attorneys' fees and reimbursement of expenses.

## ARGUMENT

## I.   LEAD COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The Supreme Court and the Fifth Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled

---

[2] *See* Declaration of Eric Schachter Regarding Mailing of Notice and Exclusion Requests (the "A.B. Data Declaration"), attached as Exhibit 1 to the Joint Declaration, at ¶¶ 9, 10.

4

to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981). Courts recognize that awards of fair attorneys' fees from a common fund serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, No. 3:12-CV-00380-DPJ-FKB, 2014 WL 1229661, at *13 (S.D. Miss. Mar. 25, 2014) (citation omitted); *see also In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010) (awards to counsel from a common fund "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature").

Compensating Lead Counsel for the risks they take in bringing these actions is essential, because "[s]uch actions could not be sustained if Lead Counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). Accordingly, Lead Counsel respectfully request an award of attorneys' fees from the Settlement Fund created by the Settlement.

## II.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD

Fees awarded to counsel from a common fund can be determined under either the percentage-of-the-fund method or the lodestar method. *See Union Asset Mgm't Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) ("*Dell*") (district courts have "the flexibility to

choose between the percentage and lodestar methods in common fund cases"). Under either, the requested fee is fair and reasonable.

### A.   The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has endorsed the percentage method, stating that "under the 'common fund doctrine'. . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The Fifth Circuit has also approved of the percentage method, noting that it "brings certain advantages . . . because it allows for easy computation" and "aligns the interests of class counsel with those of the class members." *Dell*, 669 F.3d at 643 ("district courts in this Circuit regularly use the percentage method"); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").

The requested fee of approximately 11.57% is well below the range of percentage fees awarded in the Fifth Circuit in comparable cases. *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005) ("courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("based on the opinions of other courts and the available studies of class action attorneys' fees awards . . . this Court concludes that attorneys' fees in the range from twenty-five percent (25%) to [33%] have been routinely awarded in class actions"); *see also Jenkins*, 2014 WL 1229661, at *13 ("it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third"); *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *19 (E.D. La. Mar. 2, 2009) ("In securities suits, common fee

awards generally fall within the 20 to 33 per cent range"); MANUAL FOR COMPLEX LITIGATION, FOURTH, § 14.121, at 188 (2004) (noting that "[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund"). And, it is well below the award of 25% that this Court recently granted in *In re Anadarko Sec. Litig.*, No. 4:12-CV-00900 (S.D. Tex.) (Ellison, J.).

The requested fee is also well within the range of percentage fee awards that have been granted in comparable securities class actions in other Circuits. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) (awarding 18-19% of $245 million); *In re Comverse Technology, Inc.*, No. 06-cv-1825 (E.D.N.Y. June 23, 2010) (awarding 25% of $225 million); *In re Beacon Assocs. Litig.*, No. 09 CIV. 3907 CM, 2013 WL 2450960 (S.D.N.Y. May 9, 2013) (awarding 18.5% of $219 million); *In re Sears, Roebuck & Co. Sec. Litig.*, No. 02-CV-7527 (N.D. Ill. Jan. 8, 2007) (awarding 14.8% of $215 million); *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. 08-cv-397 (D.N.J. Oct. 1, 2013) (awarding 16.92% of $215 million); *Schuh v. HCA Holdings, Inc. et al*, No. 3:11-cv-01033 (M.D. Tenn. Apr. 14, 2016) (awarding 30% of $215 million); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246 (E.D. Va. 2009) (awarding 18% of $202,750,000); *In re CMS Energy Sec. Litig.*, No. 02 CV 72004(GCS), 2007 WL 9611274 (E.D. Mich. Sept. 6, 2007) (awarding 22.5% of $200 million); *Silverman v. Motorola, Inc.*, No. 07-cv-4507 (N.D. Ill. May 7, 2012) (awarding 27.5% of $200 million); *In re WellCare Health Plans Sec. Litig.*, No. 07-cv-01940 (M.D. Fla. May 4, 2011) (awarding 17% of $200 million); *In re Bristol-Myers Squibb Sec. Litig.*, No. 06-2964, 2007 WL 2153284 (3d Cir. July 27, 2007) (affirming award of 19.77% of $185 million); *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 148 F. Supp. 3d 303 (S.D.N.Y. 2015) (awarding 25% of $180 million); *In re Broadcom Corp. Sec. Litig.*, No. 2:06-cv-05036 (C.D. Cal. Feb. 4, 2012) (awarding 18.5% of

