# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

In re BP p.l.c. Securities Litigation

MDL No. 2185
Case No. 4:10-md-02185

**This Document Relates to Only the
Following Individual Actions:**

No. 4:12-cv-1256 (cons.)
No. 4:12-cv-1272
No. 4:12-cv-2362 (cons.)
No. 4:12-cv-3621
No. 4:12-cv-3714
No. 4:12-cv-3715
No. 4:13-cv-0069
No. 4:13-cv-0129
No. 4:13-cv-0517
No. 4:13-cv-0887
No. 4:13-cv-1044
No. 4:13-cv-1393
No. 4:13-cv-3397
No. 4:14-cv-0457
No. 4:14-cv-0980
No. 4:14-cv-1065
No. 4:14-cv-1085
No. 4:14-cv-1068
No. 4:14-cv-1072
No. 4:14-cv-1073
No. 4:14-cv-1075
No. 4:14-cv-1087
No. 4:14-cv-1279
No. 4:14-cv-1280
No. 4:14-cv-1281
No. 4:14-cv-1418

Honorable Keith P. Ellison

# DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## PLAINTIFFS' MOTION TO COMPEL (DOC. 1760)

# TABLE OF CONTENTS

Page

REQUEST FOR ORAL ARGUMENT ...................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ...................................................1

STATEMENT OF THE ISSUES.............................................................................5

SUMMARY OF THE ARGUMENT .......................................................................5

BACKGROUND .................................................................................................7

    A.    Plaintiffs Already Have Received Over 1.43 Million Documents Produced by BP in MDL 2179...............................................................................................7

    B.    Plaintiffs Also Already Have Received 376,760 Additional Documents Produced by BP in the ADS Class Action. ..........................................................................8

    C.    Discovery in the Individual Actions Began in 2016........................................8

    D.    Plaintiffs Did Not Propose Any Document Custodians or Search Terms Until April 2019. ........................................................................................................9

    E.    Defendants Are Proceeding with Efforts to Collect, Review and Produce Relevant Documents from 27 Custodians Using Plaintiffs' Proposed Time Periods.................11

ARGUMENT .....................................................................................................12

I.    The Court Should Deny This Motion Because Plaintiffs Failed Adequately to Meet and Confer with Defendants. ...............................................................................12

II.    Defendants' Proposed Approach to Discovery Is Appropriate, Proportional, and Consistent With the Parties' Discovery Agreement. .........................................14

III.    Plaintiffs' Requested Discovery Is Unreasonable and Not Proportional to the Needs of These Cases.......................................................................................................20

CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund* v. *Bank of Am. Corp.*,
   2016 WL 6779901 (S.D.N.Y. Nov. 16, 2016)........................................................................18

*Am. Airlines* v. *Travelport Ltd.*,
   2012 WL 12884821 (N.D. Tex. May 29, 2012) ...................................................................21

*Anzures* v. *Prologis Texas I LLC*,
   300 F.R.D. 314 (W.D. Tex. 2012) ......................................................................................13

*Bitterroot Holdings, LLC* v. *Bank of N.Y. Mellon*,
   2015 WL 11661761 (W.D. Tex. Aug. 25, 2015) .................................................................13

*In re BP p.l.c. Sec. Litig.*,
   2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) .......................................................................16

*In re BP p.l.c. Sec. Litig.*,
   2013 WL 6383968 (S.D. Tex. Dec. 5, 2013) .........................................................................6

*Brown* v. *Bridges*,
   2015 WL 11121361 (N.D. Tex. Jan. 30, 2015) ..................................................................13

*Eagle Railcar Servs.-Roscoe, Inc.* v. *NGL Crude Logistics, LLC*,
   2018 WL 2317696 (N.D. Tex. May 22, 2018) ...................................................................13

*Halleen* v. *Belk, Inc.*,
   2018 WL 3735579 (E.D. Tex. Aug. 6, 2018) .....................................................................14

*Heaney* v. *Time Warner Cable, Inc.*,
   2010 WL 56068 (W.D. Tex. Jan. 5, 2010) .........................................................................17

*Ntakirutimana* v. *Cmty. Health Sys., Inc.*,
   2012 WL 12894293 (S.D. Tex. July 16, 2012)...................................................................21

*In re Surety Ass'n of Am.*,
   388 F.2d 412 (2d Cir. 1967).................................................................................................23

*United States* v. *O'Keefe*,
   537 F. Supp. 2d 14 (D.D.C. 2008) .....................................................................................17

*Vaigasi* v. *Solow Mgmt. Corp.*,
   2016 WL 616386 (S.D.N.Y. Feb. 16, 2016).......................................................................18

*In re Weatherford Int'l Sec. Litig.*,
   2013 WL 5788687 (S.D.N.Y. Oct. 28, 2013) .....................................................................23

**Rules**

Fed. R. Civ. P. 26(b)(1)..................................................................................................18, 23

Fed. R. Civ. P. 37(a)(1)......................................................................................................12

Defendants respectfully submit this memorandum in opposition to the motion to compel discovery (Doc. 1760) filed by Plaintiffs in the above-captioned individual actions ("Individual Actions").

## REQUEST FOR ORAL ARGUMENT

Defendants appreciate the Court's careful attention to the MDL 2185 cases over the past nine years.  During that time, Defendants have cooperated with counsel for numerous different plaintiffs on all discovery matters, and the Court has never had to adjudicate a motion to compel relating to the scope of document discovery.  Unfortunately, these Plaintiffs have refused to meet and confer about their document demands, either on the telephone or in person, and instead filed this motion based simply on the parties' written correspondence.  In view of the substantial additional burdens that Plaintiffs' onerous document demands would impose, Defendants respectfully request that the Court hold oral argument if it does not deny Plaintiffs' motion outright due to their failure to meet and confer.  (*See infra* Section I.)  Defendants recognize that the Court has limited resources, but believe that an in-person argument will assist the Court in deciding this motion.

## NATURE AND STAGE OF THE PROCEEDINGS

In these Individual Actions, Plaintiffs challenge under English law 32 statements by Defendants about (i) BP's progress on the "Baker Panel" recommendations, (ii) the scope and implementation of BP's Operating Management System ("OMS"), (iii) BP's ability to handle an oil spill, and (iv) the rate of oil flowing into the Gulf of Mexico after the *Deepwater Horizon* explosion.  The facts relating to the 32 statements at issue here have been the subject of many cases in two MDL proceedings, including the ADS securities class action in this MDL ("ADS Class Action") based on 18 of those same alleged misstatements.

