# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| *In re BP plc Securities Litigation* | ) MDL 2185 <br> ) Case No. 4:10-md-02185 <br> ) <br> ) **This Document Relates to Only The** <br> ) **Following Individual Actions** <br> ) <br> ) No. 4:12-cv-1256 (cons.) <br> ) No. 4:12-cv-1272 <br> ) No. 4:12-cv-2362 (cons.) <br> ) No. 4:12-cv-3621 <br> ) No. 4:12-cv-3714 <br> ) No. 4:12-cv-3715 <br> ) No. 4:13-cv-0069 <br> ) No. 4:13-cv-0129 <br> ) No. 4:13-cv-0517 <br> ) No. 4:13-cv-0887 <br> ) No. 4:13-cv-1044 <br> ) No. 4:13-cv-1393 <br> ) No. 4:13-cv-3397 <br> ) No. 4:14-cv-0457 <br> ) No. 4:14-cv-0980 <br> ) No. 4:14-cv-1065 <br> ) No. 4:14-cv-1085 <br> ) No. 4:14-cv-1068 <br> ) No. 4:14-cv-1072 <br> ) No. 4:14-cv-1073 <br> ) No. 4:14-cv-1075 <br> ) No. 4:14-cv-1087 <br> ) No. 4:14-cv-1279 <br> ) No. 4:14-cv-1280 <br> ) No. 4:14-cv-1281 <br> ) No. 4:14-cv-1418 <br> ) <br> ) |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# INDIVIDUAL ACTION PLAINTIFFS'
# <u>MOTION TO COMPEL DISCOVERY RESPONSES</u>

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................1

II. ARGUMENT .............................................................................................................2

    A. Defendants' "Meet And Confer" Argument Lacks Merit .....................2

    B. Defendants Have Waived Certain Substantive Arguments ...................3

    C. Defendants Must Produce Documents Evidencing "All Direct Communications" With Plaintiffs And Their Investment Managers ......................4

    D. Defendants Must Produce Documents Evidencing "All Alleged Misstatements" In Plaintiffs' Complaints ............................................................6

    E. Defendants Fail To Establish The MDL 2179 / 2185 Productions' Relevance ................................................................................................................8

    F. Defendants Fail to Otherwise Carry Their Burden To Oppose Discovery .............8

    G. Oral Argument Is Unnecessary And Should Not Occur "In Person" ...................10

III. CONCLUSION .........................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126 (JMF),
   2016 WL 6779901 (S.D.N.Y. Nov. 16, 2016) ...........................................................................6

*Am. Airlines, Inc. v. Travelport, Ltd.*, No. 4:11-CV-244-Y,
   2012 WL 12884821 (N.D. Tex. May 29, 2012) .......................................................................8

*Barcosh Ltd. v. Dumas*, No. 08-92-JVP-SCR,
   2008 WL 4286506 (M.D. La. Sept. 8, 2008) ............................................................................3

*Cangelosi v. New York Life Ins. Co.*, No. 15-325-SDD-RLB,
   2016 WL 4944137 (M.D. La. Sept. 15, 2016) ..........................................................................3

*Culpepper v. Consolidated Container Co., LP*, No. 15-125-BAJ-RLB,
   2016 WL 2599128 (M.D. La. May 5, 2016) ............................................................................3

*DirecTV, Inc. v. Forman*,
   126 Fed. App'x 676 (5th Cir. 2005) .........................................................................................4

*J.M. Smith Corp. v. Ciolino Pharmacy Wholesale Distributors, LLC*, No. 10-1483,
   2012 WL 13001456 (E.D. La. Dec. 28, 2012) .........................................................................3

*Jones v. Cain*,
   600 F.3d 527 (5th Cir. 2010) ....................................................................................................4

*Jones v. Hearn*,
   248 Fed. App'x 568 (5th Cir. 2007) .........................................................................................4

*Lewis v. East Baton Rouge Parish*, No. 16-352-JWD-RLB,
   2018 WL 2921104 (M.D. La. June 11, 2018) ..........................................................................3