$173.5 million); *In re Maxim Integrated Products, Inc., Sec. Litig.*, No. 5:08-cv-00832 (N.D. Cal. Nov. 1, 2010) (awarding 17% of $173 million); *In re: Fannie Mae 2008 Sec. Litig.*, No. 1:08-cv-07831 (S.D.N.Y. Mar. 3, 2015) (awarding 17.65% of $170 million); *In re Schering-Plough Corp. Sec. Litig.*, No. 01-CV-0829, 2009 WL 5218066 (D.N.J. Dec. 31, 2009) (awarding 23% of $165 million); *Garber v. Pharmacia Corp. et al*, No. 3:03-cv-01519 (D.N.J. Jan. 30, 2013) (awarding 27.5% of $164 million); *In re Brocade Sec. Litig.*, No. 3:05-cv-02042 (N.D. Cal. Jan. 1, 2009) (awarding 25% of $160.1 million); *In re Microstrategy Inc. Sec. Litig.*, 172 F.Supp.2d 778 (E.D. Va. 2001) (awarding 18% of $153.5 million).

**B.    The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method**

Under Fifth Circuit law, if the Court determines the attorneys' fees based on the percentage method, the Court must "cross-check" the proposed fee for reasonableness by considering counsel's lodestar and the other considerations set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("*Johnson*"). *See Dell*, 669 F.3d at 643-44. The Court may also determine the reasonable attorneys' fees in the first instance by using the lodestar method, as long as the *Johnson* factors are also considered. *See id.* at 644. In this case, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly demonstrates the reasonableness of the requested fee.

Under the lodestar method, "the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Id.* at 64243. In securities class actions, fees representing multiples above the lodestar are typically awarded to reflect contingency fee risks and other relevant factors.

Here, Lead Counsel spent a total of 109,525 hours of attorney and other professional support time prosecuting this Action from its inception through December 31, 2016. Joint

Declaration, ¶ 60. Based on Lead Counsel's current rates, its lodestar for this period is $51,404,624.60.[3] *See id.* The requested fee of $20,250,000, therefore represents much less than half of Lead Counsel's lodestar – that is, not a multiplier, but *a divisor* on the lodestar, despite the enormous risks of this litigation and the long delay between filing the action and any payment being received by Lead Counsel.

The requested fee is well-below the range of multipliers commonly awarded in securities class actions and other comparable litigation. Indeed, in class actions with significant contingency risks, lodestar multipliers between 2 and 4.5 are commonly awarded. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) ("The average range of multipliers applied to other class actions has been from 1.0 to 4.5. The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5."); *Billitteri,* 2011 WL 3585983, at *9 (awarding fee representing a 1.97 multiplier); *Klein et al. v. O'Neal, Inc. et al.*, 705 F. Supp. 2d 632, 680 (N.D. Tex. Apr. 9, 2010) (awarding fee representing a 2.5 multiplier and noting that "[m]ultipliers in this range are not uncommon in class action settlements" and that the 2.5 multiplier was warranted "due to the risks entailed in this lawsuit and the zealous efforts of the attorneys that resulted in a significant recovery for the class"); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 869 (E.D. La. 2007) ("[T]he Court finds that a lodestar multiplier range of 2.5 to 3.5 would be appropriate and reasonable in this case."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369, 371 (S.D.N.Y. 2002) (awarding a fee representing a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

---

[3] The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Leroy v. City of Houston*, 831 F.2d 576, 584 (5th Cir. 1987) ("current rates may be used to compensate for inflation and delays in payment"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 763 (S.D. Tex. 2008) ("One accepted method of compensating for a long delay in paying for attorneys' services is to use their current billing rates in calculating the lodestar").