Shortly after the April 2010 *Deepwater Horizon* explosion, BP began producing massive quantities of documents to government investigators, regulatory agencies, and private plaintiffs in MDL 2179.  Many of those documents relate to subjects that form the underlying factual basis of these Individual Actions—(i) BP's safety systems, including its progress on the Baker Panel recommendations and in implementing OMS, (ii) BP's ability to handle an oil spill, (iii) the causes of the *Deepwater Horizon* explosion, and (iv) the rate at which oil was flowing into the Gulf of Mexico after the explosion.

Beginning in 2012, BP produced to plaintiffs in both the ADS Class Action and the Individual Actions all the documents BP had produced in MDL 2179, without regard to the stage of the cases in MDL 2185 (*e.g.*, before amended pleadings or motions to dismiss).  Between July 2013 and February 2014, BP also searched for and produced additional documents requested by Lead Plaintiffs in the ADS Class Action.  BP produced the same documents to Plaintiffs in the Individual Actions.  All told, by mid-2014, Plaintiffs in the Individual Actions had received about 1.8 million documents previously produced in MDL 2179 and the ADS Class Action.

Plaintiffs served their initial document requests and interrogatories in these cases in March 2016, and the parties agreed in March 2017 on the types of documents that Defendants would search for and produce in the Individual Actions.  (Tuccillo Ex. G.)[1]  Specifically, Defendants agreed to identify relevant documents by applying negotiated search terms to the email files of agreed-upon document custodians.  Although the parties did not discuss specific custodians and search terms in 2017, they committed to "develop and utilize reasonable search terms to identify non-duplicative, non-privileged and responsive documents concerning all alleged misstatements

---

[1] "Tuccillo Ex. __" refers to the exhibits attached to the Declaration of Matthew L. Tuccillo, dated July 31, 2019 (Doc. 1762).

in . . . Plaintiffs' complaints, with the *focus being the identification of documents related to newly-alleged misstatements not previously at issue during Defendants' prior discovery efforts in the parallel ADS-only class case and in MDL 2179*."  (Tuccillo Ex. G at 1 (emphasis added).)  The parties also agreed that BP would stage its interrogatory responses, beginning with identifying "potential document custodians," which BP did.  (*Id.*; Tuccillo Ex. L.)

Plaintiffs then waited more than two years to propose search terms and custodians.  To Defendants' great surprise, Plaintiffs' April 2019 proposal read as if Defendants' prior document productions—from hundreds of custodians from MDL 2179 and the ADS Class Action—did not exist.  Plaintiffs demanded that Defendants search the email files of 78 (later increased to 85) custodians using 64 separate and complex search strings, many of which were directly related to (i) subjects of the document productions in MDL 2179 and the ADS Class Action, and (ii) the same alleged misstatements at issue in the ADS Class Action.  (Tuccillo Exs. H-K.)

Defendants promptly responded to Plaintiffs' proposal in April and June 2019, suggesting edits to Plaintiffs' search terms and custodians.  (Tuccillo Exs. O-Q, U, W.)  Defendants also volunteered to search a centralized database maintained by BP's Investor Relations Department for documents concerning the meetings between Plaintiffs and/or their investment managers and BP.  (Tuccillo Ex. U at 2.)  Plaintiffs acknowledged that Defendants had raised certain "potentially valid point[s]" in their objections to Plaintiffs' proposal (Tuccillo Ex. X at 4, 5), but nevertheless rejected Defendants' request to speak on the telephone or in person about search terms and custodians.  Instead, Plaintiffs filed this motion to compel insisting that Defendants apply all of Plaintiffs' original search terms to all 85 of the custodians on Plaintiffs' list and immediately respond to interrogatories whose answers depend on document discovery.  Notably, Lead Plaintiffs' Counsel appointed by the Court in the ADS Class Action (who are also counsel for

several Individual Action Plaintiffs) declined to join this motion. (*See* Doc. 1761 ("Pl. Br.") at 1 n.1.)

In the meantime, Defendants are proceeding with the subset of discovery requested by Plaintiffs that is reasonable, non-duplicative, and proportional to the needs of these cases. Specifically, Defendants are (i) searching the emails of 27 out of Plaintiffs' 85 requested custodians; (ii) using 31 of the 64 search strings originally proposed by Plaintiffs, namely, those that are non-duplicative because they address alleged misstatements that were not at issue in the ADS Class Action; and (iii) applying each search string on an individualized basis to the custodian(s) to whom the searches actually relate. When this review is complete, Defendants will supplement their interrogatory responses with information obtained from their document review.

Thus, to the extent the Court addresses Plaintiffs' motion on the merits, there are three disputes left about custodians and search terms in the wake of Defendants' compromises to date: first, whether Defendants should search the emails of an additional 58 custodians; second, whether Defendants should use Plaintiffs' additional 33 search terms relating to topics that have already been the subject of extensive discovery or to communications with Plaintiffs or their advisors that are not alleged to have been false or misleading; and third, for each custodian selected, whether Defendants should use the search terms that are relevant to the particular custodian—or should use all search terms without regard to relevance (such as applying search terms about flow rate to a custodian who had no involvement in post-explosion issues).

Defendants attach hereto three appendices that identify and explain these three disputes. Appendix 1 lists Plaintiffs' 85 proposed custodians and shows why document production from those other than the 27 agreed to by Defendants goes beyond relevant and proportional discovery. Appendix 2 lists Plaintiffs' 64 proposed search strings and explains why the subset now being run

by Defendants—31 of those searches—appropriately targets discoverable information here.  And

Appendix 3 identifies, for each of the 27 custodians being searched, which of Plaintiffs' searches

Defendants are running against his or her files, and why other searches should not be applied.

## STATEMENT OF THE ISSUES

1.  Should Plaintiffs' motion to compel be denied because Plaintiffs refused to discuss custodians and search terms with Defendants on the telephone or in person and thus filed their motion without completing the meet-and-confer process?

2.  Should Plaintiffs' motion be denied on the merits because (i) Defendants' document searches (27 document custodians, search terms focused on new alleged misstatements not at issue in the ADS Class Action, and application of those search terms only to custodians for whom they are relevant) and approach to interrogatories are reasonable, proportional to the needs of these cases, and consistent with the parties' March 2017 agreement; and (ii) Plaintiffs' proposed document searches (85 document custodians, duplicative search terms, and application of all search terms to all custodians regardless of relevance) and request for immediate interrogatory responses are unreasonably broad, unduly burdensome, and not proportional?