*McDaniel v. Shell Oil Co.*,
   350 Fed. App'x 924 (5th Cir. 2009) .........................................................................................4

*Moore v. Huse*,
   578 Fed. App'x 334 (5th Cir. 2014) .........................................................................................4

*Ntakirutimana v. Cmty. Health Sys., Inc.*, No. L-09-114,
   2012 WL 12894293 (S.D. Tex. July 16, 2012) ........................................................................8

*Thorn v. McGary*,
   684 Fed. App'x 430 (5th Cir. 2017) .........................................................................................4

*Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB) (HBP),
    2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) ............................................................................ 6

## **Statutes**

Civil L.R. 7.1 ................................................................................................................................. 1

## **Rules**

Fed. R. Civ. P. 29(b) ............................................................................................................. 1, 3, 5

Rule 37 ..................................................................................................................................... 1, 3

Rule 37(a)(1) ................................................................................................................................. 3

Pursuant to Fed. R. Civ. P. 29(b) and 37 and Civil L.R. 7.1, the Individual Action Plaintiffs Steering Committee ("Steering Committee") hereby respectfully submits this Memorandum of Law in support of its Motion to Compel (MDL 2185 Dkt. No. 1760) on behalf of the Individual Action Plaintiffs in the above-captioned actions, with exclusions as noted in the Motion.[1]

## I. PRELIMINARY STATEMENT

Within the four corners of their brief, Defendants tell two dramatically different tales, both free from the inconvenient tethers of hit counts or other data-driven metrics. In one, Plaintiffs have proposed "duplicative" searches for "irrelevant" custodians, in the context of 1.8 million valuable documents having already been produced in other litigations and generously shared with Plaintiffs, such that further discovery is almost entirely unwarranted. In the other, Plaintiffs have proposed "overbroad" searches that when run on their proposed custodians' email accounts will generate even more documents than were ever produced in all the *Deepwater Horizon* litigation. Their brief is like a "Choose Your Own Adventure" book, where each read can lead to a different conclusion.

In reality, the parties' March 21, 2017 Letter Agreement requires the discovery Plaintiffs seek, Plaintiffs' Appendix C listed undisputed reasons why its custodians must be searched, and Plaintiffs' Appendix A and B searches evolved from a massive review of those 1.8 million largely irrelevant documents, at a cost of over $350,000 and 9,000 attorney review hours. Defendants mow bear the burden of proffering *evidence* demonstrating that the discovery sought is unduly burdensome. Yet, BP's unexplained decision to dismantle its document databases in 2015 – a plot twist just revealed in their Opposition – created a self-inflicted burden to actually doing so by test-running the searches and generating hit counts. The optics are tough, given Defendants' concession in April 2019 that hit counts should guide discussions and given that the parties are engaging in these same steps vis-à-vis subpoenaed third-party investment managers. Instead, they have tried to speculate, surmise, and extrapolate their way out of this required discovery.

---

[1]     Contrary to Defendants' speculation (Opp. at 4, 8), the Steering Committee chose to file this Motion on behalf of all Plaintiffs whose counsel (a) did not participate in the negotiation of search terms employed in any prior litigation and (b) engaged in the recent, collective, costly review of the MDL 2179 / 2185 documents described in Plaintiffs' Memo.

These legally deficient tactics should be rejected. Plaintiffs respectfully request that the Court grant their Motion now, without further delay.