Moreover, Lead Counsel will continue to expend additional hours following the approval of the Settlement, overseeing the Claims Administrator's processing of claims received and the distribution to eligible claimants, but will not seek any further fees.

The hourly rates, which are Lead Counsel's current rates and have been accepted in other securities or shareholder litigation are reasonable in light of prevailing market rates for lawyers with comparably high levels of experience and expertise in Sec. Litig. and other complex class action litigation. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087-88 (S.D. Tex. 2012) (an attorneys' hourly rates should be judged in relation to "'prevailing market rates for lawyers with comparable experience and expertise' in complex class action litigation," and "[a]n attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested"). Lead Counsel's rates, which range from $75 to $525 for professional support staff and from $200 to $945 for attorneys, are reasonable. *See Klein*, 705 F. Supp. 2d at 680 (approving use of $500 average hourly rate for calculating lodestar).

## III.   OTHER FACTORS CONSIDERED BY COURTS IN THE FIFTH CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

The Fifth Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19; *see also Dell*, 669 F.3d at 642 n.25 (reiterating *Johnson* factors); *Billitteri,* 2011 WL 3585983, at *3 (same). Courts may also consider additional factors, such as (1) public policy considerations, (2) Lead Plaintiffs' approval of the fee, and (3) the reaction of the class. Consideration of all of these factors provides further confirmation that the fee requested here is reasonable.

**A.      The *Johnson* Factors Confirm that the Requested Fee is Fair and Reasonable**

Under either the percentage or lodestar method, the *Johnson* factors confirm that the requested that the requested fee awarded is reasonable. *See Dell*, 669 F.3d 643-44.

**1.      The Time and Labor Required**

The time and effort expended by Lead Counsel in prosecuting this Action and achieving the Settlement establishes that the requested fee is justified. The Joint Declaration details the substantial efforts of Lead Counsel to prosecute Lead Plaintiffs' claims over the almost seven year litigation. As set forth in greater detail in the Joint Declaration, Lead Counsel, among other things:

- conducted an extensive investigation, which included a thorough review of publicly available information from sources such as SEC filings, review of hundreds of thousands of document produced in the MDL 2179 litigation, review of depositions conducted in the MDL 2179 litigation and consultation with experts;

- drafted three consolidated complaints ;

- conducted two rounds of detailed briefing on Defendants' motions to dismiss and prepared for and conducted oral argument on those motions;

- Reviewed and analyzed more than 1.4 million pages of documents;

- Conducted 14 depositions of Defendants and fact witnesses;

- Prepared and responded to 18 expert reports;

- Took and defended 8 expert depositions;

- Drafted two motions for class certification and prepared for and conducted oral argument on both motions;

- Drafted opposition to Defendants' appeal to the Fifth Circuit of this Court's grant of class certification;

- Prepared for and conducted oral argument on Defendants' appeal of the grant of class certification;

- Drafted a motion for partial summary judgment in favor of plaintiffs and drafted opposition to Defendants' motion for summary judgment;

- Drafted oppositions to Defendants' *Daubert* motions;

- Prepared for and conducted oral argument on the competing motions for summary judgment;

- Prepared extensive mediation statements and participated in numerous mediation sessions before the Hon. Daniel Weinstein (Ret.); and

- Prepared and reviewed draft settlement agreements and class notice.

The substantial time and effort devoted to this case by Lead Counsel, and their vigorous pursuit of the litigation, was critical in obtaining the favorable result achieved by the Settlement, and confirms that the fee request here is reasonable.

## 2.      The Novelty and Difficulty of the Issues

The issue of loss causation was challenging in this litigation, stemming in large part from isolating the declines in BP's ADSs which resulted from misrepresentations concerning the amount of oil flowing from the Macondo Well versus declines in the stock price due to negative information concerning the disaster in general.  In fact, the Court's summary judgment decision reflects the risks and difficulties regarding the loss causation issue in this case.