## SUMMARY OF THE ARGUMENT

Plaintiffs' motion to compel rests on the premise that discovery should proceed in the

Individual Actions as if they are the first and only cases filed in the aftermath of the *Deepwater

Horizon* explosion.  Plaintiffs ask the Court to disregard the many cases that came before theirs,

including a class action litigated by Court-appointed Lead Plaintiffs' Counsel challenging the

majority of the alleged misstatements at issue in the Individual Actions.  That makes no sense and

is grossly inefficient and wasteful.  Plaintiffs are not starting from scratch:  they received the

benefit of 1.8 million documents produced by BP in MDL 2179 and the ADS Class Action.  Indeed,

this Court declined to dismiss the Individual Actions in favor of an English forum in 2013—even

though Plaintiffs' claims are based on English law, premised on transactions on the London Stock

Exchange, and involve disputes between investors from all around the globe and an English

company—so that Plaintiffs could have access to discovery from other cases in this MDL.  *See In*

*re BP p.l.c. Sec. Litig.*, 2013 WL 6383968, at *52–55 (S.D. Tex. Dec. 5, 2013).  The Court did not contemplate that Plaintiffs in the Individual Actions would seek to redo discovery.

As a matter of efficiency and prudent judicial management, discovery in the Individual Actions should reflect 1.8 million documents that Plaintiffs already have and should be targeted to the claims and statements that have not already been the subject of prior discovery.  In the ADS Class Action, the parties followed this common-sense approach:  without the need for judicial intervention, Defendants and Lead Plaintiffs' Counsel agreed on targeted searches for additional relevant documents that had not already been produced in MDL 2179.  But Plaintiffs here have refused to engage in that process.

Taking into account the discovery that Defendants are willing (and have begun) to undertake, Plaintiffs' motion demands that Defendants search the emails of an additional 58 custodians who are irrelevant or whose files have already been searched, add 33 search strings similar to searches conducted in MDL 2179 and/or the ADS Class Action or concerning communications with Plaintiffs that are not alleged to have been false or misleading, and apply all search terms to all custodians, regardless of the relevance of those searches to the particular custodian.  Plaintiffs also demand an immediate response to an interrogatory that can only be answered based on the document review currently underway.  Plaintiffs' proposed approach is unreasonable.  Unfortunately, after setting forth their uncompromising position in lengthy emails and letters, Plaintiffs refused to meet and confer with Defendants, electing instead to file this motion without a single telephone call or meeting.

Given Plaintiffs' failure to meet and confer as required by this Court's rules, their motion should be denied outright without further consideration.  Many of the errors and misconceptions in Plaintiffs' brief could have been avoided had Plaintiffs simply picked up the telephone.  If the

Court elects to reach the merits, the searches Defendants are undertaking provide a reasonable and proportional approach designed to produce documents relevant to the Individual Actions that were not the subject of BP's extensive prior productions, and Defendants' staged approach to interrogatories is both reasonable and appropriate.  By contrast, Plaintiffs' request for 58 additional document custodians, 33 additional search strings, application of all search terms to all custodians, and an immediate interrogatory response is unreasonable and unduly burdensome.  Their motion should be denied.

## BACKGROUND

### A. Plaintiffs Already Have Received Over 1.43 Million Documents Produced by BP in MDL 2179.

Shortly after the first Individual Actions were filed in 2012, BP agreed to provide Plaintiffs in those actions with the documents produced in MDL 2179.  As other Individual Actions were filed, BP made that discovery available to the new Plaintiffs as well.  In total, BP produced to Plaintiffs approximately 1.43 million documents that were originally produced in MDL 2179.

The MDL 2179 production includes documents previously produced to various government entities in connection with their investigations of the *Deepwater Horizon* explosion and oil spill, and also documents collected using over 40 searches that were run across more than 100 custodians.  Those search criteria, which were developed by negotiation under Magistrate Judge Shushan's supervision, have been produced to Plaintiffs.

Notably, the MDL 2179 production reflects numerous searches for emails related to flow rate from the files of the individual Defendants here (and many other custodians) for the entirety of the relevant period (and beyond).  For example, the emails of 30 custodians—including Defendants Robert Dudley, Anthony Hayward, Andrew Inglis, and Douglas Suttles (as well as non-party David Rainey)—were searched from April 20, 2010 through August 10, 2010 for,

among other terms, "barrel\*," "b/d," "\*BOPD\*," "\*BPD\*," "bbl\*," "flow\*," and "volume."  A

list of searches related to flow rate that were performed in MDL 2179 is attached as Appendix 4.

**B.    Plaintiffs Also Already Have Received 376,760 Additional Documents Produced by BP in the ADS Class Action.**

Recognizing that the ADS Class Action plaintiffs would need additional, targeted

productions beyond BP's production in MDL 2179 relating specifically to the statements at issue

in that action, Defendants negotiated—through numerous telephonic meet-and-confers—a search

protocol with Court-appointed Lead Plaintiffs' Counsel.  Lead Plaintiffs' Counsel in the ADS

Class Action included counsel in three different Individual Actions (*DiNapoli*, *Massachusetts

Pension*, and *Ohio*), none of whom join this motion.  (Pl. Br. at 1 n.1.)

The ADS Class Action productions include (i) documents from 28 custodians identified

using agreed-upon search terms relating to BP's progress on the Baker Panel recommendations,

(ii) documents from 44 custodians identified using agreed-upon search terms relating to the scope

and implementation of OMS, (iii) documents previously produced by BP to the U.S. Securities

and Exchange Commission relating to flow rate, the Baker Panel, and OMS, and (iv) documents

relating to flow rate identified by a manual review of *all* of Anthony Hayward's emails from

April 20, 2010 through May 28, 2010.

**C.    Discovery in the Individual Actions Began in 2016.**

Plaintiffs here began receiving the MDL 2179 document productions in 2012 and the ADS

Class Action productions in August 2013.  Nearly all of the ADS Class Action documents were

produced by February 2014.  Plaintiffs served their initial document requests and interrogatories

on March 24, 2016.  (Tuccillo Ex. B.)  After discussions about those requests—which did not

include any negotiation of search terms or custodians—Plaintiffs moved to compel in August

2016.  By their own admission, Plaintiffs filed that motion without having fully reviewed the MDL

-8-

2179 or ADS Class Action productions.  (*See* Pl. Br. at 2.)  To resolve that motion, the parties agreed on March 21, 2017 (the "Discovery Agreement") to do several things with respect to discovery of Defendants:

- The parties would "work" "to develop and utilize reasonable search terms to identify non-duplicative, non-privileged and responsive documents concerning all alleged misstatements in . . . Plaintiffs' complaints, *with the focus being the identification of documents related to newly-alleged misstatements* not previously at issue during Defendants' prior discovery efforts in the parallel ADS-only class case and in MDL 2179."