## II. ARGUMENT

### A. Defendants' "Meet And Confer" Argument Lacks Merit

Defendants' lead argument (Opp. at 1, 6, 12-14) – that Plaintiffs "refused to meet and confer" – is false. Plaintiffs conferred *extensively* about the disputes at issue. *See* Tuccillo Decl. ¶¶4-40. These efforts included dozens of calls in 2016-2017 regarding the disputes resolved by the March 21, 2017 Letter Agreement provisions now at issue again, and more recently, telephonic communications with Defendants *after* service of the 4/5/2019 Letter. *See, e.g.*, Exh. M (setting a call for April 13, 2019).[2] So, Defendants' hyperbolic depictions of counsel who "never once" spoke with them ring hollow.[3] That is particularly true given that: (a) Defendants conceded on April 26, 2019 that search term "hit counts" should guide discussions (Exh. O), yet ignored Plaintiffs' repeated requests for Appendix A and B search hit counts to guide the dialogue, made on May 17, 2019 (Exh. R at 1),[4] June 6, 2019 (Exh. T at 2), June 20, 2019 (Exh. X at 4), and June 28, 2019 (Exh. AA at 2) ("Our dialogue has been, and continues to be, hampered because you are

---

[2]   The subsequent responsive email in the thread, not included in Exh. M, confirmed the teleconference and offered up Plaintiffs' Liaison's counsel's conference line to host it.

[3]   Two facts bear noting. <u>First</u>, this recent discovery dispute coincided with circumstances – known to defense counsel – that impaired Plaintiffs' Liaison's Counsel's ability to communicate telephonically, including his own severe asthma flareup in March - May 2019 (referenced, *e.g.*, in Exh. M), and, later, his daughter's unplanned surgery on June 28, 2019 and a death in his family on July 2, 2019 that kept him out of the office for two weeks (*see* Tuccillo Decl. ¶31; Lucier Decl. Exh. 2). <u>Second</u>, notwithstanding Defendants' characterizations (*see, e.g.*, Opp. at 9), the fact pattern here mirrors the one regarding *Defendants'* discovery requests governed by the December 28, 2017 Letter Agreement. There, after 15+ months, Defendants served an email with follow up requests on March 14, 2019 (*see* Tuccillo Supp. Decl. Exh. HH) – just 3 weeks before Plaintiffs served their analogous 4/5/2019 Letter under the March 21, 2017 Letter Agreement – and, thereafter, Plaintiffs' Liaison Counsel and defense counsel used written communications to meet-and-confer about and resolve issues affecting all Plaintiffs. *See* Tuccillo Supp. Decl. ¶6.

[4]   Submitted herewith is a substitute Exh. R in support of Plaintiffs' Motion to Compel. Plaintiffs' counsel sent defense counsel two letters on May 17, 2019, one regarding Defendants' discovery requests (not at issue) and one regarding Plaintiffs' requests (at issue). The wrong letter was submitted previously as Exh. R. Plaintiffs apologize for this error.

not testing our searches and providing hit counts."), and (b) *Defendants* caused **over 2 months** to elapse after service of Plaintiffs' 4/5/2019 Letter before providing extensive comments (without hit counts or metrics) to Plaintiffs' search terms. *See* Memo §II.G.2. at 11-12 and §II.G.3. at 16-17. *Contra* Opp. at 3 (claiming Defendants "promptly" responded in April and June 2019).

Even disregarding, *arguendo*, the foregoing, Defendants' argument fails as a matter of law, because "[t]he court has considerable flexibility in determining whether a 'meet and confer' occurred for purposes of Rule 37" and "[t]he plain language of Rule 37 does not mandate that the 'conference' take a particular form, but only that the parties 'attempt' to confer 'in good faith.'" *J.M. Smith Corp. v. Ciolino Pharmacy Wholesale Distributors, LLC*, No. 10-1483, 2012 WL 13001456, at *2 (E.D. La. Dec. 28, 2012) (where Rule 37 "discussion" occurred in an email, stating "the Court finds it expedient to set aside the supposed technical deficiency… and to swiftly and definitively dispose of the parties' discovery dispute"). Fifth Circuit courts routinely find that written correspondence like the parties exchanged here, alone, satisfies Rule 37(a)(1). *See, e.g.*, *Lewis v. East Baton Rouge Parish*, No. 16-352-JWD-RLB, 2018 WL 2921104, at *4 (M.D. La. June 11, 2018) (validating Rule 37(a)(1) certification based on plaintiff's counsel's declaration detailing pre-motion correspondence with defense counsel over 9 weeks attempting to determine when discovery responses would occur and raising prospect of motion to compel).[5]