Courts have long recognized that securities class actions are generally complex and difficult and that "Fifth Circuit decisions on causation, pleading and proof at the class

certification stage make PSLRA claims particularly difficult." *OCA*, 2009 WL 512081, at *21. The difficulties associated with this particular securities case are amply demonstrated by the Court's rulings on the motions to dismiss, class certification, and summary judgment.  The Court substantially narrowed the actionable claims, certified only the post-explosion class, and dismissed certain of the alleged corrective disclosures finding them not sufficiently corrective of Defendants' alleged misrepresentations of the amount of oil flowing from the Macondo Well. Despite allowing certain of the corrective disclosures to proceed to trial, a jury easily could have been persuaded by Defendants' arguments and not awarded any damages, or else determined that confounding information substantially reduced the recoverable damages.

Moreover, the case presented the complex and novel issues of when a defendant may be found liable for misrepresenting a statement of opinion.  Applying the principles from the Supreme Court's decision in *Omnicare v. Laborers Dist. Council Const. Industry Pension Fund*, 135 S. Ct. 1318 (2015), Lead Counsel persuaded the Court that Defendant Suttles could be found liable for securities fraud.  Yet, Lead Plaintiffs faced the task of persuading a jury that Suttles misrepresented his opinions, either knowingly or in reckless disregard for the truth.

### 3.    The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys

Under these two *Johnson* factors, the Court should consider the skills required to litigate the Action and "the experience, reputation and ability of the attorneys" involved. The first of these factors is "evidenced where 'counsel performed diligently and skillfully, achieving a speedy and fair settlement, distinguished by the use of informal discovery and cooperative investigation to provide the information necessary to analyze the case and reach a resolution.'" *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 614 (W.D. Tex. 2010). "The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of

13

lawyers at work" are also "highly important in this consideration." *Enron*, 586 F. Supp. 2d at 789 (quoting *Johnson*, 488 F.2d at 718).

Considerable litigation skills were required in order for Lead Counsel to achieve the Settlement in this Action. As the Court is well aware from its numerous lengthy opinions, this is a complex case involving difficult factual and legal issues on the merits, and it was subject to the extremely rigorous pleading hurdles of the PSLRA, highly complex issues of loss causation and cutting edge issues of when liability may attach for misrepresentations of statements of opinions. Given the many contested issues, it took highly skilled counsel to represent the class and bring about the substantial recovery that has been obtained.

Cohen Milstein and Berman DeValerio are among the nation's leading securities class action firms. The Block Firm also has highly experienced attorneys who led this action on its behalf.  Lead Counsel submits that the skill of these attorneys, the quality of their efforts in the litigation, their substantial experience in securities class actions, and their commitment to the litigation were key elements in enabling Lead Counsel to negotiate this Settlement.

Courts have also recognized that the quality of the opposition faced by Lead Counsel should also be taken into consideration in assessing the quality of counsel's performance. Here, Defendants were represented by Sullivan & Cromwell LLP and Kirkland & Ellis LLP, two of the country's most prestigious and experienced defense firms, which vigorously and ably defended the Action for almost seven years. Defendant Suttles was represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP, also one of the nation's most prestigious and experienced defense firms. Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case enabled them to achieve a favorable settlement. *See, e.g., DeHoyos*, 240 F.R.D. at 326 ("The quality of class counsel's work on this case was excellent and is ultimately reflected in the

14

result which was obtained with a formidable opponent."); *Schwartz*, 2005 WL 3148350, at *30 ("The ability of Lead Counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation").

### 4.  The Preclusion of Other Employment

The considerable amount of time that Lead Counsel spent prosecuting the Action 106, 716.51 hours since the inception of the Action through December 2016 – was time that Lead Counsel's attorneys could not spend pursuing other matters. Lead Counsel dedicated this substantial time to the prosecution of the Action despite the very significant risks of no recovery and while deferring any payment of their fees and expenses until a settlement was reached. Accordingly, this factor also supports the requested fee. *See, e.g.*, *Burford v. Cargill, Inc.*, No. 05-0283, 2012 WL 5471985, at *3 (W.D. La Nov. 8, 2012); *Shaw*, 91 F. Supp. 2d at 970.