- The parties would "work" "to develop and utilize reasonable search terms to identify *responsive* documents evidencing any direct communications . . . between BP and . . . Plaintiffs and/or their outside investment managers."

- On an unspecified date, Defendants would "provide initial written responses" to four of Plaintiffs' interrogatories regarding current and former BP employees who communicated with Plaintiffs or their investment advisors, and would "start by identifying potential document custodians within 60 days."

(Tuccillo Ex. G at 1-2 (emphasis added).)  On May 23, 2017, as contemplated by the Discovery Agreement, Defendants produced an initial list of potential custodians.  (Tuccillo Ex. L.)

## D. Plaintiffs Did Not Propose Any Document Custodians or Search Terms Until April 2019.

After receiving Defendants' proposal in May 2017, Plaintiffs did not send Defendants their own proposal for custodians and search terms until April 5, 2019 (Tuccillo Ex. H), about two months before the then-operative document production deadline.

In their April 2019 letter, Plaintiffs demanded that BP search the email files of 78 custodians (later increased to an extraordinary 85) for all of Plaintiffs' proposed search terms without regard to the subject matter of those searches.  These proposed custodians included 36 individuals whose emails were searched in the ADS Class Action, but who are not alleged to have made any of the challenged statements at issue here or to have communicated with Plaintiffs or their investment advisors.  (Tuccillo Exs. EE, FF.)  Plaintiffs proposed a total of 64 searches on

various subjects:  (i) 39 search strings relating to the challenged statements (which Plaintiffs refer to as "Appendix A") (the "Topical Searches"); and (ii) 25 searches about Plaintiffs and their investment advisors (which Plaintiffs refer to as "Appendix B") (the "Plaintiff/Advisor Searches").

In response, Defendants promptly sent Plaintiffs edits to their Topical Searches and Plaintiff/Advisor Searches on April 26.  (Tuccillo Exs. O–Q.)  Having received no counterproposal, Defendants sent Plaintiffs a detailed letter on June 13 explaining which of the as-edited Topical Searches and Plaintiff/Advisor Searches they proposed to run for each of the 27 custodians whose emails Defendants agreed to search.  (Tuccillo Exs. U, W.)  That letter also explained that Defendants would produce relevant, non-privileged documents related to all alleged meetings between Plaintiffs and/or their investment advisors and BP that were located in a centralized electronic repository maintained by BP's Investor Relations Department.  (Tuccillo Ex. U at 2.)

Defendants' proposal sought to match custodians with the appropriate search terms and time periods based on each individual's alleged involvement in the relevant events.  For example, Defendants agreed to search Robert Malone's emails with terms related to the development of a fiber optic network in the Gulf of Mexico and to his Congressional testimony because those are the subjects of Mr. Malone's alleged misstatements.  Defendants did not agree to search Mr. Malone's emails for other topics such as flow rate because he is not alleged to have (i) spoken on those topics or (ii) communicated with Plaintiffs or their investment advisors.

In their June 20 response to Defendants' proposal, Plaintiffs acknowledged that Defendants had raised "potentially valid point[s]" "that certain custodians listed in Plaintiffs' Appendix C might have relevance only for certain misstatements."  (Tuccillo Ex. X at 5; *see also id.* at 4.)  Despite Defendants' offer to meet and confer, Plaintiffs stated that they would "proceed with

[their] motion" to compel unless Defendants provided additional written explanations.  (*Id.*) Plaintiffs did not send a counterproposal narrowing their requests in any way.

On July 17, Defendants served Plaintiffs with updated, written responses to Plaintiffs' Interrogatories Nos. 1, 3, and 9, as contemplated by the Discovery Agreement.  (Tuccillo Ex. DD.) Defendants explained that they would provide further updated answers to these interrogatories, as well as to Plaintiffs' Interrogatory No. 11—all of which pertain to communications with Plaintiffs or their advisors that are the subject of ongoing document discovery—after Defendants conducted their document searches.  (Tuccillo Ex. U at 4.)  Certain Plaintiffs are taking the same staged approach in responding to Defendants' Interrogatories.  (Lucier Ex. 1 at 1.)[2]

Although the parties exchanged letters and emails about their search proposals, they have never once spoken on the telephone or in person about either document custodians or search terms. Four separate times—on June 21, June 24, July 1, and July 23 (Tuccillo Exs. Y–Z, BB, GG)— Defendants asked Plaintiffs to meet and confer about their dueling proposals.  Rather than agree to speak or narrow their requests, Plaintiffs moved to compel on July 31.

**E.      Defendants Are Proceeding with Efforts to Collect, Review and Produce Relevant Documents from 27 Custodians Using Plaintiffs' Proposed Time Periods.**

Despite the lack of an agreement on custodians or search terms, Defendants are proceeding with their collection, review, and production efforts.  Defendants already have produced 3,892 documents resulting from running the Plaintiff/Advisor Searches over BP's Investor Relations database.  Defendants also are reviewing documents from the 27 custodians proposed by Plaintiffs who are not duplicative or irrelevant (App. 1) using the 31 searches proposed by Plaintiffs that

---

[2] "Lucier Ex. __" refers to the exhibits attached to the declaration of Declaration of Georgia L. Lucier, filed herewith.

focus on the newly alleged misstatements (App. 2).[3]   Defendants are running each search against

the files of the custodian(s) to whom the searches relate.  (App. 3.)

## ARGUMENT

### I.   The Court Should Deny This Motion Because Plaintiffs Failed Adequately to Meet and Confer with Defendants.

Federal Rule of Civil Procedure 37(a)(1) requires that a motion to compel discovery

"include a certification that the movant has in good faith conferred or attempted to confer with the

. . . party failing to make disclosure or discovery in an effort to obtain it without court action."

This Court's rules similarly state that"[p]arties are expected to make a good faith effort to confer

about the disposition of all pretrial motions."   (Court Procedures of Judge Keith P. Ellison

§ 5.C(1).)  Plaintiffs' Certificate of Conference states that "Plaintiffs' counsel made a good-faith

effort to confer about the disposition of this motion by extensively writing, emailing, and speaking

telephonically with Defense counsel over the course of 16 months, including four months in 2019."