**B.     Defendants Have Waived Certain Substantive Arguments**

Defendants fail to refute Plaintiffs' argument that the March 21, 2017 Letter Agreement is *binding* upon them and enforceable by this Court, both as a Fed. R. Civ. P. 29(b) stipulation and as

---

[5]     *See also Cangelosi v. New York Life Ins. Co.*, No. 15-325-SDD-RLB, 2016 WL 4944137, at *2-*3 (M.D. La. Sept. 15, 2016) (validating Fed. R. Civ. P. 37(a)(1) certification based on a demand letter and 14 written communications over five weeks); *Culpepper v. Consolidated Container Co., LP*, No. 15-125-BAJ-RLB, 2016 WL 2599128, at *1 n.2 and *3 (M.D. La. May 5, 2016) (granting plaintiffs' motion to compel after rejecting defense argument that plaintiffs' email communications failed to satisfy Fed. R. Civ. P. 37(a)(1)); *Barcosh Ltd. v. Dumas*, No. 08-92-JVP-SCR, 2008 WL 4286506, at *1-*2 (M.D. La. Sept. 8, 2008) (Fed. R. Civ. P. 37(a)(1) satisfied by sending a single letter, where defendants' prior conduct and repeated refusal to provide the requested information in a related action justified plaintiffs' assumption that the discovery dispute could not be resolved and that defendants would "try any tactic to delay production").

a contract, as part of a two-agreement negotiated resolution of prior discovery disputes (along with the December 28, 2017 Letter Agreement addressing Defendants' requests), upon which Plaintiffs have acted in reliance. *See* Memo §III.B. at 19-20. Defendants likewise fail to refute or address Plaintiffs' recitation of applicable legal standards, pursuant to which *Defendants* bear the burden to "articulate how *each* discovery request is not relevant or is overly broad, burdensome, or oppressive" by proffering "evidence revealing the nature of the burden," such as "evidentiary proof of the time or expense involved" in responding. *See* Memo §III.A. at 19.

Defendants have thus waived any arguments to the contrary. *See, e.g.*, *Thorn v. McGary*, 684 Fed. App'x 430, 434 n.5 (5th Cir. 2017) (party waived argument it failed to raise in its opposition brief); *Moore v. Huse*, 578 Fed. App'x 334, 340 (5th Cir. 2014) (same); *Jones v. Cain*, 600 F.3d 527, 540 (5th Cir. 2010) (same); *McDaniel v. Shell Oil Co.*, 350 Fed. App'x 924, 927 (5th Cir. 2009); *Jones v. Hearn*, 248 Fed. App'x 568, 573 (5th Cir. 2007) (same); *DirecTV, Inc. v. Forman*, 126 Fed. App'x 676, 677 (5th Cir. 2005) (same).

### C. Defendants Must Produce Documents Evidencing "All Direct Communications" With Plaintiffs And Their Investment Managers

Plaintiffs' Appendix B lists 25 searches *never* before run, on *any* custodian ever, relating to a subject unquestionably outside the scope of *any* prior litigation – direct communications between BP and Plaintiffs and their investment managers. Contrary to Defendants' argument (Opp. at 23), such communications are evidence directly bearing on at least two elements of Plaintiffs' English law claims – their reliance and Defendants' intent to induce their reliance – and may also reveal additional, actionable misstatements not previously alleged or tested by dispositive motion practice. Plaintiffs are entitled, under the Court's Third Scheduling / Docket Control Order (*see* MDL 2185 Dkt. No. 1766 ¶6), to file motions seeking leave to amend to plead such evidence, if discovered, up to 30 days after the close of fact discovery. Based on preliminary investigatory work, and without any discovery on this issue from BP, Plaintiffs' complaints and their 2016 discovery requests already list ***132 instances*** of such direct communications, involving dozens of BP personnel, who undoubtedly engaged in ***an even greater number*** of as-yet unrevealed

communications during the relevant time period.  Plaintiffs' Appendix C lists these individuals, along with custodians *Defendants* identified.  Together, the discovery sought by Plaintiffs' Appendices B and C targets critical evidence in support of Plaintiffs' claims, more attainable through party discovery of BP than through subpoenas of third-party investment managers.