### 5.  The Customary Fee

As set forth above, Lead Counsel's requested fee is well within, and indeed is *below*, the range awarded in similar cases. *See* Section II. Accordingly, this factor also supports the requested fee.

### 6.  The Contingent Nature of the Fee

The fully contingent nature of Lead Counsel's fee and the substantial risks posed by the litigation are important factors supporting the requested fee. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  Yet here, the requested fee is less than would have been billed by the hour.

As noted above and in the Joint Declaration, Lead Counsel faced very significant challenges to establishing liability and damages in this Action. Defendants vigorously contested every aspect of this case, from motions to dismiss, vigorous opposition to class certification, including a Rule 23(f) appeal and strongly opposing summary judgment.  *See* Joint Declaration, ¶¶ 16-19, 21-27. Indeed, many of the risks inherent in the Action materialized when the Court granted, in part, Defendants' motion for summary judgment.

In the face of these very real uncertainties regarding the outcome of the case, Lead Counsel prosecuted this Action on a wholly contingent basis, knowing that the litigation could last for years and would require devotion of a substantial amount of attorney time and a significant advance of litigation expenses with no guarantee of compensation. Lead Counsel's assumption of this contingency fee risk, and its extensive litigation of the Action in the face of these risks, strongly supports the reasonableness of the requested fee. *See Billitteri*, 2011 WL 3585983, at *7 (the contingent nature of counsel's fee was "particularly relevant considering the difficulty presented by the facts and legal questions in this case and the very real risk of obtaining no recovery at all."); *Klein*, 705 F. Supp. 2d at 678 (where "class counsel represented the class on a contingent-fee basis, with no guarantee of any recovery . . . [t]he contingent nature of the fee favors an increase" in the fee); *OCA*, 2009 WL 512081, at *22 (where counsel faced challenges in establishing *scienter* and loss causation and in proving liability and damages at trial, "the risk Lead Counsel undertook in litigating this case on a contingency basis must be considered in its award of attorneys' fees, and thus an upward adjustment is warranted").

Indeed, given litigation risks such as these, Courts typically award a substantial multiplier on counsel's lodestar to compensate for the possibility that there may have been no recovery at

all. Here, however, the requested fee represents a *fractional* multiplier of Lead Counsel's lodestar. Accordingly, this factor strongly supports the reasonableness of the requested fee.

### 7. The Amount Involved and the Results Achieved

Another *Johnson* factor is the "overall degree of success achieved." *Roussel v. Brinker Int'l, Inc.*, No. H-05-3733, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010), *aff'd,* 441 F. App'x 222 (5th Cir. 2011). Here, Lead Counsel has achieved a substantial recovery of $175,000,000 for the benefit of the Settlement Class.  The Settlement is all cash and members of the Settlement Class will now receive compensation that was otherwise uncertain when the case began.  Lead Counsel submits that the result achieved, in light of the substantial risks posed in the Action is significant and supports the requested fee.

### 8. The Undesirability of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. While Lead Counsel did not consider this case to be "undesirable," there are substantial risks inherent in financing and prosecuting contingent litigation of this type and Lead Counsel knew that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Thus, the "undesirability" of the case also weighs in favor of the requested fee. *See, e.g., Billitteri*, 2011 WL 3585983, at *8 (where a case "raised particularly difficult issues," including the risk of "no recovery whatsoever," this factor supported an increase in the fee); *Braud v. Transport Serv. Co.,* No. 051898, 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010) (given the "risk of non-recovery" and the burdens of "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee," the Court found that "undesirability in this case warrants an increase in the fee award").

17

### 9.     Awards in Similar Cases

As discussed above in Section II.A, Lead Counsel's requested fee of approximately 11.57% of the Settlement Fund is well within, and is in fact below, the range of fee awards in class action cases in this Circuit and across the country. *See* Section II.A, supra. Moreover, the reasonable percentage fee award represents a fractional multiplier of .41, which is well below the norm awarded in class action case with substantial contingency risks. *See* Section II.B, supra. Thus, this factor strongly supports the reasonableness of the fees requested.[4]

### B.     Other Factors Considered by the Courts Further Support the Requested Fee as Fair and Reasonable

In addition to the *Johnson* factors, Courts may consider other factors in determining the appropriate fee in a class action case. *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991) (in addition to the *Johnson* factors, the Court may consider "[o]ther pertinent factors," including "additional factors unique to a particular case" that may be "relevant to the district court's consideration").