(Pl. Br. at 27.)   None of those telephonic discussions, however, concerned the issues now in

dispute.  Plaintiffs have not spoken once with Defendants about their proposed custodians and

searches.

Defendants have repeatedly sought to talk through these issues in the hope of reaching a

fair compromise that would satisfy Plaintiffs while also reducing the substantial burden on

Defendants.  In multiple letters and emails in June and July 2019, Defendants asked Plaintiffs to

discuss document custodians and searches on the telephone or in person.  (Tuccillo Exs. Y, Z, BB,

GG.)  Plaintiffs ignored those requests, finally stating a few days before filing their motion to

---

[3] In an effort to make progress, Defendants are applying these 31 Topical Searches and Plaintiff/Advisor Searches as drafted by Plaintiffs.   Defendants also are applying the Plaintiff/Advisor Searches over Plaintiffs' proposed time period.

compel that we "believe our respective positions as to custodians and searches are otherwise clear

at this point."  (Lucier Ex. 2.)

Had Plaintiffs spoken to Defendants, many of the inaccuracies in Plaintiffs' understandings

could have been dispelled and at least some of the disputes narrowed or resolved.  For example:

- Contrary to Plaintiffs' assertion that Plaintiffs' proposed searches are "highly-targeted" (Pl. Br. at 16), running the Topical Searches over a sample of only four custodians hits on 19,267 documents (including families) for review.  (Declaration of Kenneth A. Prine, dated August 21, 2019, submitted herewith ("Prine Decl.") ¶ 16.)  And running the Plaintiff/Advisor Searches over only twelve custodians hits on 225,992 documents (including families) for review.  (*Id.*)  Thus, if BP were required to run all of Plaintiffs' proposed searches over all 85 requested custodians, at least 1 to 2 million documents likely would need to be reviewed.  (*Id.*)

- Defendants could have explained BP's discovery efforts and why Plaintiffs' claims of spoliation (Pl. Br. at 21) are baseless.  (*See infra* pp. 23-24; Prine Decl. ¶¶ 8–12.)

- There were not "100+ custodians" in the ADS Class Action.  (Pl. Br. at 22.)

If the Court were to hear oral argument on Plaintiffs' motion, as Defendants have

requested, it would be devoting more time to discussing these issues than the parties have to date

(which is zero).  That is not how discovery disputes should be handled.  *See*, *e.g.*, *Anzures* v.

*Prologis Texas I LLC*, 300 F.R.D. 314, 316 (W.D. Tex. 2012) ("it may require several hours of

court time to resolve the numerous issues raised" by a motion to compel and "it seems logical that

the parties will have spent an equal or greater amount of time attempting to resolve the issues").

"Failure to confer generally serves as a basis for denying a discovery motion."  *Brown* v.

*Bridges*, 2015 WL 11121361, at *3 (N.D. Tex. Jan. 30, 2015).  Based on Plaintiffs' refusal to

discuss custodians and searches with Defendants, the Court should deny Plaintiffs' motion

outright.  *See*, *e.g.*, *Eagle Railcar Servs.-Roscoe, Inc.* v. *NGL Crude Logistics, LLC*, 2018 WL

2317696, at *16 (N.D. Tex. May 22, 2018) ("simply requesting or demanding compliance with

the discovery request . . . do not constitute good faith efforts to confer"); *Bitterroot Holdings, LLC*

-13-

v. *Bank of N.Y. Mellon*, 2015 WL 11661761, at *2 (W.D. Tex. Aug. 25, 2015) (an "ultimatum" "does not amount to a good faith attempt to resolve the matter by agreement").[4]

## II.   Defendants' Proposed Approach to Discovery Is Appropriate, Proportional, and Consistent With the Parties' Discovery Agreement.

Plaintiffs have already received a massive number of documents relevant to their claims. The discovery in MDL 2179 focused heavily on the facts underlying the alleged misstatements at issue here—BP's progress on safety and its safety systems (including the Baker Panel recommendations and OMS), BP's ability to handle an oil spill, the causes of the *Deepwater Horizon* explosion, and flow rate. Many documents produced in MDL 2179 therefore are relevant to, at the least, the falsity and causation elements of Plaintiffs' claims. Discovery in the ADS Class Action was directed at the majority of the alleged misstatements at issue in the Individual Actions and related to the same subjects (BP's progress on the Baker Panel recommendations, the scope and timing of OMS, BP's ability to handle an oil spill, and flow rate) at issue here. The documents produced in that case are thus highly relevant, at the least, to falsity and scienter. Indeed, Plaintiffs' proposed searches demonstrate the connection between the discovery in these cases: running those searches over the productions in MDL 2179 and the ADS Class Action results in nearly 1.5 million document "hits." (Prine Decl. ¶ 14 & Tbl. 1; *see infra* p. 21.)

As the parties agreed in their March 2017 Discovery Agreement, the "focus" of additional document discovery in the Individual Actions should be "the identification of documents related to newly-alleged misstatements not previously at issue during Defendants' prior discovery efforts in the parallel ADS-only class case and in MDL 2179." (Tuccillo Ex. G at 1.) That is what

---

[4] *Halleen* v. *Belk, Inc.*, 2018 WL 3735579 (E.D. Tex. Aug. 6, 2018), does not help Plaintiffs' argument that Defendants' attempts to meet and confer should be ignored. (Pl. Br. at 25.) In that case, the court permitted plaintiffs to "forego the meet and confer requirement and file a motion to compel" "if certain issues were not resolved." *Id.* at *2 n.1.

-14-

Defendants have done:  they have agreed to search for, collect, and produce documents relating to the alleged misstatements not at issue in the ADS Class Action, plus communications with Plaintiffs or their investment advisors.

*Defendants Agreed to the Appropriate Subset of Proposed Custodians.*  Defendants are searching the emails of 27 of the 85 custodians proposed by Plaintiffs:  (i) all individuals (six custodians) who made alleged misstatements; and (ii) all other individuals (21 custodians) who attended meetings at which alleged misstatements were made.  (*See* App. 1.)  Defendants have not agreed to search the files of 36 individuals whom Plaintiffs request on the sole basis that they were custodians in the ADS Class Action for Baker Panel and OMS searches.  Those individuals' files have already been searched for those topics, and none of them are alleged to have made any of the new statements at issue here or to have communicated with Plaintiffs or their advisors.  (*Id.*)  Nor will Defendants search the files of 21 BP employees whom Plaintiffs request as custodians because they communicated with Plaintiffs or their advisors at one time or another, but where none of those communications involved any alleged misstatements, or the one non-BP employee that Plaintiffs proposed.  (*Id.*)  The 27 proposed custodians accepted by Defendants represent the reasonable, proportional approach to discovery at this stage.