Defendants seek to greatly restrict Plaintiffs' access to these documents, which are absent from prior MDL 2179 / 2185 productions.  Reviving old arguments that prompted Plaintiffs' 2016 motion to compel, Defendants first argued, on June 13, 2019 (9 weeks after Plaintiffs served Appendix B) they should search only for documents related to "alleged meetings," which would restrict their search to the ~100 or so meetings alleged by Plaintiffs.  *See* Exh. U.  Ten days later, they went further, refusing to search for documents unless a meeting was "alleged to have been false or misleading," reducing the number to under 20 meetings.  *See* Exh. Z; Opp. at 4, 6, 17, 18.

This tactic runs directly counter to the express terms of the March 21, 2017 Letter Agreement, which contains this clear directive:

> Defendants will work with [ ] Plaintiffs to develop and utilize reasonable search terms to identify responsive documents evidencing ***any direct communications*** (emails, letters, teleconferences, meetings, etc.) between BP and [ ] Plaintiffs and/or their outside investment managers who managed their relevant BP investments.

Exh. G at 2; *see also* Memo at 10-11.  This provision, which binds Defendants as Fed. R. Civ. P. 29(b) stipulation and an enforceable contract, is not limited to "alleged meetings" or meetings where an alleged misstatement occurred and instead encompasses "***any*** direct communications" and provide non-meeting examples such as "emails, letters, teleconferences."  Custodians must be searched for ***all*** such communications with any of the Plaintiffs or their managers.

Running Plaintiffs' Appendix B searches on their Appendix C custodians (as augmented by Defendants' interrogatory responses) will ensure this discovery obligation is met.[6]  Defendants

---

[6] Three points bear noting.  First, ***none*** of the ~18,500 substantively responsive documents Plaintiffs identified from the MDL 2179 / 2185 productions concern direct communications between BP and them/their managers that are the subject of Plaintiffs' Appendix B searches.  Second, Defendants *just produced* in August 2019 – after Plaintiffs' Motion was filed – a first, small production of documents from BP's Investor Relations database, which Plaintiffs will

must demonstrate, with evidence, a burden that overcomes use of these terms and custodians. They have failed to do so, choosing instead to revive their 2016 obstructionist arguments. They refuse to employ a search unless it touches a meeting where an alleged misstatement was made. *See* Opp. at 17-18. Even then, they propose to search only those custodians in attendance. *Id.* Defendants seek to avoid searching for over 130 *alleged* direct communications (other meetings, emails, calls, etc.) between BP and Plaintiffs and their managers, and the many more such communications not alleged, which bear directly on elements of Plaintiffs' claims. They likewise refuse to search the files of **21 custodians** who they **concede** (Opp. at 15) communicated directly with Plaintiffs or their managers. Defendants offer no credible data or metric-based rationale, and their instant arguments lack merit. *See* §II.F., *infra*.

### D. Defendants Must Produce Documents Evidencing "All Alleged Misstatements" In Plaintiffs' Complaints

The March 21, 2017 Letter Agreement requires use of search terms to identify documents "concerning **all alleged misstatements** in [ ] Plaintiffs' complaints." *See* Exh. G at 1-2; *see also* Memo at 15.[7] As Defendants concede, Plaintiffs' Appendix A search terms textually differ from those previously employed in MDLs 2179 and 2185.[8] *See, e.g.*, Opp. at 6 (describing Plaintiffs'

---

review. Their "proportionality" argument (Opp. at 18) is premature and their extra-jurisdictional cases are distinguishable. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126 (JMF), 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016) (plaintiffs sought all documents ever provided to or received from any governmental regulator, despite defendants having already produced all historical documents they ever gave to their regulators); *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB) (HBP), 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016) (plaintiffs sought "wide array of documents" that "have very, very little, if anything, to do with plaintiffs' claims"). Third, if Defendants believe their IR database production is sufficiently in hand to raise a "proportionality" argument, then their argument that it must precede their response to Interrogatory 11 (Opp. at 11, 24) is now moot and they can respond – just like Test-Case Plaintiff USS, which they incorrectly describe (Opp. at 19-20) as failing to respond to a request for information before completion of its document production (*see* Tuccillo Supp. Decl. ¶7).