### 1.     Public Policy Considerations Support the Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful Sec. Litig.. Accordingly, public policy favors granting Lead Counsel's fee and expense application here. *See Jenkins*, 2014 WL 1229661, at *16 ("Public policy concerns—in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—support the requested fee."); *FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be

---

[4] Two of the *Johnson* factors – the "time limitations imposed by the client or the circumstances" and the "nature and length of [counsel's] professional relationship with the client" are not relevant in this case. *See Klein*, 705 F. Supp. 2d at 676 ("not every factor needs to be necessarily considered"); *Schwartz*, 2005 WL 3148350, at *28 ("The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case.")

carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

### 2.   The Lead Plaintiffs Negotiated this Fee at the Inception of the Litigation

Lead Plaintiffs – New York and OPERS – are both sophisticated institutional investors who were appointed pursuant to the PSLRA.  As such, they negotiated with Lead Counsel a fee arrangement at the outset of the litigation that was favorable to the Class.  Joint Declaration, Exhibits 2 and 3; Groenwegen Declaration, ¶ 8; Becker Declaration, ¶10. As set forth in the Lead Plaintiffs' respective declarations, the Lead Plaintiffs oversaw the prosecution and resolution of this Action, and had a sound basis for assessing the reasonableness of the fee request, which is in line with the previously negotiated arrangement. *See Id.* Each of the Lead Plaintiffs fully supports and approves the fee request. *See* Groenwegen Declaration, ¶ 19 and Becker Declaration, ¶ 11.                 .

The PSLRA was intended to encourage institutional investors like Lead Plaintiffs to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at *27 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731. Congress believed that these institutions would be in the best position to monitor the prosecution and to assess the reasonableness of counsel's fee requests. Accordingly, Lead Plaintiffs' endorsement of the fee request in this PSLRA action supports its approval as fair and reasonable. *See, e.g., In re Veeco Instruments Inc. Sec. Litig.,* No. 05 MDL 01695 (CM), 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) ("public policy considerations support the award in this case because the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised

the work of lead counsel and has approved the fee request"); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("[s]ignificantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request").

### 3.   The Reaction of the Settlement Class to Date Supports the Requested Fee

The reaction of the Settlement Class to date also supports the requested fee. As of January 6, 2017, the Claims Administrator has disseminated the Notice to more than 674,644 potential Settlement Class Members and nominees informing them of, among other things, Lead Counsel's intention to apply to the Court for an award of attorneys' fees of 11.57% of the Settlement Fund and reimbursement of up to $5 million in expenses Joint Declaration ¶63. While the time to object to the fee and expense application does not expire until January 17, 2017, to date, no objections to the amount of attorneys' fees and expenses set forth in the Notice have been received. Lead Counsel will address any objections if any are received in their reply papers to be filed with the Court on February 6, 2017.

## IV.   THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's fee application includes a request for reimbursement of litigation expenses that were reasonably incurred and necessary to the prosecution of this Action. *See* Joint Declaration ¶¶ 65-73. These expenses are properly recovered by counsel. *See Billitteri*, 2011 WL 3585983, at *10 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement."). As set forth in detail in the Joint Declaration, Lead Counsel incurred $2,730,568.70 in litigation expenses, New York and the Ohio Attorney General's Office incurred $11,214.66 in expenses and the Ludlow Counsel incurred $1,310,941.89 in litigation expenses, for a total of $4,052,725.25 on behalf of the

Settlement Class in the prosecution of the Action. Joint Declaration ¶¶65-73. The reimbursement of these expenses is fair and reasonable.