*Defendants Are Using Appropriate Search Terms.*  For the Plaintiff/Advisor Searches, which target documents concerning meetings or other communications between BP and the Individual Plaintiffs or their investment advisors, Defendants are running seven of Plaintiffs' 25 proposed searches.  These seven consist of all searches regarding Plaintiffs or their advisors to whom alleged misstatements were made directly.  (*See* App. 2.)  Defendants are not running the remaining 18 searches that focus on meetings with Plaintiffs or their advisors to whom no alleged

misstatements were directly made, because such searches are unlikely to lead to discovery that is relevant to the claims and defenses in these cases.  (*See id.*)

For Plaintiffs' proposed Topical Searches, Defendants accepted 24 of Plaintiffs' 39 requested search strings.  These 24 consist of all searches that are focused on newly alleged misstatements that were not at issue in the ADS Class Action.  (*See* App. 2.)  By contrast, Defendants have not accepted Plaintiffs' searches on the topics that were extensively addressed in MDL 2179 and/or the ADS Class Action (*id.*), including:

- searches regarding the 18 statements at issue in the ADS Class Action, which were subjects of discovery in that case (*see supra* at 8);

- searches focused on BP's Macondo exploration plan ("EP") and oil spill response plan ("OSRP"), which were subjects of discovery in MDL 2179[5] (*see supra* at 7–8); and

- searches addressing general Baker Panel or OMS topics, which were subjects of discovery in both MDL 2179 and the ADS Class Action (*see supra* at 7–8).

To give just one example of the unnecessary duplication Plaintiffs seek to impose, Defendants in the ADS Class Action searched the emails of 28 custodians using four searches related to the Baker Report, including the term "Baker" within 25 words of 20 terms such as "adopt*," "implement*," and "progress*."  Defendants also searched the emails of 44 custodians using at least five OMS-related searches, including terms focused on the "scope" of OMS.  (*See* Tuccillo Ex. U at 2.)  Plaintiffs do not explain why these searches—negotiated with Court-appointed Lead Plaintiffs' Counsel—are insufficient to address the Baker Panel and OMS.  In

---

[5] Moreover, as Court noted, the ADS Class Action plaintiffs "all but conceded that they have no evidence that the []EP and OSRP misstatements were known by the market and incorporated in the ADS price prior to the Deepwater Horizon explosion."  *In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at *15 (S.D. Tex. Dec. 6, 2013).  Before the *Deepwater Horizon* explosion, *no* member of the public obtained a copy of the OSRP and *fewer than 25 people* accessed the EP.  *Id.* at *14. Plaintiffs have provided no evidence they or their advisors were among those 25 people.

-16-

these circumstances, the prior discovery satisfies Defendants' obligations under the Federal Rules. *See Heaney* v. *Time Warner Cable, Inc.*, 2010 WL 56068, at *1 (W.D. Tex. Jan. 5, 2010) (where plaintiff "simply requests that the Court order Defendant to fully respond," that is "not sufficient to sustain the burden on a motion to compel"); *United States* v. *O'Keefe*, 537 F. Supp. 2d 14, 24 (D.D.C. 2008) (argument that search terms "were insufficient" "must be based on evidence"). The same is true of the other topics on which Plaintiffs essentially seek a "do over."

Defendants' position also is consistent with the parties' Discovery Agreement. That agreement states that the parties will develop search terms to identify "non-duplicative" and "responsive" documents, "with the focus being the identification of documents related to newly-alleged misstatements not previously at issue" in MDL 2179 or the ADS Class Action. (Tuccillo Ex. G at 1.) Plaintiffs' insistence on searches relating to issues that were the subject of searches that BP has already performed—or that target investor meetings at which no alleged misstatements were made—is contrary to the Discovery Agreement.[6]

***Defendants Reasonably Applied Plaintiff/Advisor Searches to Relevant Custodians.*** Defendants are applying each of the seven Plaintiff/Advisor Search terms on an individualized basis, to the custodian or custodians who attended the meeting(s) to which a search is directed. (*See* App. 3.) Thus, for example, Mondrian Investment Partners, an investment advisor to numerous Individual Plaintiffs, attended seven meetings with BP at which alleged misstatements were made. BP is applying the Plaintiff/Advisor Search term directed at identifying documents concerning communications between BP and Mondrian at those meetings to the email files of all 14 BP employees who attended any of those meetings. (*See id*.) Similarly, Plaintiffs allege a

---

[6] Defendants do not suggest that there are no instances in which an additional search might be run relating to subjects of prior searches. But Plaintiffs have provided no justification for *any* such search, instead arguing that they are unhappy with the results of previously agreed-upon searches.

misstatement during a May 21, 2010 meeting between Marathon Asset Management, an advisor to two Individual Plaintiffs, and Mr. Hayward.  BP thus is applying the Plaintiff/Advisor search term related to that meeting to Mr. Hayward's email files.  (*See id.*)  On the other hand, BP is not applying Plaintiff/Advisor Search terms relating to particular meetings to the files of custodians who did not attend those meetings.  Nor is BP applying Plaintiff/Advisor Search terms relating to meetings with a Plaintiff or its advisor at which no alleged misstatements were made.  (*See id.*)

In addition to these email searches, Defendants already have produced 3,892 documents from BP's centrally maintained Investor Relations database that were located by running *all* of Plaintiffs' Plaintiff/Advisor Searches (unedited) over Plaintiffs' entire proposed time period.  Defendants' production of documents from this centralized database specifically used by BP to store materials related to meetings with investors separately satisfies Rule 26's proportionality standard.  *See*, *e.g.*, *Alaska Elec. Pension Fund* v. *Bank of Am. Corp.*, 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016) ("proportionality requirement means [that] 'marginal utility' must also be considered"); *Vaigasi* v. *Solow Mgmt. Corp.*, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016) ("Proportionality focuses on the marginal utility of the discovery sought.").