[7] Defendants assert that Plaintiffs challenge "32 statements" (*see* Opp. at 1), which matches neither the number (80+) of actual quoted utterances at issue nor the number (35+) of SEC filings, interviews, meetings, testimony, briefings, etc. in which they were said. Simply put, as Defendants concede, Plaintiffs allege more misstatements, over a broader time period.

[8] For instance, Plaintiffs' Appendix A post-spill searches use words (*e.g.*, "1,000," "1K," "1 thousand," or "one thousand" tied to "spill*") different than those Defendants discuss (Opp. at 8).

- 6 -

Appendix A searches as "similar to" those prior searches). As regards custodians previously searched, Defendants' failure to run these searches, generate hit counts after running de-duplication and threading software, and point to either an unreasonably high hit count or a significant sampling of irrelevant or "false hit" documents – the same processes that Defendants and Plaintiffs are using with subpoenaed third party investment managers – renders their opposition to this required discovery legally deficient. *See* §II.F., *infra*. As regards custodians not previously searched, their argument is pure speculation and likewise fails.

Defendants also claim to pre-ordain, from the hip, which searches are "relevant" to which custodians (Opp. at 6, 11-12), as if BP employees, some of them high-level, were playing bit parts in a school play limited only to their few lines that made the show. For instance, they propose searching Defendant Malone's emails *only* for his one alleged misstatement upheld as actionable by the Court, concerning BP's purported implementation of a fiber optic network in the Gulf of Mexico. *See* Opp. at 10. However, Defendant Malone was BP America's Chairman and President during most of the relevant time period, and he is alleged to have made public statements in *BP Magazine* articles, Congressional testimony, and press releases, concerning topics including implementation of the Baker Panel recommendations and the safety of BP's operations. *See, e.g.*, *Alameda* complaint, MDL 2185 Dkt No. 1374 ¶36, 358-359, 364, 370. Running Plaintiffs' Appendix A searches on him would likely generate discoverable documents on all these topics, and Defendants bear the burden of establishing, with evidence, the converse. Indeed, even assuming, *arguendo*, that Defendants' crystal ball accurately predicts, for all 85 custodians, the absence of documents generated by all the searches Defendants refuse to run, then confirmation of this prediction is as easy as running the searches and generating zero hits. Yet, Defendants have not identified any hit count or metrics-based reason to avoid trying. *See* §II.F., *infra*.[9]

---

[9] Defendants refer to Plaintiffs' "potentially valid point" statement regarding topical limitations (Opp. at 10), but omit that Defendants did so on June 13, 2019 – over two months after Plaintiffs' served their 4/5/2019 Letter – and that they thereafter refused to provide Plaintiffs with a markup of Plaintiffs' Appendix C custodians list reflecting the substantive reasons for any such proposed limitations, as Plaintiffs repeatedly requested (*see* Exh. X at 4-5; Exh. AA at 1-2).