The largest component of expenses related to experts. Specifically, $2,229,439, or 55%, was expended on experts and consultants. Joint Declaration ¶70. Lead Counsel retained a damages expert to assist in the prosecution and resolution of the Action. The damages expert assisted Lead Counsel during the preparation of the Complaint, during the mediation and settlement negotiations with the Defendants, and assisted Lead Counsel with the development of the proposed Plan of Allocation. *Id*. Lead Counsel also consulted with experts in the oil well drilling industry. *Id*.

The other expenses for which Lead Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, court fees, court reporters, and out-of-town travel. *Id* ¶ 71. The foregoing expense items are billed separately by Lead Counsel, and such charges are not duplicated in the firms' hourly billing rates.

In addition, both New York and OPERS imposed certain limitations on Lead Counsel's expenses, both required pre-approval before any experts were retained and NYSCRF specifically reviewed and approved all expenses incurred by Cohen Milstein on an ongoing basis. Groenwegen Declaration ¶ 17.

Lead Plaintiff New York incurred $9,587.34 in out-of-pocket expenses in connection with its role as Lead Plaintiff; further the Ohio Attorney General's office, as statutory litigation counsel to OPERS, incurred out-of-pocket expenses of $1,627.32 for travel costs to attend the mediation sessions.  Those expense requests are set forth in the Groenwegen Declaration and in the Declaration of Glen DeValerio.

Lead Counsel reviewed the $1,310,941.89 expenses of the Ludlow Counsel, which are set forth in the Declaration of Mark Molumphy, Ex.10, to the Joint Declaration Lead Counsel determined that those expenses (the "Ludlow Counsel Expenses") were reasonably incurred in connection with the prosecution of the post explosion class' claims and should be reimbursed.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of litigation expenses in an amount not to exceed $5 million and the Ludlow Counsel would apply for reimbursement of litigation expenses in an amount not to exceed $3,119,768.93. The total amount of expenses requested, $4,052,725.25, is significantly below the amount listed in the Notice and, to date, there has been no objection to the request for expenses.

## **CONCLUSION**

For the foregoing reasons, Lead Counsel respectfully requests that the Court award (i) attorneys' fees in the amount of $20,250,000 and (ii) reimbursement of $4,052,725.25 in litigation expenses.

DATED: January 9, 2017                    Respectfully submitted,

*/s/ Julie Goldsmith Reiser*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (admitted pro hac vice)
Daniel S. Sommers (admitted pro hac vice)
Julie Goldsmith Reiser (admitted pro hac vice)
Joshua S. Devore (admitted pro hac vice)
1100 New York Avenue N.W.
Fifth Floor
Washington, D.C. 20005-3964
Tel: (202) 408-4600
Fax: (202) 408-4699

***Counsel for New York and the Post-Explosion Class***

22

**BERMAN DEVALERIO**
Glen DeValerio (admitted pro hac vice)
Steven J. Buttacavoli (admitted pro hac vice)
One Liberty Square
Boston, MA 02109
Tel: (617) 542-8300
Fax: (617) 542-1194

*Counsel for the Ohio Public Employees*
*Retirement System and the Post-Explosion Class*

**BLOCK & LEVITON LLP**
Jeffrey C. Block (admitted pro hac vice)
Jason M. Leviton (admitted pro hac vice)
Erica Langsen (admitted pro hac vice)
155 Federal Street, Suite 400
Boston, MA 02110
Tel: (617) 398-5600
Fax: (617) 507-6020

*Counsel for the Ohio Public Employees*
*Retirement System*

**YETTER COLEMAN LLP**
R. Paul Yetter (Federal Bar No. 3639)
Autry W. Ross (Federal Bar No. 9731)
Wynn B. McCloskey (Federal Bar No. 99)
909 Fannin, Suite 3600
Houston, TX 77010
Tel: (713) 632-8000
Fax: (713) 632-8002

*Additional Counsel for New York and the Ohio*
*Public Employees Retirement System*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2016, the foregoing was electronically served on counsel of record in this matter who are registered with the Court's ECF filing system through ECF notification and by electronic mail.

*/s/ Julie Goldsmith Reiser*
Julie Goldsmith Reiser