***Defendants Reasonably Applied Topical Searches to Relevant Custodians.***   BP is applying the Topical Search terms that pertain to each of the 14 newly alleged misstatements not at issue in the ADS Class Action to the email files of the custodians who allegedly made those statements.  (*See* App. 3.)  This avoids searches designed simply to re-do prior discovery or to fish for relevant information from custodians unlikely to have any.  Thus, for example, BP is searching the emails of Mr. Malone using Plaintiffs' terms related to his alleged April 7, 2007 misstatement about the installation of a fiber optic network in the Gulf because that statement was not at issue in the ADS Class Action.  (*See* App. 3.)  BP also is searching the emails of Mr. Inglis with

Plaintiffs' terms related to his March 22, 2010 alleged misstatement because that statement likewise was not at issue in the ADS Class Action.  (*See id.*)

With regard to Plaintiffs' search terms related to flow rate, BP is using them to search the emails of Mr. McKay because he made an alleged misstatement regarding flow rate and his emails were not searched for that subject in either MDL 2179 or the ADS Class Action.  (*See* App. 3.)  In contrast, because the MDL 2179 searches would have identified any document that included the term "flow" in the emails of the remaining custodians involved in flow rate issues, and because the ADS Class Action production included all documents produced to the SEC about flow rate, including the results of a manual review of Mr. Hayward's email for more than a month after the *Deepwater Horizon* explosion (*see* Tuccillo Ex. U at 2.), Defendants are not searching the files of other custodians using the search strings related to flow rate.  There is also no reason that Defendants should be required to search for documents related to flow rate in the emails of individuals with no involvement in post-explosion issues.  (*See* Tuccillo Ex. X at 5 (conceding that it is "potentially valid" that "certain" of their requested custodians "have relevance only for certain misstatements").)[7]

***Defendants' Staged Response to Interrogatory No. 11 Is Reasonable.***  As required by the Discovery Agreement, Defendants answered Plaintiffs' Interrogatories Nos. 1, 3, and 9 seeking the identities of BP employees who communicated with Plaintiffs or their advisors.  Defendants will supplement those answers if they discover additional responsive information in the course of their document review.  Plaintiffs' Interrogatory No. 11 seeks the identities of BP employees who prepared materials for meetings with Plaintiffs or their investment advisors.  There is no practical

---

[7] Plaintiffs have argued that their proposed searches add "variants of the actual fraudulent flow rate numbers" and terms "concerning Defendants' frame of mind" regarding flow rate.  (Tuccillo Ex. X at 3.)  But "additional" terms would narrow, not expand, the prior broad searches.

way to identify the individuals involved with creating and editing documents other than through a review of emails, follow-up inquiry as needed.  Defendants thus explained to Plaintiffs that they will answer that interrogatory based on Defendants' ongoing review of documents.  (*See*, *e.g.*, Tuccillo Ex. U at 4.)  Plaintiffs' Liaison Counsel is following the same approach to identify information responsive to one of Defendants' interrogatories:  "USS . . . anticipates providing a response to bullet point #2 [*i.e.*, identification of persons who oversaw certain compliance matters] after . . . productions have been made, as its response may be impacted by the documents being reviewed and produced."  (Lucier Ex. 1 at 1.)

III.    **Plaintiffs' Requested Discovery Is Unreasonable and Not Proportional to the Needs of These Cases.**

Notwithstanding Defendants' agreement to search the emails of 27 of Plaintiffs' 85 requested custodians using 31 of Plaintiffs' requested search terms, Plaintiffs seek to require Defendants to search the emails of the 27 agreed-upon custodians using an additional 33 search strings, and search the emails of an additional 58 custodians using 64 separate search strings, regardless of any custodian's involvement (or lack thereof) in the relevant issues or whether similar searches have already been conducted in MDL 2179 or the ADS Class Action.  Those searches likely would require the review of "at least one to two million documents."  (Prine Decl. ¶ 16.) Plaintiffs also ask BP to respond immediately to Interrogatory No. 11.  Plaintiffs' arguments for such a burdensome and blunderbuss approach to discovery are meritless.

*Plaintiffs' Criticisms of BP's Prior Productions Are Invalid.*  Plaintiffs acknowledge that they have already received nearly two million documents, which they apparently did not start reviewing until 2018.  (Pl. Br. at 2 (describing "ongoing" review that "so far has consumed nearly a year"), 21.)  Claiming that the documents produced in MDL 2179 and the ADS Class Action are

largely irrelevant to their claims, however, Plaintiffs now seek essentially to redo document discovery.

Plaintiffs assert that they "identified roughly 18,500 potentially responsive documents" in the MDL 2179 and ADS Class Action productions "via a search term hit and initial coding review," a responsiveness rate of "1.14%." (Pl. Br. at 2.)[8]  Although Plaintiffs do not disclose the criteria they used for this review, Defendants ran Plaintiffs' 64 proposed searches over the MDL 2179 and ADS Class Action productions, and the results do not support Plaintiffs' arguments:

- Of the 1.43 million documents produced in MDL 2179, the Topical Searches hit on 871,880 documents, or 1.093 million documents including "families." (Prine Decl. ¶ 14 & Tbl. 1.)  The Plaintiff/Advisor Searches hit on 114,615 documents, or nearly 300,000 documents including families.  (*Id.*)  Together, Plaintiffs' proposed searches "hit" on a large majority—1.10 million (~77%)—of the 1.43 million documents from MDL 2179.

- Of the 376,670 documents produced in the ADS Class Action—all of which related to the subjects of the alleged misrepresentations here—the Topical Searches hit on 277,426 documents.  (*Id.*)  When families are included, the terms hit on *over 95%* of the documents produced in the ADS Class Action.  The Plaintiff/Advisor Searches hit on 38,271 documents, or more than 115,000 documents including families.  (*Id.*)  In total, Plaintiffs' proposed search terms "hit" on 365,193, or about 97%, of the documents produced in the ADS Class Action.

These results show that one of two things must be true:  Either Plaintiffs are vastly undercounting the number of relevant documents in Defendants' prior productions or Plaintiffs' proposed search terms are extremely overbroad.[9]  Either way, Plaintiffs' motion should be denied.

---

[8] Plaintiffs suggest that Defendants must identify relevant documents in their prior productions, relying on *Ntakirutimana* v. *Community Health System, Inc.*, 2012 WL 12894293, at *5 (S.D. Tex. July 16, 2012).  (Pl. Br. at 22.)  In that case, however, defendants merely were ordered to explain why they had *not* produced certain documents from a prior production, which is not the issue here.