### E. Defendants Fail To Establish The MDL 2179 / 2185 Productions' Relevance

Defendants fail to refute Plaintiffs' explanation (Memo §III.D.) that the prior MDL 2179 / 2185 productions had a responsiveness rate of just 1.02% of the 1.8 million documents produced (Opp. at 2). After *conceding* that that *over 1 million documents* in those productions were from *outside the time period of Plaintiffs' lawsuits*, the Prine Declaration claims that Plaintiffs' Appendix A and B searches, as a whole, resulted in a 70.4% - 74.3% hit rate in the *other* ~800,000 documents. *Id.* ¶¶14-15; Opp. at 21. Even assuming, *arguendo*, this aggregate metric was true (Plaintiffs do not so concede), it is irrelevant. After applying technology to narrow their search hits,[10] Plaintiffs devoted 9,000+ hours of attorney time to review 450,000+ documents (and secondarily review ~65,000 of them) before determining that ~18,500 were substantively relevant. To argue otherwise, Defendants must identify, by Bates number, which specific statements they believe are relevant. *See* Memo at 21-22 (citing *Ntakirutimana v. Cmty. Health Sys., Inc.*, No. L-09-114, 2012 WL 12894293, at *5 (S.D. Tex. July 16, 2012) and *Am. Airlines, Inc. v. Travelport, Ltd.*, No. 4:11-CV-244-Y, 2012 WL 12884821, at *2 (N.D. Tex. May 29, 2012)).

### F. Defendants Fail to Otherwise Carry Their Burden To Oppose Discovery

Buried in the Prine Declaration is the long-awaited explanation why Defendants refused to articulate hit counts for each of Plaintiffs' searches. During active litigation with Plaintiffs, *after* most of their cases had survived motions to dismiss,[11] BP decided in 2015 to *dismantle* the two document database platforms (hosted by HP/Autonomy and EDox) it had used for prior litigations, including the parallel ADS-only class action. *See id.* ¶8; Opp. at 21. Over the course of a year, extending into 2016 (when Plaintiffs served their requests), BP migrated 179 million documents to

---

[10] Plaintiffs actually employed an even greater number of searches – 346 in total – in their attempts to get through the mountain of highly irrelevant MDL 2179 / 2185 materials. Based on their experiences testing and revising those searches over time, Plaintiffs distilled them to the Appendix A and B searches given to Defendants. If Defendants instead wish to run the full list of 346 search terms and produce responsive documents, Plaintiffs are open to that outcome.

[11] The amended version of the *Alameda* Order resolving Defendants' motion to dismiss the Tranche 1 Plaintiffs' actions entered in December 2013 (MDL 2185 Dkt. No. 706) and the Orders resolving Defendants motions to dismiss the Tranche 2 Plaintiffs' actions entered in September 2014 (*see, e.g.*, MDL 2185 Dkt. Nos. 1014-1025).

- 8 -

a new platform, Clutch. *Id.* ¶9. BP chose to *exclude* documents from the HP/Autonomy and EDox platforms not previously reviewed, so the Clutch database lacks some unstated number of custodial documents. *Id.* ¶10. The transition apparently impairs BP's ability to use de-duplication and threading software to compare the custodial data previously hosted in HP/Autonomy and EDox (*i.e.*, documents previously reviewed and coded both topically and for relevance) with any versions of documents newly-loaded into Clutch (*i.e.*, those never before reviewed). *Id.* ¶12.

BP offers no reason for these decisions, or their timing, but ultimately, it does not matter. BP concedes it can reconstitute the full set of documents from each custodian from the "100 TB of information" still preserved (*id.* ¶4) and that de-duplication and threading software will work properly on the reconstituted database if it consists of only newly-reloaded documents (*id.* ¶12). These simple steps could have been done in a short time and would have revealed hit counts for ***every one of Plaintiffs' Appendix A and B searches*** run on ***every one of Plaintiffs' Appendix C custodians***. Any burden or cost to doing so is entirely self-inflicted by BP's own decisions. BP even concedes its staffing capabilities: "personnel from several outside vendors and several external law firms [ ] and an internal team of lawyers and paralegals [that] continue to be actively engaged in discovery efforts across the remaining *Deepwater Horizon*-related litigation." *Id.* ¶5.[12]

In this context, Defendants ***cannot justify*** their refusal to provide *search-specific* hit counts for Plaintiffs' Appendix A and B searches – the same process both sides are using with subpoenaed third-party managers, which Defendants ***conceded*** should be used back in April 2019. *See* §II.A. *supra*. Instead, Defendants' Opposition, for the first time, articulates a mealy-mouthed, generalized hit count argument. *See* Opp. at 24 n.10; Prine Decl. ¶16. They report *total* search hits