[9] These results distinguish Plaintiffs' requested discovery from that in *American Airlines* v. *Travelport Ltd.*, 2012 WL 12884821 (N.D. Tex. May 29, 2012).  (*See* Pl. Br. at 24-25.)  In that case, after receiving defendants' prior regulatory productions, plaintiffs asked defendants to search 16 additional custodians using "agreed upon search terms."  *Id.* at *1.  Unlike here, defendants did not show that the additional searches "would produce purely duplicative" documents, and they

***Plaintiffs' Interpretation of the Discovery Agreement Is Incorrect.***  Plaintiffs contend that the Discovery Agreement requires "production of documents regarding all alleged misstatements, whether or not they had also been previously pursued in" the ADS Class Action.  (Pl. Br. at 15.) The relevant issue here is not Defendants' production obligation—Defendants will, of course, produce all responsive documents they identify—but rather what additional searches Defendants should be required to undertake to identify additional documents for potential production.  The Discovery Agreement provides that "reasonable" additional searches should be run to locate "non-duplicative" documents.  (Tuccillo Ex. G at 1.)  The Discovery Agreement further states that the "focus" of those searches should be "newly-alleged misstatements not previously at issue during Defendants' prior discovery efforts in the parallel ADS-only class case and in MDL 2179."  (Pl. Br. at 15 (quoting Tuccillo Ex. G at 1).)  The Discovery Agreement thus does not give Plaintiffs free reign to require Defendants to redo searches that were already conducted.

Although Plaintiffs note that their English law claims have "different elements" (Pl. Br. at 15), they do not explain why any of those different elements require re-doing document searches. Plaintiffs argue that "[g]iven their burden under English law to establish . . . reliance . . . and Defendants' intent to induce reliance and intent to deceive, it is imperative that Plaintiffs get discovery into all direct communications with BP."  (Pl. Br. at 10.)  Whether *Plaintiffs* relied on the challenged statements, however, likely will be revealed in documents (if any) produced by Plaintiffs or their investment advisors, not by BP.  And "intent to induce reliance" and "intent to deceive" go to Defendants' state of mind, which was an important issue in discovery of the ADS Class Action, and will be otherwise addressed by searches of custodians allegedly involved in the

---

"concede[d] that it [was] highly possible" that relevant documents had not previously been produced.  *Id.* at *2-3.

purported additional misstatements.  Indeed, "intent to deceive" is the same thing as scienter, a critical element in the ADS Class Action.  In any event, Plaintiffs' claim that the prior productions contained only a handful of relevant documents does not withstand scrutiny.  (*See* Prine Decl. Tbl. 1.)  Plaintiffs thus have not provided any reason why Defendants' prior searches were deficient or should be re-done.

Plaintiffs also contend that the Discovery Agreement requires Defendants to search for "any direct communications between BP and Plaintiffs and/or their outside investment managers . . . not only those that were alleged in Plaintiffs' complaint."  (Pl. Br. at 10.)  But documents relating to meetings where no misstatements are alleged to have occurred are not relevant to Plaintiffs' claims, and the work required to identify such documents are not "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  *See In re Weatherford Int'l Sec. Litig.*, 2013 WL 5788687, at *3 (S.D.N.Y. Oct. 28, 2013) (denying motion to compel where "[t]he minimal benefit of producing questionably relevant 'related' material is outweighed by the burden of production"); *In re Surety Ass'n of Am.*, 388 F.2d 412, 414 (2d Cir. 1967) ("[P]arties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane.") (internal quotation marks omitted).

***BP's Document Collection and Review Efforts Satisfy Its Obligations***.  Plaintiffs' motion is replete with accusations that Defendants have obstructed Plaintiffs' discovery efforts or even destroyed relevant documents.  Many of these complaints could have been resolved had Plaintiffs met and conferred with Defendants.  BP does not maintain an active review database containing all of the email files of Plaintiffs' 85 requested custodians.  (*See* Prine Decl. ¶¶ 7–12.)  As a result,

BP could not readily provide complete hit counts for all of Plaintiffs' proposed searches.[10] Plaintiffs' attempt to twist this simple point into something sinister (Pl. Br. at 18) is off the mark.

BP has devoted extensive resources to document preservation, collection, review, production, and hosting over the last nine years in thousands of *Deepwater Horizon*-related actions. As the accompanying declaration of Ken Prine, Senior BP Discovery Counsel, explains, BP has preserved for litigation more than 100 terabytes of data related to the *Deepwater Horizon* explosion and ensuing oil spill. (Prine Decl. ¶ 4.) At its height, more than 1,000 people were involved in BP's discovery efforts in *Deepwater Horizon*-related litigation. (Prine Decl. ¶ 3.) These included BP personnel, as well as numerous outside vendors and over 800 contract document reviewers. There is no basis to conclude that BP is shirking its discovery obligations simply because it will not agree to Plaintiffs' overbroad and unreasonable search demands.

***Plaintiffs' Request for an Immediate Response to Interrogatory No. 11 Is Impractical.***
Other than expressing their dissatisfaction with the discovery that Defendants will conduct (Pl. Br. at 22-23), Plaintiffs do not explain why Defendants' staged approach to Interrogatory No. 11—which seeks the identity of individuals involved in the preparation of materials used at meetings with Plaintiffs or their investment advisors—is unreasonable. Given that the only practical way to answer that interrogatory is through email review, the same approach that certain Plaintiffs are taking to answer one of Defendants' interrogatories (*see supra* at 19–20), Plaintiffs' request to compel an immediate response before document review is complete should be denied.

---

[10] There is no requirement that Defendants generate hit counts in order to oppose Plaintiffs' unreasonable discovery requests. In any event, Defendants' testing of Plaintiffs' search terms shows that they likely will generate millions of documents for review. (*See* Prine Decl. ¶ 16.)

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel should be denied.

Dated: August 21, 2019

OF COUNSEL:

Richard C. Pepperman II (*pro hac vice*)
Marc De Leeuw (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
peppermanr@sullcrom.com
deleeuwm@sullcrom.com

Amanda F. Davidoff (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 956-7500
davidoffa@sullcrom.com

/s/ Thomas W. Taylor
Thomas W. Taylor
Texas State Bar No. 19723875
S.D. Tex. Bar No. 3906
HUNTON ANDREWS KURTH LLP
600 Travis St., Suite 4200
Houston, Texas  77002
Telephone:  (713) 220-4200
Facsimile:  (713) 220-4285
ttaylor@HuntonAK.com

*Attorney-in-Charge for Defendants*

-25-

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing memorandum and accompanying declaration, exhibits, and Appendices 1, 2, and 4 have been served by electronic CM/ECF filing, on this 21st day of August, 2019.  I have directed Matthew Peller of Sullivan & Cromwell LLP to email Appendix 3, which was filed under seal, to Matthew Tuccillo on this 21st day of August, 2019.

*/s/ Thomas W. Taylor*
Thomas W. Taylor