---

[12] Once these initial steps are taken, BP's counsel can perform review in the newly-constituted database consisting of newly-reloaded, de-duplicated documents, while cross-referencing (by Bates number or database control number) in split-screen, where possible, any documents also found in the older, post-transition Clutch database so as to quickly identify and replicate responsiveness, topical, and privilege coding (to the extent usable in Plaintiffs' actions) on documents previously-reviewed in other litigations. *See* Prine Decl. ¶9 (the transition included "migrating hosted documents, metadata, and coding"). That approach will be far less-labor intensive or costly than re-reviewing 100% of the documents in the newly-reconstituted database.

- 9 -

resulting from running *all* of Plaintiffs' Appendix A and B searches on four and 12 unnamed custodians, respectively. *Id.* Absent custodian identities (CEO? Desk clerk?), the total is devoid of any context. Without a hit count by search, it is unclear how the total arose, *e.g.*, whether it resulted primarily from a single search in need of adjustment. Least defensible, they ***assume without any basis*** that running those searches on the other 66 to 81 custodians will always result in the same hit count, the documents will never be duplicates, and that they can ***extrapolate*** to a total purported universe exceeding not only the conceivable email count for predominantly mid-level BP employees but also the entirety of *all* documents *ever* produced in any BP litigation. This purported articulation of burden is legally deficient and intellectually absurd. Defendants have failed to satisfy *their* burden to "articulate how ***each*** discovery request is not relevant or is overly broad, burdensome, or oppressive" by proffering "evidence revealing the nature of the burden," such as "evidentiary proof of the time or expense involved." *See* §II.B, *supra*; Memo §III.A.

If anything, Defendants' argument serves just one purpose – it fatally undermines the argument out of the other side of their mouths that the MDL 2179 / 2185 productions were so comprehensive that running Plaintiffs' searches would be an exercise in futility because all discoverable documents were already produced. Defendants cannot have it both ways. They cannot argue that Plaintiffs' searches will not yield discoverable documents beyond those already produced in MDL 2179 / 2185 while also arguing (incorrectly) that the searches will yield "millions" of documents – a number so great that their irrelevance cannot be presumed.

### G. Oral Argument Is Unnecessary And Should Not Occur "In Person"

Defendants are violating the March 21, 2017 Letter Agreement and fail to carry *their* burden to provide *evidence* that the discovery sought thereunder is unduly burdensome. Plaintiffs do not believe an oral argument, which would consume more time and judicial and party resources, is necessary, but if one is held, it should be telephonic, to conserve resources.

### III. CONCLUSION

For these additional reasons, Plaintiffs respectfully request that their Motion be granted.

Dated: September 10, 2019    Respectfully Submitted,

**POMERANTZ LLP**
/s/ Matthew L. Tuccillo
Jeremy A. Lieberman
Matthew L. Tuccillo
Jessica N. Dell
Jennifer Banner Sobers
600 Third Avenue, 20th Floor
New York, NY 10016
(212) 661-1100
(212) 661-8665 (Fax)

*Individual Action Plaintiffs Steering Committee &*
*Individual Action Plaintiffs' Liaison Counsel*

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Geoffrey C. Jarvis
Matthew Mustokoff
Darren J. Check
Gregory M. Castaldo
Michelle M. Newcomer
Margaret Mazzeo
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (fax)

**KIRBY MCINERNEY LLP**
Daniel Hume
Ira M. Press
Meghan Summers
Angela Farren
825 Third Ave
New York, NY 10022
Tel: 212.371.6600
Fax: 212.751.2540

**SPECTOR ROSEMAN & KODROFF, P.C.**
Robert M. Roseman
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel.: (215) 496.0300
Fax: (215) 496.6611

*Individual Action Plaintiffs' Steering Committee*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2019, a copy of the foregoing was served by me via ECF notification on the counsel of record for all Defendants, with an email copy also sent to Mr. Marc De Leeuw and Mr. Matthew Peller at Sullivan & Cromwell LLP.

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo, Esq.